UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Caption in Compliance with D.N.J. LBR 9004-1(b)
HELLRING LINDEMAN GOLDSTEIN
& SIEGAL LLP
Patricia A. Staiano, Esq.
Attorneys for Benjamin A. Stanziale, Jr.,
Chapter 11 Trustee
103 Eisenhower Parkway, Suite 403
Roseland, New Jersey 07068-1031
973.621.9020
pstaiano@hlgslaw.com

| | |
|---|---|
| In Re:<br><br>AVRUMI LUBIN a/k/a Josh Lubin,<br><br>Debtor. | Case No 26-17342 (EJO)<br><br>Judge: Eamonn James O'Hagan, U.S.B.J.<br><br>Chapter 11 |
| BENJAMIN A. STANZIALE, JR., CHAPTER 11 TRUSTEE FOR AVRUMI LUBIN a/k/a Josh Lubin,<br><br>Plaintiff,<br><br>vs.<br><br>AVRUMI LUBIN, SPIN CAPITAL, LLC, TETON LIFE, LLC, TETON FUNDING, LLC, TETON FUNDING GROUP, LLC, and JL SPECIAL INVESTMENTS, LLC,<br><br>Defendants. | Adv. Pro. No. 26-_________(EJO) |

## VERIFIED COMPLAINT TO EXTEND CHAPTER 11 PROCEEDINGS TO SPIN CAPITAL, LLC, TETON LIFE, LLC, TETON FUNDING, LLC, TETON FUNDING GROUP, LLC, AND JL SPECIAL INVESTMENTS, LLC,

Benjamin A. Stanziale, Jr., as plaintiff and Chapter 11 Trustee (“Trustee”) for Avrumi Lubin, a/k/a Josh Lubin (“Lubin” or “Debtor”), by his undersigned counsel, brings this

complaint to extend the above-captioned Chapter 11 proceeding and the related automatic stay, to include the following entities as debtors:

- SPIN CAPITAL, LLC ("Spin");
- TETON LIFE, LLC ("Teton Life");
- TETON FUNDING, LLC ("Teton Funding");
- TETON FUNDING GROUP, LLC ("Teton Funding Group"); and
- JL SPECIAL INVESTMENTS, LLC ("JL")

(collectively, Spin, Teton Life, Teton Funding, Teton Funding Group and JL are referred to below as the "Subject Entities" and the Debtor and the Subject Entities collectively the "Defendants".)

In support of this relief, the Trustee alleges as follows:

## Jurisdiction and Venue

1. This adversary proceeding arises under 11 U.S.C. §§ 105, 362, 541 and 542 and Fed.R.Bankr. P. 7001.

2. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§1334(a) and (b) and 157(b).

3. This adversary proceeding is a core proceeding as that term is defined under 28 U.S.C. §§157(b)(2)(A), (E) and (O).

4. Venue is proper in this District pursuant to 28 U.S.C. §1409.

## Background

5. On June 25, 2026, the Debtor filed a Petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §101 *et seq.*

6. Plaintiff, Benjamin A. Stanziale, Jr. was appointed as Chapter 11 Trustee for the Debtor on September 18, 2026, which appointment was approved by the Court by Order dated September 28, 2026.

7. The Debtor filed Schedules on July 22, 2026. In his Schedules:

a. the Debtor listed Subject Entities Spin, Teton Funding, Teton Funding Group, and JL as entities wholly-owned by the Debtor; and

b. the Debtor listed Subject Entity Teton Life as owned 50% by the Debtor and 50% by another individual named Gavriel Yitzchakov, a/k/a Gabe Isaacov. Upon information and belief, whether de jure or de facto, the Debtor exercises the managerial control of Teton Life.

8. Pre-petition, the Debtor operated a non-bank finance business providing what was styled as "revenue financing" or "merchant cash advances" (colloquially referred to collectively as "MCAs") to cash-strapped businesses and individuals in numerous states ("Counterparties").

9. The Debtor's principal operating business was Subject Entity Spin.

10. In the MCA transactions by Spin, Spin would either purchase or take a security interest in accounts receivable and other assets (including in some instances life insurance policies) which, for shorthand and not as a legal conclusion or assertion of a position, as "Collateral," from which (together with any payments received from Spin's Counterparties), Spin hoped to recover the amounts it had advanced to the Counterparties.

11. In addition to originating its own MCAs, Spin would purchase or take assignments of MCAs originated by other entities, including entities in the "Hi Bar" group of companies and entities in the "BMF" group of companies. (Gavriel Yitzchakov, who as noted above is a 50% owner of Subject Entity Teton Life, is a principal in the "BMF" group of companies.)

12. At points in time, Spin assigned certain collateral, including certain life insurance policies, and other rights it held against Counterparties, to Teton Life.

13. On information and belief, at points in time, Spin or Teton Life assigned collateral or other assets to Teton Funding, Teton Funding Group, or JL.

14. Prior to and since the filing of the Lubin Chapter 11 Petition, Spin or Teton Life, as its assignee, have maintained suits against Counterparties whom Spin or Teton Life alleged to be in default of their obligations to Spin or Teton Life, and attempted to realize on the collateral and otherwise to enforce the MCA transactions.

15. The Trustee is still investigating the Debtor's operations of the Subject Entities. To the extent that Spin or Teton Life has successfully (if ever) received payments from customers or proceeds of Realization Assets, they are essentially unaccounted for other than the Debtor having stated at various times that he used Spin's collections and proceeds of Collateral for purposes of Spin's business, in particular, to fund new payments or advances to new borrowers, or to pay lawyers to prosecute or defend claims on behalf of Spin.

16. Indeed, numerous suits, claims or counterclaims have been filed by Counterparties against the Debtor as well as against certain Subject Entities alleging in substance that the MCAs constituted usurious loans, and/or were procured by fraud, and that the Debtor operated the Subject Entities in combination with other entities as an "enterprise" engaged in a "pattern of racketeering activity."

17. In those actions, the Counterparties have sought, among other things, relief from any obligations owed to the Subject Entities in connection with the MCAs, and recovery of amounts paid to Spin which they claim to be usurious or otherwise unlawfully obtained by Spin, as well as the release of collateral held by the Subject Entities.

18. As far as the Trustee is aware at this time, many Counterparties' claims have failed, and Spin was permitted to enforce its MCAs and rights in collateral.

19. However, at least two claims brought by Counterparties or the bankruptcy trustees of Counterparties against the Debtor and the Subject Entities are currently pending and in advanced stages of litigation, as well as a claim by certain of the Subject Entities:

a. Nicole Testa Mehdipour, as Chapter 7 Trustee for the Estate of Excell Auto Group, Inc. v. Hi Bar Capital, LLC, et al., Adv. Pro. No. 23-01132-EPK (Bankr. SD Fla.) (the "Excell RICO Case ") to which both the Debtor and Subject Entity Spin are parties; and

b. Golden Foothill Insurance Services, LLC, et al. v. Spin Capital, LLC, et al., Case No. 1:24-cv-08515 (AS) (US District Court, Southern District of New York) (the "Golden Foothill RICO Case"), to which the Debtor and Subject Entity Spin are parties; and

c. Teton Life LLC as assignee of the rights of Spin Capital, LLC, vs. Golden Foothill Insurance Services, LLC et al., Index No. 650582/2022 (Supreme Court of the State of New York, New York County) (the "Teton Life Collateral Case") to which the Debtor, and Subject Entities Spin and Teton Life are parties.

20. Those cases are each stayed against the Debtor but have not to date been stayed against the Subject Entities. The Plaintiff in the Excell RICO Case has moved for stay relief in the Debtor's Chapter 11 Case, ECF 119.

21. In another case related to the Golden Foothill RICO case, Teton Life LLC as assignee of the rights of Spin Capital, LLC, vs. Golden Foothill Insurance Services, LLC et al., Index No. 650582/2022 (Supreme Court of the State of New York, New York County) to which the Debtor, and Subject Entities Spin and Teton Life are parties, Spin (and later its assignee Teton Life) had sought to enforce its interest in Collateral provided by Counterparties under MCAs who are the plaintiffs in the Golden Foothill RICO case.

22. This Complaint hereafter refers to the New York court action as the "Leer Action" because the life insurance policies relate to members of the Leer family, which controlled businesses which are Spin Counterparties, and to more distinguish it from the Golden Foothill RICO Case.

23. The Collateral at issue in the Leer Action appear to have originally been provided in connection with MCAs originated by "BMF" companies, the companies in which Mr. Yitzchakov is a principal, and assigned through a chain of transactions first to Spin, and then to Teton Life in which Mr. Yitzchakov is a member with the Debtor, and the same transactions appear to be the source of claims by the Leer Counterparties in both the Leer Action and the Golden Foothill RICO Case.

24. The state court in the Leer Action has appointed a receiver, Fred Stevens, Esq., to hold multiple life insurance policies which are part of the Collateral provided by the Leer Counterparties to assure that the premiums are paid in order to keep the policies in force, pending resolution of competing claims to those policies.

25. The Debtor and Subject Entities legal problems are not limited to claims by or against Spin Counterparties. Other creditors of Spin Counterparties have asserted that the Debtor and one or more of the Subject Parties had participated in a scheme to interfere with those creditors' collateral and collection rights. Two of those matters have gone to judgment, both arising out of Spin's dealings with a Spin Counterparty "Excell Auto Group."

26. <u>In Franklin Capital Group, LLC v. Spin Capital LLC and Hi Bar Capital, LLC , Case No. 22-193300-CB</u> (State of Michigan, Circuit Court of the County of Oakland) ("<u>Franklin</u>"), the court found that Spin breached a contract with Franklin and then converted

collateral belonging to Franklin, and allowed Franklin $1,800,000 in compensatory damages and treble damages of $5,400,000. This case is on appeal.

27. FVP Opportunity Fund III, LP et al. v. Hi Bar Capital LLC, et al. , Case No. CACE-22-05125, Circuit Court of the 17th Judicial Circuit, Broward County, Florida (FVP and Franklin), also involving Excell, after jury verdicts, judgments were rendered against the Debtor in favor of FVP for a total of $8,841,219.72, and against the Debtor in favor of Franklin Capital Funding and the Franklin Capital Group in the total sum of $6,000,000, again based upon claims that the Debtor had manipulated certain transactions to convert assets in which the FVP Parties and Franklin, respectively, held interests. These judgments and related orders are on appeal to the Florida 4th District Court of Appeal.

28. In the course of enforcing its judgment, FVP secured a charging order and order of foreclosure against the Debtor's interest in Subject Entities Spin and Teton Funding in contested proceeding on a finding (among other things) that Spin and Teton Funding are under the complete domination and control of the Debtor and the corporate form is used to shield assets from his creditors.

**General Allegations**

29. At all relevant times, the Debtor operated and controlled the Subject Entities.

30. At all relevant times, the Debtor had custody and control of the Subject Entities' books and records, had signatory authority over all the Subject Entities' bank accounts, and de jure or de facto managed all of the Subject Entities' business activities and financial affairs.

31. It appears that the Debtor was able to freely assign and move assets between and among the Subject Entities without fair consideration.

32. The majority of the creditors that have filed proofs of claim in the Debtors' case are also creditors of one or more the Subject Entities.

33. In the unresolved claims or lawsuits which are pending against the Debtor, including the Excell RICO case and the Goldenhill RICO case, the claimants have also sued one or the Subject Entities.

34. The Debtor's principal assets appear to be his ownership interest in the Subject Entities, and as such the resolution of the claims against the Subject Entities would be of critical importance with respect to whether a Chapter 11 plan could be proposed and confirmed, or whether the case should be converted to Chapter 7 and the entities liquidated, and certainly an avenue to pay creditors.

35. So far as the Trustee can determine, extending the proceedings and potentially consolidating the estates of the Subject Entities with the Debtor's Estate would not prejudice any creditors of the Debtor or of the Subject Entities.

36. Upon information and belief, all persons holding judgments against the Subject Entities have filed claims in the Debtor's case or otherwise appeared or are listed as notice parties in the case.

37. To the extent there may be persons or entities asserting the status of claimants against the Subject Entities who have not also asserted claims against the Debtor, the Trustee requests that the Court provide a period of time to enable the Trustee to provide notice to such persons or entities prior to final adjudication of this complaint to extend proceedings.

## COUNT ONE

## EXTEND PROCEEDINGS

38. By reason of the foregoing the Court should extend proceedings to each of the Subject Entities.

## COUNT TWO

## EXTEND STAY

39. In the alternative, by reason of the foregoing the Court should extend the bankruptcy stay to each of the Subject Entities pending further order of the Court.

## COUNT THREE

## DIRECT TURNOVER OF BOOKS, RECORDS AND PROPERTY OF THE DEBTOR AND THE SUBJECT ENTITIES

40. To the extent this Chapter 11 proceeding is extended to the Subject Entities the assets of the Subject Entities, including all cash in any bank accounts wherever maintained, as well as their corporate books and records, are property of the estate under 11 U.S.C. §541(a), and constitute property that the Trustee may use, sell or lease under 11 U.S.C. §363, and is not of inconsequential value to the Estate.

41. The Defendants are in possession, custody and control of all assets, books and records of the Subject Entities and to the extent the Chapter 11 proceedings are extended to them, they are each required to account for and turn over the assets, books and records of the Subject Entities to the Trustee pursuant to 11 U.S.C. §542(a).

WHEREFORE the Trustee requests that the Court:

a. Extend the proceedings in this case to the Subject Entities and substantively consolidate the bankruptcy estates of the Subject Entities;

b. Alternatively, extend the proceedings in this case to the Subject Entities to the extent of staying actions, claims, or efforts to enforce judgments against the Subject Entities, or the taking of any action to prosecute, settle, assign or otherwise proceed with any claims by or against the Subject Entities, pending further order of the Court;

c. Directing turnover of the books and records of the Subject Entities to the Trustee or his designated accountants and professionals; and

d. Granting such other, further or different relief as may be just

HELLRING LINDEMAN GOLDSTEIN & SIEGAL LLP
Attorneys for Plaintiff, Benjamin A. Stanziale, Jr., Chapter 11 Trustee for Avrumi Lubin, a/k/a Josh Lubin

By: /s/ Patricia A. Staiano
PATRICIA A. STAIANO
A Member of the Firm

Dated: October 15, 2026