# EXHIBIT C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| SPIN CAPITAL, LLC,<br><br>Plaintiff,<br><br>-against-<br><br>GOLDEN FOOTHILL INSURANCE SERVICES, LLC, LIFE FACTORS II, LLC, LIFE SHARES II, LLC, EL DORADO HILLS INSURANCE SOLUTIONS, INC., LONE WOLF INSURANCE SERVICES, INC., ELDO INVESTMENTS, LLC, THE GENESIS LS FUND, LLC, KTL HOLDINGS, INC., DRVN HOLDINGS, LLC, LIFE SHARES 1019, LLC, ZURICH AMERICAN LIFE INSURANCE CO., ACCORDIA LIFE AND ANNUITY COMPANY, JOHN HANCOCK LIFE INSURANCE COMPANY, BRIGHTHOUSE LIFE INSURANCE CO., CAP FACTOR, LLC, STEFAN LEER and TATANISHA LEER,<br><br>Defendants. | Index No. 650582/2022<br><br>**YITZCHAKOV AFFIRMATION IN SUPPORT OF TETON CROSS-MOTION TO INTERVENE AND IN OPPOSITION TO LUBIN MOTION TO SUBSTITUTE AS PLAINTIFF**<br><br>(Motion Seq. No. 36) |

**GAVRIEL YITZCHAKOV,** affirms this April 21, 2025, under penalties of perjury under New York law, which may include a fine or imprisonment, that the following is true, and I understand that this document may be filed in an action or proceeding in a court of law:

1. I am a Member of Teton Life LLC ("**Teton**"), a Delaware limited liability company formed in 2023. As such, I am personally familiar with the facts set forth below.

2. I respectfully submit this Affirmation in support of Teton's motion: (i) to intervene in this action as assignee of the rights of Plaintiff Spin Capital, LLC ("**Spin**"); (ii) prohibiting the Receiver from disbursing any Receiver Property to Spin, Avrumi Lubin ("**Lubin**") or JL Special Investments LLC ("**JL Investments**"); and (iii) permitting me to engage in binding settlement negotiations with Defendants and other interested parties on behalf of Teton and Spin (the "**Teton Motion**").

3. I further submit this Affirmation in opposition to the motion made by Lubin and JL Investments to be substituted as Plaintiff for Spin by reason of a recent sham assignment of claims and interests from Spin to Lubin and JL Investments (the "**Lubin Motion**").

**Background**

4. In March 2021, BMF Advance, LLC ("**BMF**"), a financing company of which I am a member, purchased future business receipts from Golden Foothills Insurance Services LLC and related entities (the "**Golden Foothills Parties**"), who are controlled by Defendant Stefan Leer ("**Leer**"). *See* Secured Merchant Agreements, NYCEF Docs. 86, 88 and 89 (the "**BMF Purchase Agreements**").

5. Shortly thereafter, Lubin advised me that he (through Spin), along with Mr. Leer (on behalf of the Golden Foothills Parties), sought to pay off the significant existing balance on the BMF Purchase Agreements, and those existing under purchase agreements between the Golden Foothills Parties and Hi Bar Capital, LLC ("**Hi Bar**"), through a $2.7 loan by Spin to the Golden Foothills Parties. The loan is evidenced by a Promissory Note, dated June 16, 2021 (the "**Promissory Note**"), e-filed in this action as NYSCEF Docs. 2.

6. I was further advised that the Promissory Note was being secured by the assignment of various life insurance policies (the "**Insurance Policies**") to Spin. Those assignments are reflected in NYSCEF Docs. 7-17.

7. Through a loan to Spin, BMF funded a significant portion of the Spin loan to the Golden Foothills Parties.

8. By November 4, 2021, the Golden Foothills Parties were in default on the Promissory Note. NYSCEF Doc. 16. On February 4, 2022, Spin commenced this suit seeking damages and to foreclose on the Insurance Policies. NYSCEF Doc. 1.

9. On October 29, 2022, Justice Borrok granted Spin's motion for the appointment of a receiver with respect to the administration of the Insurance Policies, having found that Defendants were allowing the Insurance Policies to lapse for non-payment of premiums. NYSCEF Doc. 229.

10. By Order dated January 4, 2023, Justice Borrok formally appointed Fred Stevens (the "**Receiver**") as receiver over the Insurance Policies. NYSCEF Doc. 245.

**The Spin Assignment to Teton**

11. It is my understanding that Spin made several payments to the Receiver to avoid a lapse of the Insurance Policies. Mr. Lubin then advised me that Spin required outside financing to continue pay the premiums and the litigation expenses associated with this action, including the continued use of Proskauer Rose LLP to represent Spin.

12. Lubin and I formed Teton, the proposed interventor, for the purpose of funding this litigation, paying those premiums, and holding Spin's rights in this action, in part, for my benefit and that of BMF.

13. My subsequent loans to Teton are reflected in the attached Optimum Bank monthly account statements (the "**Optimum Bank Statements**") and began with $267,740.83 and $100,000.00 deposits in March 2023, which were then used to pay Spin's attorneys in this action. *See* **Ex. A** hereto. By July 2023, my advances to Teton were being used to pay the premiums on the Insurance Policies. *Id.* Through mid-2024, I continued to cause significant advances of $3.3 million through BMF and other entities to be made to Spin, which, in turn, advanced funds to the Receiver and Spin's litigation counsel.

14. By June 2024, I was not willing to advance Spin any additional funds absent memorialization of our prior agreement with Lubin.

15. As such, by Limited Liability Company Operating Agreement entered on June 20, 2024, and made effective as of February 7, 2023 (the "**Teton Operating Agreement**"), a copy of which is annexed hereto as **Ex. B**, Lubin and I memorialized a 50-50 membership interest in Teton and my loans to Teton. *Id.* at pp. 19, 28.

16. We also memorialized that the purpose of Teton was, in large part, to pay the expenses associated with prosecuting this action. *Id.* at p. 11, § 5.01(c) ("The Members ... agree that the Company shall pay all expenses, including legal fees, associated with the Lawsuit ....").

17. The Teton Operating Agreement expressly recognized that Spin and Lubin were assigning to Teton all rights arising from Spin's prosecution of this action and from the assignment of the Insurance Policies. Teton Operating Agreement at p. 9, § 2.08(d).

18. Spin and Lubin further agreed to confer with me, and to negotiate a resolution of this action, in good faith, and expressly authorized me to "**make such decision and settle or resolve the Lawsuit in [my] reasonable discretion.**" *Id.*

19. In full, the Teton Operating Agreement provides:

> The Members acknowledge that an asset of the Company is the matter styled Spin Capital, LLC vs. Golden Foothill Insurance Services, LLC et al, pending in the New York Supreme Court at Index No. 650582/2022 and all related matters (the "**Lawsuit**"). Member Josh Lubin is the sole owner and authorized member of Spin Capital, LLC and, as and for his contribution (as more fully described in the Contribution Agreement) has assigned, or caused Spin Capital, LLC to assign, all of its rights to any recovery, including all proceeds from any source, arising out of or relating to the Lawsuit (or the insurance policies described therein) which rights and proceeds are now the property of the Company. Notwithstanding anything to the contrary in this Agreement, the Members agree to confer in good faith with regard to any settlement opportunity in the Lawsuit; provided that if the Members are not able to come to an agreement regarding settlement of the Lawsuit within ten (10) days of presentation of an offer to settle or other opportunity to resolve the Lawsuit, Gavriel Yitzchakov (a/k/a Gabe Isaacov), shall have authority to make such decision and settle or resolve the Lawsuit in his reasonable discretion.

Teton Operating Agreement at p. 9, § 2.08(d).

20. By corresponding Contribution Agreement made effective February 7, 2023 (the "**Contribution Agreement**"), a copy of which is annexed hereto as **Ex. C**, in return for Lubin's 50% membership interest in Teton, Spin and Lubin contributed, transferred assigned, and conveyed to Teton all of their right, title and interest in this lawsuit, including all claims, causes of action and rights to damages, and proceeds from a judgment or settlement, in this action *Id.* at p. 1 and Schedule 1.1 (Contributed Assets). The Contribution Agreement is signed by Lubin and is expressly binding on Spin and Lubin's assigns. *Id.* at § 5.06.

21. In the Contribution Agreement, Teton was given full and valid title to the Contributed Assets, including the Insurance Policies. *Id.* at § 3.04.

22. Finally, by contemporaneous Assignment made effective February 7, 2023 (the "**Assignment**"), a copy of which is annexed hereto as **Ex. D**, Spin formally assigned and transferred all of Spin's rights and interest in this action and related rights and assets, including the Insurance Policies, to Teton. *Id.* at p. 1. Lubin signed the Assignment.

23. As of October 2024, I had caused approximately $3.6 million to be advanced to Spin for this litigation, excluding the initial advance on Spin's Promissory Note to the Golden Foothills Parties.

24. In the Receiver's January 24, 2025, Order to Show Cause seeking to use proceeds, the Receiver disclosed the receipt of $9,639,264.17 from death benefits paid from the "Brighthouse Utsick Policy," and further recognized that Spin had advanced $1,409.439.05 for payment of premiums on the Insurance Policies. NYSCEF Doc. 778, at p. 1, ¶ 3. I largely funded those advances.

**Spin's Sham Assignment to Lubin and JL Investments**

25. I have recently been advised that on November 12, 2024, the parties and certain investors participated in an unsuccessful mediation of this action. NYSCEF Doc. 813 at p. 67.

26. Golden Foothills and the investors were "quite enthusiastic" about a framework for settlement. However, Spin (represented by Lubin), was "less enthusiastic." *Id.* at p. 69.

27. Despite having contributed significant funds to maintain this litigation, and the clear mandates of the Teton Operating Agreement, I was not given a meaningful voice by Lubin in assessing the *bona fides* of these settlement offers. Indeed, I have not spoken with Mr. Lubin in approximately two (2) months due to his erratic behavior and unreasonable expectations and improper and unnecessary tactics in this action.

28. Indeed, Mr. Lubin's recently attempted to enforce what appears to be a sham assignment of Spin's rights arising from this action and the Insurance Policies to himself.

29. Specifically, on April 2, 2025, Mr. Lubin filed a motion seeking to have Lubin, individually, and JL Investments substituted as nominal plaintiffs for Spin, a copy of which is annexed hereto as **Ex. E.** Motion Seq. 36; NYSCEF Doc. 834-836.

30. In his supporting Affidavit, Lubin alleges that on March 20, 2025, Spin assigned all its rights in this action to Lubin, individually. NYSCEF Doc. 836. In turn, Lubin purportedly assigned those rights to JL Investments. *Id.*

31. The Lubin Motion includes a purported one-page Assignment Agreement, dated March 20, 2025, which is signed only by Mr. Lubin, identifies no consideration for the assignment, and **falsely** states that "Spin is currently the sole owner of certain rights, obligations and interests in" this litigation. NYSCEF Doc. 837 at p. 1. In fact, Mr. Lubin and Spin already assigned their interests in this action and the Insurance Policies to Teton.

32. The Lubin Motion also includes an Assignment Agreement, dated April 2, 2025 (the day the Lubin Motion was filed), which, again, is signed only by Lubin, purporting to assign the very same rights from Lubin to JL Investments. NYSCEF Doc. 838. That agreement also reflects no consideration for the assignment and, again, **falsely** states that "Lubin is currently the sole owner of certain rights, obligations and interests" in this action when those rights were already assigned to Teton in documents signed by Lubin. *Id.*

33. I am not familiar with JL Investments, which I assume is an entity wholly owned and controlled by Lubin. I was not previously made aware of these assignments or the documents annexed to the Lubin Motion, and, to my knowledge, they were first publicly disclosed and referenced in the Lubin Motion. I have never consented to the assignment.

34. Lubin's recent purported assignment of rights and property belonging to Teton contravenes the prior assignment from Spin to Teton and constitutes a breach of a Pledge and Security Agreement, a copy of which is annexed hereto as **Ex. F**, provided by Lubin as security for my advances, thereby reducing his membership interest in Teton by 10% and making him a minority member. Teton requires immediate court intervention to ensure that its rights are preserved and even those of Spin, to the extent it remains a party, are protected from Lubin.

**WHEREFORE**, the Teton Motion should be granted, and the Lubin Motion should be denied.

Dated: New York, New York
April 21, 2025

GAVRIEL YITZCHAKOV