UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Caption in Compliance with D.N.J. LBR 9004-1(b)
HELLRING LINDEMAN GOLDSTEIN
& SIEGAL LLP
Patricia A. Staiano, Esq.
Attorneys for Benjamin A. Stanziale, Jr.,
Chapter 11 Trustee
103 Eisenhower Parkway, Suite 403
Roseland, New Jersey 07068-1031
973.621.9020
pstaiano@hlgslaw.com

| | |
|---|---|
| In Re:<br><br>AVRUMI LUBIN a/k/a Josh Lubin,<br><br>Debtor. | Case No 26-17342 (EJO)<br><br>Judge: Eamonn James O'Hagan, U.S.B.J.<br><br>Chapter 11 |
| BENJAMIN A. STANZIALE, JR., CHAPTER 11 TRUSTEE FOR AVRUMI LUBIN a/k/a Josh Lubin,<br><br>Plaintiff,<br><br>vs.<br><br>AVRUMI LUBIN, SPIN CAPITAL, LLC, TETON LIFE, LLC, TETON FUNDING, LLC, TETON FUNDING GROUP, LLC, and JL SPECIAL INVESTMENTS, LLC,<br><br>Defendants. | Adv. Pro. No. 26-_________(EJO) |

MEMORANDUM OF LAW IN SUPPORT OF CHAPTER 11 TRUSTEE'S
MOTION TO EXTEND PROCEEDINGS AND FOR TEMPORARY RELIEF

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

PRIOR PROCEEDINGS AND BACKGROUND FACTS ........ 1

ARGUMENT ........ 4

POINT I THE COURT SHOULD EXTEND THE DEBTOR'S CHAPTER 11 CASE TO INCLUDE THE SUBJECT ENTITIES ........ 4

POINT II THE COURT SHOULD EXTEND THE STAY AND CONFIRM THAT THE TRUSTEE SUCCEEDS TO THE DEBTOR'S FULL MEMBERSHIP RIGHTS IN THE SUBJECT ENTITIES, INCLUDING MANAGEMENT RIGHTS ........ 8

A. Stay extension is necessary to protect the Estate and the interests of creditors ........ 8

B. The Trustee succeeds to the Debtor's full membership rights, including any rights to manage the Subject Entities ........ 9

THE REQUESTED TEMPORARY RELIEF IS WARRANTED ........ 11

Factor One – Reasonable likelihood of success ........ 11

Factor Two – Probability of irreparable harm ........ 12

Factors Three and Four – Balance of harms and public interest ........ 13

CONCLUSION ........ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

In re Allentown Ambassadors,
361 B.R. 422 (Bankr. E.D. Pa. 2007) ....10

Cardiello v. United States (In re Garbinski),
465 B.R. 423 (Bankr. W.D. Pa. 2012) ....10

CCB, LLC v. BankTrust,
552 Fed. App'x 963 (11th Cir. 2014) ....6

In re Dixie Management & Investment, L.P.,
474 B.R. 698 (Bankr. W.D. Ark. 2011) ....10

Goldstein v. Wilmington Sav. Fund Soc'y, FSB
(In re Universal Mktg.), 541 B.R. 259 (Bankr. E.D. Pa. 2015) ....5

King v. Johnson (In re Johnson),
2021 WL 5496731 (Bankr. E.D. Va. Nov. 22, 2021) ....10

Martinez v. Mkt. Traders Inst., Inc.,
757 F. App'x 815 (11th Cir. 2018) ....6

Matsushita Elec. Indus. Co. v. Epstein,
516 U.S. 367 (1996) ....6

McCartney v. Integra Nat'l Bank N.,
106 F.3d 506 (3d Cir. 1997) ....8

In re McSwain,
2011 Bankr. LEXIS 3921 (Bankr. W.D. Wash. 2011) ....10

In re Monroe Well Service, Inc.,
67 B.R. 746 (Bankr. E.D. Pa. 1986) ....11

In re Owens Corning,
419 F.3d 195 (3d Cir. 2005) ....5

QBE Ins. Corp. v. CTC Transp. Ins. Servs. of Mo., LLC,
Civil Action No. 25-1069 (ZNQ) (JTQ),
2026 LX 466869 (D.N.J. Aug. 31, 2026) ....8

Sampsell v. Imperial Paper & Color Corp.,
313 U.S. 215 (1941) ....4

Saxby's Coffee Worldwide, LLC v. Larson
(In re Saxby's Coffee Worldwide, LLC), 440 B.R. 369 (2009)....................9

Whittaker, Clark & Daniels, Inc. v. Brenntag
(In re Whittaker, Clark & Daniels, Inc.), Nos. 23-13575 (MBK),
23-01245 (MBK), 2024 Bankr. LEXIS 2608 (Bankr. D.N.J. Oct. 24, 2024)....................11, 12

**Rules and Statutes**

Fed. R. Bankr.P. 7065....................11

Fed.R.Civ.P. 65....................11

11 U.S.C. §105....................9

11 U.S.C. §105(a)....................4, 11

11 U.S.C. §541....................9

11 U.S.C. §541(c)(1)....................10

## PRELIMINARY STATEMENT

The Chapter 11 Trustee respectfully requests the Court grant extension of the Debtor's Chapter 11 case to the following entities:

- SPIN CAPITAL, LLC ("Spin");
- TETON LIFE, LLC ("Teton Life");
- TETON FUNDING, LLC ("Teton Funding");
- TETON FUNDING GROUP, LLC ("Teton Funding Group"); and
- JL SPECIAL INVESTMENTS, LLC ("JL")

(Collectively, Spin, Teton Life, Teton Funding, Teton Funding Group and JL are referred to below as the "Subject Entities" and the Debtor and the Subject Entities collectively the "Defendants".) The Trustee also seeks temporary relief to protect the interests of this Estate and its creditors as well as the creditors of the Subject Entities.

## PRIOR PROCEEDINGS AND BACKGROUND FACTS

As shown in the Verified Complaint in this action and the Certification of Benjamin A. Stanziale, Jr., filed herewith, the Trustee was appointed as Chapter 11 Trustee on September 18, 2026 and walked into a hornet's nest in which not only the Debtor but the Subject Entities are prosecuting and defending myriad actions in Courts throughout the country.

The Trustee is charged with preserving and realizing the value of the Debtor's assets for creditors. Based on the Debtor's Schedules, the Debtor's principal assets are his interests in the Subject Entities, specifically:

a. The Debtor listed Subject Entities Spin, Teton Funding, Teton Funding Group, and JL as entities of which he is the sole owner; and

b. The Debtor listed Subject Entity Teton Life as owned 50% by the Debtor and 50% by another individual named Gavriel Yitzchakov, a/k/a Gabe Isaacov. Upon information and belief, whether de jure or de facto, the Debtor exercises the managerial control of Teton Life.

In particular, Teton Life's principal and perhaps only asset is the assigned rights from Spin to enforce interests in collateral that is the subject of the New York State Supreme Court action formerly styled Spin Capital LLC v. Golden Foothill Insurance Services et al., (now styled Teton Life LLC as assignee of the rights of Spin Capital, LLC, vs. Golden Foothill Insurance Services, LLC et al., Index No. 650582/2022, the "New York State Action").

The Subject Entities were or are engaged in the merchant cash advance business (commonly known as MCAs) or (in the case of Teton Life and JL) are assignees of payment rights and collateral interests under the MCAs. Their value depends materially upon their rights to retain payments, hold and enforce collateral, and collect the MCA obligations.

The Subject Entities are subject to numerous claims, together with or separately from the Debtor, that they were allegedly engaged in usurious practices, defrauded counterparties, or operated a "racketeering enterprise" within the meaning of the Racketeer Influenced and Corrupt Organizations Act, by reason of which the claimants against the Subject Entities assert they should be relieved of their obligations or obtain the return of collateral, as well as treble damages and other relief. Another group of claims by parties collectively referred to as "FVP" have already resulted in a judgment in the sum of $8.1 million against the Debtor and a Charging Order foreclosing of the Debtor's ownership interest in Spin. See Exhibit A to the Stanziale Certification (Charging Order). A third group of claims by parties collectively referred to as Franklin have already resulted in judgments against Spin (in litigation in Michigan) and against the Debtor (in litigation in Florida), in the amounts of $5,400,000 and $6,000,000, respectively. Individually and collectively, these actions place the Subject Entities', and this Estate's, principal assets at risk. If the claimants in these matters obtain recoveries or adverse determinations before the Trustee completes the Estate's administration, the value of the Debtor's ownership

interests in the Subject Entities may be substantially reduced or eliminated. The counterparties have already filed or are expected to file claims in the Debtor's Chapter 11 case arising from the same or substantially overlapping transactions and alleged obligations for which they also seek relief from the Subject Entities.[1]

In the circumstances, unless the Trustee can secure a stay of actions against the Subject Entities, and secure full management and control over the prosecution, defense and resolution of the numerous actions, the Trustee will be unable to obtain or preserve the value of those entities, making it vanishingly unlikely that the interests of creditors of the Debtor or the Subject Entities will be protected.

The Debtor's bankruptcy schedules reflect that he came into this Chapter 11 proceeding with $67.78 in the bank. The Debtor testified in a supplementary proceeding in Florida respecting a judgment held against him by the FVP parties that Spin has no money. See ECF docket no. 62-4 at pages 202-203 of 297 on the docket of this bankruptcy case. That leaves as Spin's only assets the possibility it can enforce the MCA loans – a challenge if it has no money to continue to employ lawyers and professionals to do so. It has already been adjudicated in contested proceedings that Subject Entities Spin and Teton Funding are "under the complete domination and control of the Judgment Debtor [Lubin, the Debtor in bankruptcy case] [and] the corporate form [of Spin and Teton Funding] is used to shield assets from [his] creditors." Stanziale Certification, Exhibit A, at p. 2, finding #6. As for Subject Entity JL, it appears to have no actual existence and was used predominantly to try to move assets out of Subject Entity Teton Funding in a dispute between the Debtor (who owns 50% of Teton Life) and the co-owner of

[1] See Claims Register annexed to the Stanziale Certification as Exhibit E, reflecting in excess of $24 million of claims of which in excess of $23 million is attributable to claims arising from the Debtor's operation of the Subject Entities.

Teton Life, Gavriel Yitzchakov. See Yitzchakov Affidavit in the New York State Action, Stanziale Certification Exhibit C. As such there is substantial reason to believe that the Subject Entities Spin, Teton Funding and JL are all alter egos of the Debtor.

As for Teton Life itself, the disputes between Yitzchakov and the Debtor over the management of Teton Life have impaired its effective ability to prosecute its interest in collateral, a situation further complicated by the Debtor's bankruptcy. And precisely for this reason, the Trustee through this application seeks confirmation of the Trustee's authority to exercise any management rights in Teton Life that the Debtor holds. Additionally, there are anomalous and suspect aspects of the relationship between Yitzchakov and the Debtor – on the one hand, Spin acquiring the subject collateral from Yitzchakov's BMF entities, followed by Yitzchakov and the Debtor then transferring Spin's interests to Teton Life (in which only Yitzchakov and the Debtor became members, without apparent consideration to Spin), and on the other, their periodic efforts to strip assets from Teton Life for their own benefit or in Yitzchakov's case, to promise another claimant against Spin that Yitzchakov and BMF would seek to appoint a receiver over Spin. All this suggests that the interests of the creditors of the Debtor and of Spin and of Teton Life will not be protected the Trustee having managerial control over Teton Life, as a receiver would – relief that Yitzchakov and his businesses had promised another Teton Life creditor that Yitzchakov would pursue.

## ARGUMENT

### POINT I
### THE COURT SHOULD EXTEND THE DEBTOR'S CHAPTER 11 CASE TO INCLUDE THE SUBJECT ENTITIES

This Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). One such power, recognized since Sampsell v. Imperial Paper & Color Corp., 313 U.S. 215, 218 (1941) includes the ability to

extend proceedings to non-debtor entities and substantively consolidate those entities with the debtor in appropriate circumstances, such as where the debtor and the entities "are so closely assimilated to the affairs of the dominant stockholder that in substance it is little more than his corporate pocket." That fount of equitable power remains under the Bankruptcy Code. In re Owens Corning, 419 F.3d 195, 211-12 (3d Cir. 2005). Owens Corning was concerned with circumstances in which the Bankruptcy Court may order extension and substantive consolidation for plan confirmation, and required that the parties seeking substantive consolidation show that the Debtor and subject entities either "(i) prepetition …disregarded separateness so significantly their creditors relied on the breakdown of entity borders and treated them as one legal entity, or (ii) postpetition their assets and liabilities are so scrambled that separating them is prohibitive and hurts all creditors." Owens Corning, 419 F.3d at 211.[2]

Extension to, and substantive consolidation of, the Subject Entities is warranted under these criteria.

[2] Because "[t]he black letter law test is stated in general terms, leaving much to the exercise of the bankruptcy court's discretion," Goldstein v. Wilmington Sav. Fund Soc'y, FSB (In re Universal Mktg.), 541 B.R. 259, 303 (Bankr. E.D. Pa. 2015), courts consider additional equitable factors. Those are: "(1) [a]bsent compelling circumstances, state law, the Bankruptcy Code and commercial markets legitimately expect courts to respect the separateness of separate entities," (2) "[t]he harms that substantive consolidation addresses are nearly always those caused by debtors who disregard separateness," (3) "[m]ere benefit to the administration of the case is not a harm that justifies substantive consolidation," (4) because it can be "extreme and imprecise — this rough justice should be rare and used as a last resort," and (5) it cannot be used "offensively" such as to "disadvantage tactically a group of creditors in the plan process or to alter creditor rights)." "Compelling circumstances" are present here, the harms of consolidation are entirely due to the Debtors' failure to respect the Subject Entities separateness; relief is not sought for "mere" efficiency but because without consolidation there would be no meaningful method to marshal assets for creditors; and because of the large overlap in dollars of the creditor bodies of the Debtor and the Subject Entities, it will not be disadvantageous to any substantial number of creditors, if any.

The Florida Court has already found that two of the Subject Entities – Spin and Teton Funding – were under the domination of the Debtor, and essentially vehicles to hide assets from his creditors. Stanziale Declaration, Exhibit A (the Charging Order). The Debtor opposed that conclusion but the Florida Court's determination was necessary to the Florida Court's additional ruling that the judgment creditor in that case (FVP) could not only charge the Debtor's interest in those entities, but that the judgment creditor would be granted foreclosure of the Debtor's interests. See Stanziale Certification. ¶¶ 6-7 and id., Exhibit A. Florida courts would apply collateral estoppel in those circumstances, because it was a final judgment, actually litigated, and necessary to the Florida court's determination. Martinez v. Mkt. Traders Inst., Inc., 757 F. App'x 815, 817 (11th Cir. 2018) (reflecting the elements of collateral estoppel/issue preclusion under Florida law); and this Court must apply Florida law of the rendering jurisdiction in determining its preclusive effects. Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 373 (1996). Additionally, although the Debtor has appealed both the money judgment that gave rise to the enforcement proceedings, and the Charging Order itself, "[u]nder Florida law, a judgment entered by a court of competent jurisdiction has preclusive effect notwithstanding a pending appeal." CCB, LLC v. BankTrust, 552 Fed. App'x 963, 965 (11th Cir. 2014). And given the overlapping ownership interests and control exercised by the Debtor, there can be no doubt that all the Subject Entities were in privity with the Debtor, and bound by these findings as to the Debtor, Spin and Teton Funding. Martinez v. Mkt. Traders Inst., Inc., supra, 757 F. App'x 815 at 818.

The circumstances of JL – an entity apparently formed to strip assets from Teton Life without consideration, to the detriment of Teton Life and the Debtor's co-owner's Yitzchakov's

interest in Teton, appears to demonstrate a similar disregard for separateness and possible intent to defraud creditors -- making JL another alter ego of the Debtor.

Then we have Teton Life: the Debtor caused Spin to contribute valuable assets to Teton Life (according to the Debtor, rights to collect tens of millions of life insurance proceeds against the MCAs) but Spin does not appear to have received any consideration for that transfer. The "Contribution Agreement" (Exhibit C to the Lubin Declaration, which is Exhibit B to the Stanziale Certification) through which Spin assigned the rights of Spin in the New York State action states that Spin and the Debtor (apparently as a single party-in-interest) would receive a 50% membership interest in Teton Life, but under the Teton Life Operating Agreement as executed (Exhibit D to the Stanziale Certification), the membership interests in Teton Life ended up held only by the Debtor and Yitzchakov individually, with Spin having no interest.

All of this conduct could hinder, delay and defraud Spin creditors – and Spin had significant creditors or at least claimants when Teton Life was formed in 2023; it was a party to a Michigan case commenced in 2022, Franklin v. Spin (as noted above), in which Spin ultimately got hit with a $5,400,000 judgment on March 12, 2025.[3]

As all this makes clear, in the Debtor had the ability to and did move assets from entity to entity, without any clear consideration, and the creditors of each them left to play whack-a-mole as to where they could ultimately find assets to satisfy claims. The Court should not put the Trustee in that situation, either.

---

[3] Spin has appealed that judgment as well as other judgments. The Debtor wishes the Trustee to continue to prosecute the appeals. The Trustee will evaluate whether to do so, bearing in mind the limited resources of the estate and the prospects of success, in a case where the judge (in Michigan) expressly, and the jury (in Florida) implicitly, considered the credibility of witnesses.

Accordingly, the Court should extend the Chapter 11 case beyond the Debtor to include the Subject Entities.

**POINT II**
**THE COURT SHOULD EXTEND THE STAY AND CONFIRM THAT THE TRUSTEE SUCCEEDS TO THE DEBTOR'S FULL MEMBERSHIP RIGHTS IN THE SUBJECT ENTITIES, INCLUDING MANAGEMENT RIGHTS**

If the Court does not fully extend the cases, it should at a minimum, include a stay for actions against the Subject Entities and clarification that the Trustee succeeds to the entirety of the Debtor's rights in the Subject Entities -- not just his economic interests but also his rights to participate in management.

A. Stay extension is necessary to protect the Estate and the interests of creditors

While the statutory automatic stay applies only to a "debtor," courts may extend the stay to nonbankrupt entities in "unusual circumstances," in particular, if "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor," or if "stay protection is essential to the debtor's efforts of reorganization." McCartney v. Integra Nat'l Bank N., 106 F.3d 506, 510 (3d Cir. 1997). Both circumstances are present here.

As already seen, there is no true separation between where this Debtor ends and the Subject Entities begin; they are co-defendants in multiple actions; and findings as to the Subject Entities may, as a practical matter, bind the Debtor, or vice-versa. See generally, QBE Ins. Corp. v. CTC Transp. Ins. Servs. of Mo., LLC, Civil Action No. 25-1069 (ZNQ) (JTQ), 2026 LX 466869, at *12-14 (D.N.J. Aug. 31, 2026) (granting stay).

Similarly, the Trustee, the Debtor or other parties (if they choose to present proposed plans at appropriate times) cannot meaningfully propose a plan if the value of the Subject

Entities is diminished or destroyed or their assets removed by interim judgments with enforcement against the assets of the Subject Entities. The Debtor, it will be recalled, scheduled $67 in his bank account and a handful of other assets. Thus, at least at this time, the Subject Entities or their underlying assets are the assets that would need to be administered to fund a plan. And this will be true even if no plan is confirmed or confirmable, and the case converts to Chapter 7. Those assets still need to be preserved for creditors. Courts have recognized circumstances in which the entry of a Section 105 injunction restraining creditors from proceeding against non-debtors would be appropriate. See Saxby's Coffee Worldwide, LLC v. Larson (In re Saxby's Coffee Worldwide, LLC), 440 B.R. 369, 379 (2009). In particular, it is appropriate to extend the stay "when the non-debtor owns assets which will either be a source of funds for the debtor or when the preservation of the non-debtor's credit standing will play a significant role in the debtor's attempt to reorganize" [Id., citing McCartney].

B. The Trustee succeeds to the Debtor's full membership rights, including any rights to manage the Subject Entities

Under Section 541 of the Bankruptcy Code, the Trustee succeeded to all rights and interests of the Debtor in property of any kind. The membership interests of the Debtor in the Subject Entities includes not only economic rights but the right to manage the entities. The Debtor (having filed a petition) cannot contest the Trustee's rights in this regard. As for the Subject Entities, the Debtor was the sole member in Spin, Teton Funding and JL. To the extent that FVP (which secured a foreclosure right under the Charging Order in May 2026) claims to have become the member, the Trustee will seek to have the foreclosure to be invalidated as preferential. That leaves Mr. Yitzchakov, "Member B", in Teton Life. As already observed, the terms of the Teton Life Operating Agreement provide, on the one hand, that Teton Life is controlled by its members, giving him an equal say. To the extent that the Debtor had a 50%

vote, that right to vote passes to the Trustee. However, Section 2.08(d) of the Teton Life Operating Agreement gave the member "Josh Lubin" the sole control over the New York Sate litigation and the related collateral. That management power also passes to the Trustee.

We will note that the Teton Life membership agreement provides that if either member in Teton Life filed for bankruptcy, that would ipso facto disassociate the member from membership and leave them with an economic interest only, but no rights in management. That provision, however, is not enforceable under 11 U.S.C. §541(c)(1) and the Trustee must succeed to the full membership interest, including any management rights of the Debtor. See In re Allentown Ambassadors, 361 B.R. 422 (Bankr. E.D. Pa. 2007) (operating agreement executory because the debtor had continuing management obligations and members had obligations to make contributions; ipso facto termination violates the Bankruptcy Code); Cardiello v. United States (In re Garbinski), 465 B.R. 423, 424 (Bankr. W.D. Pa. 2012) (because § 541(c)(1) invalidates ipso facto provisions, even if derived from state law, trustee could assume all rights of the debtor, not just the debtor's economic interest); In re McSwain, 2011 Bankr. LEXIS 3921 (Bankr. W.D. Wash. 2011) (rights to vote on major decisions for the LLC constitutes an executory agreement, and trustee may continue to exercise those rights); King v. Johnson (In re Johnson), 2021 WL 5496731 (Bankr. E.D. Va. Nov. 22, 2021) (because right to participate in management is part of the "property" of the debtor, ipso facto termination of membership leaving only economic interest violates Section as 541(c)(1) a "forfeiture, modification, or termination of the debtor's interest in property."); In re Dixie Management & Investment, L.P., 474 B.R. 698, 700 (Bankr. W.D. Ark. 2011) (same; bankruptcy disassociation as a full member violates the ipso facto provision and to extent this result derives from Arkansas statute, bankruptcy law supersedes).

**THE REQUESTED TEMPORARY RELIEF IS WARRANTED**

The Trustee may obtain a temporary restraining order pursuant to Fed. R. Bankr.P. 7065 (incorporating Fed.R.Civ.P. 65 except obviating the requirement of a bond if the application is made by debtor, trustee, or debtor in possession). Under D.N.J. LBR 7065-1 the Court may issue a temporary restraining order based on the Trustee's showing by certification or verified pleading of sufficient reasons why emergent relief is necessary. Section 105(a) of the Bankruptcy Code is an additional, independent source of authority to grant injunctive relief.

For purposes of the usual requirements of injunctive relief – "1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest," Whittaker, Clark & Daniels, Inc. v. Brenntag (In re Whittaker, Clark & Daniels, Inc.), Nos. 23-13575 (MBK), 23-01245 (MBK), 2024 Bankr. LEXIS 2608, at *24-25 (Bankr. D.N.J. Oct. 24, 2024) – courts have applied standards adapted to the bankruptcy environment. See generally, In re Monroe Well Service, Inc., 67 B.R. 746, 751-52 (Bankr. E.D. Pa. 1986).

**Factor One – Reasonable likelihood of success**

Reasonable likelihood of success is equivalent to prospect or possibility that the debtor can be successfully reorganized, Whittaker, Clark & Daniels, supra, 2024 Bankr. LEXIS at *25

Here, the Trustee believes that through an extension and consolidation, a major step will be taken towards the potential to develop a confirmable plan, and "the temporary relief sought is consistent with the [Trustee's] ultimate goal of reorganization, which includes [the Trustee's] desire to maximize [the Chapter 11] estate, avoid defense costs, minimize [the Estate's] exposure

to findings of liability, and preserve its assets." Id. at *26. This principle applies to all aspects of the requested temporary relief:

An immediate stay of litigation involving the Subject Entities will avoid risks of adverse judgments or (even in cases in which the Subject Entities are the plaintiff, avoid the possibility of adverse rulings that will have collateral estoppel effects), and promote the ability to achieve a reorganization. And there can be no question that the Debtor is obligated to turnover his own records so that the Trustee may administer the Estate. But where, as here, there is no definable boundary between the Debtor's records and the Subject Entities' records, due to the scrambled back and forth transfers between and among the Debtor and the subject entities, the Debtor and the Subject Companies cannot legitimately refuse to provide a turnover of records.

**Factor Two – Probability of irreparable harm**

As for demonstrating the probability of irreparable harm, in bankruptcy, the issue turns of the impact of the conduct sought to be restrained or compelled, and the risk of negative consequences without immediate relief. Id. at *26. Because of the ongoing litigation involving Subject Entities, without an immediate order, there is certainly a risk here of "immediate res judicata, collateral estoppel, and record taint," through judgments in those proceedings – not only those in which the Subject Entities face liability, but in cases in which the Subject Entities' affirmative claims might be determined adversely, because the collectability of the MCA obligations and recourse to the collateral securing it is critical to the ability to reorganize and pay out creditors. Similarly, the interests of creditors of the Estate certainly require that the Trustee receive full turnover of records or they may be lost and the costs of reconstructing them prohibitive. Finally, the ability to control the Subject Entities in the interim is essential to make

sure that the Debtor does not run amok in his handling of the various litigations before extension and consolidation can be determined.[4]

**Factors Three and Four – Balance of harms and public interest**

On balance the harm to the Estate of not having an injunction significantly outweighs the harms to creditors, claimants or the Debtor, and is in the public interest.

There is no doubt some harm is possible from extending the stay (pending extension and consolidation of the Subject Entities into the Chapter 11 case) as it would cause delays of the outstanding cases against the Subject Entities, some of which are in advanced stages. However, this must be balanced against the harm to the Estate, and what is ultimately in the best interests of its creditors – including any of the claimants in those actions, were they to be successful against any of the Subject Entities. First, the delay should be minimal, and a small portion of the time already expended in those proceedings. Second, the delay is in furtherance of creating an ordered, less chaotic and more equitable means to protect all creditors (and the Subject Entities). The saga of the Debtor and the Subject Entities has now consumed the time and effort of multiple courts (state courts in Michigan and Texas and Florida and New York, federal courts in New York and elsewhere, bankruptcy courts in Florida, Tennessee, and New Jersey, among others). The claims in these actions and their aftermath is exactly why we have bankruptcy – to avoid races to grab assets that could (for example) pit the Excell trustee against FVP and

[4] The Debtor has been very vigorous in either seeking stays on behalf of the Subject Entities or pursuing claims for the Subject Entities, even after the Trustee's appointment, and the Debtor has also vociferously demanded the Trustee take certain actions in those proceedings. As noted, the Trustee needs time to evaluate what actually best serves the interest of the Estate and its creditors, and without the records in particular cannot make educated assessments of those issues and properly exercise his business judgment. Those gaps are entirely due to the Debtor's failure to make a full, prompt and organized turnover of all information, rather than just doling out bit of information he wishes the Trustee to see.

Franklin in seeking recourse to Spin or Teton Life. The entire situation has become prone to cannibalization of assets or at least a significant drain on assets needed to resolve all claims as to the Debtor and all of the Subject Entities. Thus, extension of the proceedings and consolidation of the Subject Entities into the Chapter 11 case likely provides the best way forward, conserving assets for all. The small harm from the temporary relief sought is essential to provide the Court and creditors and other parties in interest the opportunity to weigh in on and decide extension and consolidation motion without intervening prejudice.

## CONCLUSION

For the foregoing reasons it is respectfully submitted the Court should grant the requested extension of proceeding and the other relief requested by the Verified Complaint and requested Order to Show Cause with Temporary Relief.

HELLRING LINDEMAN GOLDSTEIN & SIEGAL LLP
Attorneys for Plaintiff, Benjamin A. Stanziale, Jr.,
Chapter 11 Trustee for Avrumi Lubin, a/k/a Josh Lubin

By: /s/Patricia A. Staiano
PATRICIA A. STAIANO
A Member of the Firm

Dated: October 15, 2026