Avrumi Lubin, pro se, individually only
1460 Arboretum Parkway
Lakewood, New Jersey 08701
Telephone: 718-570-3796
josh@tetonfunding.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br>AVRUMI LUBIN a/k/a Josh Lubin,<br>Debtor.<br><br>BENJAMIN A. STANZIALE, JR.,<br>Chapter 11 Trustee for Avrumi Lubin,<br>Plaintiff,<br>v.<br>AVRUMI LUBIN; SPIN CAPITAL, LLC;<br>TETON LIFE, LLC; TETON FUNDING, LLC;<br>TETON FUNDING GROUP, LLC; and<br>JL SPECIAL INVESTMENTS, LLC,<br>Defendants. | Case No. 26-17342-EJO<br>Chapter 11<br><br>Adv. No. 26-01494-EJO<br><br>Hon. Eamonn J. O'Hagan<br><br>Hearing: October 22, 2026<br>10:00 a.m. |

# MEMORANDUM IN SUPPORT OF INDIVIDUAL OBJECTION AND MOTION TO MODIFY OR DISSOLVE TEMPORARY RESTRAINTS

## PRELIMINARY STATEMENT AND REQUESTED RELIEF

The immediate question is not whether a Chapter 11 trustee may investigate the Debtor's affairs or exercise rights that actually belong to his estate. He may. The question is what additional restraints and entity-wide authority should continue before the defendants have had a meaningful opportunity to obtain counsel and address the scope of the requested relief. Lubin's primary request is that the ex parte confirmation of exclusive authority be vacated; that paragraphs (2), (3), and (4) be dissolved and the pre-Order management arrangement restored while the estate's rights in each company are determined entity by entity, on notice; that paragraph (1), which stays litigation against the companies, remain in effect; and that advance written notice to the Trustee and the United States Trustee (and, for Teton Life, its other member) of any act outside the ordinary course take the place of the asset restraint. Upon entry of such an order, Lubin will immediately seek licensed counsel for the companies. He does not ask for permission to disregard the October 15 Order, for removal of the Trustee, for

restoration of debtor-in-possession status, or for a present ruling that he owns or controls every disputed claim. If the Court does not grant the primary request, he asks for the alternative arrangements described below. The Trustee's Florida showing rests on a recital in a May 15, 2026 Broward post-judgment order that the corporate form of Spin Capital and Teton Funding "is used to shield assets from creditors." Seven months earlier, after a trial in the same case, the jury answered "no" to the question whether Spin Capital's corporate form was formed or used for a fraudulent or improper purpose. Part IV explains why that recital should not be given preclusive effect on this interim application.

In addition, or in the alternative, the Court should retain October 22 for interim relief, including this Rule 65(b)(4) motion, and allow approximately three additional weeks for full preliminary-injunction briefing and an appropriate hearing. The final hearing on the Complaint should be set approximately ninety days out, after the Subject Entities have had an opportunity to obtain counsel and their creditors and Teton Life's other member have had notice. Before the preliminary-injunction hearing, the Court should establish a process for entity defense counsel, identify who may take limited deadline-protection steps, preserve assets and disputed claims, and define records-production obligations. If any paragraph cannot be supported or narrowed under Rule 65, it should be dissolved to that extent. Any continuing restraint should have express reasons, scope, and duration.

Lubin appears only in his individual capacity. He may challenge restraints directed to him and explain their effect on his interests; he does not purport to litigate or waive the entity defendants' separate defenses. The companies' participation through counsel is one reason to set a workable schedule rather than decide the ultimate extension of proceedings on this preliminary record.

## I. THE OCTOBER 15 ORDER AND THE RECORD TO BE HEARD

The Trustee commenced this adversary to extend Lubin's Chapter 11 proceedings to Spin Capital, LLC; Teton Life, LLC; Teton Funding, LLC; Teton Funding Group, LLC; and JL Special Investments, LLC (the "Subject Entities"). The complaint alleges four wholly owned entities and a 50% interest in Teton Life, whose other identified member is Gavriel Yitzchakov. Complaint ¶ 7. The Trustee alleges transfers, interrelated litigation and collateral, questions about records and control, and risks to estate value. Those allegations require a

response; Lubin does not characterize the application as unsupported by any evidence. See Trustee Certification, Dkt. 3-1; Brief, Dkt. 3-8.

The entered order sets an October 22 return date to consider a scheduling order for final relief and a preliminary injunction. It already stays litigation and judgment enforcement against the Subject Entities in paragraph (1); restricts conduct and grants the Trustee "sole authority to act in the stead of the Debtor as to any management and litigation decisions regarding the Subject Entities" in paragraph (2); restrains transfers in paragraph (3); and directs delivery of records in paragraph (4). October 15 Order at 3–4. The qualifying words "in the stead of the Debtor" matter. Lubin does not rewrite that language as an express adjudication of every other member's or claimant's rights. He asks the Court to clarify its practical limits.

Lubin knew from the Trustee's counsel's October 6 email that a complaint and an order to show cause were planned as to Spin and JL, and from her October 7 email that the Trustee would seek "the authority to act on Spin's behalf and have the stay apply." On October 9 counsel wrote that the Trustee "is not acting on behalf of any of your entities," "does not have that authority at the present," and that Lubin "currently ha[s] autonomy over [his] entities." Lubin asked on October 7, and again on October 15, for the draft complaint, the proposed order and the hearing and response dates; counsel's replies did not provide them. He did not receive advance notice that the Trustee would seek immediate temporary restraints for entry before he had an opportunity to respond. He obtained the filed complaint from the court's docket on the afternoon of October 15; he first saw the application for temporary restraints, the proposed order and the entered restraints in the 6:48 p.m. service email. He was not notified of any hearing, and the Order does not recite one. He sent the written modification notice at 10:39 p.m. that evening and, the same day, contacted prospective counsel by email; no retention has been confirmed. He requests a reasonable opportunity to arrange representation. Lubin Certification ¶¶ 2–5; Exs. G–I.

## II. RULE 65 REQUIRES A DEFINED, SUPPORTED INTERIM ORDER

Rule 7065 applies Civil Rule 65 in this adversary. A preliminary injunction requires notice. Rule 65(a)(1). For a temporary restraining order issued without notice, Rule 65(b)(1) requires specific facts showing immediate and irreparable injury before the adverse party can be heard, and a written attorney certification concerning notice efforts and why notice should not be required. Rule 65(b)(2) also requires the date and hour of issuance, a description of the injury

and why it is irreparable, and the reason for proceeding without notice. Every injunction or restraining order must state its reasons and describe the restrained acts specifically. Rule 65(d)(1); Schmidt v. Lessard, 414 U.S. 473, 476–77 (1974).

The complaint was verified and the Trustee supplied a certification; Lubin does not say there was no sworn support. He has not located a written attorney certification addressing notice efforts and the reasons for dispensing with notice, as required by Rule 65(b)(1)(B), in the application and supporting papers served on him. That certification need not be a separate document. The entered order recites "good and probable cause," but does not expressly set out the immediate injury and the reason why advance notice could not be given. If other certifications or on-record findings supplied that basis, they should be identified and made available so the defendants can respond. The issue is compliance with the rule, not an accusation about anyone's intent.

The applicant's counsel was in written contact with Lubin throughout the preceding ten days, was twice asked for the draft papers and the hearing and response dates, and wrote on October 9 that the Trustee "does not have that authority at the present." Lubin Certification ¶ 3; Ex. I. The Trustee's papers describe the harms he is concerned about—adverse rulings in pending matters, expenditures on litigation, a 2025 assignment, and records he has not received. Trustee Certification ¶¶ 17–27; Brief at 12–13. What they do not state is why those concerns required that paragraphs (2)–(4) be entered before Lubin could be heard. Rule 65(b)(1)(A) requires "specific facts" showing injury "before the adverse party can be heard in opposition"; Rule 65(b)(1)(B) requires the attorney's certification of "any efforts made to give notice and the reasons why it should not be required"; and D.N.J. LBR 7065-1 requires "good and sufficient reasons why a procedure other than by notice of motion is necessary." The three-page Application (Dkt. 3) and the Certification (Dkt. 3-1) contain no attorney certification under Rule 65(b)(1)(B) and no statement of reasons why a procedure other than by notice of motion was necessary, and the harms they describe are not tied to any event that would have occurred before Lubin could be heard. Notice under Rule 65(a) "implies a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition." Granny Goose Foods, Inc. v. Brotherhood of Teamsters, 415 U.S. 423, 432 n.7 (1974). The Third Circuit has held it "contrary to law" to grant restraints without the Rule 65(b)(1)(B) certification and without explaining why the order "had to issue without affording [the adverse party] an opportunity to be heard, in violation of Rule 65(b)(2)"; "a TRO may be

entered ex parte, but only if safeguards in Rule 65(b) are met." Hope v. Warden York County Prison, 972 F.3d 310 (3d Cir. 2020) (Part IV.A). Lubin does not contend that these defects by themselves decide the application; they are a reason the restraints should not continue in their present form without findings, and at the return date the burden of justifying the continuation of those restraints remains with the Trustee. Fed. R. Civ. P. 65(b)(3). Fed. R. Civ. P. 52(a)(2), applicable through Fed. R. Bankr. P. 7052, requires that "[i]n granting or refusing an interlocutory injunction, the court must … state the findings and conclusions that support its action," and Rule 65(d)(1) requires every injunction to "state the reasons why it issued" and "state its terms specifically." The Order's recital of "good and probable cause" states no finding.

Rule 65(b)(2) ordinarily limits an ex parte TRO to no more than 14 days. It permits a like extension for good cause entered in the record or a longer extension with the adverse party's consent. A properly supported preliminary injunction is a different form of relief. The words "pending further order" should not leave these alternatives unresolved. See NutraSweet Co. v. Vit-Mar Enterprises, Inc., 112 F.3d 689, 692–93 (3d Cir. 1997). October 29 is the ordinary 14-day point measured from October 15, not permission for Lubin to decide unilaterally that the order has ceased to bind him. The Court should specify the legal basis and duration of any continuing relief.

For preliminary relief the Trustee must satisfy the gateway showings of likelihood of success and likely irreparable harm; the Court then weighs the remaining equitable factors. Reilly v. City of Harrisburg, 858 F.3d 173, 179 (3d Cir. 2017), as amended. To the extent paragraph (2) changes rather than preserves the pre-order allocation of authority, mandatory relief carries a particularly heavy burden. Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir. 1994); Trinity Industries, Inc. v. Chicago Bridge & Iron Co., 735 F.3d 131, 139 (3d Cir. 2013). That standard does not prohibit relief, but warrants findings about the precise rights being transferred or exercised and why less intrusive measures are inadequate.

The pre-order allocation of authority, as a matter of fact, is shown by the Trustee's own counsel's October 9 statements that the Trustee "does not have that authority at the present" and that Lubin "currently ha[s] autonomy over [his] entities." Ex. I. The Trustee's own certification says the same thing under oath: "The Debtor continues to do so as it has not yet been judicially determined that I am authorized to act on behalf of the Subject Entities."

Trustee Certification ¶ 23. The same certification describes the restraints as lasting until the extension complaint is decided (¶ 22: if the complaint is denied, "the restraints would no longer apply") — relief of preliminary-injunction duration, not a short bridge to a hearing. Those statements do not decide which management rights passed to the estate under § 541 and applicable law; that question is for the Court. They do show that paragraph (2) changed the status quo as the parties were operating under it, and paragraph (4) grants, before any adjudication, a substantial part of the relief sought in Count 3. Relief of that kind requires findings on a record. A preliminary injunction "that depends upon the resolution of disputed issues of fact" cannot issue "unless the court first holds an evidentiary hearing." Elliott v. Kiesewetter, 98 F.3d 47, 53 (3d Cir. 1996) (citing Professional Plan Examiners of N.J., Inc. v. Lefante, 750 F.2d 282, 288 (3d Cir. 1984)). Lubin does not ask for testimony on every disagreement. He requests an evidentiary hearing limited to the material factual disputes on which the interim relief depends: (i) whether any Subject Entity asset has been, or is at risk of being, transferred or dissipated outside the ordinary course (Trustee Certification ¶ 24 relies on a 2025 assignment that appears in the Debtor's own declaration, the Trustee's Ex. B); (ii) whether the litigation expenditures the Trustee describes (Certification ¶¶ 23, 26) were made from entity funds in the ordinary course of the entities' pending matters; (iii) whether the Subject Entities' records exist and have been withheld (Certification ¶¶ 25–27); and (iv) the facts on which the Trustee relies for likely success on entity-wide relief, including the Florida record addressed in Point IV.

An adjournment request is not consent to continued paragraphs (2)–(4) as written. Lubin does not consent under Rule 65(b)(2) to an extension of paragraphs (2)–(4) or to their continuation in their current form, and he cannot consent for the Subject Entities, their creditors, or Teton Life's other member. His consent to the conditions he proposes in proposed order paragraph 3(c) is limited to those conditions and, apart from paragraph (1), is not consent to the continuation of any provision of the October 15 Order. Proposed order ¶ 3(i). He recognizes that the Court may extend a temporary restraining order for good cause stated in the record, Fed. R. Civ. P. 65(b)(2), or enter a preliminary injunction on a proper record; he asks that any continuation proceed by one of those routes, with the reasons stated, rather than by inference from the words "pending further order." At the return date "the party who obtained the order must proceed with the motion" for a preliminary injunction, Fed. R. Civ. P. 65(b)(3), and the burden of justifying each continuing restraint remains with the Trustee as movant. Reilly, 858

F.3d at 179. The October 29 date in the proposed order is the end of the initial Rule 65(b)(2) period measured from October 15; it is not permission for anyone to disregard the Order, which binds Lubin until it is modified, dissolved, or otherwise terminated by law or further order. Lubin does not oppose the continuation of paragraph (1), which stays litigation and judgment enforcement against the Subject Entities, until the final hearing, and he consents to it as to himself; its continuation, like any other continuing restraint, must rest on a proper basis, with express scope and duration and such notice to the persons it restrains as the Court directs. Rule 7065 permits a trustee's injunction without Rule 65(c) security, and Lubin makes no objection on that ground. The restraints should nonetheless be no broader than the relief sought requires. See Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 198 (3d Cir. 1990) (court "must make some attempt reasonably to relate the value of the assets encumbered to the likely value of the expected judgment").

**Primary request.** An ex parte restraining order may preserve the status quo "just so long as is necessary to hold a hearing, and no longer." Granny Goose, 415 U.S. at 439. It does not decide the merits before the restrained party is heard. The final clause of paragraph (2) does more than restrain: it "CONFIRMED" that the Trustee "has the sole authority to act in the stead of the Debtor as to any management and litigation decisions regarding the Subject Entities." That is the central question in this adversary proceeding, and the Trustee's own certification states that "it has not yet been judicially determined that I am authorized to act on behalf of the Subject Entities." Trustee Certification ¶ 23. The clause should be vacated or, at a minimum, expressly declared provisional. As an interlocutory ruling, it may also be revised at any time before final judgment. Fed. R. Civ. P. 54(b), made applicable by Fed. R. Bankr. P. 7054.

Before October 15, Lubin directed the companies' business and litigation; the Trustee's papers say so. Complaint ¶¶ 29–30; Trustee Certification ¶ 23. The status quo that interim relief should preserve is "the last, peaceable, noncontested status of the parties." Kos Pharmaceuticals, Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004) (internal quotation marks omitted). Here, that is the arrangement both sides acknowledged before the Trustee's ex parte application: Lubin directed the companies while the Trustee's claimed authority awaited a judicial determination. Paragraph (2) transferred that control. Interim relief that changes the status quo by commanding affirmative change is mandatory relief, for which "the burden on the moving party is particularly heavy" and the movant's "right to relief must be indisputably clear." Trinity, 735 F.3d at 139 (internal quotation marks omitted); see Hope, 972 F.3d at 320.

The burden to justify continuing the restraint stays with the Trustee. Fed. R. Civ. P. 65(b)(3); Reilly, 858 F.3d at 179.

Lubin recognizes that the Trustee argues that Lubin's membership rights, including management rights, passed to the estate under 11 U.S.C. § 541 regardless of consolidation, Brief at 8–10, and that a number of courts have held that a trustee succeeds to the management rights of a debtor who is the sole member of an LLC. See, e.g., In re First Protection, Inc., 440 B.R. 821, 829–32 (B.A.P. 9th Cir. 2010); In re Albright, 291 B.R. 538, 540–41 (Bankr. D. Colo. 2003); Levine v. B and R Acquisition Partners, LLC, No. 1:24-cv-939, ECF No. 44 (N.D.N.Y. Sept. 3, 2025) (amended decision); see also Brief at 10 (collecting cases). Lubin does not ask the Court to decide that question against the Trustee on October 22, and dissolving paragraph (2) would not by itself decide it. His request is narrower. Before October 15 the Trustee did not claim to be exercising those rights: his counsel wrote that the Trustee "does not have that authority at the present," Ex. I, and his certification acknowledges that his authority had not been judicially determined, Trustee Certification ¶ 23. Whether, and for which companies, the estate's interests carry present management authority should be decided entity by entity, on notice, with each company's governing law and documents before the Court—not by an ex parte confirmation—and until it is decided the arrangement both sides were operating under before October 15 should be restored. Lubin recognizes that the Court may view that request, too, as affirmative relief, on which he bears the burden; it seeks only to return the parties to where they stood before the ex parte order, and its support is stated below. The Trustee bears the burden of justifying the continuation of his own restraints. Restoration would remain subject to the orders of other courts, including the transfer restraint in Part D of the May 15 Florida order, which this motion does not ask the Court to modify. Proposed order paragraph 3(b)(iv) would also keep management as it is for both sides—no one would remove or appoint a manager or amend an operating agreement without an order of this Court, which any party may seek on notice. Lubin does not ask the Court to decide the § 541 question on October 22. He asks the Court to restore, by order and pending that determination, the arrangement under which the parties operated before October 15. Paragraphs (2), (3), and (4) should therefore be dissolved. Dissolution would not leave the estate unprotected. Paragraph (1), which stays litigation and judgment enforcement against the Subject Entities, would remain in effect until the final hearing, including as to the Subject Entities in the action pending in the Southern District of New York, No. 1:24-cv-08515; Lubin does not seek to

dissolve it. In place of paragraph (3), no Subject Entity would, outside the ordinary course, sell, transfer, distribute, or encumber an asset, settle, release, or dismiss with prejudice a claim, or borrow money, or, whether or not in the ordinary course, make any payment to Lubin or another insider, without at least five business days' written notice to the Trustee and the United States Trustee (and, for Teton Life, to Mr. Yitzchakov); if one of them objected within that period, the act would await the Court's ruling. That follows the Bankruptcy Code's own model of notice and an opportunity to object for acts outside the ordinary course. Cf. 11 U.S.C. §§ 102(1), 363(b)(1), (c)(1). In place of paragraph (4), the records procedure in proposed order paragraph 6 would apply, and Lubin's own duties under 11 U.S.C. § 521(a)(3)–(4) are unaffected. The Trustee's stated concern with litigation spending (Trustee Certification ¶ 23) can be met by that records procedure and by a motion on two business days' notice if a concrete problem arises; it does not require transferring control before the question is decided. No Subject Entity would appear in any court except through licensed counsel. Upon entry of such an order, Lubin will immediately seek licensed counsel for the Subject Entities, including counsel to defend them in this adversary proceeding. The order should state expressly that he may arrange those engagements and their funding, with each payment to counsel from a company's funds, and any third-party payer, reported to the Trustee and the United States Trustee within seven days, in a report limited to nonprivileged information. Restoring the pre-Order arrangement also avoids leaving the plaintiff in control of the defense of the defendants it has sued.

Burdens. Two burdens should be kept separate. The Trustee, who obtained the October 15 Order, bears the burden of justifying the continuation of its restraints. Fed. R. Civ. P. 65(b)(3); Reilly, 858 F.3d at 179. Lubin bears the burden on the new relief he requests: restoration, to the extent the Court treats it as affirmative relief, and the new prohibitions in proposed order paragraphs 3(b)(iv) (no removal or appointment of a manager, and no amendment of an operating agreement, without an order of this Court), 3(e) (for Teton Life, in the alternative), and 11 (leave of Court before any disposition of a disputed claim). "The burden to prove clear entitlement to injunctive relief always stays with the party requesting that relief." Hope, 972 F.3d 310 (Part IV.B; slip op. at 14). The factual support for that relief is the record described above—the Trustee's counsel's October 9 statements, Ex. I; the Trustee's certification that his authority has "not yet been judicially determined," Trustee Certification ¶ 23; and Lubin's direction of the companies before October 15, Complaint ¶¶ 29–30—together with the

Trustee's request for "confirmation of the Trustee's authority to exercise any management rights in Teton Life that the Debtor holds," Brief at 4; the fact that Teton Life's other member and the companies' creditors have not yet been heard; and the risk that a change of manager or operating agreement, or a release of a disputed claim, could not readily be undone once the authority question is decided. The legal support is the Court's authority to preserve the status quo pending decision, Kos, 369 F.3d at 708; Fed. R. Civ. P. 65, made applicable by Fed. R. Bankr. P. 7065; see also 11 U.S.C. § 105(a). These provisions are prohibitory, bind Lubin as well as the Trustee, and are temporary: unless the Court enters them as a preliminary injunction with the findings required by Fed. R. Civ. P. 52(a)(2) and 65(d)(1), they are subject to the duration and extension provisions of proposed order paragraph 9. Proposed order ¶ 3(i). The conditions in proposed order paragraph 3(c) stand differently: Lubin proposes them and consents to them, as to himself, while the restored arrangement is in effect, and that consent is limited to them.

Alternatively, if the Court is not prepared to restore the pre-Order arrangement pending the determination, the next appropriate step is the court-approved protocol in proposed order paragraph 3(d). Lubin, acting through licensed counsel wherever counsel is required, would perform the ordinary-course and deadline-protective functions needed to preserve each wholly owned company's value; nothing outside the ordinary course would occur without written notice and the Trustee's written consent or Court approval; receipts would stay in each company's account; and the Trustee would receive weekly reports and access to all records on request. A principal concern the Trustee states is control over spending on the companies' litigation. Trustee Certification ¶ 23. The protocol answers that concern without transferring control: each week the Trustee would see the filings, deadlines, receipts, payments, and obligations of each company, and no act outside the ordinary course could occur without his consent or Court approval. The protocol follows the line the Bankruptcy Code itself draws between ordinary-course acts and acts that require notice and a hearing, cf. 11 U.S.C. § 363(b)(1), (c)(1), and it permits no transfer, settlement, release, or other irreversible disposition without consent or Court approval. The protocol would modify paragraph (2) of the October 15 Order; unless the Court enters it as a preliminary injunction with the required findings, it would be subject to the duration and extension provisions of proposed order paragraph 9. Proposed order ¶ 3(i).

Teton Life stands differently. It has a non-debtor 50% member; the entered Order does not identify a hearing at which that member was heard. Whatever rights pass to the estate with one member's interest, they do not by themselves establish sole authority over a two-member company; that turns on Teton Life's operating agreement, including the litigation provision on which the Trustee relies, and on applicable law. The October 15 Order should not, by itself, confer authority over Teton Life on anyone. Under the primary request, Lubin would exercise, under Teton Life's operating agreement and applicable law, the authority he exercised before October 15, subject to the same advance-notice requirement, which for Teton Life also runs to Mr. Yitzchakov. The Trustee's own complaint alleges, on information and belief, that Lubin exercises managerial control of Teton Life. Complaint ¶ 7(b). Lubin's position is that the governing documents vest that authority in him; the Trustee relies on the same agreement for his contrary position, and Mr. Yitzchakov, as the other member, is entitled to be heard. That dispute should be decided on notice, with the agreement before the Court. The Trustee states that management should be vested in him "so that neither the Debtor nor Mr. Yitzchakov can claim to speak for or control Teton Life." Trustee Certification ¶ 23. If the Court does not restore that authority pending the determination, acts outside the ordinary course for Teton Life should require the consent of all affected parties or Court approval, as proposed order paragraph 3(e) provides, for the period stated in proposed order paragraph 3(i). Lubin reserves all arguments concerning Teton Life's operating agreement and the effect of the Bankruptcy Code on it. If the Court continues interim authority in the Trustee, Lubin's separate Supplemental Request for a Court-Directed Process for Independent Entity Defense Counsel addresses the defense-counsel paragraph.

## III. ESTATE MEMBERSHIP RIGHTS ARE NOT THE SAME QUESTION AS ENTITY-WIDE RELIEF

Section 541 brings the Debtor's interests into the estate, subject to applicable law. The Trustee may have substantial management rights derived from Lubin's interests, especially as to wholly owned entities. Lubin does not ask the Court to assume that the Trustee received only economic rights or that his appointment left all prepetition authority with Lubin. His request concerning interim authority, pending the Court's determination of these questions, is stated in Part II. The extent of succession nevertheless requires the particular governing law, operating agreement, ownership structure, and right at issue. Succession to a member's rights is not, by itself, a complete answer to which company assets become estate property or whose defenses

may be waived. That question is reserved; the primary request in Part II concerns only the interim arrangement pending its determination.

Teton Life requires separate treatment, not a categorical exemption. The complaint acknowledges another 50% member, and the Trustee relies on management and litigation provisions of its operating agreement. Complaint ¶ 7(b); Trustee Certification and Ex. D. Those provisions should be analyzed specifically. Neither the existence of a co-member nor a provision assigning litigation authority resolves, without analysis, the separate questions of estate succession, consolidation, and authority to defend this adversary.

If the requested extension would pool assets and liabilities or otherwise substantively consolidate the entities with Lubin, the Court should apply the governing consolidation standards rather than infer entitlement from common control or administrative convenience. In re Owens Corning, 419 F.3d 195, 211–12 (3d Cir. 2005), requires the proponent to establish the pertinent prepetition disregard and creditor-reliance circumstances or prohibitive entanglement of assets and liabilities. The opinion notes that courts have permitted consolidation of debtors with non-debtors, id. at 208 n.13 (citing In re Bonham, 229 F.3d 750, 765 (9th Cir. 2000)), and it reserved whether § 105(a) permits consolidation outside a plan, id. at 209 n.14. It does not establish an automatic power to consolidate these non-debtors; the proponent must prove the required elements for each entity.

The Trustee should identify the statutory and equitable basis, the precise effect sought for each entity, and the supporting evidence. The entities' creditors and Teton Life's other member need notice and a meaningful opportunity to be heard before their rights are adjudicated. A claimed need to coordinate litigation may support appropriately supported interim protection; it does not eliminate the separate burden for ultimate entity-wide relief. No final merits decision should be made on October 22 without the requisite process.

## IV. THE FLORIDA JURY DECIDED THE IMPROPER-PURPOSE QUESTION; FINDING 6 SHOULD NOT BE GIVEN PRECLUSIVE EFFECT ON THIS APPLICATION

The Trustee relies on finding 6 of the May 15, 2026 Broward order and proposes to avoid the lien while retaining the asserted effect of its findings. Trustee Certification ¶¶ 6–8 and Ex. A. Under 28 U.S.C. § 1738, a state judgment receives the preclusive effect prescribed by the rendering State's law. See Matsushita Electric Industrial Co. v. Epstein, 516 U.S. 367, 373

(1996). The Court should identify the precise issue, parties or qualifying privies, opportunity to litigate, and findings necessary to the judgment under Florida law. Neither the existence of an appeal nor the filing of a reconsideration motion automatically establishes that the order lacks effect; the governing Florida rule is addressed below.

Under Florida law collateral estoppel requires that (1) an identical issue was presented in the prior proceeding; (2) the issue was "a critical and necessary part of the prior determination"; (3) there was a full and fair opportunity to litigate it; (4) the parties in the two proceedings are identical; and (5) the issue was actually litigated. Provident Life & Accident Ins. Co. v. Genovese, 138 So. 3d 474, 477 (Fla. 4th DCA 2014); Goodman v. Aldrich & Ramsey Enters., Inc., 804 So. 2d 544, 546–47 (Fla. 2d DCA 2002). Florida also requires mutuality of parties, even for defensive use. E.C. v. Katz, 731 So. 2d 1268, 1269–70 & n.1 (Fla. 1999) (quoting Stogniew v. McQueen, 656 So. 2d 917, 919 (Fla. 1995)). The party asserting collateral estoppel "bears the burden to show that such an issue was formerly determined with sufficient certainty." Lozman v. City of Riviera Beach, 713 F.3d 1066, 1079 (11th Cir. 2013) (quoting Freehling v. MGIC Fin. Corp., 437 So. 2d 191, 193 (Fla. 4th DCA 1983)); see id. at 1077 ("the party claiming the benefit of the former adjudication has the burden of establishing, with sufficient certainty by the record or by extrinsic evidence, that the matter was formerly adjudicated" (quoting State St. Bank & Trust Co. v. Badra, 765 So. 2d 251, 254 (Fla. 4th DCA 2000))). As movant, the Trustee also bears the burden on likelihood of success. Reilly, 858 F.3d at 179. Lubin does not ask the Court to hold that no Florida finding can ever bind anyone here, and he does not contend that the pending appeal, by itself, deprives the May 15 order of effect. He asks that the Trustee be required to identify, for each finding and each Subject Entity, (a) the exact issue decided, (b) why its determination was necessary to the relief the Florida court granted, and (c) the basis on which that entity is bound. On this record each of those showings is contested.

The jury decided the improper-purpose question first. The verdicts were returned in October 2025, after a trial with evidence, in the same action as the May 15 order; the FVP verdict was between FVP and Lubin, the same parties as that order, and the Franklin verdict was between Franklin and Lubin. On both verdict forms the jury answered the questions headed "Piercing the Corporate Veil of Spin Capital LLC / or Active Participation." It answered "yes" to questions 1 and 2 (domination and control) and to question 4, but "no" to question 3—"Was the corporate form of Spin Capital formed or used for a fraudulent or improper

purpose?"—and "no" to question 5 (active participation). Exs. D–E. Question 4 asked whether the plaintiffs were "harmed by the fraudulent or improper formation and use of the corporate form of Spin Capital," and the jury answered "yes"; the question that asked directly about purpose was question 3, and under the instruction the "no" to question 3 decided the veil-piercing claim. The forms instructed: "If you answered 'NO' to any of Questions 1-4 and 'NO' to Question 5, then Avrumi Josh Lubin is not liable." Id. The verdict forms also record findings against Lubin individually on other claims, and Lubin does not characterize the verdicts as exonerating him. The point is specific: on whether Spin's corporate form was formed or used for an improper purpose, the jury's specific answer, after a trial with evidence, was "no." The verdict forms identify the company only as "Spin Capital LLC," without stating where it was organized, Exs. D–E; the May 15 order identifies "Spin Capital, LLC, a New Jersey limited liability company," Trustee Certification Ex. A (Dkt. 3-2) at 1. Lubin's position is that both refer to the same company. The verdict forms do not say so expressly, and Lubin does not ask the Court to treat that point as established on this interim application.

Florida law treats the jury's findings as binding on the trial court when it later decides related equitable relief in the same case. Where the fact issues decided by a jury are sufficiently similar to those the court must decide on a related equitable request, "the trial court is bound by the jury's findings of fact in making its ruling on the equitable claim." Billian v. Mobil Corp., 710 So. 2d 984, 992 (Fla. 4th DCA 1998). A trial court "cannot base its decision on its own factual findings that conflict with those expressly made by the jury" and "is not free to reject or contradict findings by the jury on issues that were properly submitted to the jury." Sch. Bd. of Palm Beach Cnty. v. Groover, 337 So. 3d 799 (Fla. 4th DCA 2022) (slip op. at 11–12, Nos. 4D20-1547 & 4D20-2276) (quoting Gibson v. Mohawk Rubber Co., 695 F.2d 1093, 1101 (8th Cir. 1982), and Newhouse v. McCormick & Co., 110 F.3d 635, 641 (8th Cir. 1997)). Finding 6's recital that "the corporate form is used to shield assets from creditors" came seven months after the verdicts, on FVP's proposed order, without testimony on the point; the Florida court's stated basis for foreclosure was sole membership. Lubin Ex. A, Tr. 21:2–12. The verdicts concerned the period tried and do not by themselves resolve later conduct, but the Trustee relies on the recital itself rather than on any evidence presented to the Florida court on that point. Trustee Certification ¶¶ 6–7. The same principle counsels that, as to Spin, the recital should not be given greater weight in this Court than the jury's answer to question 3.

The Trustee should also identify the capacity in which he invokes finding 6. He was not a party to the trial or to the May 15 proceeding, and Florida requires mutuality of parties, even for defensive use. E.C. v. Katz, 731 So. 2d at 1269–70 & n.1. His brief asserts that the Subject Entities were in privity with Lubin, Brief at 6, but it does not identify the relationship that would permit the Trustee himself to invoke the finding—whether as Lubin's successor under § 541, through FVP, or otherwise—or explain how that relationship satisfies the mutuality requirement. The finding entered this bankruptcy case through FVP's memorandum supporting its motion to appoint a trustee, which described the charging-order findings as "the findings that drive this Motion." Case No. 26-17342, Dkt. 63 at 3. If the Trustee relies on a relationship with FVP, the same record includes the verdict in which FVP did not prevail on the improper-purpose question. Lubin does not contend that these points decide preclusion automatically. They add to the showings described above: for each Subject Entity and each clause of finding 6, the Trustee should identify his legal capacity and qualifying relationship, the identical issue, why its determination was necessary, and the opportunity to litigate it. On the present record those showings have not been made, and Lubin preserves his objection to giving finding 6 preclusive effect against him or any Subject Entity.

Lubin does not contend that the jury's answers to questions 1, 2 and 4 can never have preclusive effect. In Provident Life, the court gave preclusive effect to a jury's answer to a special interrogatory that the final judgment did not include, 138 So. 3d at 477–79, explaining that submitting the issue by special interrogatory was "a prima facie indication that it was a critical and necessary part" of the earlier case, id. at 478. It also rejected the bound party's argument that he could not have appealed the finding: he had proposed the judgment that omitted it, so his inability to appeal "was entirely within his control." Id. at 479. Provident Life therefore does not permit a finding to be disregarded merely because the judgment omits it; its result turned on the record showing that the onset date there was essential to the ultimate decision. Id. at 478. The record here differs. The verdict forms instructed that a "no" to any of questions 1–4, together with a "no" to question 5, meant that Lubin "is not liable," and the jury answered "no" to questions 3 and 5. Exs. D–E. Under that instruction, the result on the veil-piercing questions did not depend on the answers to questions 1, 2 and 4. The final judgments enter judgment on the counts they list and do not mention the veil-piercing questions. FVP's Final Judgment on Jury Verdict (Filing No. 232940104, e-filed Oct. 3, 2025), Case No. 26-17342, Dkt. 15-1 at 2–7; Franklin's final judgment (Filing No. 233055539, e-filed

Oct. 6, 2025); see Adv. No. 26-01339, Dkt. 1 ¶ 12 (judgment "on Count 7, Count 9, and Count 10"). A determination that is not essential to the judgment ordinarily is not preclusive. Restatement (Second) of Judgments § 27 cmt. h (Am. L. Inst. 1982). The Trustee, as the party asserting preclusion, would have to show that the answers he relies on were necessary to those judgments; his papers do not address the jury's veil-piercing answers or the instruction. Lubin does not ask the Court to treat Provident Life as deciding the question either way.

This argument is specific. The verdicts address Spin Capital (and Hi Bar Capital, which is not a party here). They do not address Teton Funding, LLC, Teton Funding Group, LLC, JL Special Investments, LLC, or Teton Life, LLC, and they do not decide the separate § 541 question addressed in Part II, which Lubin asks the Court to determine entity by entity, on notice. As to Teton Funding and the other Subject Entities, the objection to finding 6 rests on the showings discussed in this Part, not on the verdicts. Their significance here is that the Trustee's Florida showing for ex parte relief rests on finding 6. Trustee Certification ¶¶ 6–7 and Ex. A; Brief at 3, 6. Without that recital, the Trustee's papers cite no other Florida determination, made after evidence, that the corporate form of any Subject Entity has been used to shield assets, and his case for continuing the restraints in paragraphs (2)–(4) loses the Florida finding on which it principally relies. A June 11, 2026 order concerning JL Special Investments, LLC repeats the same recital (Case No. 26-17342, Dkt. 15-9 at 4); the verdicts do not address JL, the Trustee's papers do not cite that order, and the June 9 hearing that preceded it distinguished JL from Teton Life on the number of members. Ex. B, Tr. 6–9, 16–23. At that hearing the court said the JL order would be "essentially the same as the prior charging orders," and the judgment creditors' counsel said that, apart from portions he would leave out, "it's going to be identical." Ex. B, Tr. 21:16–22:5. Separateness does not weaken paragraph (1), which Lubin asks the Court to keep: a stay may protect a debtor's wholly owned company where claims against it would have an immediate adverse economic impact on the debtor, Queenie, Ltd. v. Nygard Int'l, 321 F.3d 282, 287–88 (2d Cir. 2003), and the estate's interest in these companies is its interest in Lubin's membership interests. The Court should decline, for purposes of this interim application, to give finding 6 preclusive effect against Lubin or any Subject Entity. Proposed order ¶ 12.

Necessity. An issue is "critical and necessary" only "where its determination is essential to the ultimate decision." Provident Life, 138 So. 3d at 478; see Goodman, 804 So. 2d at 547 (findings on matters "of only tangential relevance" to the relief granted "were not critical and

necessary"). Finding 6 has three clauses: that the Subject LLCs "are operated under the complete domination and control of the Judgment Debtor"; that "the corporate form is used to shield assets from creditors"; and that foreclosure "is therefore appropriate pursuant to section 605.0503(4)." Trustee Certification Ex. A (Dkt. 3-2) at 2. Finding 6 thus links both of its first two clauses to foreclosure through the word "therefore"; Part D of the order separately enjoins transfers of "any transferable interests, assets, distributions, or proceeds associated with the Subject LLCs," id. at 3; and finding 8 states that immediate relief was "necessary to prevent the concealment, transfer, dissipation, or diversion of assets and distributions associated with the Subject LLCs," id. at 2. At the same time, the foreclosure paragraph (Part E) states its own grounds—"because distributions under a charging order alone will not satisfy the judgment within a reasonable time and because the Judgment Debtor exercises complete dominion and control over the Subject LLCs"—without mentioning shielding; the charging orders (Part A) rest on findings 1–4; and under Fla. Stat. § 605.0503(4) foreclosure of a single-member interest turns on a showing "that distributions under a charging order will not satisfy the judgment within a reasonable time" (finding 5) and on single-member status, see Pansky v. Barry S. Franklin & Assocs., P.A., 264 So. 3d 961, 962–63 (Fla. 4th DCA 2019), while § 605.0503(7)(c) preserves alter ego as a separate remedy. The Florida court stated its basis on the record: foreclosure was granted as to "the two where there's evidence … the declaration established that he is a sole member of the LLC." Lubin Ex. A, Tr. 21:2–6. On June 16 the Court discussed foreclosure of Lubin's membership interest and the supplementary proceeding as distinct avenues of relief. Ex. C, Tr. 11:1–20. Lubin does not ask the Court to assume that the shielding recital was necessarily essential to the relief granted, or that it was necessarily irrelevant to it. The point is narrower: the Trustee, as the party asserting preclusion, must establish which particular issue was actually litigated, that its determination was essential to the relief the Florida court granted, and that it binds each Subject Entity against which he invokes it. The Trustee's brief asserts that finding 6 was "necessary" (Brief at 6); each of those showings must be proved, clause by clause, rather than assumed.

Parties. The Subject Entities were not parties to the charging-order motion and no one appeared for them; Lubin appeared "individually." Lubin Ex. A, Tr. 3. That fact does not by itself prevent a company from being bound; non-party preclusion exists where one of the recognized relationships is established. Taylor v. Sturgell, 553 U.S. 880, 893–95 (2008). But the relationship must be established, not inferred from ownership. "[E]ven if [the owner] is the

sole owner, he is not identical with the corporation and limited liability company he owns." Dejanovic v. Block, No. 3D24-1756 (Fla. 3d DCA Feb. 11, 2026). The Trustee's own authority states the test: a non-party is bound where "his interests [were] adequately represented by someone with the same interests," and the non-parties there were officers of companies that were named parties in both proceedings whose interests "would [not] have diverged in any way." Martinez v. Market Traders Institute, Inc., 757 F. App'x 815, 817–18 (11th Cir. 2018) (unpublished). Florida's control-based doctrine runs in both directions. A non-party is bound where its conduct gave it "the status of a party in actuality"—in the leading case, because the non-party was in "direct charge and control of the company" and "had charge of the defense." Zikofsky v. Marketing 10, Inc., 904 So. 2d 520, 525–26 (Fla. 4th DCA 2005) (discussing McGregor). And "a ruling adverse to a controlling person of a corporation on a given claim precludes the corporation from litigating that [issue] in a subsequent action." Id. at 525 (quoting Federal Deposit Insurance Corp. v. Hemmerle, 592 So. 2d 1110, 1117 (Fla. 4th DCA 1991)). The Trustee relies on that principle and asserts that overlapping ownership and control establish privity for all five entities. Control-based privity, if it applied, would apply equally to the verdicts, in which Lubin, the controlling person, prevailed on the veil-piercing claim on the jury's "no" to question 3. Lubin disputes that this general assertion establishes, for each entity on this record, the required relationship, an identical issue actually litigated and necessary to the earlier ruling, and the mutuality Florida requires; the question is whether the cited facts and authorities establish the asserted preclusive effect, not whether the Trustee advanced the argument. Lubin's individual pro se appearance was not an attorney appearance for an LLC, see Rowland v. California Men's Colony, 506 U.S. 194, 201–02 (1993); Simbraw, Inc. v. United States, 367 F.2d 373, 374 (3d Cir. 1966); that alone does not resolve privity, actual control, or adequate representation. Those questions must be answered for each Subject Entity.

Opportunity and actual litigation. The continuance was denied. The order recites that the court considered the movant's declaration and Lubin's written objection, and Lubin was sworn and testified about records production; but the transcript reflects no testimony directed to whether the corporate form was used to shield assets from creditors, and the order was uploaded by the movant "not for signature" because further foreclosure safeguards remained. Lubin Ex. A, Tr. 3:21, 5:8–19, 7:14–8:4, 16:8–16, 19:16–20, 21:7–12; Trustee Certification Ex. A (Dkt. 3-2) at 1. Where the issue was not before the earlier court and the party's stake and opportunity to

defend were limited, Florida courts have declined to find a full and fair opportunity. Goodman, 804 So. 2d at 547.

Finality. Under Florida law "a judgment entered by a court of competent jurisdiction has preclusive effect notwithstanding a pending appeal"; ordinary appellate review "upon the record upon errors assigned" does not suspend a judgment's force as an estoppel, and the exception is for an appellate court that "tries the case de novo." CCB, LLC v. BankTrust, 552 F. App'x 963, 965 (11th Cir. 2014) (per curiam) (quoting Reese v. Damato, 44 Fla. 692, 33 So. 462, 464 (1902)). Lubin does not contend otherwise, and he does not contend that the pending appeal, by itself, affects the May 15 order. CCB involved a final summary judgment between the same parties on the same cause of action; it did not address recitals in a post-judgment enforcement order, non-parties, or a motion for rehearing and vacatur pending in the rendering court. A motion for reconsideration, vacatur and a stay of the May 15 order was filed on June 23, 2026 (Ex. F); its current disposition has not been verified. Whether the May 15 order's recitals are entitled to issue-preclusive effect against the Subject Entities in these circumstances is disputed, and the Trustee, as the party asserting preclusion, bears the burden on it.

The attached excerpts supply context; they do not ask this Court to vacate a Florida order. The May 13 record includes references to a lengthy affidavit and the Court's express grant of foreclosure relief. Ex. A, Tr. 16:8–16, 19:11–20, 20:3–6, 21:2–6. Counsel's statement that a draft was not intended for signature at that point occurred in discussion of an order requiring further foreclosure provisions; it was not a ruling refusing foreclosure. Id. at 21:7–12. Discussion of a later purchaser's control also must be read in its sale context. Id. at 25:6–13, 26:7–12. These passages should not be presented as a promise that control could never change.

The June 9 transcript distinguishes Teton Life, for which foreclosure was denied because it had multiple members, from JL, for which foreclosure relief was granted. Ex. B, Tr. 6–9, 16–23. On June 16 the Court discussed foreclosure of Lubin's membership interest and the supplementary proceeding as distinct grounds for relief. Ex. C, Tr. 11:1–20. Counsel raised the verdict, but those statements were advocacy. Id. at 8:4–14, 10:13–16. Mr. Karten retracted his initial suggestion that the charging order required correction. Id. at 10:17–23. The Court denied the supplementary default request without prejudice, allowed ten days to respond, and directed

a separate pleading to challenge the earlier order. Id. at 11:23–12:13. It did not vacate or amend the May 15 order.

Exhibit F is the complete nineteen-page June 23 filing: the motion (original PDF pages 1–8), the notice of appeal (pages 9–10), and the May 15 order (pages 11–19). It shows what was filed, not renewed adoption of every assertion in that motion or a ruling on its merits. Its current disposition has not been verified; its filing is not itself relief. Finding 6 of the May 15 order names Spin and Teton Funding, not all five Subject Entities. The Trustee may offer other evidence, but should identify how each asserted finding or theory supports relief against each entity. Lubin requests that opportunity to respond before the finding is given dispositive entity-wide effect.

## V. A DEFENSE-COUNSEL PROCESS AND A LIMITED PRESERVATION ARRANGEMENT

The Trustee is the plaintiff seeking relief against the companies while paragraph (2) gives him sole authority in the Debtor's stead for management and litigation decisions regarding them. Unless paragraph (2) is dissolved as requested above, that creates a practical defense-authorization question requiring court direction. Lubin's separate supplemental request on defense counsel applies only in that event. That dual role is not, without more, proof that the Trustee or estate counsel has an actual disqualifying conflict. The Court should establish who may authorize, select, instruct, and pay independent counsel to defend each company in this adversary, and permit a limited appearance by proposed counsel to resolve those issues. No automatic right to estate-funded counsel, power to use restrained funds, or authority for Lubin to represent an LLC is requested.

Federal courts have "the power to appoint special representatives for persons whose general representative has conflicting interests," including a representative "with limited powers to conduct discrete litigation." In re Pressman-Gutman Co., 459 F.3d 383 (3d Cir. 2006) (mandamus; such relief is to be viewed "with great caution and only in cases in which it is fully justified"). The Third Circuit also treats the members of a corporate group "as the separate corporations they are and not as one client," and holds that control of an entity's privilege "passes with control of the corporation." In re Teleglobe Communications Corp., 493 F.3d 345, 372 (3d Cir. 2007). Pending the Court's direction, no interim authority over a Subject Entity should be exercised to waive, compromise or default any Subject Entity's

defense in this adversary, and no default should be sought against an entity during the response period the Court sets for it. See Pecarsky v. Galaxiworld.com Ltd., 249 F.3d 167, 172–75 (2d Cir. 2001) (default not willful where a corporation could not retain counsel on less than one week's notice).

This is distinct from retention of special counsel for the estate. If a demonstrated conflict impairs the estate's investigation or litigation of a particular competing ownership claim, the Court can consider appropriately scoped retention under 11 U.S.C. § 327 and the applicable disclosures under Rule 2014. A disputed assignment, an adverse creditor, or the Michigan litigation does not alone establish a disqualifying conflict. Any review should identify the claim, claimant, interest, and actual competing duty. No general disqualification finding is requested on this record. Under In re Marvel Entertainment Group, Inc., 140 F.3d 463, 477 (3d Cir. 1998), an actual conflict requires disqualification, a potential conflict is committed to the Court's discretion, and the appearance of impropriety alone is not enough; see also In re BH & P Inc., 949 F.2d 1300, 1313 (3d Cir. 1991). Lubin asks only for the disclosures that let the Court apply that standard. This is a question about the estate's professionals under § 327(a) or, for a specified special purpose, § 327(e); it is separate from the defense-counsel question for the Subject Entities addressed above.

During a short, court-defined interval, preservation should operate in both directions: prevent unauthorized asset transfers, but also prevent irreversible surrender of disputed claims before the responsible decision-maker and defense process are identified. Lubin requests advance notice and leave of this Court for any settlement, release, assignment, abandonment, dismissal with prejudice, or binding concession of ownership of a disputed Subject Entity claim, except under the advance-notice procedure in proposed order paragraph 3(c) or as otherwise expressly authorized after notice. This request does not suspend ordinary investigation or override an existing statute or another court's order. Lubin's certification identifies, with record references, categories of records that warrant investigation concerning vehicle collateral, sale proceeds, credits against asserted debts, and competing claims to assigned rights; he does not ask the Court to decide any of those matters on this application. Lubin Certification ¶ 9.

A stay of litigation against an entity does not necessarily stop deadlines on its affirmative claims or appeals. The Court should require a prompt, case-specific deadline report and identify authorized counsel for protective extensions, status notices, and other non-merits

steps. The point is to prevent a gap while authority is resolved. No provision should permit a nonlawyer to file for an entity or empower anyone to bind a disputed claim on the merits merely by describing the filing as protective.

The Court should also identify a lawful route for necessary premiums, receiver-approved preservation expenses, and other specifically supported ordinary costs. Payments should remain subject to existing receivership orders, appropriate authorization, disclosure, and accounting. Lubin seeks no unrestricted spending authority and no permission to fund litigation from restrained assets without the required approval. Under the primary request, each payment to counsel from a company's funds would be reported to the Trustee and the United States Trustee within seven days, in a report limited to nonprivileged information, and any act outside the ordinary course would be subject to the advance-notice requirement in proposed order paragraph 3(c); under the alternative protocol in paragraph 3(d), such acts would require the Trustee's written consent or Court approval, with weekly reporting.

## VI. RECORDS, NOTICE, AND A WORKABLE SCHEDULE

Lubin recognizes his duties under 11 U.S.C. § 521(a)(3)–(4) and the Trustee's authority to seek recorded information under § 542(e), subject to applicable privilege. Lubin does not contend that the companies' records are beyond the Trustee's reach or that a separate proceeding is required to obtain them. Section 542(e) authorizes an order for recorded information held by "an attorney, accountant, or other person" "after notice and a hearing" and "subject to any applicable privilege"; the Debtor's own records are governed by § 521(a)(3)–(4), and he will produce them. The request is for a records protocol that replaces paragraph (4) if it is dissolved, or implements it if it is not: a prioritized list and rolling schedule, a log for any item withheld on privilege or third-party grounds, prompt submission of disputes to the Court, and an order under Fed. R. Evid. 502(d) so that inadvertent production of privileged or common-interest material is not a waiver in this or any other proceeding. See Teleglobe, 493 F.3d at 372. The corporate form is not a blanket basis to withhold relevant records. Records should be produced through prompt production of undisputed materials, a prioritized written list, reasonable format and timing, preservation of originals, and a procedure to identify and resolve privilege or third-party rights. A disputed item should be brought to the Court promptly, not used to stop all production. This motion does not itself suspend compliance.

Before full preliminary-injunction adjudication, the Trustee should identify the ownership or control assertions on which he actually relies for the interim relief, their source, and the affected claim or entity, without disclosing privileged legal advice or protected settlement terms. A targeted report is more useful than an unrestricted demand for all communications. The proposed order also calls for notice to Teton Life's other member and relevant entity creditors, as the Court directs.

Lubin requests October 22 consideration of the modification motion and interim procedures. Supplemental opposition on November 6, a reply on November 9, and a preliminary-injunction hearing on or after November 12 would provide additional time, subject to the Court's calendar and any different schedule it finds appropriate. Those dates are proposed only and do not themselves extend any restraint. The existing October 20 opposition deadline and October 22 hearing remain in effect unless changed. The October 15 Order states that it serves in lieu of a summons. Fed. R. Bankr. P. 7012(a)(1) measures the time to answer from issuance of a summons "unless the court sets a different time," and the comment to D.N.J. LBR 7065-1 states that an order to show cause served at the beginning of an action "is not a substitute for a summons under Bankruptcy Rule 7004." Lubin does not assume that no answer deadline exists. He asks the Court to set the answer dates in the scheduling order so that the defendants may comply with them—he proposes November 23, 2026 for himself and December 7, 2026 for each Subject Entity, to allow time to obtain counsel (proposed order ¶ 8)—and to state whether any hearing will involve evidence. Until then, Lubin does not assume that his interim objection replaces an answer, tolls a deadline, or authorizes an entity appearance.

## CONCLUSION

Lubin requests the relief in the proposed order: primarily, vacatur of the ex parte confirmation of exclusive authority, dissolution of paragraphs (2), (3), and (4), and restoration of the pre-Order arrangement subject to the advance-notice and records terms in paragraphs 3 and 6, with paragraph (1) remaining in effect; alternatively, the interim protocol in paragraph 3(d); and, in all events, the scheduling, deadline-protection, defense-counsel, records, and other provisions in the remaining paragraphs. Alternatively, the Court should dissolve any portion of paragraphs (2)–(4) that cannot be supported and narrowly defined under Rule 65, while specifying any lawful continuing preservation relief. The Court should decline, for purposes of this interim application, to give finding 6 of the May 15 order preclusive effect against Lubin or any Subject Entity (proposed order paragraph 12), and should reserve final merits, ownership, consolidation, entity-defense, and other preclusion questions for proceedings with appropriate notice, counsel, and evidence.

Respectfully submitted,

________________________________

Avrumi Lubin, individually, pro se
Dated: October 19, 2026