| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| Caption in Compliance with D.N.J. LBR 9004-1(b)<br><br>WEIR LLP<br>A Pennsylvania Limited Liability Partnership<br>Jeffrey S. Cianciulli, Esquire<br>Patrick T. Krenicky, Esquire<br>Attorney I.D. Nos. 039821988/036112010<br>1300 Route 73 S., Suite 314<br>Mount Laurel, NJ 08054<br>856-429-7720<br>jcianciulli@weirlawllp.com<br>pkrenicky@weirlawllp.com | Case No. 26-17342 (EJO)<br><br>Judge: Eamonn James O'Hagan, U.S.B.J.<br><br>Chapter 11<br><br>Adv. Pro. No. 26-01494 (EJO)<br><br>Objection Date: October 20, 2026 5 p.m.<br>Hearing Date: October 22, 2026, 10:00 a.m. |
| In re:<br><br>AVRUMI LUBIN a/k/a Josh Lubin,<br><br>Debtor, | |
| BENJAMIN A. STANZIALE, JR.,<br><br>CHAPTER 11 TRUSTEE FOR AVRUMI LUBIN a/k/a JOSH LUBIN<br><br>Plaintiff,<br><br>v.<br><br>AVRUMI LUBIN, SPIN CAPITAL, LLC TETON LIFE, LLC, TETON FUNDING, LLC, TETON FUNDING GROUP, LLC And JL SPECIAL INVESTMENTS, LLC<br><br>Defendants. | |

**MEMORANDUM OF LAW OF GAVRIEL YITZCHAKOV, MEMBER OF TETON LIFE, LLC, IN OPPOSITION TO THE CHAPTER 11 TRUSTEE'S MOTION TO EXTEND PROCEEDINGS AND FOR TEMPORARY RELIEF**

Gavriel Yitzchakov a/k/a Gabe Isaacov ("Mr. Yitzchakov"), the holder of a 50% membership interest in Teton Life, LLC ("Teton Life"), respectfully submits this memorandum of law in opposition to the motion of Benjamin A. Stanziale, Jr., the Chapter 11 Trustee (the "Trustee") for debtor Avrumi Lubin (the "Debtor"), by Order to Show Cause, to (i) "extend" the Debtor's individual Chapter 11 case to Teton Life and four other non-debtor entities and substantively consolidate them with the estate; (ii) extend the automatic stay to actions involving Teton Life; (iii) declare that the Trustee succeeds to the Debtor's management rights in Teton Life, including sole control of Teton Life's pending New York litigation; and (iv) grant temporary restraining relief and compel turnover of records (the "Motion").

## PRELIMINARY STATEMENT[1]

Teton Life is not a debtor in this bankruptcy case. It has not filed a petition, no creditor has filed an involuntary petition against Teton Life, and it is not the Debtor's alter ego. The Debtor owns only 50% of Teton Life; the other 50% is owned by Mr. Yitzchakov, a non-debtor who owes nothing to this estate. The Trustee's Memorandum concedes that Teton Life is a distinct, co-owned entity, and that its members are currently involved in a dispute with one another. Nonetheless, the Trustee asks this Court, on an emergency basis and without an opportunity to develop a full record, to essentially install the Trustee as the controlling decision-maker over Teton Life, displacing Mr. Yitzchakov's bargained-for equal voice in its management, and to subject Teton Life to the automatic stay.

[1] All capitalized undefined terms shall have the meaning ascribed to them in the Trustee's Motion.

The Motion should be denied as to Teton Life for several reasons. First, the Bankruptcy Code supplies no mechanism to "extend" a bankruptcy case to a non-debtor, and Section 105(a) should not create one in this case. Second, under *In re Owens Corning*, 419 F.3d 195 (3d Cir. 2005), the Trustee's Motion does not show that Teton Life's creditors relied on any breakdown of separateness between Teton Life and the Debtor or that Teton Life's assets are hopelessly scrambled with the Debtor's such that substantive consolidation would be appropriate. Third, the Florida Charging Order on which the Trustee relies in its Motion made no finding whatsoever regarding Teton Life, and Teton Life was neither a party to nor in privity with the parties to that proceeding; accordingly, collateral estoppel is not applicable as to Teton Life. Fourth, there is no basis to extend the stay. Teton Life is principally a plaintiff in the New York State Action (as defined in the Trustee's Memorandum of Law), the automatic stay does not halt a debtor's own affirmative claims, and staying Teton Life's prosecution of the New York State Action would destroy rather than preserve value. Fifth, the Trustee does not succeed to management rights the Debtor held personally under Teton Life's Operating Agreement; the Trustee's own authorities characterize such agreements as executory, which triggers Sections 365(c)(1) and 365(e)(2)(A) of the Bankruptcy Code and in this case, forecloses the relief sought.

Because the Trustee cannot demonstrate a likelihood of success on any of these theories, and because the claimed harms are speculative while the harm to Teton Life and to Mr. Yitzchakov is concrete, the request for temporary relief should be denied as to Teton Life.

**MR. YITZCHAKOV'S ENTITLEMENT TO BE HEARD**

Mr. Yitzchakov is not a named defendant, but he is entitled to be heard. The Order to Show Cause expressly provides that "Defendants and any persons or entities wishing to oppose the relief sought" shall file opposition on the docket of this adversary proceeding, directs that "any other

parties wishing to be heard" appear on the return date, and requires service on "Gavriel Yitzchakov, co-owner of Teton Life, or his counsel." Mr. Yitzchakov is also a party in interest under 11 U.S.C. § 1109(b), which "must be construed broadly to permit parties affected by a chapter 11 proceeding to appear and be heard," and which extends to anyone "who has a legally protected interest that could be affected by a bankruptcy proceeding." *In re Global Indus. Techs., Inc.*, 645 F.3d 201 (3d Cir. 2011) (citations omitted). The Third Circuit has held that Section 1109(b) applies to adversary proceedings. *In re Marin Motor Oil, Inc.*, 689 F.2d 445 (3d Cir. 1982). The Trustee's Motion directly targets Mr. Yitzchakov's 50% membership interest and his equal right to participate in Teton Life's management, interests that neither the Debtor nor the Trustee represents.

**FACTS**

As set forth in the Debtor's schedules, the Debtor holds only a 50% membership interest in Teton Life. The remaining 50% is held by Gavriel Yitzchakov a/k/a Gabe Isaacov. By contrast, the Debtor scheduled himself as sole owner of each of the other four Defendants. Teton Life is governed by its Operating Agreement, which is attached to the Trustee's Motion. The Operating Agreement provides that Teton Life is member-managed with each member having an equal say in management. The Operating Agreement provides "all decisions related to the [New York State Action] will be considered to be made in the ordinary course of business and shall not require the approval of [Mr. Yitzchakov]. Notwithstanding anything to the contrary in this Agreement, the Members agree to confer in good faith with regard to any settlement opportunity in the [New York State Action]." *See* Exhibit D to the Trustee's Motion. The Trustee's assertion that the Debtor otherwise exercises managerial control over Teton Life is made only "[u]pon information and belief." The Trustee describes Teton Life's principal asset as rights, assigned by Spin Capital, LLC

("Spin"), to enforce interests in collateral at issue in *Teton Life LLC, as assignee of the rights of Spin Capital, LLC v. Golden Foothill Insurance Services, LLC et al.*, Index No. 650582/2022 (Sup. Ct. N.Y. Cnty.) (the "New York State Action").

As set forth in the Trustee's Motion, the Debtor and Mr. Yitzchakov are involved in a dispute regarding management of Teton Life. The background of the dispute is detailed in an Affidavit filed by Mr. Yitzchakov in the New York State Action which is an exhibit to the Trustee's Motion. The Trustee concedes that "the disputes between Yitzchakov and the Debtor over the management of Teton Life" have been ongoing, and that the Debtor and Mr. Yitzchakov were adverse to one another in a dispute concerning JL Special Investments, LLC. All of this shows that Teton Life should not be treated as the same entity as the Debtor. The Trustee does not allege that Teton Life commingled funds with the Debtor, paid the Debtor's personal obligations, or held itself out to anyone as the Debtor nor has Teton Life done so.

The Trustee also relies on a Florida Charging Order to support its request for relief; however, the Florida Court made findings regarding Spin and Teton Funding, LLC ("Teton Funding") only. It made no finding regarding Teton Life, and Teton Life was not a party to that proceeding. In short, and as set forth herein, Teton Life has not disregarded separateness from the Debtor so significantly that creditors relied on the breakdown of entity borders and treated them as one legal entity, nor are the Debtor's and Teton Life's assets and liabilities so scrambled that separating them is prohibitive and hurts all creditors. Accordingly, and for the reasons set forth herein, the Trustee's Motion must be denied.

## ARGUMENT

## THE COURT SHOULD DECLINE TO "EXTEND" THE DEBTOR'S CASE TO TETON LIFE OR SUBSTANTIVELY CONSOLIDATE IT

### A. The Bankruptcy Code provides no mechanism to place a non-debtor into bankruptcy through an adversary motion, and Section 105(a) should not supply one.

The Trustee seeks to extend the Debtor's bankruptcy case to Teton Life, among others, pursuant to a substantive consolidation theory. A bankruptcy case is commenced only by the filing of a voluntary petition by an eligible entity under Section 301, or an involuntary petition by qualifying creditors under Section 303, subject to the protections that section affords the alleged debtor, including the right to contest the petition, the requirement of a showing that the debtor is generally not paying its debts as they come due, and the potential for damages against petitioners who file in bad faith. *See* 11 U.S.C. §§ 301, 303(b), (h), (i). The Trustee's requested "extension" would bypass every one of those protections and essentially place Teton Life into bankruptcy without a petition, without an insolvency showing, and over the objection of a non-debtor 50% owner.

Section 105(a) should not be used to provide the Trustee with the requested relief. Section 105(a) authorizes orders "necessary or appropriate to carry out the provisions of this title"; it does not authorize relief that the Code's specific provisions do not contemplate. The Supreme Court has made clear that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code," and that Section 105(a) does not permit a court to override explicit mandates of other sections. *Law v. Siegel*, 571 U.S. 415, 421 (2014) (internal quotation marks omitted). The Third Circuit likewise holds that Section 105(a) does not create "substantive rights that would otherwise be unavailable under the Code." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004).

*Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215 (1941), on which the Trustee principally relies, does not warrant granting the Trustee's requested relief. *Sampsell* involved a corporation found to have been formed by the debtor, after he became insolvent, as a vehicle to receive his transferred assets. The Court approved treating that property as part of the estate. Unlike here, the *Sampsell* case did not involve an entity with a non-debtor co-owner holding half the equity, and it did not authorize wholesale "extension" of a bankruptcy case to every entity in which a debtor holds an interest.

*In re Owens Corning,* 419 F. 3d 195, *supra,* cited by the Trustee, also does not support granting the requested relief. As the Trustee concedes, the *Owens Corning* decision addressed consolidation in the context of plan confirmation among entities that were already debtors. Under *Owens Corning*, the proponent of substantive consolidation must prove that "(i) prepetition [the entities] disregarded separateness so significantly their creditors relied on the breakdown of entity borders and treated them as one legal entity, or (ii) postpetition their assets and liabilities are so scrambled that separating them is prohibitive and hurts all creditors." 419 F.3d at 211. The court in *Owens Corning* emphasized that, absent compelling circumstances, courts must respect entity separateness; that "[m]ere benefit to the administration of the case" does not justify consolidation; that the remedy is "extreme and imprecise" and should be "rare and used as a last resort"; and that it may not be used "offensively," for example to disadvantage a group of creditors or alter creditor rights. *Id.*

The first option for substantive consolidation turns on the perspective of creditors: did creditors actually deal with the entities as a single economic unit and rely on that breakdown of borders? The Trustee identifies no creditor of the Debtor who extended credit in reliance on Teton Life's assets, and no creditor of Teton Life who dealt with it as the Debtor. The only "creditor" the

Trustee mentions in connection with Teton Life is an unidentified claimant whom Mr. Yitzchakov allegedly promised to pursue a receivership over Spin, which, if anything, demonstrates that third parties recognized Teton Life, Spin, and the Debtor as distinct.

The second option requires proof that the entities' assets and liabilities are so scrambled that disentangling them is prohibitive and harms all creditors. The Trustee's own description of Teton Life refutes that notion. For example, Teton Life holds an identifiable asset, the claims in the New York State Action, which is being prosecuted in its own name in a pending case. The Debtor's interest in Teton Life is equally identifiable: a 50% membership interest, as scheduled. Nothing about that structure is "scrambled." The Trustee's generalized assertion that there is "no definable boundary" between the records of the Debtor and the Subject Entities is unsupported as to Teton Life and, in any event, is a discovery issue, not a basis for consolidation.

Consolidation also would pool Teton Life's assets with the Debtor's to pay the Debtor's personal creditors. The inevitable effect would be to transfer value belonging, on a 50% basis, to Mr. Yitzchakov, a non-debtor who is not liable on any of those claims, and to subordinate Teton Life's own creditors to the Debtor's. That is precisely the type of "offensive" use, altering creditor and equity rights, that *Owens Corning* forbids. *See Owens Corning*, 419 F.3d at 211. The Trustee's explanation that consolidation is needed because "without consolidation there would be no meaningful method to marshal assets for creditors" is an argument for administrative convenience and recovery maximization, which *Owens Corning* holds is insufficient. *Id.*

Further, the Trustee acknowledges that the Debtor and Mr. Yitzchakov have engaged in ongoing "disputes … over the management of Teton Life" and were adverse in a dispute over JL. An entity whose 50% non-debtor co-owner actively contests the debtor's management is the antithesis of a debtor's "corporate pocket." The Trustee's remaining allegations about Teton Life,

that Spin "does not appear" to have received consideration for its contribution and that the transaction "could hinder, delay and defraud Spin creditors", would, at most, give rise to a potential fraudulent transfer claim belonging to Spin's creditors against Teton Life. Such claims, if they exist, must be pleaded and proven under the applicable avoidance statutes, with the defenses those statutes provide (including value and good faith). They are not a basis for consolidation, and they are not claims of this estate. Spin is not a debtor, and the Debtor's estate does not hold Spin's creditors' claims. All of these facts render consolidation inappropriate under *Owens Corning*.

**B. The Florida Charging Order has no preclusive effect as to Teton Life.**

The Trustee's Motion also relies on a Florida court's finding that Spin and Teton Funding are under the Debtor's domination and control to support that substantive consolidation is appropriate. Whatever its effect as to Spin and Teton Funding, the Charging Order does not address Teton Life. [T]he standard requirements for collateral estoppel, more generally termed issue preclusion, [are] (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action. *Szehinskyj v. Atty. Gen. of U.S.*, 432 F.3d 253, 255 (3d Cir. 2005). Whether *Teton Life* is the Debtor's alter ego was not presented, litigated, or decided.

The Trustee also cannot bind Teton Life through a conclusory assertion that "there can be no doubt that all the Subject Entities were in privity with the Debtor." Privity sufficient to bind a non-party requires that the non-party's interests were adequately represented or that it controlled the prior litigation; it is not established merely because a party to the prior case holds a partial ownership stake in the non-party. Teton Life had a 50% owner, Mr. Yitzchakov, who was not a party to the Florida proceeding, whose interests are adverse to the Debtor's by the Trustee's own

account, and who had no opportunity to be heard. Binding Teton Life to findings rendered in its absence would raise serious due process concerns. *See Taylor v. Sturgell*, 553 U.S. 880, 892–95 (2008) (discussing the narrow exceptions to the rule against nonparty preclusion). The Trustee's preclusion argument therefore fails as to Teton Life.

**THERE IS NO BASIS TO EXTEND THE AUTOMATIC STAY TO TETON LIFE**

The automatic stay should not be extended to Teton Life. The automatic stay protects the debtor; it does not ordinarily extend to non-debtor entities, even affiliated ones. *McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 509–10 (3d Cir. 1997). The Third Circuit permits extension only in "unusual circumstances," such as where there is such identity between the debtor and the non-debtor that the debtor is the real party defendant and a judgment against the non-debtor will in effect be a judgment against the debtor. *Id.* at 510. The Trustee has not shown such circumstances as to Teton Life.

First, the automatic stay is aimed at actions *against* the debtor. It does not apply to claims prosecuted *by* a debtor. *See Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204–05 (3d Cir. 1991). Teton Life's principal involvement in litigation is as the *plaintiff* in the New York State Action. If the Debtor himself would not be stayed from prosecuting an affirmative claim, there is no logic to staying Teton Life from prosecuting its own. The Trustee's stated concern that adverse rulings in cases where the Subject Entities are plaintiffs could have collateral estoppel effect, is a concern present in every lawsuit, and is not a recognized ground for halting a non-debtor plaintiff's case.

Second, the Trustee identifies no pending action against Teton Life in which the Debtor is the "real party defendant." The claims the Trustee describes, which are the FVP and Franklin judgments, are against the Debtor and Spin, not Teton Life. The Trustee's generic references to

"numerous claims" against "the Subject Entities" do not explain how a judgment against Teton Life would bind the Debtor. A stay cannot be extended on the basis of unnamed proceedings.

Third, the "source of funds" rationale in *McCartney* and *In re Saxby's Coffee Worldwide, LLC*, 440 B.R. 369 (Bankr. E.D. Pa. 2009), does not apply. The estate's interest in Teton Life is a 50% membership interest whose value depends on Teton Life's successful prosecution of the New York State Action. Staying that action would delay or impair the very recovery from which the estate stands to benefit. Far from being "essential" to a reorganization, a stay of Teton Life's affirmative litigation would be affirmatively harmful to it and to Mr. Yitzchakov, whose equal interest the Trustee does not represent.

## THE TRUSTEE DOES NOT SUCCEED TO THE DEBTOR'S MANAGEMENT RIGHTS IN TETON LIFE

### A. The estate holds the Debtor's economic interest; management rights are governed by the Operating Agreement and applicable non-bankruptcy law.

The Trustee should not be deemed to have stepped into the Debtor's management rights in Teton Life. Section 541(a) brings into the estate the Debtor's legal and equitable interests in property as of the petition date, but the estate takes those interests subject to the limitations that existed under applicable non-bankruptcy law, except as the Code specifically provides. The Trustee acknowledges that the Operating Agreement makes Teton Life member-managed with each member holding "an equal say," and that it provides for dissociation from management upon a member's bankruptcy. Teton Life is a Delaware limited liability company. Under the default rules of the Delaware LLC statute (6 Del. C. § 18-702), a transferee or assignee of a membership interest acquires only the right to receive distributions and does not become a member with management rights absent the consent of the other members. Further, under 6 Del. C. § 18-304,

the default is that a person ceases to be a member of an LLC upon certain bankruptcy-related events including filing a voluntary bankruptcy petition or being adjudged bankrupt or insolvent.

Further, while the Trustee argues that Section 541(c)(1) invalidates the Operating Agreement's bankruptcy-dissociation provision, the lead authorities he cites, *In re Allentown Ambassadors*, 361 B.R. 422 (Bankr. E.D. Pa. 2007), and *In re McSwain*, 2011 Bankr. LEXIS 3921 (Bankr. W.D. Wash. 2011) hold or reason that LLC operating agreements imposing continuing obligations on members are *executory contracts*. If the Operating Agreement is executory, the governing provision is not Section 541(c)(1), but Section 365.

Section 365(e)(1) generally invalidates ipso facto clauses in executory contracts, but Section 365(e)(2)(A) expressly excepts contracts where "applicable law excuses a party, other than the debtor, … from accepting performance from or rendering performance to the trustee or to an assignee," and that party does not consent. 11 U.S.C. § 365(e)(2)(A). Similarly, Section 365(c)(1) bars the trustee from assuming or assigning such a contract without the non-debtor party's consent. *Id.* § 365(c)(1). A member-managed LLC with two members, in which management is a matter of personal trust and confidence, is a classic example: applicable LLC law permits the remaining member to refuse to accept a stranger as a co-manager. Mr. Yitzchakov has not consented to the Trustee's participation in Teton Life's management.

In *in re Allentown Ambassadors, Inc. supra*, 361 B.R. 422 (Bankr. E.D. Pa. 2007), the Court considered whether an LLC operating agreement containing an ipso facto clause triggered by bankruptcy was enforceable under 11 U.S.C. § 365. The court held that the ipso facto provision in the operating agreement was not enforceable unless an applicable statute or common law unequivocally prohibited the assignment of the contract without the non-debtor's consent, or if the identity of the assignee was material to the non-debtor. *See id.* The Court cited to the hypothetical

test outlined in *Matter of West Electronics, Inc*., 852 F.2d 79 (3d Cir.1988), which in essence provides that if a contract could not be assigned under applicable non-bankruptcy law, it may not be assumed or assigned by the trustee [or the DIP]. *See id.* at 447-448. The Court in *Allentown Ambassadors* found that the North Carolina limited liability company statute did not render the ipso facto provision enforceable, and was unwilling to grant summary judgment on the issue of whether the identity of the assignee was material to the non-debtor. *See id.* at 447-458. Here, however, the identity of the member is material to Mr. Yitzchakov and therefore should not form the basis for the Trustee taking over management rights.

**B. Section 2.08(d) confers a personal designation on "Josh Lubin," not a transferable property right.**

The Trustee asserts that Section 2.08(d) of the Operating Agreement, which gives "Josh Lubin" control over the New York State Action and related collateral, "passes to the Trustee." But by the Trustee's own description, Section 2.08(d) names the individual, not the holder of a membership interest. A contractual designation of a specific person to direct litigation is a personal-services arrangement reflecting the members' choice of that individual; it is not a property interest that passes to a successor. Such an arrangement falls squarely within Section 365(c)(1), which forbids assumption or assignment where applicable law excuses the counterparty from accepting performance from someone other than the designated person. If the Debtor is unable or unwilling to perform that role, the Operating Agreement's general member-management provisions govern, and the decision belongs to Teton Life's members (Mr. Yitzchakov) acting in accordance with the Operating Agreement, not to the Trustee unilaterally.

Moreover, installing the Trustee as the sole decision maker over Teton Life's principal asset would effectively appoint him a receiver of a non-debtor entity. The Trustee all but admits this, arguing that creditors would be protected by "the Trustee having managerial control over

Teton Life, as a receiver would." The Code does not permit a trustee of an individual debtor to obtain receivership-like control over a non-debtor entity, 50% owned by a stranger to the case, through a motion for temporary relief.

## THE TRUSTEE HAS NOT SATISFIED THE REQUIREMENTS FOR TEMPORARY OR PRELIMINARY INJUNCTIVE RELIEF AS TO TETON LIFE

A preliminary injunction or temporary restraining order is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). In the Third Circuit, the movant must first demonstrate the two "most critical" factors, a likelihood of success on the merits and irreparable harm, before the court considers the balance of harms and the public interest. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). The same standard governs requests under Fed. R. Bankr. P. 7065 and Section 105(a). The Trustee meets none of the factors as to Teton Life.

### A. No likelihood of success.

The Trustee recasts the likelihood of success inquiry as the prospect that the Debtor "can be successfully reorganized." Whatever the merit of that formulation where a debtor seeks to protect its own reorganization, it cannot apply where the relief sought would bind a non-debtor. The question here is whether the Trustee is likely to succeed on the claims pleaded against Teton Life. For the reasons set forth above, he is not. Notably, the Trustee does not even articulate a path to a confirmable plan; he states only that consolidation would be a "major step" toward the "potential" to develop one.

### B. No irreparable harm.

The Trustee's claimed harms as to Teton Life are speculative. He identifies no pending action against Teton Life threatening imminent judgment, no transfer of Teton Life assets that is threatened or underway, and no specific conduct that requires immediate restraint. Generalized

fears of "record taint" and the risk that the Debtor might "run amok" do not establish irreparable harm. To the extent the Trustee is concerned about the Debtor's conduct, the Trustee may seek relief against the Debtor directly; that concern does not justify restraining a non-debtor whose other member is adverse to the Debtor. And the Trustee's interest in Teton Life, a 50% economic stake, is fully compensable and fully protected so long as Teton Life continues to prosecute the New York State Action.

**C. The balance of harms and the public interest weigh against relief.**

The Trustee concedes that extending the stay would delay outstanding cases, "some of which are in advanced stages." As to Teton Life, the harm is concrete: a stay or a change in control would interrupt Teton Life's prosecution of the New York State Action, risk loss of momentum or rights in that case, and strip Mr. Yitzchakov of his bargained-for equal voice in Teton Life's management. The public interest favors respecting the separateness of legal entities and the contractual rights of non-debtors, principles the Trustee himself quotes from *Owens Corning*.

**D. The turnover request exceeds the Code's reach as to Teton Life.**

Turnover under Sections 521, 542, and 543 of the Bankruptcy Code runs against the debtor and against entities in possession of property of the estate. Teton Life's books and records are Teton Life's property, not the Debtor's. The Trustee's asserted inability to distinguish the Debtor's records from those of the Subject Entities is unsupported as to Teton Life. The appropriate vehicle for a trustee seeking information from a non-debtor is a properly noticed examination under Fed. R. Bankr. P. 2004, subject to the protections that rule affords not a temporary restraining order compelling wholesale production.

**E. Teton Life has been afforded inadequate notice.**

The Trustee seeks to place a non-debtor into bankruptcy and divest its co-owner of management control on an expedited order to show cause schedule, filed less than a month after his appointment and supported largely by allegations on information and belief. Relief of this magnitude should not be granted on an emergency record. At a minimum, Mr. Yitzchakov and Teton Life are entitled to a full evidentiary hearing, with discovery, before any such relief issues.

**ANY INTERIM RELIEF SHOULD BE NARROWLY TAILORED**

If the Court is inclined to grant any interim relief, Mr. Yitzchakov respectfully requests that the Court: (a) deny extension, consolidation, and stay extension as to Teton Life; (b) make clear that nothing in any order restrains Teton Life from continuing to prosecute the New York State Action; (c) limit any declaration regarding the Trustee's rights in Teton Life to the Debtor's economic interest, without prejudice to Mr. Yitzchakov's membership and management rights or to all parties' positions on management rights, to be determined on a full record; and (d) direct that any request for information from Teton Life proceed under Fed. R. Bankr. P. 2004.

**CONCLUSION**

For the foregoing reasons, Mr. Yitzchakov respectfully requests that the Court deny the Motion in its entirety as to Teton Life, or, in the alternative, limit any relief as set forth above, and grant such other and further relief as the Court deems just and proper.

WEIR LLP
A Pennsylvania Limited Liability Partnership

By: */s/ Patrick T. Krenicky, Esq.*
Jeffrey S. Cianciulli, Esq.
Patrick T. Krenicky, Esq.
*Attorneys for Gavriel Yitzchakov a/k/a Gabe Isaacov*

Date: October 20, 2026