| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| Caption in Compliance with D.N.J. LBR 9004-1(b)<br>HELLRING LINDEMAN GOLDSTEIN<br>& SIEGAL LLP<br>Patricia A. Staiano, Esq.<br>Attorneys for Benjamin A. Stanziale, Jr.,<br>Chapter 11 Trustee<br>103 Eisenhower Parkway, Suite 403<br>Roseland, New Jersey 07068-1031<br>973.621.9020<br>pstaiano@hlgslaw.com | |
| In Re:<br><br>AVRUMI LUBIN a/k/a Josh Lubin,<br><br>Debtor. | Case No. 26-17342 (EJO)<br><br>Judge: Hon. Eamonn James O'Hagan, U.S.B.J.<br><br>Chapter 11 |
| BENJAMIN A. STANZIALE, JR., CHAPTER 11 TRUSTEE FOR AVRUMI LUBIN a/k/a Josh Lubin,<br><br>Plaintiff,<br><br>vs.<br><br>AVRUMI LUBIN, SPIN CAPITAL, LLC, TETON LIFE, LLC, TETON FUNDING, LLC, TETON FUNDING GROUP, LLC, and JL SPECIAL INVESTMENTS, LLC,<br><br>Defendants. | Adv. Pro. No. 26-01494 (EJO)<br><br>Hearing date: October 22, 2026 |

# SUPPLEMENTAL CERTIFICATION OF BENJAMIN A. STANZIALE, JR., CHAPTER 11 TRUSTEE FOR AVRUMI LUBIN A/K/A JOSH LUBIN IN SUPPORT OF APPLICATION FOR ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINTS AND IN RESPONSE TO OPPOSITION TO THE ORDER TO SHOW CAUSE FILED BY THE DEBTOR AND GAVRIEL YITZCHAKOV

Benjamin A. Stanziale, Jr., of full age, certifies as follows pursuant to 28 U.S.C. §1746 based upon information received in this case to date:

**A. Response to Debtor Opposition**

1. I make this supplemental certification in lieu of live testimony at the October 22, 2026 hearing and in response to Debtor/Defendant Avrumi Lubin's ("Debtor") opposition to the entry of the Order to Show Cause (ECF no. 9, ECF no. 10 and ECF no. 12) and the opposition filed by Gavriel Yitzchakov ("Yitzchakov") (ECF no. 14).

2. According to ECF no. 9, Debtor seeks clarification on three subjects. As to the first, no party has directed, or sought to direct me (except for the Debtor) to do anything in this bankruptcy or in any litigation in which the Subject Entities (as defined in my previously filed documents in support of the entry of the Order to Show Cause) are a party. The Debtor, however, through a myriad of emails, has sought to direct me and my counsel to do many things and has been advised that I and my counsel do not represent him.

3. Debtor also seeks production of instructions or requests that the Trustee and his counsel have communicated to counsel appearing for the Subject Entities in other courts since October 15, 2026. I simply had my counsel contact known counsel for the Subject Entities and contra parties advising of the entry of the Order to Show Cause and, in certain instances, request that existing counsel to the Subject Entities notify the courts of the entry of the Order to Show Cause. Also, as the Debtor is fully aware, I authorized counsel in Texas to include Subject Entity Spin in the filing of opposition to involuntary debtors' motion to dismiss in the case of In re Cole Johnson and Cord Henry Johnson, Case No. 26-43993 MXM pending in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the "Johnson Case"). The Debtor has been apprised of these communications.

4. The Debtor seeks the "factual basis" for "litigation-control relief". My Complaint (ECF no. 1) speaks for itself. Neither I nor my professionals have taken any actions in contravention of the Order to Show Cause. The Debtor and the Subject Entities are engaged in

numerous litigations (including some appeals) in courts in New Jersey, New York, Michigan Texas, Tennessee, and Florida. The Debtor's ownership and managerial interests in the Subject Entities are assets of this estate. The Debtor has failed to prevail in certain of these cases (on his behalf, personally and on behalf of the Subject Entities) and has given me a "document dump" in response to very specific questions posed by me and my counsel relating to terms of retention for his and counsel to the Subject Entities. For example, when I asked the Debtor specifics regarding the circumstances of retention of counsel for Subject Entity Spin Capital, LLC ("Spin") in Michigan, he advised that counsel was retained just last week and was paid by credit card. Knowing that the Debtor listed approximately $67 in his bank account when he filed his petition and schedules, I asked the source of the funds used to pay counsel. I was told it was by credit card and I still don't know the source of the funds. Furthermore, counsel advised me that when the Debtor retained him, he was not told that the Debtor was in bankruptcy.

5. The Debtor wants a "court directed process for independent defense counsel". I don't know what the Debtor thinks is going on here. I am an independent fiduciary, appointed by the United States Trustee, with such appointment confirmed by this Court. I have advised the Debtor that I need time to assess the various litigations to determine what is beneficial to this estate and its creditors. The Debtor himself has emailed me and requested verbally to seek stays of litigation against Spin. More importantly, there are potentially valuable claims to be made on behalf of one or more of the Subject Entities. As the Debtor is fully aware, I and my counsel have contacted or have been contacted by both counsel that represent the Subject Entities in these actions as well as contra-party counsel. I have never advised the Debtor that I seek to appear in these cases <u>pro</u> <u>se</u>. Furthermore, neither I nor my counsel would appear in courts to which we are not admitted (except upon proper <u>pro</u> <u>hac</u> <u>vice</u> application); necessitating the

retention of special counsel in cases that must be addressed. Of course, this will also necessitate the financial resources to properly retain counsel.

6. In ECF no. 10, it appears that the Debtor is requesting assurance that I properly retain special counsel. Why the Debtor would presume that I would act outside the rules of the court confuses me. The "independent defense counsel procedure" is simply the proper applications to retain special counsel that I would file in the ordinary course. I request a court order so that no one – no court, counsel, adversary or the Debtor himself – is uncertain as to my authority to manage the existing cases, perhaps bring new cases and retain counsel to move forward. Right now, there is chaos. My hope is to bring order to this case.

7. The Debtor wants to reap the benefits of bankruptcy protection (for him and the Subject Entities) but only on his terms. He wants all the benefits and none of the burdens. He refuses to acknowledge the effect of the appointment of the Chapter 11 Trustee. He continuously and relentlessly sends missives to me and my counsel, directing us to take positions and perform services on behalf of Spin, usually providing us with deadlines to do so and threatening to take action on his own if we do not meet his deadlines. He has also instructed that we seek to have the stay used to Spin's benefit in litigations which, ironically, is part of the relief I seek here.

8. The Debtor complains that I did not tell him I was seeking interim restraints, despite the fact that I and my counsel told the Debtor and many of the counsel involved in various litigations that we were seeking to extend these proceedings and would be filing an Order to Show Cause and Verified Complaint (including a discussion with Yitzchacov's counsel informing him of same several weeks ago).

9. The Debtor also wants more time to get counsel – something he should have been doing since the entry of the Order granting motion for withdrawal of counsel entered on September 24, 2026. It is not an acceptable excuse for delay now.

10. As to the appropriate party to prosecute and defend (and perhaps settle) actions on behalf of the Subject Entities, I note that judgments in both Michigan and Florida against Spin and the Debtor respectively were based in part on rejecting the credibility of the Debtor's positions. In addition, counsel for the debtors in the Johnson case have asserted that Spin was not properly represented by counsel (which is not true) but upon information and belief the Debtor may have side-stepped counsel and had independent communication with counsel to the Johnsons. Either way, either Spin is properly represented by counsel or if the Debtor asserts Spin is not represented by counsel, then the Debtor (a non-attorney) has been improperly acting on behalf of Spin. I hope this is not the case. The Debtor is not an attorney – he cannot represent the Subject Entities.

**B. Response to Yitzchakov Opposition**

11. Interestingly, in his Opposition, Yitzchakov (who did not submit a Certification) does not challenge the following:

a. he does not deny that Subject Entity Teton Life, LLC's ("Teton Life") only business is the prosecution of claims formerly held by Spin, based on certain MCA transactions and that its only asset is that litigation and the collateral associated with it held by a Receiver in the New York case Teton Life, LLC as assignee of the rights of Spin Capital, LLC v. Golden Foothill Insurance Services, LLC et al., Index No. 65058212022 (the "New York State case");

b. he does not deny that Spin acquired the loans now assigned to Teton from his businesses;

c. he does not deny that the Debtor moved or attempted to move the assets out of Teton to Subject Entity JL Special Investments, LLC ("JL") without consideration;

d. he does not deny that in an effort to undercut the Debtor's 50% ownership a management rights in Teton Life he agreed to a settlement with, what I have in prior pleadings referred to as the "Leer Parties," to seek a receiver over Teton Life (which, in effect is the relief that I am proposing); and

e. he does not deny that claims against Teton Life (of which there are many) could grossly adversely impact this estate.

12. What Yitzchakov is apparently seeking to do is use this process as a vehicle for challenging the clause in the Teton Life Operating Agreement giving the Debtor control over litigation decisions in the New York State case, which I submit I succeed to as the Debtor's Trustee.

13. I submit that the extension of the automatic stay to Teton Life inured to it and its shareholders benefit. Both the Debtor and Yitzchakov have engaged in legal maneuvering against each other, to the detriment of Teton Life and its creditors. Yitzchakov's failure to deny that he has (potentially in violation of the Teton Life Operating Agreement) agreed to dispose of Teton Life's assets with the Leer Parties and seek a state court receiver over Teton Life decidedly shows that there is in fact a risk of immediate and irreparable harm to this estate without the stay and vesting me, as Trustee, rather than the Debtor with management rights.

14. With respect to the management rights for Teton Life, either Yitzchakov does not understand or has misrepresented the position I take regarding same – that I succeed the Debtor's rights, including the sole right to manage the New York State case, <u>as to which Yitzchakov has the right to consult in good faith</u>. I welcome such consultations – there will be an independent

party (as Yitzchakov as requested) to do so, and in good faith. In no way have I sought to undo the terms of the Operating Agreement.

WHEREFORE, I respectfully request that the Court enter the requested relief. I certify under penalty of perjury that the foregoing information is true and correct.

Dated: October 21, 2026

/s/ Benjamin A. Stanziale, Jr.
BENJAMIN A. STANZIALE, JR.