HL GS Hellring Lindeman Goldstein & Siegal LLP

COUNSELLORS AT LAW

103 EISENHOWER PARKWAY
SUITE 403
ROSELAND, NEW JERSEY 07068-1031

T: +1.973.621.9020 | F: +1.973.621.7406
www.hlgslaw.com

BERNARD HELLRING (1916-1991)
MICHAEL EDELSON
ROBERT S. RAYMAR Δ
STEPHEN L. DREYFUSS Δ
PATRICIA A. STAIANO
SHERYL E. KOOMER
ERIC R. PERKINS
BRUCE S. ETTERMAN Δ
MATTHEW E. MOLOSHOK Δ
DAVID N. NARCISO Δ
CORINNE B. MALONEY Δ
CHRISTY L. SAALFELD Δ

Δ NJ & NY + FL

JONATHAN L. GOLDSTEIN Δ +
SPECIAL COUNSEL

CHARLES ORANSKY Δ
ROBERT B. ROSEN Δ
JUDAH I. ELSTEIN Δ
JOHN A. ADLER Δ
OF COUNSEL

MARGARET DEE HELLRING (RET.)

October 21, 2026

By ECF

Honorable Eamonn James O'Hagan
United States Bankruptcy Court
Clarkson S. Fisher U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

Re: Avrumi Lubin a/k/a Josh Lubin
Case No. 26-17342 (EJO)
- - - - - - - - - - - - - - - - - - - - - -
Benjamin A. Stanziale, Jr., Ch. 11 Trustee for
Avrumi Lubin a/k/a Josh Lubin v. Avrumi Lubin. et. al.
Adv. Pro. No. 26-1494 (EJO)
Hearing Date: October 22, 2026

Dear Judge O'Hagan:

This firm represents Benjamin A. Stanziale, Jr., the Chapter 11 Trustee ("Trustee") for Avrumi Lubin ("Debtor" or "Lubin") and Plaintiff in the above-referenced adversary proceeding. Please accept this letter brief in lieu of a more formal memorandum of law in response to the opposition to the entry of the Order to Show Cause filed by the Debtor (ECF no. 9, ECF no. 10, and ECF no. 12) as well as the opposition filed by Gavriel Yitzchakov ("Yitzchakov") (ECF no. 14).

**A. As to the Debtor's objection, the temporary relief was appropriately granted under Rule 65(b)(1).**

1. The papers showed that there were multiple proceedings against the Subject Entities that are in advanced stages, and rulings against the Subject Entities could irreparably harm the Debtor's Estate by stripping the Subject Entities of assets, causing adverse collateral estoppel effects, and other taint. See, Whittaker, Clark & Daniels, Inc. v. Brenntag (In re Whittaker, Clark & Daniels, Inc.), Nos. 23-13575 (MBK), 23-01245 (MBK), 2024 Bankr. LEXIS 2608, at *24-25 (Bankr. D.N.J. Oct. 24, 2024), cited in the Trustee's opening brief.

2. The relief granted on a temporary basis essentially preserved the status quo for the limited period needed to give notice to many parties, including counsel for the Subject Entities and contra-party counsel, and preserved their right to apply to lift the restraints, or otherwise be heard in a very short period of time. (The Order was entered on October 15, 2026, and will be heard within seven days.) As such it causes no material harm to any party in interest, while helping to insure no irreparable harm to the Estate. See, e.g. In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd., 238 B.R. 25, 67-68 (S.D.N.Y. 1999) (by analogy to Fed.R.Civ.P. 65(b) granting comity to ex parte TRO issued by a Bermuda court to stay conduct that threatened the proposed resolution of an insolvency administration, where the parties could be heard within 7 days as to whether to grant permanent relief.) Compare Lubin's cited case, Hope v. Warden County Prison, 972 F.3d 310 (3d Cir. 2020) (allowing immediate unconditional release of multiple prisoners without prior notice and opportunity for the government to be heard).

3. The Debtor is estopped to challenge the necessity for immediate relief and the risk of irreparable harm: Lubin repeatedly demanded that the Trustee take immediate action in multiple courts to seek stays in favor of the Subject Entities, staying claims against the Subject Entities. Lubin asserted that this Estate would suffer immediate irreparable harm to this Estate, if the actions proceeded against the Subject Entities, and the Trustee did not act. He cannot turn around now and say immediate relief was inappropriate. Nor can Lubin seriously complain about notice where he is being granted a full opportunity to be heard, and has failed to point to any action in the one week interval that has occurred that causes him any actual injury.

**B. As to the Yitzchakov Objection**

4. As for Yitzchakov, one branch of the temporary relief pertains to staying actions regarding Teton Life. Yitzchakov can point to no actual (as distinct from theoretical) harm that Teton Life suffers from a stay, while the benefits are self-evident. Yitzchakov's main argument is that the order impacts management of Teton Life. He acknowledges, however, that the Debtor holds the sole right of management of the lawsuits which are the matter of immediate concern, with Yitzchakov only possessing a right to consultation. He is not impeded in consulting with the Trustee by any provision of the order and the Trustee has not and will not refuse any such consultation. Additionally, Yitzchakov points to no Teton management decisions that needed to be made in the interim, so can point to no actual harm from that order, whether characterized as a change in the status quo or simply preservative of the status quo.

5. Yitzchakov's overall position that the management rights cannot vest in the Trustee is contradicted by all of the cases cites in our prior brief. See In re Allentown Ambassadors, 361 B.R. 422 (Bankr. E.D. Pa. 2007) (operating agreement executory because the debtor had continuing management obligations and members had obligations to make contributions; ipso facto termination violates the Bankruptcy Code); Cardiello v. United States (In re Garbinski), 465 B.R. 423, 424 (Bankr. W.D. Pa. 2012) (because § 541(c)(1) invalidates ipso facto provisions, even if derived from state law, trustee could assume all rights of the debtor, not just the debtor's economic interest); In re McSwain, 2011 Bankr.

LEXIS 3921 (Bankr. W.D. Wash. 2011) (rights to vote on major decisions for the LLC constitutes an executory agreement, and trustee may continue to exercise those rights); King v. Johnson (In re Johnson), 2021 WL 5496731 (Bankr. E.D. Va. Nov. 22, 2021) (because right to participate in management is part of the "property" of the debtor, ipso facto termination of membership leaving only economic interest violates Section as 541(c)(1) a "forfeiture, modification, or termination of the debtor's interest in property."); In re Dixie Management & Investment, L.P., 474 B.R. 698, 700 (Bankr. W.D. Ark. 2011) (same; bankruptcy disassociation as a full member violates the ipso facto provision and to extent this result derives from Arkansas statute, bankruptcy law supersedes). Yitzchakov seeks to distinguish only one of those cases, Allentown, but he has misread the decision. First, the bankruptcy court clearly ruled that the North Carolina statute's prohibition on assignment of interests to a trustee was preempted by bankruptcy law because the statute did not involve a sufficiently clear policy against assignability, Allentown, 361 B.R. at 455. Second, the only reason that the trustee was not granted summary judgment allowing immediate assumption of the management of the LLC in Allentown was because the entity operated a baseball team in a baseball league, whose rules required new management have sufficient baseball experience to satisfy the other owners in the league. The court noted that some record evidence showed that the league had waived the experience requirement in some instances, and as such it might not be a valid basis to resist assignment to the trustee, presenting a fact question. Id. at 455-456. However, concerns of that type have nothing at all to do with the management of Teton, which is not an operating business, does not depend on participation in a sanctioning organization, and exists only to litigate assigned claims and potentially liquidate related collateral. Trustee Stanziale has a long, distinguished track record on those types of activities – it is what bankruptcy trustees do. Finally, Yitzchakov's suggestion that the management right should be assignable because of the "confidence" he reposed in Lubin is contradicted by Yitzchakov's agreement with the Leer Parties to seek a receiver over Teton Life, precisely because he lacks confidence in Lubin's management.

## C. Grounds for extension

6. The Debtor asserts that the Court should not apply collateral estoppel to the finding that Spin is under his domination and control made in the Florida Charging Order, for reasons that we are having a hard time deciphering. Somehow, it appears he seems to think that if the issue of veil piercing was not an issue in the jury trial that gave rise to the verdicts in favor of Franklin and FVP against Lubin individually, the fact that a judge in subsequent proceedings had to consider whether to authorize foreclosure of his interest in Spin and did so upon the finding that Spin was his alter ego should not receive collateral estoppel effect. That is not so. Similarly, Lubin's suggestion that the charging order proceedings in which he testified related was only about "records production" (ECF no. 12 at p. 23) confirms that the Florida court was actually concerned with whether the books and records of Spin were sufficient to show that it actually had a separate existence from the Debtor. Lack of adequate records is a standard issue in alter ego cases.

7. The question which both the Debtor and Yitzchakov raise is whether a similar domination and lack of separateness pervades the other Subject Entities. The short

answer is clearly yes as to Subject Entities JL Special Investments, LLC (“JL”), Teton Funding, LLC (“Teton Funding”) and Teton Funding Group, LLC (“Teton Funding Group”). Those entities are all owned solely by the Debtor. Yitzchakov asserted in the New York Supreme Court that JL was an instrument of fraud, intended to strip assets from Teton Life, and the Debtor asserts that JL is no longer in operation. The Debtor has similarly asserted that Teton Funding and Teton Funding Group were essentially conceptual pockets into which he might have conducted new activities but they were not active. If so, best they fall under the control of Trustee Stanziale to avert mischief.

8. As for Teton Life, the Debtor and Yitzchakov (who did not submit an affidavit or declaration) assert that there is a lack of factual basis to extend to Teton Life. The Trustee suggests that if the Court does not wish to grant summary disposition of the extension complaint in the Trustee’s favor, the Court can leave the interim orders in place and set a date for a full hearing after full discovery of the situation of Teton Life, the relationships between Yitzchakov and Lubin and related matters. We can observe the following that supports summary relief now: (1) Yitzchakov and Lubin have each sought to undermine the other in respect to Teton Life – in Lubin’s case by attempting to move its assets to JL without consideration, and in Yitzchakov’s case, by attempting to settle Teton Life’s claims with the Leer Parties on terms that direct all settlement proceeds to Yitzchakov’s entities, and appoint a receiver over Teton Life. The Trustee would operate in essentially the same manner as a receiver would, so we are confused as to his grounds for opposition.

For the foregoing reasons, the Trustee respectfully requests that the Court grant the requested relief.

Respectfully submitted,

/s/ Patricia A. Staiano

Patricia A. Staiano

PAS:bml

cc: Benjamin A. Stanziale, Jr., Trustee (by email)
Avrumi Lubin (by email)