# EXHIBIT F

Email, October 26, 2026, 11:24 PM, Lubin to Wentworth-Ping, Staiano, Moloshok, Stanziale and Stevens (cc Wurtzel and the U.S. Trustee), "Re: Teton Life — written clarification of filing pause, claimed authority, and protective action" — EXCERPT (the policy schedule and the paragraphs discussing the reported amounts are omitted as marked), with the October 13, 2026, 2:04 PM message from Teton Life's counsel that it carries

Stanziale v. Lubin, Adv. Pro. No. 26-01494 (EJO) — Certification of Avrumi Lubin in support of the Rule 9023 motion

Exhibit F (excerpt)

| | |
|---|---|
| **From:** | Josh Lubin <josh@tetonfunding.com> |
| **Sent:** | Monday, October 26, 2026 11:24 PM |
| **To:** | Alexander P. Wentworth-Ping <awping@schlamstone.com>; Patricia A. Staiano <pstaiano@hlgslaw.com>; Matthew E. Moloshok <mmoloshok@hlgslaw.com>; ben <ben@stanzialelaw.com>; fstevens@klestadt.com |
| **Cc:** | Joshua Wurtzel <jwurtzel@schlamstone.com>; Rachel Wolf <rachel.wolf@usdoj.gov>; Ardelean, Kirsten K. (USTP) <kirsten.k.ardelean@usdoj.gov>; Feinman, Heidi A. (USTP) <Heidi.A.Feinman@usdoj.gov> |
| **Subject:** | Re: Teton Life — written clarification of filing pause, claimed authority, and protective action |

Ben, Pat, Matt, Alex, Joshua and Fred,

I am restoring the earlier recipients so there is one written record of the authorization, responsibility and next steps for protecting the policies and proceeds.

Alex's October 13 email stated that the firm would revisit its filing pause following the Trustee's application and take direction from the person authorized to direct Teton. The October 15 and October 23 orders have now been entered. I request that the Trustee exercise the interim authority provided by those orders and give Joshua and Alex written consent and direction to promptly prepare and file a properly supported preservation Order to Show Cause in the New York action.

The requested OSC should address:

- The New York stay. Submit the October 7 Tennessee stay-relief order, Doc. 109, and request the modification or clarification of Justice Bannon's stay necessary to permit the requested nondebtor preservation proceedings, consistent with the Tennessee order's limitations and other applicable orders.

- The Receiver's powers. Enforce the existing Receiver Order and seek clarification or expansion where necessary over the 24 additional policies identified in Joshua's August 31 letter, NYSCEF 1476, listed below, together with any additional specifically identified policies supported by the record. This should address possession and control, carrier access, records, collection of proceeds, and necessary preservation measures under NYSCEF 245 and CPLR 6401(b). Existing protections for the policies already enumerated in the Receiver Order should remain in place.

- Immediate protection of the policies and proceeds. Seek appropriately supported interim restraints against transfers, surrender, assignments, beneficiary changes or dissipation. The requested relief should expressly permit authorized premium payments, feasible reinstatement and necessary preservation expenses.

- Preservation of evidence. Seek preservation of relevant documents and communications concerning the policies, transfers, premiums, claims and proceeds, including potentially privileged communications, without requiring their disclosure or waiving privilege.

Premium payments while competing claims are resolved

Pending resolution of ownership, lien priority and entitlement to proceeds, please have the Receiver continue necessary premium payments already authorized and seek express interim authority for the additional identified policies as needed. The purpose is to preserve value while those disputes are decided—not allow otherwise preservable policies to lapse while the parties litigate their respective rights.

The record identifies a potential funding source. Joshua's August 31 letter reports that, as of July 31, the Receiver held $9,164,077.17 in Wilmington Trust and $214,638.61 in Flagstar. NYSCEF 793 authorizes use of the M&T funds for obligations established by the Receiver Order or other orders of the court, subject to its minimum reserve of $549,166.21. Please obtain current balances and confirm any subsequent restrictions.

The OSC should expressly address use of available receivership funds for necessary premiums and feasible reinstatement, subject to current carrier information, applicable reserves and court-approved safeguards. Please request that preservation payments not adjudicate or concede ownership, priority, entitlement, or any reimbursement or allocation claim. For policies confirmed to have matured or terminated, or for which reinstatement is not feasible, the focus should instead be preserving proceeds, benefit claims and records.

As previously reported, Zurich verbally confirmed to me that two policies with $10 million face amounts each had lapsed. Please obtain written carrier confirmation, the present status and any reinstatement deadlines. Immediate carrier inquiries and protective measures already authorized should not wait for completion of the OSC.

***[EXCERPT - OMITTED AS MARKED: the policy schedule that follows at this point, and the four paragraphs discussing the reported amounts and discrepancies, are omitted.]***

Written authorization and plan

Please provide a written response by tomorrow, October 27, identifying:

- Whether the Trustee authorizes Joshua and Alex to proceed.

- The responsible attorney, immediate protective steps, and proposed draft and filing dates.

- How counsel will coordinate with the Receiver concerning policy status and funding.

- Any requested step that is declined, the specific reason, and the alternative protection that will be put in place.

These preservation measures should be addressed independently of the unresolved ownership and control disputes. If a specific order prevents a particular step, please identify that restriction and the proposed procedure for resolving it.

I remain available for a call, but I need the authorization, decisions and timetable confirmed in writing. Please keep privileged legal advice off this shared chain.

Nothing in this request withdraws my objections to the Trustee's complaint or the existing orders.

Thank you,

Josh Lubin

732-608-4905

josh@tetonfunding.com

| | |
|---|---|
| **From:** | "Alexander P. Wentworth-Ping" <awping@schlamstone.com> |
| **Sent:** | Tuesday, October 13, 2026 at 2:04 PM |
| **To:** | Josh Lubin <josh@tetonfunding.com>, pstaiano <pstaiano@hlgslaw.com> |
| **Cc:** | Joshua Wurtzel <jwurtzel@schlamstone.com> |
| **Subject:** | RE: Teton Life — written clarification of filing pause, claimed authority, and protective action |

Hi Josh,

Apologies to everyone for cluttering your email inbox as I see no reason to copy all these other parties, but we just wanted to make sure there was a clear response from us on this thread.

We can provide more insight on a separate email chain, but in short, our position remains the same: Given the uncertainty about who has authority to direct the company, which we believe will be resolved imminently following the Trustee's anticipated filing, we do not think it is prudent to make further filings (unless we deem it to be an emergency) until the bankruptcy court clarifies the issue moving forward.

We can revisit this temporary pause in a few days depending on how the Trustee's OSC and request for interim relief is resolved. Following that request, we will of course take direction from whomever has authority to direct Teton.

We encourage you to get bankruptcy counsel to handle this and represent your interests in the bankruptcy case.

Alexander Wentworth-Ping

Counsel

***[OMITTED AS MARKED: the earlier messages in the chain.]***

---

*[Reproduced from the Movant's mailbox (josh@tetonfunding.com). Omitted messages and passages are marked above. Attachments are omitted.]*