# EXHIBIT K

Email, October 7, 2026, 1:48 PM, Lubin to Staiano (cc Moloshok, Stanziale), "In re Lubin, 26-17342-EJO — Florida Appeal 4D2025-3564: Trustee position before Oct. 22, funding, and three estate-claim questions" — item 4(b) (attachments omitted)

Stanziale v. Lubin, Adv. Pro. No. 26-01494 (EJO) — Certification of Avrumi Lubin

Exhibit K

**From:** Josh Lubin <josh@tetonfunding.com>
**Sent:** Wed 10/7 1:48 PM ET
**To:** pstaiano@hlgslaw.com
**Cc:** mmoloshok@hlgslaw.com; ben@stanzialelaw.com
**Subject:** In re Lubin, 26-17342-EJO — Florida Appeal 4D2025-3564: Trustee position before Oct. 22, funding, and three estate-claim questions

Ben, Pat and Matt,

As Matt asked, this is one organized request. It covers the Florida appeal before the October 22 hearing.

1. The Court is waiting for the Trustee's position.

- August 6, 2026 (Tr. 6:12–17): the Court said the Chapter 11 trustee "will, no doubt, have a position on the stay relief issue, and assuming stay relief is granted, in terms of his or her level of participation in that appellate litigation."

- September 17, 2026 (Tr. 35:12–36:4; 36:11–37:6): the Court declined to grant stay relief "without giving the Chapter 11 Trustee an opportunity to get up to speed and to take a position." It denied FVP's request for a carve-out for the Florida appeals and adjourned FVP's motion (Dkt. 33) to October 22.

The transcript pages are attached.

2. Why the appeal matters to the estate.

- Appeal No. 4D2025-3564 covers both final judgments: FVP (October 3, 2025) and Franklin (October 6, 2025). Together they are about $14.8 million, the two largest claims against the estate.

- The appeal is stayed (Dkt. 80). The next status report there is due about November 20.

- Two Florida motions to vacate are still pending and undecided: January 27, 2026 (Filing # 240413164, aimed at the August 14, 2025 order) and February 16, 2026 (Filing # 241863897, aimed at the final judgments). They cannot be decided while the appeal is pending unless the Fourth DCA allows it, and it declined on May 22, 2026. If any new motion under Florida Rule 1.540(b) is to be filed, November 5, 2026 may be the last day. That date is not certain; a Florida lawyer should confirm it. Please tell me the Trustee's position on these motions and that date.

- The June 19, 2026 initial brief, which I filed without a lawyer, addresses only the August 14, 2025 settlement-endorsement order. Two issues raised in the trial court could be added by a motion for leave to file an amended initial brief:

(a) Claim-splitting / res judicata based on the Michigan case (Franklin v. Spin, Oakland County No. 22-193300). My trial counsel raised it on September 9, 2025 (Filing # 231155328; R. 55283). Paragraph 6 of the September 26, 2025 order preserved it.

The record behind (a):

- Michigan (Franklin v. Spin and Hi Bar, No. 2022-193300-CB): Franklin's March 25, 2022 complaint had no fraud count. On March 15, 2023, Franklin asked for leave to add (1) a fraud count against Spin (proposed Count VI: that Spin falsely said Excell's merchant cash advance had been paid off), (2) a conspiracy-to-commit-fraud count against Spin and Hi Bar (Count VII), and (3) allegations that Spin and Hi Bar were alter egos. The proposed complaint's fraud and alter-ego allegations were about my alleged conduct (¶¶ 42–43, 52, 57–63). On April 4, 2023, the court denied the motion as futile, "For the reasons articulated in the Response." It found that "The factual predicate for an alter ego theory is simply lacking." The case ended in a final judgment against Spin on April 1, 2025, now on appeal (No. 379467).

- Bankruptcy court (Bankr. S.D. Fla. Adv. No. 22-01218): on April 19, 2023, Franklin asked the court to "confirm that it is not adjudicating" its fraud, tortious interference and civil conspiracy claims against Hi Bar (DE 386). When the case was dismissed on April 10, 2024, Franklin's counsel asked that the dismissal be "without prejudice," referring to "litigating all the issues in state court." The judge said: "I don't intend it to be a resolution of any claim." (Tr. 8:7–23.)

- Michigan (Franklin v. Lubin, No. 2024-206790-CB): on April 15, 2024, Franklin sued me personally, including for fraud (¶ 156), in nearly the same words as the fraud count later tried against me in Florida (Count 7, ¶ 274). I was never served.

- Florida: on August 25, 2025, Franklin asked to dismiss its claims against Spin as moot, citing first the Michigan judgment. The September 18, 2025 agreed order dismissed them "as moot with respect to Spin only." Franklin then tried the same fraud claim against me.

Michigan treats a denial of leave to amend as futile as a decision on the merits that has res judicata effect (Martin v. Michigan Consolidated Gas Co., 114 Mich. App. 380, 383–84 (1982)). Florida courts must give res judicata effect to another state's judgment entered before the Florida final judgment (Baron v. Baron, 454 So. 2d 86, 88 (Fla. 4th DCA 1984)). The Michigan judgment (April 1, 2025) came before Franklin's Florida judgment (October 6, 2025). The open questions for appellate counsel are privity (I was not a party to the 2022 Michigan case), whether the April 2023 ruling reached the fraud count against Spin (the order denied the whole motion, but its written reasons discuss alter ego and the claims against Hi Bar), and preservation (the issue was reserved but never ruled on). The Michigan order, Franklin's motion with the proposed complaint (without its 101 pages of exhibits), and DE 386 are attached. On request I can send the full 131-page motion and Hi Bar's March 29, 2023 response, which the order relies on.

(b) Hi Bar settled with FVP and Franklin before trial but stayed in the case as a named defendant at trial (see Dosdourian v. Carsten, 624 So. 2d 241 (Fla. 1993)).

- Both issues need trial transcript excerpts. Bailey & Entin quoted about $3,030 at regular service for five excerpts. The full trial is about $15,605.

3. Who should pay for the appeal.

You asked whether I would pay for the appeal separately, and not from money the estate recovers. I believe the estate should pay for it, because the appeal protects the estate:

- The FVP and Franklin judgments are about $14.8 million of claims against the estate, the two largest.

- Only the Florida courts can change those judgments, and the appeal is the main way to do it. The Bankruptcy Court must give them the same effect a Florida court would (28 U.S.C. § 1738).

- Every dollar the appeal removes from those claims helps every other creditor.

- The cost is small by comparison: about $3,030 for the five transcript excerpts (about $15,605 for the full trial), plus appellate counsel.

I ask the Trustee to consider employing appellate counsel for the estate, with the Court's approval (11 U.S.C. § 327), and paying the transcripts as an estate expense.

If the Trustee decides the estate will not pay, please tell me in writing and explain why. In that case I would look for a third party to pay appellate counsel and the court reporter directly, disclosed to the Court. My own earnings after the filing are estate property (11 U.S.C. § 1115(a)(2)), so I cannot use them. Before anyone commits, I would ask for a short stipulation, approved by the Court, that:

(a) allows appellate counsel I retain to prosecute 4D2025-3564, including a motion for leave to file an amended initial brief;

(b) grants stay relief limited to that purpose;

(c) provides that the Trustee will not settle, withdraw or abandon the appeal, or compromise the FVP or Franklin judgments, without notice to me and Court approval; and

(d) confirms that any benefit from the appeal stays with the estate.

4. Three estate-claim questions.

Please confirm in writing whether the Trustee will evaluate the following:

(a) Avoiding FVP's charging-order liens under 11 U.S.C. § 547(b). The Broward orders of May 15 and June 11, 2026 state that the liens attached as of May 5 and May 19, 2026. Both dates are within 90 days before the June 25, 2026 petition.

(b) The amount of FVP's and Franklin's claims.

I understand from our call that the cars themselves are gone, and I am not asking the Trustee to chase the cars. I am asking for the records, now. They matter in four ways:

- The amount of FVP's claim. The cars were FVP's listed collateral. Every listed car that was sold or turned over should be credited against what FVP claims. If it was not, FVP's claim against the estate may be too high, and the other creditors pay for that.

- The pending Florida motions to vacate (January 27 and February 16, 2026). The records are evidence there.

- Possible claims of the estate against whoever received the cars or the money.

- Time. Records get harder to find every year (dealers, auction companies, DMV files, closed bankruptcy cases), and some limitations periods may be running.

On April 22, 2022, FVP's counsel told the Broward court that the Excell trustee would collect and safeguard the vehicles (Tr. 8:21–9:11). The Excell docket instead shows that trustee abandoning some of FVP's listed cars (Excell Dkt. 76) and turning others over to FVP itself (Dkt. 412) and to FVP's borrowers, the Karma dealers (Dkts. 159, 321).

- FVP's own collateral lists (Exhibit R to its April 13, 2022 filing, # 147663723) show 85 entries totaling $13,315,187. One $340,000 G Wagon is listed twice, so the 84 cars total $12,975,187. These are FVP's listed values, not proven losses.

- In the same filing, FVP listed the cars the Farache parties took (Exhibit S: 36 numbered lines, 32 of them showing a car). Its comparison (Exhibit T) matches 20 of those cars to its collateral lists, worth $4,823,483. Only 16 cars were later auctioned in the AWB case.

- By FVP's own numbers, that leaves roughly 64 listed cars, about $8.15 million at FVP's list values, that the Farache parties did not take. The freeze papers Matt asked for on September 28, which I sent that evening, are part of this picture. I have not found an accounting from FVP for those cars.

- I have found no credit for the listed cars the Excell trustee turned over (Excell Dkts. 159, 321 and 412). I have found no record yet of what happened to 31 listed cars (listed at $2,237,736).

- FVP says all of its credits ($3,209,311.15) come from settling parties. Its sworn schedule in this case (Dkt. 52-1, Ex. A) does not say which line, if any, is the $2,107,548.61 in AWB auction money released under AWB Dkt. 965.

Please ask FVP for a car-by-car accounting of every car that may have been owned, held or financed by Excell or the Karma dealers, not only the 84 on FVP's lists: where each car went, the sale price, who received the money, and how it was credited. If FVP will not provide it voluntarily, I ask the Trustee to use Rule 2004 to obtain it, together with the Excell trustee's

and the AWB trustee's vehicle records and the auction records. I have a list of 36 specific record requests and a schedule of 147 cars ready, and I can send them today. Please also tell me whether the Trustee will object to the amount of FVP's claim (Claim 5) under 11 U.S.C. § 502(b). Franklin has filed no setoff or partial satisfaction against its $6,000,000 judgment.

(c) When the Trustee expects to file the statement of investigation under 11 U.S.C. § 1106(a)(4).

5. Where to find the record.

Most of it is already public on the docket in this case, in my July 21, 2026 filing (Dkt. 44):

- The July 2025 FVP / Franklin / Hi Bar settlement agreement: Dkt. 44-4, Ex. M (pp. 104–115).

- Judge Kimball's August 12, 2025 order (AWB Dkt. 952): Dkt. 44-4, Ex. E.

- Judge Haimes's August 14, 2025 order: Dkt. 44-4, Ex. F, pp. 50–56 (Exhibit A to AWB Dkt. 954).

- Judge Kimball's August 27, 2025 order releasing $2,107,548.61 (AWB Dkt. 965): Dkt. 44-4, Ex. G.

- Broward transcript excerpts: August 13, 2025 (Dkt. 44-4, Ex. H); September 3, 2025 (Dkt. 44-6, Ex. O); September 10, 2025 (Dkt. 44-7, Ex. P).

- The October 23, 2025 agreed order denying my August 25, 2025 motion for clarification of the August 14 order: Dkt. 44-8, Ex. Q.

I can send the full transcripts and the other papers mentioned above on request.

6. Coordination.

When you communicate with the lawyers for Spin, JL Special, Teton Life or Teton Funding, please copy me, as you did on your October 1 email to Stanley Casey. A short written update every week or so, listing which of those lawyers you have contacted, who has responded, and anything you have asked any of them to do or not do, would help me make sure Spin's October 9 and October 15 deadlines are not missed.

7. Timing.

A short written answer by Tuesday, October 13 would let me reflect the Trustee's position in my October 15 papers for the October 22 hearing.

I am writing in my individual capacity.

Josh Lubin

(732) 608-4905

josh@tetonfunding.com

---

*[End of the message as sent. The earlier messages quoted below the signature in the original email, and any attachments, are omitted from this exhibit.]*