**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-1(b)

AVRUMI LUBIN
Defendant, pro se, individually
605 West 42nd Street
New York, New York 10036
Telephone: (718) 570-3796
josh@tetonfunding.com

Case No. 26-17342 (EJO)
Chapter 11
Adv. Pro. No. 26-01494 (EJO)
Judge: Eamonn J. O'Hagan, U.S.B.J.
Hearing: November 10, 2026, 1:00 p.m.
(Teton Life only; ECF No. 21)

In re AVRUMI LUBIN a/k/a Josh Lubin, Debtor.
BENJAMIN A. STANZIALE, JR., CHAPTER 11 TRUSTEE, Plaintiff,
v. AVRUMI LUBIN; SPIN CAPITAL, LLC; TETON LIFE, LLC; TETON FUNDING, LLC; TETON FUNDING GROUP, LLC; and JL SPECIAL INVESTMENTS, LLC, Defendants.

# DEBTOR'S RESPONSE AS TO TETON LIFE, LLC FOR THE NOVEMBER 10, 2026 HEARING AND REQUEST FOR LEAVE

Defendant Avrumi Lubin (the "Debtor"), appearing pro se in his individual capacity, submits this response for the hearing set for November 10, 2026 at 1:00 p.m. on the Trustee's Verified Complaint and Order to Show Cause as to Teton Life, LLC ("Teton Life") (ECF No. 21 at 4–5, Teton Life ¶¶ 1–4). He relies on the accompanying Certification of Avrumi Lubin ("Lubin Cert.") and its Exhibits 1, 2 and 3. He requests leave to file and serve these papers after the ordinary opposition deadline, as explained in Part VI below. Proposed Order A and Alternative Proposed Order B are submitted separately.

**Summary**

Teton Life is not a debtor. It is owned half by the Debtor and half by Gavriel Yitzchakov, who appears here through his own counsel. Its main asset is its case in the New York Supreme Court against the Leer Parties. The Court found that the Debtor has "contractual rights to manage the company subject to consultation with the co-owner" (ECF No. 21 at 2 n.1), and the Trustee has described the same right (Part I below).

If the Court continues any restraint as to Teton Life after November 10, the Debtor asks that paragraph (2) of the Order to Show Cause be narrowed, as to Teton Life only, in the form of proposed Order A or, in the alternative, proposed Order B. Under either order, the Debtor would direct Teton Life's pending cases only through licensed counsel; no settlement or direct or indirect disposition of its rights would occur without this Court's approval; and recoveries would remain segregated, subject only to court-authorized disbursements. Existing receivership custody and authorized preservation expenses would be respected. The Debtor does not ask to appear for Teton Life. He does not concede that the Trustee holds Teton Life's management rights (see ECF No. 21 at 5, Teton Life ¶ 4), and neither proposed order decides that question.

**I. What the Court and the Trustee Have Said About Teton Life**

1. **The October 23 Order.** The Court found that "[t]he Debtor owns a 50% interest in Teton Life, LLC with contractual rights to manage the company subject to consultation with the co-owner" (ECF No. 21 at 2 n.1). It noted that ECF No. 14 was filed on behalf of Mr. Yitzchakov, "who owns a 50% share of Defendant, Teton Life, LLC" (*id.* at 3). It bifurcated the requests as to Teton Life, set this hearing, continued the restraints "as agreed to on the record by counsel to the Trustee and counsel to Teton Life, LLC," and preserved "[a]ll rights, remedies, and defenses as to Teton Life, LLC" (*id.* at 4–5, Teton Life ¶¶ 1–4). The Debtor did not agree to that continuance, and he has not authorized any attorney to appear for Teton Life in this proceeding (Lubin Cert. ¶ 4).

2. **The Trustee's papers.** The Trustee certified that "[u]nder the Teton Life Operating Agreement, management is by the members. However, a specific provision provides that prosecution of the Leer obligations is vested solely in the Debtor, subject to advice of Yitzchakov" (ECF No. 3-1 at 5 n.3). In reply, he referred to "the clause in the Teton Life Operating Agreement giving the Debtor control over litigation decisions in the New York State case" (ECF No. 18 ¶ 12). His letter brief stated that Mr. Yitzchakov "acknowledges . . . that the Debtor holds the sole right of management of the lawsuits which are the matter of immediate concern, with Yitzchakov only possessing a right to consultation" (ECF No. 19 ¶ 4). And at the October 22 hearing, his counsel told the Court that, as to Teton Life, the Debtor "currently has management interest for certain litigation in New York State" (Oct. 22 Tr. 9:20–23).

3. **The operating agreement.** The provision the Trustee described is Section 2.08(d) of Teton Life's Amended and Restated Limited Liability Company Operating Agreement dated August 13, 2025, which the Trustee filed (ECF No. 3-5) (the "Operating Agreement"). Section 2.08(d) describes the New York case at Index No. 650582/2022 "and all related matters" as the "Lawsuit," and provides "that all decisions related to the Lawsuit will be considered to be made in the ordinary course of business and shall not require the approval of Member B. Notwithstanding anything to the contrary in this Agreement, the Members agree to confer in good faith with regard to any settlement opportunity in the Lawsuit" (ECF No. 3-5 at 10). "Member B" is Mr. Yitzchakov (*id.* at 4). The case is now captioned *Teton Life, LLC as Assignee of the Rights of Spin Capital, LLC v. Golden Foothill Insurance Services, LLC et al.*, Index No. 650582/2022 (Sup. Ct. N.Y. County) (the "New York Action").

**II. What the Debtor Asks**

**4. Order A.** If the Court enters any further relief as to Teton Life, the Debtor asks that it be in the form of proposed Order A. Order A (a) applies only to Teton Life and narrows paragraph (2) of the Order to Show Cause (ECF No. 5 at 4); (b) permits the Debtor to direct its pending actions only through licensed counsel of his selection, consistent with Section 2.08(d), including applications to preserve policies, proceeds, claims and records; (c) requires this Court's approval on notice for any settlement or direct or indirect disposition, with good-faith consultation with Mr. Yitzchakov about settlement opportunities; (d) preserves existing receivership custody and authorized payments, and requires any recovery paid to Teton Life to remain segregated, with disbursements only under this Court's order or approved budget; (e) requires copies of filings and thirty-day reports to the Trustee's counsel; (f) leaves the books-and-records provision in place; and (g) reserves ownership and management questions. Necessary relief from other courts' stays or orders must still be obtained.

**5. Order B.** The alternative adds copies and reports to Mr. Yitzchakov's counsel and, where reasonably practicable, seven days' advance notice before a material, non-routine litigation step. Shorter notice is permitted for a court deadline or protection of preservation rights. The Trustee or other member may seek court relief, but an objection alone does not suspend an otherwise authorized step. Only the Court may impose that additional restriction. The settlement and disbursement safeguards remain unchanged.

**6. Other alternatives.** If all required parties expressly consent, the Debtor will submit Order A for entry by the Court. Silence or non-opposition is not treated as consent. If the Court enters neither order, the Debtor asks at minimum for the settlement and disposition protections in proposed paragraph 3 and an express authorization for Teton Life's licensed counsel to seek preservation relief, oppose relief that would surrender its claims, and protect deadlines, subject to the applicable orders of the New York court; and that the Trustee be directed to file, within seven (7) days, a written preservation plan for Teton Life that identifies its counsel and funding, states how it will respond to NYSCEF Nos. 1508-1509, and reports the current status of the insurance policies. The Debtor asks that no disputed assertion of authority by a member or another person be treated as consent by Teton Life to surrender its claims without notice and an opportunity for this Court to resolve the authority question.

7. **Only through counsel.** The Debtor does not ask to appear for Teton Life. "It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel," and "the rationale for that rule applies equally to all artificial entities." *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–02 (1993). Both proposed orders work only through licensed counsel. On November 4, 2026, the Debtor emailed the Trustee and his counsel a memorandum requesting interim protections for Spin and Teton Life and included the filed August 31 letter now attached as Exhibit 3 (Lubin Cert. ¶ 8). That

request is not a court order, and the Debtor does not treat silence as permission.

**III. The Proposed Orders Meet the Concerns the Court Identified**

**8.** The Trustee, as the applicant for continued preliminary restraints as to Teton Life, must support the relief requested. Under *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), preliminary relief requires threshold showings on likelihood of success and irreparable harm, followed by consideration of the remaining equitable factors. The Court cited the "unusual circumstances" standard for extending the stay to a non-debtor (ECF No. 21 at 4, ¶ C (citing *McCartney v. Integra Nat'l Bank North*, 106 F.3d 506, 510 (3d Cir. 1997))). The Debtor recognizes that the temporary restraints remain operative unless modified. He offers the proposed safeguards as a narrower way to address the risks identified by the Court, not as a declaration that the existing orders are ineffective.

9. The Court found that irreparable harm may result "should the litigation impacting the Subject Entities progress without the Trustee's participation and/or yield unfavorable outcomes during this early state of the Trustee's investigation," and that harm was likely "if the Debtor is permitted control and use those entities to move and/or dispose of assets that are currently beyond the Trustee's reach" (ECF No. 21 at 4, ¶¶ D, E). Order A is designed to address both concerns. The Trustee's counsel would receive every filing and a report every thirty days. No settlement or direct or indirect disposition could occur without this Court's order. Recoveries paid to Teton Life would remain segregated, with withdrawals only under a court order or approved budget. Existing Receiver custody and authorized expenses would be preserved. And Teton Life's case would be in the hands of licensed counsel.

**10.** Order A is also limited. It uses the management-and-consultation structure described in footnote 1 as the basis for a proposed interim arrangement, without deciding who presently holds those rights. The stay of litigation against Teton Life, restrictions on transferring its assets, and books-and-records duties remain effective except for the express, limited provisions of the proposed order (ECF No. 5 at 3–4, ¶¶ (1), (3), (4)). The Court would retain control over settlement, disposition and disbursement.

**IV. Section 2.04(c) Need Not Be Decided on November 10**

11. The Debtor agrees with the Trustee (ECF No. 19 ¶ 5) that a provision conditioned on a bankruptcy filing does not take away the estate's interest. 11 U.S.C. § 541(c)(1)(B). Who may exercise the management rights tied to that interest while this case is pending is a separate question. The Debtor disputes the Trustee's position on that question. The Court need not decide it, or the effect of Section 2.04(c) of the Operating Agreement, on November 10, and the Debtor reserves all rights on Section 2.04(c).

**V. Why These Protections Matter Now**

12. **The June 2026 settlement.** The Trustee certified, on information and belief, that, in or about June 2026, Mr. Yitzchakov and BMF reached a settlement with the Leer parties "which essentially divies up the 'State Action Proceeds,'" and that "the Leer Parties, Yitzchakov and BMF agreed to seek to install a receiver over Teton Life" (ECF No. 3-1 ¶ 13(b)). In reply, he argued that Mr. Yitzchakov did not deny having "(potentially in violation of the Teton Life Operating Agreement) agreed to dispose of Teton Life's assets with the Leer Parties and seek a state court receiver over Teton Life" (ECF No. 18 ¶ 13). Exhibit 1 is a "Settlement Agreement and Mutual Release" made as of June 1, 2026 between the "Leer Parties" and the "BMF Parties" (BMF Advance LLC and Mr. Yitzchakov) (Lubin Cert. ¶ 3). The Leer Parties are adverse to Teton Life in the New York Action (Ex. 1, Recitals; ECF No. 3-1 ¶ 9). Teton Life is not identified as a signatory to Exhibit 1, and the Debtor did not sign it or agree to it (Lubin Cert. ¶ 3).

13. **Its terms.** Exhibit 1 recites that Mr. Yitzchakov "is a member of Teton Life LLC ('Teton'), the Plaintiff in the State Action." It then provides:

(a) § 2: "all State Action Proceeds, if any, due and owing to the BMF Parties" in the form of the Yitzchakov Interest are divided in tiers, and proceeds above the tiers that "would otherwise be distributed to the BMF Parties" go "100% to the Leer Parties";

(b) § 4: upon final resolution of the State Action, if the BMF Parties receive less than the "Threshold Amount," including "no State Action Proceeds whatsoever," "the Leer Parties shall direct the Receiver in the State Action . . . to pay the Shortfall Payment to Yitzchakov";

(c) § 5: the Leer Parties "shall not enter into or facilitate any resolution that subordinates, defers, or impairs the BMF Parties' entitlement to the Threshold Amount";

(d) § 6: "Within thirty (30) days of execution of this Agreement, the BMF Parties agree that they shall seek the appointment of a receiver over Teton"; and

(e) § 7(a): the BMF Parties release the Leer Parties "on behalf of themselves and each of their respective predecessors, successors, assigns, affiliates," from claims including "any claim that is or could have been asserted in the Federal Action or the State Action." Section 7(b) is the reciprocal release by the Leer Parties and identifies the BMF Parties' "affiliates (including, without limitation, Teton Life LLC and Redstone Advance Inc.)" among the release recipients; that wording is not an express release by Teton Life.

14. The Debtor does not concede that any release in Exhibit 1 binds Teton Life. He raises Exhibit 1 because it shows why no one should be able to settle, release or give up Teton Life's claims without this Court's order, including the Debtor himself. That is what Order A provides.

15. **The March 2026 emails.** Earlier emails show a related risk (Ex. 2; Lubin Cert. ¶ 5). In December 2025, Mr. Yitzchakov directed payment of an invoice from Teton Life's then counsel in the New York Action, and it was paid by wire. On February 18, 2026, when counsel asked for payment of later invoices, Mr. Yitzchakov wrote: "Zero is going out here." On March 20, 2026, after counsel wrote that it would move to withdraw unless paid, he replied at 12:31 p.m.: "Withdraw today! Lubin haven't been responding to me." At 5:14 p.m., counsel wrote that "our withdrawal (without substitute counsel in place) will likely result in dismissal because corporate plaintiffs must be represented by counsel." At 5:52 p.m., Mr. Yitzchakov replied: "File it today," adding of the Debtor, "I want nothing To Do with him." In May 2026, the Debtor engaged new counsel for Teton Life and paid the retainer himself (Lubin Cert. ¶ 6).

**16.** These facts bear on the requested interim allocation of litigation responsibility while the Court decides the Trustee's complaint. They also explain why the Debtor proposes limits on his own conduct. He reserves claims and defenses concerning Sections 2.08(d) and 6.01 of the Operating Agreement, including any properly supported material-breach argument, without asking the Court to decide those claims at this hearing.

**17. Limited purpose and admissibility.** Exhibit 1 is offered to show what its signatories agreed concerning Teton Life and its case, not to prove or disprove the validity or amount of a claim settled by that agreement. *See* Fed. R. Evid. 408(b). Section 11 also states that the agreement "shall not be admissible in any proceeding for any purpose other than enforcement of the terms of this Agreement" (Ex. 1 at 12). The Debtor did not sign or agree to Exhibit 1. He asks the Court to determine whether that restriction applies to him and to permit the limited use described here; he does not contend that Rule 408(b) by itself resolves that separate question. He is not seeking enforcement or a determination of the agreement's validity in this response. If the Court declines to consider Exhibit 1, he asks it to evaluate the proposed safeguards independently on the existing orders, the Operating Agreement and the preservation issues documented in Exhibit 3.

**17A. Preservation issues already raised by Teton's counsel.** On August 31, 2026, Teton Life's counsel filed a letter requesting leave to seek an order extending or confirming the Receiver's authority over at least 24 additional life-insurance policies that counsel reported may constitute Teton Life's collateral. Counsel identified risks of lapse, surrender, assignment and beneficiary changes while that authority remained unclear. Counsel separately requested leave to seek reimbursement of $1,409,439.56 in principal advances made by Spin Capital, with Teton Life asserting repayment rights as assignee (Ex. 3, NYSCEF No. 1476 at 1–4). The letter identifies issues counsel raised and relief counsel sought; it is not an adjudication of ownership, repayment entitlement, the Receiver's authority, or any policy's present status. The Debtor offers it to support permitting licensed counsel to seek preservation relief while custody, settlement, disposition and disbursement remain subject to court supervision. This response does not ask this Court to expand the New York Receiver's powers or award that reimbursement.

**17B. Preservation and litigation-control issues.** On October 21, the Trustee argued that Mr. Yitzchakov "points to no Teton management decisions that needed to be made in the interim" (ECF No. 19 ¶ 4). The following circumstances support the Debtor's request for express preservation safeguards:

(a) On October 30, 2026, counsel for the intervenor-defendants asked the New York court to sign a proposed "Order Directing Enforcement of Settlement Agreement" concerning terms discussed at the November 25, 2025 conference, whose enforcement the Debtor opposes. If entered, the proposed order would declare those terms binding on Teton Life; distribute $3.5 million from the Receiver's accounts to Cap Factor and the remaining balance, less allowed fees and expenses, to Teton Life; effect releases by Teton Life and Spin, subject to stated exceptions; and dismiss causes of action with prejudice except those against Stefan Leer and rights to enforce the order (NYSCEF Nos. 1508-1509; Supplemental Certification of Avrumi Lubin dated November 4, 2026, ECF No. 33-1 ("Supp. Cert."), ¶ 5; Exs. A-B, ECF No. 33-5). That proposed order does not concern the June 2026 agreement attached here as Exhibit 1.

(b) The Debtor checked the NYSCEF docket on November 4 and found no paper filed for Teton Life after October 9 through that date, including no response to NYSCEF Nos. 1508-1509 (Lubin Cert. ¶ 9A). He asks for express authority and safeguards under which licensed counsel can address preservation needs and pending requests affecting Teton Life.

(c) On October 26 and 28, the Debtor requested written authorization, a preservation plan and current carrier information. Counsel replied on October 28 that they were speaking with counsel and conducting an independent investigation. On October 29, counsel reported that the Receiver advised the policies were "not at risk" and stated, "I will engage with him to confirm in writing." The Debtor has not received a written preservation plan or written carrier information; the quoted replies do not themselves provide policy-by-policy status information or a preservation timetable (Lubin Cert. ¶ 9B; Supp. Cert. ¶¶ 7, 12, Exs. C, H).

(d) On November 3, the Trustee's counsel asked the New York court to "not consider or act on" the Debtor's November 1 application, which sought policy-preservation relief and notice and an opportunity to be heard before action on NYSCEF No. 1509. Counsel's letter states that "the preliminary injunction remains in full force and effect" (Supp. Cert. ¶¶ 8-10, Ex. F). The Debtor recognizes that the October 15 restraints continued as to Teton Life. The October 23 Order separately bifurcated the requests concerning Teton Life and scheduled further consideration for November 10 (ECF No. 21 at 4-5, Teton Life ¶¶ 1-4; Oct. 22 Tr. 26:4-11). These circumstances call for an express, workable preservation process while the parties' rights remain disputed.

**VI. Timing, Leave and Reservation**

**18. Leave and timing.** The Debtor requests leave to file and serve this response and its supporting papers on November 5, 2026, and to have them considered at the November 10 hearing. D.N.J. LBR 9013-2(a)(2) ordinarily requires opposition papers seven days before the hearing, which would make November 3 the deadline. He therefore requests an extension under Fed. R. Bankr. P. 9006(b)(1)(B) and, as appropriate, modification of the local deadline under D.N.J. LBR 1001-1(b). As explained in his Certification, he did not understand the ordinary November 3 deadline; an earlier draft incorrectly treated November 6 as a safe filing date; he learned of the timing problem on November 4 and is submitting these papers on November 5 (Lubin Cert. ¶ 10). He asks the Court to find excusable neglect after considering those circumstances, the two-day delay, its effect on the proceeding, any prejudice, and good faith. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). He does not contend that the absence of a separate deadline in the October 23 Order, or the two-day notice provision for a motion to dissolve restraints, automatically excuses compliance. He requests a reasonable opportunity for the Trustee and other affected parties to respond, on the schedule the Court directs. Existing restraints remain effective unless the Court orders otherwise.

19. The Debtor appears for himself only. He does not speak for Teton Life or any other entity. All rights, remedies and defenses are reserved (ECF No. 21 at 5, Teton Life ¶ 4).

**Conclusion**

The Debtor asks the Court to accept this response and supporting papers under the leave request in paragraph 18 and to enter proposed Order A or, alternatively, proposed Order B as to Teton Life. At minimum, he requests the limited preservation and disposition protections, and the preservation plan, described in paragraph 6. He does not request a final determination of ownership or management rights at this hearing.

Dated: November 5, 2026
New York, New York

AVRUMI LUBIN
Defendant, pro se, individually
605 West 42nd Street
New York, New York 10036
Telephone: (718) 570-3796
josh@tetonfunding.com