# EXHIBIT 1

Settlement Agreement and Mutual Release, made as of June 1, 2026,
between the Leer Parties and BMF Advance LLC and Gavriel Yitzchakov (16 pages)

Certification of Avrumi Lubin (Response as to Teton Life, LLC)
Adv. Pro. No. 26-01494 (EJO)

**SETTLEMENT AGREEMENT AND MUTUAL RELEASE**

This Settlement Agreement and Mutual Release (the "Agreement") is made as of June 1 2026, by and between Golden Foothill Insurance Services, LLC, Life Factor II, LLC, Life Shares II, LLC, El Dorado Hills Insurance Solutions, Inc., Lone Wolf Insurance Services, Inc., ELDO Investments, LLC, The Genesis LS Fund, LLC, KTL Holdings, Inc., and Tatanisha Leer (collectively, the "Leer Parties") and BMF Advance LLC ("BMF") and Gavriel Yitzchakov a/k/a Gabe Isaacov ("Yitzchakov," and together with BMF, the "BMF Parties"). The Leer Parties and the BMF Parties are collectively referred to herein as the "Parties" and each entity and individual comprising the Leer Parties and BMF Parties a "Party." This Agreement shall become effective on the date that it is last executed by any Party hereto (the "Effective Date").

**RECITALS**

WHEREAS, the Parties are involved in litigation currently pending in the United States District Court for the Southern District of New York, styled *Golden Foothill Insurance Services, LLC, et al. v. Spin Capital, LLC, et al.*, Case No. 1:24-cv-08515 (the "Federal Action");

WHEREAS, the Leer Parties are involved in litigation currently pending in the Supreme Court for the State of New York, styled *Teton Life, LLC as Assignee of the Rights of Spin Capital, LLC v. Golden Foothill Insurance Services, LLC et al.*, Index No. 650582/2022 (the "State Action");

WHEREAS, the BMF Parties possess a financial interest in the State Action, and any proceeds arising from the State Action and/or recoveries therein (the "State Action Proceeds,"[1] and

[1] For the avoidance of doubt, 'State Action Proceeds' means all value, in whatever form, recovered, received, or realized in connection with or attributable to the claims or assets that are the subject of the State Action, including cash, insurance proceeds, death benefits, litigation recoveries, judgments, and settlement payments, whether obtained by judgment, settlement, or otherwise, and whether paid to or held by Teton, any successor or assign of Teton, the Receiver, any settlement fund, or any other person or entity. Value

the BMF Parties' interest in the State Action Proceeds the "Yitzchakov Interest"), and Yitzchakov is a member of Teton Life LLC ("Teton"), the Plaintiff in the State Action (the Amended and Restated Operating Agreement of Teton Life LLC is attached as **Exhibit A**, and referred to herein as the "Teton Operating Agreement"); and

WHEREAS, there exists a Promissory Note in the original principal amount of $4,100,000 (attached as **Exhibit B**) (the "Redstone Loan"), memorializing certain obligations arising from funds advanced to Teton in connection with the State Action, and which Promissory Note provides that "in the event funds are received from the [State Action] by [Teton], such funds shall be applied and paid to [Teton's] Members in accordance with Article V of the [Teton Operating Agreement]" (Exhibit B, § 1); and

WHEREAS, Article V of the Teton Operating Agreement provides that distributions thereunder shall be made first to satisfy the obligations owed pursuant to the Redstone Loan;

WHEREAS, the Parties desire to resolve certain disputes among them and agree upon terms for (i) distribution of the State Action Proceeds, and (ii) in the event that the BMF Parties receive aggregate State Action Proceeds under the Threshold Amount (as defined herein), payment to Yitzchakov of certain amounts pursuant to the terms and conditions herein;

NOW, THEREFORE, in consideration of the foregoing recitals and the mutual promises, forbearances, covenants, and agreements contained herein, and other good and valuable consideration, the sufficiency and receipt of which is hereby acknowledged, the Parties hereto agree as follows:

1. <u>**Recitals**</u>. The recitals are incorporated herein by reference.

attributable to the State Action shall constitute State Action Proceeds regardless of the structure of any resolution or the entities through which such value is paid or held.

2. **Distribution of State Action Proceeds**: The Parties agree that all State Action Proceeds, if any, due and owing to the BMF Parties in the form of the Yitzchakov Interest, shall be distributed as follows:

**First Tier – "BMF Priority Recovery":** The first Four Million One Hundred Thousand Dollars ($4,100,000) of State Action Proceeds shall be paid exclusively to the BMF Parties, consistent with the obligations reflected in and the terms of both the $4.1M Promissory Note (**Exhibit B**) memorializing the Redstone Loan, and the Teton Operating Agreement.

**Second Tier – Split Recovery ("Cap Tier Recovery"):** With regard to State Action Proceeds which are recovered beyond the $4.1M comprising the BMF Priority Recovery, the respective recoveries of the Parties shall be as follows:

a. 60% to the Leer Parties, continuing until the Leer Parties have recovered $2.4M

b. 40% to the BMF Parties, continuing until the BMF Parties have recovered $1.6M.

The aggregate sum of the BMF Priority Recovery and the BMF Parties' portion of the Cap Tier Recovery, the foregoing totaling $5,700,000, is referred to herein as the "Threshold Amount."

**Third Tier – "Leer Exclusive Recovery":** Any State Action Proceeds in excess of the $8,100,000 in respective recoveries provided for in the First and Second Tier Recoveries above (the "Excess Proceeds"), which Excess Proceeds would otherwise be distributed to the BMF Parties pursuant to the Yitzchakov Interest, shall be distributed:

a. 100% to the Leer Parties.

3. **Representation, Warranty and Covenant not to Transfer or Assign**: The BMF Parties represent, warrant and covenant that they currently possess the Yitzchakov Interest in the State Action Proceeds, and that the Yitzchakov Interest has not been transferred, assigned or otherwise relinquished. The BMF Parties further represent, warrant and covenant that they will not transfer, assign, or otherwise relinquish the Yitzchakov Interest in the State Action Proceeds. The BMF Parties further represent, warrant and covenant that, aside from the Teton Operating Agreement, the Redstone Loan and the Pledge and Security Agreement related thereto, no other agreements exist among the BMF Parties and Teton that limit, reduce or otherwise impair the State Action Proceeds.

4. **Shortfall Payment Provision:**

a. In the event that the State Action is finally resolved (whether by final non-appealable judgment, order, settlement, or otherwise) such that the BMF Parties receive, or become entitled to receive, aggregate State Action Proceeds in an amount less than the Threshold Amount (which, for the avoidance of doubt, includes the receipt of no State Action Proceeds whatsoever) (the occurrence of the foregoing referred to herein as a "Shortfall"), then a Shortfall Payment shall be due to Yitzchakov as provided in subsection (b) below.

b. The "Shortfall Payment" shall be the amount by which the Threshold Amount exceeds the aggregate State Action Proceeds that would be due to the BMF Parties under the terms of the Teton Operating Agreement assuming all State Action Proceeds were distributed in accordance therewith. In the event of a Shortfall, the Leer Parties shall direct the Receiver in the State Action, or any successor receiver, custodian, escrow agent, or other person or entity then holding or administering funds

that were or otherwise would have been subject to the Receiver's control, to pay the Shortfall Payment to Yitzchakov within seven (7) days following the date on which the State Action is finally resolved as set forth in subsection (a).

c. In the event that, at the time the Shortfall Payment is due, the funds held or formerly held by the Receiver are insufficient, in whole or in part, to satisfy the Shortfall Payment including, for example, because the Receiver has been discharged; and/or because some or all of the relevant funds are held, administered, controlled by, or subject to the direction of the Leer Parties or any other person or entity subject to the direction of any of the Leer Parties; and/or because portions of the State Action Proceeds, such as those attributable to the Zurich policies and the John Hancock litigation, have yet to be realized the Leer Parties shall, jointly and severally, remain obligated to pay the Shortfall Payment, or any unsatisfied portion thereof, to Yitzchakov as follows:

   i. to the extent the Shortfall Payment, or any portion thereof, is attributable to State Action Proceeds that have been realized or are otherwise available in cash or immediately available funds, within seven (7) days following the date the State Action is finally resolved as set forth in subsection (a); and

   ii. to the extent the Shortfall Payment, or any portion thereof, is attributable to State Action Proceeds that have not yet been realized, including without limitation proceeds attributable to the Zurich policies and the John Hancock litigation, within thirty (30) days following the realization of such proceeds, the Leer Parties shall apply, and shall direct



Doc ID: [illegible]

any person or entity holding or administering any such funds to apply, such funds toward satisfaction of the Shortfall Payment or any unsatisfied portion thereof.

iii. For purposes of this Section, State Action Proceeds shall be deemed 'realized' when, and to the extent, such proceeds have been actually received in cash or immediately available funds by Teton, the Leer Parties, the Receiver, or any other person or entity holding or administering the same for the benefit of any of them.

5. **Protection of Recovery in Settlement**. In the event the State Action is resolved in whole or in part by settlement or other negotiated resolution, whether or not involving parties other than the Parties hereto, the Leer Parties shall not enter into or facilitate any resolution that subordinates, defers, or impairs the BMF Parties' entitlement to the Threshold Amount, and shall use good faith efforts to ensure any such resolution preserves the BMF Parties' rights as set forth under this Agreement.

6. **Receivership Obligation (TETON):** Within thirty (30) days of execution of this Agreement, the BMF Parties agree that they shall seek the appointment of a receiver over Teton (the "Receivership Action"), including:

a. Filing an action seeking the appointment of a receiver over Teton;

b. Supporting such application with necessary affidavits and evidence;

c. Acting in good faith to obtain such appointment.

**Cost Sharing**. The reasonable costs and expenses incurred by the BMF Parties in connection with the Receivership Action, including attorneys' fees, court fees, and the fees and expenses of any receiver appointed pursuant thereto, shall be borne

fifty percent (50%) by the BMF Parties and fifty percent (50%) by the Leer Parties. The BMF Parties shall advance and pay such costs and expenses as incurred. The Leer Parties shall, jointly and severally, be liable to the BMF Parties for their fifty percent (50%) share. The Leer Parties' share shall be due and payable promptly upon, and in any event within ten (10) days of, the Leer Parties' receipt of any Cash Proceeds[2], and shall be paid from such Cash Proceeds. The BMF Parties may deduct and retain the Leer Parties' unpaid share from any Cash Proceeds otherwise distributable or payable to the Leer Parties by or through the BMF Parties before distribution or payment to the Leer Parties.

7. **Releases**:

a. Release by BMF Parties. The BMF Parties, on behalf of themselves and each of their respective predecessors, successors, assigns, affiliates, parent companies, subsidiaries, and their past and present managers, directors, officers, employees, agents and representatives, hereby release and forever discharge each of the Leer Parties, and each of their respective predecessors, successors, assigns, affiliates, parent companies, subsidiaries, and their past and present members, managers, directors, officers, employees, agents and representatives, from any and all claims, actions, causes of action, suits, debts, damages, losses, obligations, promises, agreements, or liabilities of any nature whatsoever, whether known or unknown, fixed or contingent, asserted or

[2] 'Cash Proceeds' means any cash, cash equivalents, or immediately available funds received by the Leer Parties, or by any of them, in connection with or attributable to the State Action, whether received directly, through the Receiver, through any settlement fund or escrow upon release thereof, or otherwise, and whether received under this Agreement or otherwise.

unasserted, arising out of or relating to the transactions and disputes giving rise to the Federal Action, the State Action, or any other transaction, event, or circumstance underlying or related to any of the foregoing, including any claim that is or could have been asserted in the Federal Action or the State Action, whether or not actually asserted (the "BMF Released Claims").

b. Release by Leer Parties. The Leer Parties, on behalf of themselves and each of their respective predecessors, successors, assigns, affiliates, parent companies, subsidiaries, and their past and present members, managers, directors, officers, employees, agents and representatives, hereby release and forever discharge each of the BMF Parties and their respective predecessors, successors, assigns, affiliates (including, without limitation, Teton Life LLC and Redstone Advance Inc.), parent companies, subsidiaries, and their past and present members, managers, directors, officers, employees, agents and representatives, from any and all claims, actions, causes of action, suits, debts, damages, losses, obligations, promises, agreements, or liabilities of any nature whatsoever, whether known or unknown, fixed or contingent, asserted or unasserted, including without limitation all claims under 18 U.S.C. §§ 1961 et seq., arising out of or relating to the transactions and disputes giving rise to the Federal Action, the State Action, or any other transaction, event, or circumstance underlying or related to any of the foregoing, including any claim that is or could have been asserted in the Federal Action or the State Action, whether or not actually asserted (the "Leer Released Claims," and with the BMF Released Claims, the "Released Claims").

i. Notwithstanding anything contained herein, it is expressly acknowledged and agreed that nothing contained in the foregoing Releases is intended to release any claims against any other defendants in the Federal Action.

c. Covenant Not To Sue or Pursue. Each Party covenants that it will not institute, pursue, continue, or prosecute any claim, action, or proceeding of any kind against any released party arising out of or relating to any matter released herein, whether such claim, action, or proceeding is hereafter instituted or is currently pending, including without limitation the claims asserted against the BMF Parties in the Federal Action.

d. For the avoidance of doubt, nothing herein shall affect any Party's rights to enforce the terms of this Settlement Agreement.

8. **Dismissals and Effect thereof:**

a. Within two (2) business days following the Effective Date, the Leer Parties shall file a stipulation of dismissal in the Federal Action dismissing all claims against the BMF Parties without prejudice.

b. Consistent with Section 7 above, the Leer Parties covenant not to sue or pursue the BMF Parties for any claims released by this Settlement Agreement whether such claim, action, or proceeding is hereafter instituted or is currently pending, including without limitation the claims asserted against the BMF Parties in the Federal Action and agree to file a supplemental dismissal with prejudice as to the BMF Parties within seven (7) days after the entry of any order, judgment, or stipulation that resolves, dismisses, or otherwise disposes

of the claims against remaining Defendants in the Federal Action, whether by judgment, settlement, voluntary dismissal, or otherwise, and in any event no later than twelve months following the Effective Date. For the avoidance of doubt, the obligation to file the supplemental dismissal with prejudice shall be triggered by any of the foregoing dispositions in the proceedings in the trial court, and shall not be deferred or otherwise affected by the filing or pendency of any appeal or appellate proceeding, or by the time available to commence any of the foregoing.

c. **For the avoidance of doubt, the reason for this staggered dismissal is to avoid any potential res judicata arguments by the remaining parties to the State Action and Federal Action.**

d. **For the avoidance of doubt, the releases and covenants not to sue or pursue set forth in Section 7 above are effective and binding upon the Effective Date, and are not contingent upon, conditioned by, or in any way affected by the filing, timing, or prejudice status of any stipulation or order of dismissal contemplated by this Section. The release of the BMF Parties by the Leer Parties is complete and effective upon the Effective Date irrespective of the dismissal mechanics provided herein.**

9. **Warranties and Representations**: The Parties hereto warrant and represent that no party herein has assigned, transferred, conveyed, or purported to assign, transfer or convey to any person or entity, any right, claim, action, cause of action, suit (at law or in equity), defense, demand, debt, liability, account, or obligation, any of which of the foregoing is subject to the Releases set forth above, or that constitutes or is any part of any Released Claims, or which

would, absent such assignment, transfer or conveyance, be subject to the releases set forth in this Agreement.

10. **Acknowledgments**: Each of the Parties acknowledges and agrees that:

A. This Agreement is entered into and executed voluntarily by such Party and without any duress or undue influence on the part of, or on behalf of any such Party;

B. Each of the Parties hereto is represented by counsel of its/their own choice, or has had the opportunity to be represented by counsel and to seek advice in connection with the negotiation for, understanding, and the preparation of this Agreement;

C. By executing this Agreement, each of the Parties warrants and represents that they have fully reviewed and understand the content of this Agreement and the legal effect of this Agreement, and intend to be fully bound by the terms and conditions of this Agreement; and

D. The drafting and negotiation of this Agreement has been undertaken by all Parties hereto and their respective counsel. For all purposes, this Agreement shall be deemed to have been drafted jointly by all the Parties hereto with no presumption in favor of one Party over another in the event of any ambiguity.

11. **No Admission of Liability**. This Settlement Agreement is entered into solely for the purpose of resolving disputed claims and avoiding the expense, burden, and uncertainty of continued litigation. Nothing in this Agreement, and no action taken pursuant to this Agreement, shall constitute, be construed as, or be offered or received in evidence as an admission of liability, fault, wrongdoing, or violation of any law, rule, regulation, or duty by any Party, or as an admission of the validity or merit of any claim or defense asserted in the Federal Action, the State

Action, or any other proceeding. Each Party specifically denies any liability to any other Party and any wrongful, tortious, or unlawful conduct in connection with the matters described herein. The Parties agree that this Agreement and all negotiations, communications, and proceedings in connection herewith are subject to the protections afforded by Federal Rule of Evidence 408 and any applicable state law equivalent, and shall not be admissible in any proceeding for any purpose other than enforcement of the terms of this Agreement.

12. **Severability**: If any of the provisions of this Agreement are held to be unenforceable or invalid by any court of competent jurisdiction, the validity and enforceability of the remaining provisions shall not be affected thereby.

13. **Binding Effect**: This Agreement shall be binding on, and shall inure to the benefit of, the Parties hereto and their respective administrators, representatives, successors and assigns.

14. **Governing Law, Venue and Jurisdiction**: This Agreement shall be governed by the laws of the State of New York and any disputes arising hereunder shall be governed by and construed in accordance with the laws of the State of New York, without regard to any choice of law or conflict of law rules or provisions that would cause the application of the laws of any other jurisdiction. Furthermore, the Parties agree that any litigation arising out of this Agreement shall be exclusively brought in the Supreme Court of the State of New York, County of New York. The Parties consent to personal jurisdiction in the Supreme Court of the State of New York, County of New York and waive any defense based on lack of personal jurisdiction in the Supreme Court of the State of New York, County of New York, improper venue, or inconvenient forum in connection with any proceeding arising out of or relating to this Agreement.

15. **Further Assurances**: The Parties agree to do all acts and things and to make, execute, acknowledge, and deliver such reasonable written documents, instructions and/or

instruments in such reasonable form as shall from time to time be reasonably required to carry out the terms and provisions of this Agreement. The Parties further agree to give reasonable cooperation and assistance to any other Party or Parties hereto to enable such Party or Parties to secure the intended benefits of this Agreement.

16. **Attorneys' Fees**. Each Party shall bear their own attorneys' fees and costs associated with this Agreement.

17. **Integration Clause**: This Agreement contains the entire agreement between and among the Parties hereto, and supersedes all prior and contemporaneous discussions, negotiations, understandings, and agreements, whether oral or written, express or implied, between or among them relating to the subject matter of this Agreement. This Agreement may not be amended orally, nor shall any proposed oral amendment (even if accompanied by partial or complete performance in accordance therewith) be of any legal force or effect or constitute an amendment of this Agreement, but rather this Agreement may be amended only by an agreement in writing signed by the Parties.

18. **Time is of the Essence**: Time is of the essence with respect to the performance of any and all provisions of this Agreement.

19. **Attachments:** All Exhibits mentioned in this Agreement shall be attached to this Agreement and shall form an integral part hereof.

20. **Headings and Captions**: The headings and captions inserted into this Agreement are for convenience only and in no way define, limit, or otherwise describe the scope or intent of this Agreement, or any provision hereof, or in any way affect the interpretation of this Agreement.

21. **Counterparts**: This Agreement may be executed by the Parties in any number of counterparts, and each of which shall be deemed an original and all of which, collectively, shall

be deemed to be one and the same instrument. Delivery of an executed signature page to this Agreement via email shall be effective as delivery of an originally executed signature page of this Agreement.

**IN WITNESS WHEREOF**, the Parties hereto, acting through their duly authorized representatives, have caused this Agreement to be executed as of the dates set forth below.

| | |
|---|---|
| Dated: 06/01/2026 | Dated: |
| Gavriel Yitzchakov (Jun 1, 2026 17:28:09 EDT) | |
| Gavriel Yitzchakov a/k/a Gabe Isaacov, individually and on behalf of BMF | Tatanisha Leer, individually and on behalf of the Leer Parties/Plaintiffs |

Dropbox Sign

Audit trail

| | |
|---|---|
| **Title** | BMF-Leer Settlement (Exec by BMF Parties).pdf |
| **File name** | BMF-Leer%20Settle...%20Parties%29.pdf |
| **Document ID** | bedf9482fe5265b0d475c3d9e5e4da73b33390e2 |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | Signed |

**This document was requested from app.clio.com**

## Document History

| | | |
|---|---|---|
| SENT | **06 / 01 / 2026** 23:55:42 UTC | Sent for signature to Tanisha Leer [redacted] by [redacted] acting on behalf of [redacted] IP: [redacted] |
| VIEWED | **06 / 02 / 2026** 00:21:31 UTC | Viewed by Tanisha Leer [redacted] IP: [redacted] |
| SIGNED | **06 / 02 / 2026** 00:21:53 UTC | Signed by Tanisha Leer [redacted] IP: [redacted] |
| COMPLETED | **06 / 02 / 2026** 00:21:53 UTC | The document has been completed. |

# EXHIBIT 2

Email of March 20, 2026, 5:52 p.m., with the earlier emails quoted in it
(December 12, 2025 through March 20, 2026)

Certification of Avrumi Lubin (Response as to Teton Life, LLC)
Adv. Pro. No. 26-01494 (EJO)

**From:** Gabe Isaacov <gabe@redstoneadvance.com>
**Sent:** Friday, March 20, 2026 5:52 PM
**To:** Jeffrey Chubak <jchubak@aminillc.com>
**Cc:** Chana Tach <funding@redstoneadvance.com>; Shlomo Kreitman <skreitman@aminillc.com>; Josh Lubin <josh@spincapital.com>; Samet Avery <asamet@aminillc.com>
**Subject:** Re: Amini LLC invoice- Teton

---

File it today/ this Lubin kid fucked me and I want nothing To Do with him

On Mar 20, 2026, at 5:14 PM, Jeffrey Chubak <jchubak@aminillc.com> wrote:

Don't see what 1 has to do with the other. Note our withdrawal (without substitute counsel in place) will likely result in dismissal because corporate plaintiffs must be represented by counsel. [redacted] [Redacted: legal advice of Teton Life's counsel] [redacted] If we don't hear from you we'll file papers Monday afternoon

---

**From:** Gabe Isaacov <gabe@redstoneadvance.com>
**Sent:** Friday, March 20, 2026 12:31 PM
**To:** Jeffrey Chubak <jchubak@aminillc.com>
**Cc:** Chana Tach <funding@redstoneadvance.com>; Shlomo Kreitman <skreitman@aminillc.com>; Josh Lubin <josh@spincapital.com>; Avery Samet <asamet@aminillc.com>
**Subject:** Re: Amini LLC invoice- Teton

Withdraw today! Lubin haven't been responding to me

On Mar 20, 2026, at 12:30 PM, Jeffrey Chubak <jchubak@aminillc.com> wrote:

Gabe, our bills for services rendered December-February are still outstanding. If you plan to pay this within the next week or so then let us know--your last email to us re: this said zero is going out. Otherwise we're going to move to withdraw early next week.

---

**From:** Gabe Isaacov <gabe@redstoneadvance.com>
**Sent:** Wednesday, February 18, 2026 9:52 PM
**To:** Chana Tach <funding@redstoneadvance.com>
**Cc:** Jeffrey Chubak <jchubak@aminillc.com>; Shlomo Kreitman <skreitman@aminillc.com>; Josh Lubin <josh@spincapital.com>; Avery Samet <asamet@aminillc.com>
**Subject:** Re: Amini LLC invoice- Teton

Zero is going out here.

On Feb 18, 2026, at 9:25 PM, Chana Tach <funding@redstoneadvance.com> wrote:

@Gabe Isaacov PLEASE CONFIRM

---

**From:** Jeffrey Chubak <jchubak@aminillc.com>
**Sent:** Wednesday, February 18, 2026 2:07 PM
**To:** Chana Tach <funding@redstoneadvance.com>; Gabe Isaacov <gabe@redstoneadvance.com>; Shlomo Kreitman <skreitman@aminillc.com>
**Cc:** Josh Lubin <josh@spincapital.com>; Avery Samet <asamet@aminillc.com>
**Subject:** RE: Amini LLC invoice- Teton

Gabe/Chana, our $7,557.50 invoice for December services is still outstanding, and together with our invoice for January services our balance is $20,516.35 (invoices attached, with wire instructions). Per the time detail this

relates to settlement matters, and the motion to sever that we filed after Leer's bankruptcy. We would appreciate your paying same at earliest convenience. Thanks,

---

**From:** Chana Tach <funding@redstoneadvance.com>
**Sent:** Tuesday, December 16, 2025 5:15 PM
**To:** Gabe Isaacov <gabe@redstoneadvance.com>; Shlomo Kreitman <skreitman@aminillc.com>
**Cc:** Josh Lubin <josh@spincapital.com>; Jeffrey Chubak <jchubak@aminillc.com>; Avery Samet <asamet@aminillc.com>
**Subject:** Re: Amini LLC invoice- Teton

Some people who received this message don't often get email from funding@redstoneadvance.com. Learn why this is important

Wire sent.

---

**From:** Gabe Isaacov <gabe@redstoneadvance.com>
**Sent:** Tuesday, December 16, 2025 12:19 PM
**To:** Chana Tach <funding@redstoneadvance.com>; Shlomo Kreitman <skreitman@aminillc.com>
**Cc:** Josh Lubin <josh@spincapital.com>; Jeffrey Chubak <jchubak@aminillc.com>; Samet Avery <asamet@aminillc.com>
**Subject:** Re: Amini LLC invoice- Teton

Please send via wire.

---

**From:** Chana Tach <funding@redstoneadvance.com>
**Sent:** Tuesday, December 16, 2025 12:16 PM
**To:** Gabe Isaacov <gabe@redstoneadvance.com>; Shlomo Kreitman <skreitman@aminillc.com>
**Cc:** Josh Lubin <josh@spincapital.com>; Jeffrey Chubak <jchubak@aminillc.com>; Samet Avery <asamet@aminillc.com>
**Subject:** Re: Amini LLC invoice- Teton

NOT YET.

---

**From:** Gabe Isaacov <gabe@redstoneadvance.com>
**Sent:** Tuesday, December 16, 2025 12:15 PM
**To:** Shlomo Kreitman <skreitman@aminillc.com>
**Cc:** Chana Tach <funding@redstoneadvance.com>; Josh Lubin <josh@spincapital.com>; Jeffrey Chubak <jchubak@aminillc.com>; Samet Avery <asamet@aminillc.com>
**Subject:** Re: Amini LLC invoice- Teton

Chana was this sent ? If not please send Ty

On Dec 16, 2025, at 10:29 AM, Shlomo Kreitman <skreitman@aminillc.com> wrote:

Good morning. Can you please update me on the status of this wire? I thought this was going to be sent yesterday.

131 W 35th St., 12th floor, New York, NY 10001 | **Shlomo Kreitman**, *CONTROLLER* | +1.212.497.8212 | +1.212.490.4700 | +1.212.497.8222 | skreitman@aminillc.com | aminillc.com

---

**From:** Chana Tach <funding@redstoneadvance.com>
**Sent:** Friday, December 12, 2025 3:31 PM
**To:** Gabe Isaacov <gabe@redstoneadvance.com>; Shlomo Kreitman <skreitman@aminillc.com>
**Cc:** Josh Lubin <josh@spincapital.com>
**Subject:** Re: Amini LLC invoice- Teton

Ill send this on Monday via wire.

**From:** Gabe Isaacov <gabe@redstoneadvance.com>
**Sent:** Friday, December 12, 2025 1:01 PM
**To:** Shlomo Kreitman <skreitman@aminillc.com>
**Cc:** Josh Lubin <josh@spincapital.com>; Chana Tach <funding@redstoneadvance.com>
**Subject:** Re: Amini LLC invoice- Teton

Chana pls send $26,086.26

On Dec 12, 2025, at 11:08 AM, Shlomo Kreitman <skreitman@aminillc.com> wrote:

$26,086.26

**EXHIBIT 3**

**Filed August 31, 2026 letter of Teton Life's counsel**
**NYSCEF No. 1476**
**Index No. 650582/2022**

**Request concerning additional life-insurance policies,**
**Receiver authority and preservation advances**

Joshua Wurtzel
Partner

schlamstone.com
jwurtzel@schlamstone.com

Schlam Stone & Dolan LLP
26 Broadway, New York, NY 10004
Main: 212 344-5400 Mobile: 516 528-9944
Direct: 212 612-1226 Fax: 212 612-1226

August 31, 2026

**BY NYSCEF**

The Honorable Nancy M. Bannon
Supreme Court of the State of New York
60 Centre Street, Room 232
New York, New York 10007

Re: *Teton Life LLC v. Golden Foothill Ins. Servs., LLC*, Index No. 650582/2022

Dear Justice Bannon:

On behalf of plaintiff Teton Life LLC,[1] pursuant to the Order Appointing a Temporary Receiver dated January 6, 2023 (NYSCEF Doc No. 245) (the "Receivership Order"), Plaintiff writes to request a pre-motion conference with the Court and, to the extent leave is required under the Part 61 Rules, leave to file a single omnibus motion seeking two related but distinct forms of relief: (i) an order under CPLR 6401(b) extending the powers of the temporary receiver to, or confirming his authority over, additional life insurance policies discovered since entry of the Receivership Order; and (ii) an order directing reimbursement to Plaintiff, from the funds now held by the Receiver, of amounts Plaintiff has advanced in support of the receivership. To the extent the case remains stayed, Plaintiff also requests a limited modification of the stay to permit the filing and adjudication of the contemplated omnibus motion.

### *A. Background on Receivership Order*

As the Court is aware, by order dated January 6, 2023, Fred Stevens was appointed as temporary receiver under CPLR Article 64 over, among other things, the nine life insurance policies listed below that constitute Plaintiff's collateral. The Court authorized him, among other things, to take possession of the policies and related records, to communicate with the issuing carriers, to pay premiums and other necessary expenses, and to collect the proceeds derived from the policies. NYSCEF Doc No. 228; NYSCEF Doc No. 245 at 2:

| *Policy No.* | *Insured* | *Insurance Company* | *Current Status* |
|---|---|---|---|
| 177947 | Gresham, Ronald | Zurich American Life Insurance Company | Active |
| 170604 | Kellar, Edward | Zurich American Life Insurance Company | Active |

[1] This request is made solely on behalf of Teton and is not duplicative of Mr. Josh Lubin's pro se filing. *See* NYSCEF Doc No. 1475.

| *Policy No.* | *Insured* | *Insurance Company* | *Current Status* |
|---|---|---|---|
| 172963 | Sisam, Edwin & Dorothy | Zurich American Life Insurance Company | Active |
| 167060 | Perry, Jack & Leonora | Zurich American Life Insurance Company | Active |
| 172953 | Sisam, Dorothy | Zurich American Life Insurance Company | Active |
| 162865 | Leer, William & Rae | Zurich American Life Insurance Company | Active[2] |
| UL00020974 | Sisco, Frances | Accordia Life and Annuity Company | Lapsed[3] |
| 59592683 | Utsick, John | John Hancock Life Insurance Company | Matured |
| 7447253 | Utsick, John | Brighthouse Financial Life Insurance | Matured |

***B. Developments Since Entry of the Receivership Order***

Three developments give rise to the relief Plaintiff proposes to seek. ***First,*** through the investigation authorized by paragraph 8 of the Receivership Order, as well as discovery in this case, Plaintiff and the Receiver have identified at least 24 additional life insurance policies that may constitute Plaintiff's collateral and that were not enumerated in paragraph 1 of the Receivership Order, including:

| *Policy No.* | *Insured* | *Insurance Company* |
|---|---|---|
| 219618 | Martha Beach | Zurich |
| 207500 | Ricci/Ricardo Campos | Zurich |
| 162213030 | Robert Dilworth | AXA Equitable |
| 174288 | Robert Fell | Zurich |
| VL3175345 | Norma Greever | Hartford |
| 1627551 | Norma Greever | Voya |
| BU1391086 | Jo Anne Gresham | United of Omaha |
| AL001049 | James & Dolores Griffin | American National |
| 93232078 | Leroy Hanneman | John Hancock |
| 61291457 | Kenneth Hatzenbeller | New York Life |
| 93161466 | Nasser Kazeminy | John Hancock |
| BU1808172 | Nasser Kazeminy | United of Omaha |
| 10311039 | William Leer | Royal Neighbors |
| 170759 | Jacqueline Saharagun | Zurich |
| 46007599 | Thomas Saharagun | John Hancock |
| 97519353 | Merton Silbar | Nassau |

[2] Bam Trust asserts an interest in this policy and has been paying premiums. NYSCEF Doc No. 921 at 8.
[3] The Receiver is not maintaining this policy, which lapsed in 2010. NYSCEF Doc No. 921 at 14-15.

| *Policy No.* | *Insured* | *Insurance Company* |
|---|---|---|
| 60053874 | Bertus Leroy Sisco | Allianz |
| 161201739 | Leroy & Frances Sisco | AXA Equitable |
| BU1759281 | Michael Solomon | United of Omaha |
| BU1894962 | Michael Solomon | United of Omaha |
| 181502 | Richard Stowe | Zurich |
| 172959 | Unidentified | Zurich |
| 170606 | Unidentified | Zurich |
| 170608 | Unidentified | Zurich |

***Second***, in January 2023, the Receiver made an initial request for an advance from Spin Capital, with notice to all the other parties. Spin agreed to provide the advance at the contractual rate of five percent per month without objection from any party. Spin Capital thereafter advanced $1,409,439.56 to the Receiver across seven transfers, as detailed below.[4] *See* NYSCEF Doc No. 1017 ¶11; NYSCEF Doc No. 1430 ¶36.

| *Date of Funding* | *Amount Advanced By Spin* |
|---|---|
| 1/27/2023 | $ 129,639.29 |
| 4/12/2023 | $ 173,760.05 |
| 7/10/2023 | $ 307,990.73 |
| 11/9/2023 | $ 164,640.37 |
| 2/2/2024 | $ 223,869.08 |
| 4/16/2024 | $ 220,293.82 |
| 6/27/2024 | $ 189,246.22 |
| **TOTAL** | **$ 1,409,439.56** |

***Third***, two policies have matured. Both Utsick policies—the John Hancock Policy 59592683 and the Brighthouse Financial Policy 7447253—matured upon the insured's death in 2023. NYSCEF Doc No. 1017 ¶15. Hancock improperly paid its proceeds to Stefan Leer rather than the Receiver, resulting in civil and criminal contempt findings and a money judgment plus interest, against Leer. NYSCEF Doc Nos. 467, 509, 764, 900.

As to the Brighthouse Policy, after litigation in this Court and the Southern District of New York, the Receiver received $9,639,264.17 on January 15, 2025, and now uses those funds to pay receivership premiums and costs. NYSCEF Doc Nos. 793, 1017 at 8. In February 2025, the Court authorized the Receiver to use Brighthouse funds "to pay obligations of the Receiver as established in the Receiver Order." NYSCEF Doc No. 793 at 3.

As of July 31, 2026, the Receiver maintained $9,164,077.17 in his Wilmington Trust account from the Utsick Brighthouse Policy and $214,638.61 in his Flagstar Bank account.

---

[4] Spin Capital funded these advances, but Teton asserts the right to repayment as assignee of Spin Capital in this action, consistent with the court order that permitted Teton to intervene and substitute as plaintiff in place of Spin Capital, LLC. *See* NYSCEF Doc No. 909.

### *C. Proposed Omnibus Motion*

Plaintiff proposes to file one omnibus motion with two independent motions that both arise from the same record—the Receiver's administration of the collateral since January 2023, the additional policies his investigation surfaced, and the accounting of Plaintiff's advances against the fund now on hand. Presenting them together permits the Court to address the scope of the receivership and its funding on a single, complete record, and avoids duplicative papers and appearances. Those two motions would be:

*Motion to Expand Enumerated Policies Subject to Receivership.* CPLR 6401(b) provides that "[u]pon motion of the receiver or a party, powers granted to a temporary receiver may be extended or limited or the receivership may be extended to another action involving the property." A temporary receiver's authority is confined to what the appointing order confers. While paragraphs 8 and 9 of the Receivership Order authorize the Receiver to investigate other policies that may constitute Plaintiff's collateral and to give notice of what he finds, they do not by their terms place those policies within his custody or within the injunctions of paragraphs 13 and 14. Plaintiff therefore proposes to move for an order amending paragraph 1 of the Receivership Order to add the additional policies, or confirming that the Receiver's existing powers reach them, and confirming that the turnover and anti-transfer provisions of paragraphs 11, 13, and 14 apply to them. The relief is time-sensitive because until the Receiver's authority over these policies is clear, they remain exposed to lapses, surrender, assignment, or change of beneficiary.

*Motion to Reimburse Plaintiff for Amounts Advanced to Receiver.* Plaintiff proposes to move, under paragraphs 15 and 18 of the Receivership Order and CPLR 6404, for an interim accounting and an order directing that Plaintiff's principal advance to the Receiver be reimbursed from the funds now in the Receiver's accounts. Plaintiff advanced seven tranches totaling $1,409,439.56, at the Receiver's request when the Receiver lacked estate funds to make timely premium payments, but the Receiver now holds more than $9 million and can use those funds to repay Plaintiff's advances.

Those advances are reimbursable preservation expenses and can be paid now, without addressing the merits of the case. Courts award interest on preservation advances when authorized by governing documents or court orders. *See Bank of Am., N.A. v. ONEONTA, L.P.*, 97 A.D.3d 1023, 1027 (3d Dept 2012) (reversing denial of interest on necessary tax and insurance advances). While Teton reserves its right to request the contractual five percent rate of interest on those advances if the Court determines that that rate is enforceable under paragraph 15 of the Receivership Order, the Loan Documents, and the documented course of performance at a later time, the Court need not decide that issue to reimburse Plaintiff for its principal here.

Plaintiff has discussed the proposed omnibus motion with the Receiver, who does not take a position on Plaintiff's request for reimbursement of the funds advanced to the receivership and is prepared to transmit those if the Court orders it. The Receiver also does not object to Plaintiff's request to expand the enumerated policies under receivership, subject to the Court's resolution of the issues related to his compensation raised in the Court's recent decisions (NYSCEF Doc No. 1471; NYSCEF Doc No. 1472).

Plaintiff respectfully requests that the Court schedule a pre-motion conference and grant leave to file the omnibus motion described above.

Respectfully submitted,

/s/ Joshua Wurtzel
Joshua Wurtzel

cc: All counsel of record (by NYSCEF and email)