FILED BANKRUPTCY-NJ
2026 NOV 9 A 10:50:05

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Caption in Compliance with D.N.J. LBR 9004-1(b)<br>Avrumi Lubin<br>Defendant and Counterclaim-Plaintiff, pro se<br>605 West 42nd Street<br>New York, New York 10036<br>(718) 570-3796<br>josh@tetonfunding.com | Case No. 26-17342 (EJO)<br>Chapter 11<br><br>Adv. Pro. No. 26-01494 (EJO)<br>Judge: Hon. Eamonn J. O'Hagan, U.S.B.J. |
| In re:<br>**AVRUMI LUBIN** a/k/a Josh Lubin,<br>Debtor.<br>---<br>BENJAMIN A. STANZIALE, JR., CHAPTER 11 TRUSTEE FOR AVRUMI LUBIN a/k/a Josh Lubin,<br>Plaintiff,<br>v.<br>AVRUMI LUBIN; SPIN CAPITAL, LLC; TETON LIFE, LLC; TETON FUNDING, LLC; TETON FUNDING GROUP, LLC; and JL SPECIAL INVESTMENTS, LLC,<br>Defendants. | |

**CERTIFICATION OF AVRUMI LUBIN IN SUPPORT OF HIS ANSWER, DEFENSES AND COUNTERCLAIMS AND OF HIS MOTION FOR LEAVE AND JOINDER**

I, Avrumi Lubin, certify as follows:

1. I am the Debtor in this case and a Defendant in this adversary proceeding. I make this certification in my individual capacity only. I do not speak for Spin Capital, LLC ("Spin") or any other company named in the Complaint. I have personal knowledge of the facts below unless I say otherwise. Where I describe a document, a true copy is attached as an exhibit.

**SPIN, HI BAR AND THE 2021 ASSIGNMENT**

2. Before this case, I was the sole member and manager of Spin. In that role I signed Spin's agreements and kept Spin's records, including its bank statements, in the ordinary course of Spin's business.

3. In October 2021 I signed, for Spin, the "Assignment of Obligations and Merchant Documents" with Franklin Capital Group, LLC (Exhibit C-1). It lists two Spin agreements with Excell Auto Group, Inc. and its affiliates: the June 1, 2021 and July 9, 2021 Revenue Purchase Agreements. It states a purchase price of $1.00, states that the outstanding

obligations under those two agreements as of October 21, 2021 were $1.00, and provides in paragraph 2 that it takes effect "upon receipt by Assignor of the Purchase Price," to be wired "by no later than November 3, 2021" to the Spin account identified in paragraph 11: Spin's TD Bank account ending in 6504.

3A. I never spoke with anyone at Franklin before I signed the Assignment. Scott Zankl, Excell's principal, was the person asking me to sign it. He told me that Franklin's loan would pay off Spin's whole balance, which was then about $2.1 million. On October 18, 2021, I sent Mr. Zankl Spin's balance letter, which stated a balance of $2,264,312.50 "in reference to the merchant Agreement entered into on or about 08/31/2021," with Spin's TD Bank wire instructions for the account ending 6504 (Exhibits C-16, C-23). Excell paid $150,000 on October 20, 2021, leaving $2,114,312.50. Mr. Zankl later filed that same balance letter himself, as Exhibit 2 to Excell's amended answer and counterclaims in *Hi Bar Capital LLC v. Excell Auto Group, Inc.*, Index No. 502846/2022 (Sup. Ct. Kings Cnty.), NYSCEF Doc. No. 32 (Mar. 18, 2022) (Exhibit C-23). On October 21, 2021, at 5:30 PM, Mr. Zankl emailed me Franklin's draft "Closing Statement and Authorization" for the $6,000,000 loan (Exhibit C-19). Under "Purchase of Cash Advance Obligations (consolidated into loan)" it allocated "Spin Capital $587,289.00," and it set a "Cash Collateral Reserve" of $1,550,000.00. Those two figures together, $2,137,289, are within about $23,000 of the $2,114,312.50 that Excell owed Spin under the August 31, 2021 agreement on October 21, 2021 (and about $127,000 less than the October 18 letter, before the October 20 payment). The next day, October 22, 2021, Franklin's DocuSign system sent me a draft Assignment that recited an outstanding balance of $587,289 for the two listed contracts and a purchase price of $587,289, payable by October 27, 2021. That draft also named another funder, Austin Business Finance, LLC, together with Spin as the "Assignor" (Exhibits C-18, C-20); as I said at trial, "I almost signed one with someone else's entity on there" (Jan. 30, 2026 Trial Tr. 335:14–16). I refused to sign it, because the two listed contracts had been paid down to about zero and the real balance was under the August 31, 2021 agreement, which the document did not mention. I told Mr. Zankl that the balance was about $2.1 million and that I could not sign a document stating that his balance was less than what was owed, and asked that the document be changed to include the August 31, 2021 agreement; that did not happen. Mr. Zankl asked me to sign the $587,289 version anyway and said he would pay the rest from another business; I told him I would not, because that could create liability and I was not going to do anything improper. He then threatened that Excell would file bankruptcy. I told him that Spin did not care about keeping a senior position and that Franklin could have Spin's UCC position for free. Spin was not in the business of being a senior lender, so I did not care whether Franklin would be senior to Spin; what I would not do was sign a document that misstated Spin's balance. Franklin voided the October 22 envelope on October 25 and sent new versions on October 26, October 28 and

November 1, 2021; the version I signed on November 1 at 4:13 PM Eastern recited $1.00 (Exhibits C-1, C-18). (Feb. 3, 2026 Trial Tr. 800–803, 830–831.) (At trial I said "$583,000" from memory; the document figure is $587,289.)

3A-1. Spin never sent Franklin, Excell or anyone else a "zero balance" or payoff letter saying that Excell owed Spin nothing, and I never made any statement to Franklin that Excell's debt to Spin had been paid. That was deliberate. Spin was a participant in the Hi Bar transaction that refinanced Excell's balance on November 1, 2021 (¶¶ 6–7), so I was not going to represent to anyone that there was no balance. Mr. Zankl's own testimony is consistent with this: he testified that I "wouldn't give a payoff letter to Wing Lake" and that he does not recall ever receiving a zero-balance letter from Spin (Jan. 30, 2026 Trial Tr. 251:4–8, 340:10–341:1; Exhibit C-22). The only document I signed was Franklin's own Assignment, drafted by Franklin's lawyers, which recited $1.00 as the outstanding Obligations under the two listed contracts as of October 21, 2021.

3B. Franklin's final Closing Statement and Authorization dated November 3, 2021 (Exhibit C-17) shows "Spin Capital $1.00" under the same heading, with the note "(1) Remaining balances reported by Company as of 10/21/2021," and a "Cash Collateral Reserve" of $1,800,000.00. Franklin treated the $1.00 as an amount withheld from Excell's loan proceeds. No $1.00 reached Spin.

3C. I believe, based on Franklin's own draft closing statement, that Franklin planned to pay Spin only $587,289 for a balance of about $2.1 million and to hold the rest in the $1,550,000 reserve, and that this is what Franklin was trying to do here. Spin would not have accepted $587,289 for that balance, and I would not sign a document that said the balance was $587,289 when it was not. The public court records showing Franklin's other suits against junior funders are cited in the counterclaims, not here.

4. The $1.00 in the Assignment was the balance of the two agreements it lists. Those two agreements had been rolled into Spin's August 31, 2021 agreement with Excell, which the Assignment does not list.

5. Franklin never paid Spin the $1.00. Exhibits C-2 and C-3 are true copies of Spin's TD Bank statements for the account ending 6504 for October and November 2021, taken from Spin's records, with all but the last four digits of each account number removed. They show no payment from Franklin Capital Group, Franklin Capital Funding or Wing Lake, and no payment of $1.00 from anyone. I have also reviewed Spin's statements for that account from May 2021 through January 2022, and for Spin's other TD Bank accounts for the same months. None shows any payment from Franklin or Wing Lake.

6. Exhibit C-3 shows that on November 1, 2021, Spin wired $2,114,312.50 to Hi Bar Capital, LLC ("Hi Bar") and Hi Bar wired $2,114,312.50 to Spin. I testified about these wires at trial in the Excell adversary proceeding on February 3, 2026 (Tr. 811–813): Spin wired first, at 3:22 PM Eastern; Hi Bar wired the same amount back to Spin at 4:06 PM; and I signed the Franklin Assignment that same afternoon at 4:13 PM Eastern (1:13 PM Pacific on the DocuSign record). The $2,114,312.50 was the full balance Excell then owed Spin under the August 31, 2021 agreement. Spin provided Hi Bar the funds with which Hi Bar paid off that balance, and Excell's obligation then ran to Hi Bar under Hi Bar's own agreement with Excell. Spin's own share of the Excell transaction was only part of it; the rest belonged to participants. My understanding was that money recovered on the Excell obligation would go to Hi Bar, then back to Spin, and then to the participants. In substance this was a refinancing of the Spin obligation by Hi Bar. Hi Bar also wired Spin $90,000 on November 3, 2021 and $300,000 on November 15, 2021, as Exhibit C-3 shows.

7. I was the broker of Hi Bar's first agreement with Excell and a participant in it, as I testified on February 3, 2026 (Tr. 811:3–7). Later, under an agreement dated January 28, 2022, Hi Bar assigned certain of its claims to Spin.

8. I do not own any part of Hi Bar and I do not control it. Its principals are Yisroel Herbst and his son Mordechai Herbst. In 2022 and 2023 I met with both of them about this matter, over dinner, a number of times. In or about 2024, Mordechai Herbst told me that Eli Tabak is his father's cousin, and possibly his own cousin as well, and that Mr. Tabak had invested $10 million in Franklin in connection with Franklin obtaining a line of credit. I have no personal knowledge of Mr. Tabak's role at Franklin beyond what Mordechai Herbst told me. At about the same time, Mordechai Herbst met with me and told me that he needed to protect his own interests and that Franklin had exposure. He did not tell me what that exposure was, or what his own exposure was. At a time I cannot now fix precisely, Mordechai Herbst also admitted to me personally, in substance, that he and his father had been colluding with Franklin in some way. He did not tell me what they had done, and I have found no document that proves it. After that, Yisroel and Mordechai Herbst stopped communicating with me. I did not know of any family relationship between the Herbsts and anyone at Franklin when Franklin sued Spin and Hi Bar in New York and Michigan in 2022, or when Franklin filed its alter-ego claims against me in Florida in 2024; I learned of it only when Mordechai Herbst told me, as described above. In or about 2022, Mordechai Herbst telephoned me and told me that Mr. Baum had called him about the Hi Bar obligation. At the Excell trial, Mr. Baum testified that he did not recall ever talking to Mordechai Herbst (Feb. 2, 2026 Trial Tr. 562:13–15; Exhibit C-21).

## THE 2022 PROPOSED COMPLAINT IN THE AUTO WHOLESALE OF BOCA CASE

9. Exhibit C-4 is a true copy of pages 1–3, 27–33, 35–36 and 43–44 of the "Joint Adversary Complaint" filed on November 2, 2022 by FVP and Wing Lake Partners f/k/a Franklin Capital Group, LLC in Adv. Pro. No. 22-01218-EPK (Bankr. S.D. Fla.), ECF No. 120. I was not a party to that proceeding. Exhibit C-5 is a true copy of that court's orders of November 14, 2022 (ECF No. 128) and November 17, 2022 (ECF No. 132). Exhibit C-6 is a true copy of pages 1, 7–10, 20–21 and 49 of the transcript of the November 16, 2022 hearing (ECF No. 140). I obtained each from the court's electronic docket.

10. Exhibit C-7 is a true copy of the April 4, 2023 order of the Oakland County, Michigan Circuit Court in Case No. 22-193300-CB denying Franklin's motion for leave to amend to allege that Spin and Hi Bar are alter egos.

11. Exhibit C-8 is a true copy of the pages of the two verdict forms returned by the jury in *FVP Opportunity Fund III, LP v. Zankl*, Case No. CACE-22-005125 (Fla. 17th Jud. Cir.), on which Questions 1 through 5 appear.

## THE MAY 15, 2026 BROWARD ORDER, AND THE JUNE 2026 HEARINGS

12. Exhibit C-9 is a true copy of the Broward court's May 15, 2026 order, Filing # 248282220. I appealed it (4D2026-1512). On June 23, 2026, a motion for reconsideration, vacatur and stay of that order was filed on my behalf, Filing # 251032035. To my knowledge it has not been heard or decided, and it has not been set for hearing.

13. I attended the Broward hearings on June 9 and June 16, 2026 and spoke on the record at each. Exhibit C-10 is a true copy of page 15 of the certified transcript of the June 9 hearing and of pages 1 and 8–12 of the transcript of the June 16 hearing. The quotations from those transcripts in paragraphs 73 and 74 of my counterclaims (Part Two of my Answer) are accurate. On June 16, I heard Judge Haimes say that the judgment creditors were "not proceeding as an alter ego," and I heard Mr. Karten say that if the order "has an error in it … I agree that it needs to be corrected," and then say, "I take that back."

## WHAT I TOLD THE TRUSTEE, AND WHAT HE AND HIS COUNSEL TOLD ME

13A. On September 20, 2026, the day I first wrote to the Trustee, I told him I wanted to put Spin into bankruptcy and believed he would have the authority to do it once his appointment was approved. I also told him I have dyslexia and asked him to keep his emails short. He answered, "Do not do that. You have no authority to do that now." I took him at his word. On telephone calls with Ms. Staiano and the Trustee in late September and early October 2026, Ms. Staiano told me that Ben held the exclusive authority to put Spin into bankruptcy and that Spin could only go into bankruptcy by the Trustee's decision. The Trustee was on some of those calls; others were with Ms. Staiano alone. After about a week of those calls, I began to

doubt that what I was being told matched what was being done, and I asked for answers in writing. After the first week of October 2026, the Trustee's side communicated with me mainly by email; the one further call before the complaint was filed was the October 13, 2026 Teams call described in ¶ 15. That is why my emails from September 20 through October 7, 2026 kept asking the Trustee to put Spin into bankruptcy (after first staying Spin's cases and investigating its rights) rather than my doing it, and why I did not retain bankruptcy counsel for Spin or file a petition for Spin myself before October 15, 2026, although no court order then prevented me from doing so as Spin's sole member and manager. On October 1, 2026, at 12:36 PM, Ms. Staiano wrote to Spin's SDNY lawyer, Alexander Sakin, copying me, the Trustee and Mr. Moloshok: "please do not file anything with the court in the interim." At 3:23 PM that day she wrote to me, copying the Trustee, Mr. Moloshok and the U.S. Trustee's office: "the Trustee takes no position on the filing you wish to make on Spin Capital's behalf. Keep us posted." Ms. Staiano's emails of October 2 and October 9, 2026 said that "Ben cannot act or speak on behalf of Spin" until the Court granted relief and that "the Trustee does not have that authority at the present. ... You currently have autonomy over your entities." The October 9 email was her answer, on a thread with Teton Life's New York lawyers, the Florida lawyer Stanley Casey and the U.S. Trustee's office, to my demand that she state the Trustee's claimed authority over Teton Life's case. I did not understand those emails to mean I could act for Spin. Having been told by the Trustee in writing that I had no authority, and by Ms. Staiano on the telephone that only the Trustee could put Spin into bankruptcy, I understood that neither of us could act for Spin until Judge O'Hagan ruled, and that only the Trustee's filing could bring that about. I learned on October 15, 2026 that the Trustee had instead applied, without notice to me, for an order confirming his "sole authority" over Spin and the other companies, and that on October 21, 2026 the Trustee certified that I had been "improperly acting on behalf of Spin" and "relentlessly" sending "missives ... directing us to take positions and perform services on behalf of Spin" (ECF No. 18 ¶¶ 7, 10). Those "missives" were the requests I made because I had been told only the Trustee could act for Spin. Exhibit C-24 contains true copies of these emails, printed from my mailbox: (A) the September 20, 2026 chain with the Trustee; (B) the October 1, 2026 emails about Spin's SDNY letter-motion (my 12:22 PM email to Mr. Sakin, Ms. Staiano's 12:36 PM and 3:23 PM emails, and the opening and closing paragraphs of my 3:00 PM email); (C) Ms. Staiano's October 2, 2026 "Stay issues" email; (D) the October 5–7, 2026 "Lubin call" chain; and (E) Ms. Staiano's October 9, 2026, 8:14 PM email.

13B. Spin's deals were funded with participants' money, and the participants own shares of those deals and their recoveries; I own 100% of Spin, not their shares. I told Judge O'Hagan this at the July 23, 2026 hearing, before the Trustee was appointed (Tr. 21:18–22, 22:10–14). I raised the participants with Ms. Staiano on October 1, 2026, and on October 7, 2026 I sent the Trustee, Ms. Staiano and Mr. Moloshok a participation agreement naming a participant; the

Trustee attached that email to his October 15 certification as Exhibit F. After the October 15 order, on a call with the Trustee and Ms. Staiano — I believe the first call after the order; my calendar shows a Teams call with them on the morning of October 19, 2026 — Ms. Staiano accused me of not disclosing the participants and of lying about it, and demanded that I amend my schedules. I told her, as I had already told her in writing, that I would not amend anything until a lawyer advised me on it. Ms. Staiano then wrote on October 25, 26 and 27, 2026 that I had "advised that you 'made a mistake'" in not listing participants, that I had claimed to be the 100% owner, that I "refuse to tell us who those investors are," and that they had been asking "since October 24." What I had written, on October 23, 2026, was that Spin's ownership structure is complicated because the investors have a say in the business transactions and that I might need to list them as investors on my personal schedules. That was a question about how to describe their interests. I do own 100% of Spin; the participants own shares of Spin's deals. I never hid them. I had told them on every call, and told the Court in July, that there are participants with rights in these deals. Ms. Staiano also demanded, from October 9, 2026, that I amend my schedules. I answered in writing on October 9 that my schedules were true when I signed them, that the value of Spin's claims was unknown, and that I would make any amendment with counsel. I still intend to amend only with counsel's advice, because my sworn statements have been used against me and because whether a participant is an "owner" or a "creditor" of Spin is a legal question I should not answer under oath without a lawyer. I also want it clear, by court order, that the lawyer who advises me about Spin's affairs can act for me and is not subject to the Trustee's direction, which the Trustee's counsel have said applies to any lawyer acting for Spin. Exhibit C-27 contains true copies of pages 21–22 of the July 23, 2026 hearing transcript, my October 1 and October 7, 2026 emails (opening messages), Ms. Staiano's October 9, 2026, 8:05 AM email and my October 9, 2026, 10:01 AM answer, Ms. Staiano's October 25, 2026, 9:52 AM, October 26, 2026, 9:59 PM, and October 27, 2026, 3:36 PM emails (opening messages), and the October 26, 2026, 5:05 PM participant email with the names and percentages redacted.

14. On September 22, 2026, at 5:20 PM, I emailed the Trustee at Ben@stanzialelaw.com, copying Rachel Wolf, Kirsten Ardelean and Heidi Feinman of the Office of the United States Trustee, with the subject line "MAY15_ORDER_AND_JUNE16_RECORD." I attached the May 15 order, the June 16, 2026 transcript and the May 13, 2026 transcript, and I quoted the June 16 passages in the body of the email. Exhibit C-11 is a true copy of that email, printed from my mailbox.

15. After my September 22 email, I spoke by video conference with the Trustee, Ms. Staiano and Mr. Moloshok on September 24, 2026 (a Zoom meeting the Trustee scheduled for 11:00 AM that day; Mr. Moloshok's 1:57 PM email that day begins "good to speak with you today. Following up our call") and again on September 28, 2026 (Mr. Moloshok's 6:25 PM email that

day is titled "This afternoon's call"). On those calls I explained that the May 15 order's finding that Spin and Teton Funding were under my "complete domination and control" and that "the corporate form is used to shield assets from creditors" did not match what Judge Haimes had ruled; that the jury had not pierced the corporate veil; and that this language extended Franklin's claim to own all of Spin's rights to me personally and was preventing me from retaining counsel to protect my own interests. Ms. Staiano responded that lawyers submitting orders with errors is normal and happens all the time, that I should not be concerned about it, and that the errors just have to be fixed. Neither the Trustee nor Ms. Staiano disputed that the finding did not match the record. I answered that these were not mistakes, that FVP's orders consistently added language that had not been ruled on, and that FVP and Franklin had been asserting control of Spin for years, leaving me unable to obtain counsel. On more than one of those video calls we discussed that the Trustee's side would work on having the Florida orders corrected, and the Trustee's side said that someone other than Spin, Teton Life or my other businesses — a family member or someone else — would have to put up the money for that work. I do not recall which of them said it first. Mr. Moloshok was on almost every video call I had with the Trustee and Ms. Staiano in September and early October 2026. The one subject I recall him raising on those calls was that they were going to file a complaint to put Spin into its own bankruptcy; that they would put FVP, Franklin and a number of others on notice; and that anyone who believed it owned some of Spin's rights would have to object, or would waive the right to claim those rights later by not objecting. Teton Life was not mentioned on that call. No one told me on those calls, or in writing before October 15, 2026, that the complaint would rely on finding 6 of the May 15, 2026 Broward order or would allege that my companies are my alter egos. The last of those calls was on October 13, 2026. That morning I asked Ms. Staiano for a call; she answered that it would be "about 3:30" and that "we will send a Teams invite," and her firm sent a Microsoft Teams invitation for 3:30 PM to 5:00 PM that day to the Trustee, Ms. Staiano, Mr. Moloshok and me. That call took place that afternoon, and Mr. Moloshok spoke on it. On October 15, 2026, at 12:51 AM, I emailed Ms. Staiano, copying Mr. Moloshok, the Trustee and the Office of the United States Trustee: "On our October 13 call, I understood Matt to say that parties who do not object to the proposed entity proceeding could lose the ability to assert competing rights later. Please correct that understanding if necessary. Please provide the proposed complaint and order when available … This email does not consent to entity bankruptcy filings or substantive consolidation." No one corrected that understanding or sent me the proposed complaint and order before they were filed later that day. On October 16, 2026, at 12:37 AM, after receiving the entered order, I wrote to Ms. Staiano: "It caught me off guard. To my knowledge, I received no advance notice of the application or a hearing before the order was entered." Exhibit C-30 contains true copies,

printed from my mailbox, of the October 13, 2026 emails and Teams invitation, my October 15, 2026, 12:51 AM email (top message only), and my October 16, 2026, 12:37 AM email.

16. On October 15, 2026, the Trustee filed his Verified Complaint, his certification (ECF No. 3-1) and his brief (ECF No. 3-8). His certification, at paragraph 6, presents finding 6 of the May 15 order as the Florida court's finding and attaches the order as Exhibit A. His brief says the Florida court "has already found" that Spin and Teton Funding were under my domination and "essentially vehicles to hide assets from his creditors," that the finding was "necessary" to the Florida court's ruling, and that it has preclusive effect notwithstanding my appeal. Exhibit C-13 is a true copy of the pages of ECF Nos. 1, 3-1, 3-8 and 19 on which those statements appear.

17. On October 18, 2026, at 10:26 PM, I emailed the Trustee, Ms. Staiano and Mr. Moloshok, copying the Office of the United States Trustee, Spin's Broward counsel Stanley Casey and Spin's Michigan counsel Kenneth Beams. I wrote: "The Trustee's application relies on finding 6 of the Broward court's May 15, 2026 order. In my view, finding 6 does not match the record." I attached the May 13, June 9 and June 16, 2026 transcripts, both verdict forms and the June 23, 2026 motion, and I asked the Trustee to authorize counsel to have the Broward court hear the June 23 motion. At 10:33 PM I added Judge Haimes's judicial assistant to the thread. At 10:39 PM Ms. Staiano replied: "Not sure why everything is an emergency now when you could have taken all these actions before the entry of the OSC on Thursday evening. Nonetheless, the trustee does not take instruction from you." At 10:42 PM I wrote that I intended to retain attorneys "as soon as the records allows me too." On October 19, 2026, at 7:06 AM, Ms. Staiano replied: "How do you propose to pay for the attorneys you plan to retain? You listed $67 on your petition. Have you made money post petition? Are you generating funds from the subject entities? If so, how much?" Exhibit C-12 is a true copy of that email chain, printed from my mailbox.

18. At the October 22, 2026 hearing, I told the Court that the Florida judge had not made the ruling the Trustee's counsel described, and that I had uploaded the transcripts. The transcript pages on which I said so, and on which the Court stated its findings, are attached as Exhibit C-14 (pages 27–28, 34, 40, 59–60 and 63). I did not, at that hearing, accuse the Trustee or his counsel of knowingly misstating the record. In September Ms. Staiano had told me that the order just needed to be corrected and that this was normal, and I believed the Trustee would help correct it.

19. On October 23, 24 and 26, 2026, I asked the Trustee and his counsel in writing to have the Broward court address the May 15 order. On October 24 I wrote: "The Trustee relied on it in this adversary proceeding (Dkt. 3-8; Dkt. 19, para. 6). As I understood the Court on October 22, it relied on that order too." On October 26, 2026, at 5:52 PM, Ms. Staiano wrote that the

Trustee would "contact Stanley Casey tomorrow to preliminarily discuss and then reach out to you. The Trustee will investigate and advise you as to his position." On October 27, 2026, at 11:14 AM, Ms. Staiano wrote to Judge Haimes's judicial assistant, Christine Kortabani, copying Mr. Casey and me: "This firm represents Benjamin A. Stanziale, Jr., Chapter 11 Trustee for Avrumi Lubin. For your and the Court's information, we attach a copy of the Order Granting Preliminary Injunction and Providing for Further Proceedings entered by the Bankruptcy Court in new Jersey." Since then I have received no word from the Trustee or his counsel of any step to have the Broward court address finding 6. Exhibit C-12 includes those emails.

19A. On November 4, 2026, at 10:09 PM, I emailed the Trustee, Ms. Staiano and Mr. Moloshok, copying the Office of the United States Trustee, my 16-page memorandum dated November 4, 2026 with Exhibits A–F and Teton Life's counsel's August 31, 2026 letter (NYSCEF No. 1476). On November 6, 2026, at 11:48 AM, I sent the same recipients my four-page record-review and preservation request with an indexed source binder. On November 7, 2026, at 5:25 PM, I sent them the Franklin Assignment, Spin's October and November 2021 TD Bank statements (the same documents as Exhibits C-1 to C-3), and Judge Kimball's June 11, 2025 and February 2, 2026 transcripts, and asked the Trustee to obtain the bank confirmation for the $1.00. Exhibit C-25 is a true copy of NYSCEF No. 1476 and of Ms. Staiano's October 29, 2026, 6:43 PM email (opening message only). Exhibit C-26 contains true copies of the body of my November 4 memorandum (without its exhibits), my November 6 request (without the binder), Ms. Staiano's November 6, 2026, 1:58 PM reply, and my November 7, 2026 email (without attachments), all printed from my mailbox. Ms. Staiano's November 6 reply was to a different email of mine sent at 12:10 PM that day, which I had copied to a large group including counsel for FVP, Franklin and the Excell trustee; my November 4 memorandum and November 6 request went only to the Trustee, his counsel and the U.S. Trustee's office.

19B. Exhibit C-29 is a true copy of the following eight emails from my account josh@tetonfunding.com, each printed with its full sender and recipient lists and its time: Ms. Staiano's emails of October 29, 2026 at 9:03 PM and 9:37 PM; Ms. Staiano's emails of November 2, 2026 at 5:09 PM, 5:52 PM, 5:53 PM and 5:56 PM; Mr. Karten's email of November 2, 2026 at 5:34 PM; and my email of November 2, 2026 at 5:39 PM. Only the top message of each email is reproduced; the quoted earlier messages and the attachments are not included. The recipient lists show that Ms. Staiano's 9:03 PM email of October 29 did not include FVP's Florida counsel, Jerry Breslin and Alan Karten, and that her 9:37 PM email on the same thread added both of them; and that her 5:09 PM email of November 2, on my New York order-to-show-cause thread, added both of them, when neither had been on any earlier email in that thread. Mr. Karten then wrote on that thread at 5:34 PM that "My research says

that Lubin has no interest or standing in the NY litigation," and attached a petition filed against me by my landlord. At 5:39 PM I asked Ms. Staiano, in writing, why she had added them, at whose request, whether either had been asked to assist the Trustee or her firm, and whether FVP, Mr. Breslin or Mr. Karten had asserted any right to control my individual decisions or the management or litigation authority of any Subject Entity. Her replies at 5:52 PM ("You are neither a plaintiff nor a defendant in the New York State case. ... How are you a party and what is your standing or interest in the NY state litigation?"), 5:53 PM ("I refer to Mr. Karten's email of today at 5:36 pm.") and 5:56 PM ("Another non sequitur. Are you going to withdraw your pleading or not? You are in contempt of Judge O'Hagan's order.") did not answer those questions. As of the date of this certification, no one has explained to me why FVP's counsel were added.

19C. On November 25, 2025, I attended a settlement conference in the New York Case for Teton Life and signed, for Teton Life only, the one-page paper at the third page of Exhibit C-31 (NYSCEF No. 1370; the second page is its NYSCEF exhibit cover sheet). It says the parties had reached "an agreement in principle" and that the terms "will govern the final agreement which will be drafted by plaintiff's counsel." I signed nothing in my individual capacity, and I have never signed a final settlement agreement in that case. The draft agreement dated December 14, 2025 (NYSCEF No. 1447) was prepared by Teton Life's then-counsel. I did not sign it, and to my knowledge no one signed it. By its own terms it was to take effect only when the New York court so-ordered it after Teton Life's counsel submitted it, and that never happened. It also contains terms that are not in the paper I signed, including a provision shifting the death-benefit split on a policy to 65 percent for Cap Factor if Teton Life failed to fund a premium that Cap Factor then paid (NYSCEF No. 1447 ¶ 7); the proposed order filed on October 30, 2026 carries that same provision (NYSCEF No. 1509 ¶ 14). On December 22, 2025, I sent an email to Jeffrey Chubak of Amini LLC, Teton Life's then-counsel, and to Teton Life's other member, copying Avery Samet of Amini LLC and the court-appointed receiver, Fred Stevens. It said: "I am not agreeing to any settlement, and there are no settlement discussions at this time. The November 25 document reflects an 'agreement in principle' that I am not proceeding with." I gave my reasons — unresolved disputes over policy ownership and proceeds, credibility issues on the docket, and the scope of the receivership — and asked counsel: "Please do not circulate the term sheet or draft settlement to opposing counsel" and "Please advise that settlement discussions are off the table pending further court and receiver direction." Exhibit C-32 is a true copy of that email, printed from my mailbox with its full sender and recipient lists; it shows the top message only, and the earlier messages quoted beneath it are omitted, as its cover note states. On May 3, 2026, I directed Teton Life's then-counsel in writing to oppose the cross-motions to enforce the November 25, 2025 paper; they did not, and moved to be relieved. On May 19, 2026, before

the argument, I filed a notice stating that Teton Life's then-counsel had no authority from me to consent to, or to state non-objection to, any settlement-enforcement order (NYSCEF No. 1404). My June 3, 2026 affirmation (NYSCEF No. 1425) states what I understood about that paper, and I stand by it. Exhibit C-31 contains true and complete copies of NYSCEF Doc. Nos. 1370, 929, 1447, 1425, 1445, 1415, 1427 and 1404, downloaded from the New York court's electronic docket, in the order shown on its cover sheet.

20. On November 7, 2026, I reviewed each of the Trustee's filings in this adversary proceeding (ECF Nos. 1, 3-1, 3-8, 18 and 19) and confirmed that none of them mentions the June 16, 2026 transcript, the Florida judge's statement that the creditors were "not proceeding as an alter ego," the jury's answer to Question 3, the pending June 23, 2026 motion, or my September 22, 2026 email. Until that review I had not confirmed that the omission ran through every one of the Trustee's papers.

**MY COUNSEL**

21. On September 20–22, 2026, my New Jersey bankruptcy counsel's representation ended. On September 22, 2026, at 4:49 PM, I wrote to the Trustee, copying the Office of the United States Trustee: "Me not having the ability to retain counsel will cause significant damage to the estate." I have continued to try to retain counsel for myself and, before October 15, 2026, for the companies.

**THE EXHIBITS**

21A. Exhibits C-24, C-25, C-26, C-27, C-29, C-30, C-31 and C-32 are described in ¶¶ 13A, 13B, 15, 19A, 19B and 19C. Exhibit C-28 is a true copy of pages 1 and 2 of the November 3, 2026 letter from Hellring Lindeman Goldstein & Siegal LLP, signed by Matthew E. Moloshok, to Justice Bannon of the Supreme Court of the State of New York, New York County, as it was emailed to me on November 3, 2026; the copies of this Court's October 15 and October 23, 2026 orders enclosed with the letter are omitted. Exhibit C-23 is a true copy of NYSCEF Document No. 32 in Index No. 502846/2022, as filed by Excell on March 18, 2022. Exhibit C-20 is a true copy of the unsigned October 22, 2021 draft Assignment that Franklin sent me by DocuSign (also Hi Bar's Trial Exhibit 14 in the Excell adversary proceeding). Exhibits C-21 and C-22 are true copies of pages of the certified transcripts of the February 2, 2026 and January 30, 2026 trial days in that proceeding (testimony of Mr. Baum and Mr. Zankl), obtained from the court reporter. Exhibit C-19 is a true copy of Plaintiff's Trial Exhibit 27 in the Excell adversary proceeding (Mr. Zankl's October 21, 2021 email to me with Franklin's draft Closing Statement and Authorization attached). Exhibit C-16 is a true copy of Plaintiff's Trial Exhibit 26 in the Excell adversary proceeding (my October 18, 2021 emails with Mr. Zankl, subject "RE: Payoff Letter"). Exhibit C-17 is a true copy of Plaintiff's Trial

Exhibit 32 (Franklin's November 3, 2021 Closing Statement and Authorization). Exhibit C-18 is a printout from my mailbox of the DocuSign notices Franklin (as "Wing Lake Capital Partners") sent me between October 22 and November 1, 2021.

22. Exhibits C-1 through C-32 are true copies of the documents described above and in the index that precedes them. The court papers were obtained from the courts' electronic dockets or from the court reporters; the emails were printed from my own mailbox; the bank statements came from Spin's records.

I certify under penalty of perjury that the foregoing is true and correct.

Dated: November 9, 2026

Avrumi Lubin

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Caption in Compliance with D.N.J. LBR 9004-1(b)<br><br>Avrumi Lubin<br>Defendant and Counterclaim-Plaintiff, pro se<br>605 West 42nd Street<br>New York, New York 10036<br>(718) 570-3796<br>josh@tetonfunding.com | Case No. 26-17342 (EJO)<br>Chapter 11<br><br>Adv. Pro. No. 26-01494 (EJO)<br>Judge: Hon. Eamonn J. O'Hagan, U.S.B.J. |

In re:
**AVRUMI LUBIN** a/k/a Josh Lubin,
Debtor.

---

BENJAMIN A. STANZIALE, JR., CHAPTER 11 TRUSTEE FOR AVRUMI LUBIN a/k/a Josh Lubin,
Plaintiff,
v.
AVRUMI LUBIN; SPIN CAPITAL, LLC; TETON LIFE, LLC; TETON FUNDING, LLC; TETON FUNDING GROUP, LLC; and JL SPECIAL INVESTMENTS, LLC,
Defendants.

## INDEX OF EXHIBITS TO THE CERTIFICATION OF AVRUMI LUBIN

Each exhibit begins with a cover sheet bearing its number; page counts include the cover sheet. Account numbers on Exhibits C-2 and C-3 are redacted to the last four digits (Fed. R. Bankr. P. 9037). Participant names and amounts on Exhibit C-27 are redacted.

| Exhibit | Document | Pages |
|---|---|---|
| C-1 | Assignment of Obligations and Merchant Documents, Spin Capital, LLC to Franklin Capital Group, LLC (October 2021), with Evidence of Assignment (Adv. Pro. No. 23-01132-EPK, ECF No. 292-5) | 7 |
| C-2 | Spin Capital TD Bank statement, account ending 6504, October 1–31, 2021 (account numbers redacted to last four digits) | 5 |
| C-3 | Spin Capital TD Bank statement, account ending 6504, November 1–30, 2021 (account numbers redacted to last four digits) | 5 |
| C-4 | Joint Adversary Complaint of FVP and Wing Lake Partners f/k/a Franklin Capital Group, LLC, November 2, 2022, Adv. Pro. No. 22-01218-EPK (Bankr. S.D. Fla.), ECF No. 120, pages 1–3, 27–33, 35–36, 43–44 | 15 |
| C-5 | Orders of November 14, 2022 (ECF No. 128) and November 17, 2022 (ECF No. 132), Adv. Pro. No. 22-01218-EPK (Bankr. S.D. Fla.) | 7 |
| C-6 | Transcript of the November 16, 2022 hearing, Adv. Pro. No. 22-01218-EPK (Bankr. S.D. Fla.), ECF No. 140, pages 1, 7–10, 20–21, 49 | 9 |
| C-7 | Order of the Oakland County, Michigan Circuit Court, Case No. 22-193300-CB, April 4, 2023, denying Franklin leave to amend to plead alter ego | 4 |

| Exhibit | Document | Pages |
|---|---|---|
| C-8 | Jury verdict forms (Franklin Parties and FVP Parties), FVP Opportunity Fund III, LP v. Zankl, No. CACE-22-005125 (Fla. 17th Jud. Cir.), filed October 6, 2025 — pages containing Questions 1–5 | 11 |
| C-9 | Order Imposing Charging Orders, Requiring Turnover of Financial Information, Enjoining Transfers, Authorizing Foreclosure of Transferable Interests, and Establishing Procedures for Private or Judicial Sale, May 15, 2026, No. CACE-22-005125 (Filing # 248282220) | 10 |
| C-10 | Transcript of the June 9, 2026 hearing, No. CACE-22-005125, p. 15; transcript of the June 16, 2026 hearing, pp. 1, 8–12 | 10 |
| C-11 | Lubin email to the Trustee, September 22, 2026, 5:20 PM, "MAY15_ORDER_AND_JUNE16_RECORD" (with attachment list) — printed from Lubin's mailbox | 3 |
| C-12 | Email chain of October 16–19, 2026 (request that the Trustee have counsel ask the Broward court to address its May 15, 2026 order) and October 23–27, 2026 (Florida vacatur motions) — printed from Lubin's mailbox | 8 |
| C-13 | Excerpts of the Trustee's papers in this adversary proceeding: ECF No. 1 ¶ 28; ECF No. 3-1 ¶¶ 6–7; ECF No. 3-8 (pages citing finding 6); ECF No. 19 ¶ 6; ECF No. 18 ¶¶ 7 and 10 | 14 |
| C-14 | Transcript of the October 22, 2026 hearing in this adversary proceeding, pp. 27–28, 34, 40, 59–60, 63 | 9 |
| C-15 | Transcript of the June 11, 2025 oral ruling, Adv. Pro. No. 23-01132-EPK (Bankr. S.D. Fla.), ECF No. 317, pages 7–8 | 4 |
| C-16 | Emails between Josh Lubin and Scott Zankl, October 18, 2021, "RE: Payoff Letter" (Plaintiff's Trial Exhibit 26, Adv. Pro. No. 23-01132-EPK) | 4 |
| C-17 | Franklin Capital Group, LLC Closing Statement and Authorization, November 3, 2021 (Plaintiff's Trial Exhibit 32, Adv. Pro. No. 23-01132-EPK) | 4 |
| C-18 | DocuSign notices from "Wing Lake Capital Partners" to josh@spincapital.com, October 22 – November 1, 2021 — printed from Lubin's mailbox | 3 |
| C-19 | Email from Scott Zankl to Josh Lubin, October 21, 2021, 5:30 PM, with Franklin's draft Closing Statement and Authorization (Plaintiff's Trial Exhibit 27, Adv. Pro. No. 23-01132-EPK) | 5 |
| C-20 | Unsigned draft Assignment of Obligations and Merchant Documents, DocuSign envelope of October 22, 2021 (Hi Bar Trial Exhibit 14, Adv. Pro. No. 23-01132-EPK) | 7 |
| C-21 | Excell adversary trial transcript, February 2, 2026 (Baum testimony) pp. 501–502, 509–510, 512–513, 518–519, 521–524, 549–551, 597–598, 616–617, 621–622, 629–630 | 24 |
| C-22 | Excell adversary trial transcript, January 30, 2026 (Zankl testimony) pp. 251–252, 254–255, 297–298, 325–327, 334–336, 338, 340–341, and February 2, 2026 (Zankl testimony) pp. 455–456, 461, 464, 474–475 | 22 |
| C-23 | Spin Capital balance letter dated October 18, 2021, as filed by Excell as Exhibit 2 to its Amended Answer with Counterclaims, Hi Bar Capital LLC v. Excell Auto Group, Inc., Index No. 502846/2022 (Sup. Ct. Kings Cnty.), NYSCEF Doc. No. 32 (March 18, 2022) | 3 |
| C-24 | Emails on authority over Spin Capital, September 20 – October 9, 2026: (A) September 20, 2026 emails between Lubin and the Trustee; (B) October 1, 2026 emails concerning Spin's SDNY letter-motion (Lubin 12:22 PM; Staiano 12:36 PM and 3:23 PM; Lubin 3:00 PM, opening and closing paragraphs); (C) Staiano October 2, 2026 "Stay issues" | 8 |

| Exhibit | Document | Pages |
|---|---|---|
| | email; (D) October 5–7, 2026 "Lubin call" emails; (E) Staiano October 9, 2026, 8:14 PM email — printed from Lubin's mailbox | |
| C-25 | Letter of Teton Life's counsel to Justice Bannon, August 31, 2026 (NYSCEF No. 1476), and Staiano October 29, 2026, 6:43 PM email (opening message) | 7 |
| C-26 | Lubin memorandum to the Trustee dated November 4, 2026 (body, without exhibits); Lubin November 6, 2026 record-review and preservation request (without binder); Staiano November 6, 2026, 1:58 PM email; Lubin November 7, 2026, 5:25 PM email (without attachments) — printed from Lubin's mailbox | 24 |
| C-27 | Participants in Spin's transactions: transcript of the July 23, 2026 hearing, In re Lubin, No. 26-17342 (EJO), pp. 21–22; Lubin emails of October 1, 2026 (2:22 PM) and October 7, 2026 (5:03 PM); Staiano October 9, 2026, 8:05 AM email and Lubin October 9, 2026, 10:01 AM reply; Staiano emails of October 25, 2026 (9:51 AM), October 26, 2026 (9:59 PM) and October 27, 2026 (3:36 PM); October 27, 2026, 8:18–8:32 PM exchange — printed from Lubin's mailbox; participant names and amounts redacted | 9 |
| C-28 | Letter dated November 3, 2026 from Hellring Lindeman Goldstein & Siegal LLP (Matthew E. Moloshok, Esq.) to Hon. Nancy M. Bannon, Supreme Court, New York County, Teton Life, LLC v. Golden Foothill Insurance Services, Index No. 650582/2022 (pages 1–2; enclosed orders omitted) | 3 |
| C-29 | Emails of October 29, 2026 (Staiano, 9:03 PM and 9:37 PM) and November 2, 2026 (Staiano 5:09 PM; Karten 5:34 PM; Lubin 5:39 PM; Staiano 5:52 PM, 5:53 PM and 5:56 PM), each with full sender and recipient lists; top messages only — printed from Lubin's mailbox | 7 |
| C-30 | October 13, 2026 emails arranging that afternoon's 3:30 PM call (Lubin 12:52 PM; Staiano 12:56 PM and 1:11 PM; Lubin 12:57 PM and 1:13 PM) and the Microsoft Teams meeting invitation sent by the Trustee's counsel's office at 1:49 PM (Trustee, Staiano, Moloshok, Lubin), with the calendar entry; Lubin's October 15, 2026, 12:51 AM email to the Trustee's counsel and the Trustee (top message only); Lubin's October 16, 2026, 12:37 AM email — printed from Lubin's mailbox | 7 |
| C-31 | The New York settlement papers, complete and unchanged from NYSCEF (*Teton Life, LLC v. Golden Foothill Insurance Services, LLC*, Index No. 650582/2022): Doc. No. 1370 (November 25, 2025 "agreement in principle," signed for Teton Life and Cap Factor only; filed May 1, 2026); Doc. No. 929 (Settlement Conference Order, November 25, 2025); Doc. No. 1447 (unsigned "Amini LLC Draft: December 14, 2025" Confidential Settlement Agreement and Release, filed by Cap Factor July 10, 2026); Doc. No. 1425 (Lubin affirmation, June 3, 2026); Doc. No. 1445 (Cap Factor letter, July 10, 2026); Doc. No. 1415 (letter of Teton Life's counsel, Schlam Stone & Dolan LLP, May 29, 2026: the cross-motions "should be denied"); Doc. No. 1427 (Cap Factor letter, June 16, 2026: "Teton Life submitted no opposition whatsoever"); Doc. No. 1404 (Lubin affirmation and notice of non-consent and lack of actual authority, May 19, 2026) | 37 |
| C-32 | Email from Avrumi Lubin to Teton Life's then-counsel (Jeffrey Chubak, Amini LLC) and Teton Life's other member, copying Avery Samet (Amini LLC) and the court-appointed receiver, Fred Stevens, December 22, 2025, 2:38 PM, "RE: Comments on Draft Settlement" — top message only, with full sender and recipient lists; printed from Lubin's mailbox | 2 |
| | Total | 297 |