# EXHIBIT C-4

FVP, Karma Entities and Wing Lake's Joint Adversary Complaint, filed Nov. 2, 2022 — Adv. Pro. No. 22-01218-EPK (Bankr. S.D. Fla.), ECF No. 120, pages 1–3, 27–33, 35–36 and 43–44

Case 22-01218-EPK Doc 120 Filed 11/02/22 Page 1 of 44

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**PALM BEACH DIVISION**
www.flsb.uscourts.gov

In Re:

AUTO WHOLESALE OF BOCA, LLC, Case No.: 22-15627-EPK

Debtor.
_______________________________/

FVP OPPORTUNITY FUND III, LP; FVP INVESTMENTS, LLC; and FVP SERVICING, LLC,

Adversary Plaintiffs,

vs. Adversary Case No.: 22-01218-EPK

AUTO WHOLESALE OF BOCA, LLC; HI BAR CAPITAL, LLC; WING LAKE PARTNERS f/k/a FRANKLIN CAPITAL GROUP, LLC; KARMA OF PALM BEACH, INC.; KARMA OF BROWARD, INC.; EXCELL AUTO SPORT AND SERVICE, INC.; CHAPTER 7 TRUSTEE FOR THE ESTATE OF EXCELL AUTO GROUP, INC., and EDWARD BROWN,

Adversary Defendants, Adversary Plaintiffs, Cross Plaintiffs, and Cross Defendants.
_______________________________/

KARMA OF PALM BEACH, INC.; a Florida Corporation; KARMA OF BROWARD, INC., a Florida Corporation,

Adversary Plaintiffs,

vs.

AUTO WHOLESALE OF BOCA, LLC; FVP OPPORTUNITY FUND III, LP; FVP INVESTMENTS, LLC; FVP SERVICING, LLC; WING LAKE PARTNERS f/k/a

FRANKLIN CAPITAL GROUP, LLC; KARMA OF PALM BEACH, INC.; KARMA OF BROWARD, INC.; EXCELL AUTO SPORT AND SERVICE, INC; CHAPTER 7 TRUSTEE FOR THE ESTATE OF EXCELL AUTO GROUP, INC., and EDWARD BROWN

Adversary Defendants, Adversary Plaintiffs, Cross Plaintiffs, and Cross Defendants.

_______________________________________/

WING LAKE PARTNERS f/k/a FRANKLIN CAPITAL GROUP, LLC, a Delaware limited liability company,

Adversary Plaintiff,

vs.

AUTO WHOLESALE OF BOCA, LLC; FVP OPPORTUNITY FUND III, LP; FVP INVESTMENTS, LLC; FVP SERVICING, LLC; HI BAR CAPITAL, LLC; KARMA OF PALM BEACH, INC.; KARMA OF BROWARD, INC.; EXCELL AUTO SPORT AND SERVICE, INC.; CHAPTER 7 TRUSTEE FOR THE ESTATE OF EXCELL AUTO GROUP, INC., and EDWARD BROWN EDWARD BROWN,

Adversary Defendants, Adversary Plaintiffs, Cross Plaintiffs, and Cross Defendants.

_______________________________________/

**THE FVP, KARMA ENTITIES AND WING LAKE'S<br>JOINT ADVERSARY COMPLAINT<br>TO DETERMINE OWNERSHIP OF PROPERTY IN THE POSSESSION<br>OF THE DEBTOR IN PART I,<br>AND, IF NECESSARY,<br>PART II, THE VALIDITY AND EXTENT<br>OF LIENS HELD BY THE PARTIES IN ANY PROPERTY OWNED BY THE DEBTOR**

COME NOW various parties, FVP Opportunity Fund III, LP, a Delaware limited partnership (the "FVP Fund"), FVP Investments LLC, a Delaware limited liability company ("FVP Investments"), FVP Servicing, LLC, a Delaware limited liability company ("FVP Servicing"),

(collectively, the FVP Fund, FVP Investments and FVP Servicing are "FVP"); Wing Lake Partners f/k/a Franklin Capital Group, LLC, a Delaware limited liability company ("Wing Lake"); Karma of Palm Beach, Inc., a Florida corporation; Karma of Broward, Inc., a Florida corporation, (collectively, Karma of Palm Beach, Inc. and Karma of Broward, Inc. are the "Karma Entities") (collectively, FVP, Wing Lake and the Karma Entities are the "Plaintiff Parties"), and hereby sue the Debtor, Auto Wholesale of Boca, LLC, a Florida limited liability company ("AWB"); Hi Bar Capital, LLC, a New York limited liability company ("Hi Bar"); Excell Auto Sport And Service, Inc. ("Excell Service"); Edward Brown, an individual ("Brown"), and Nicole Testa Mehdipour, Chapter 7 trustee (the "Excell Trustee") for the estate of the Chapter 7 Debtor Excell Auto Group, Inc. ("Excell," "Excell Auto" or "Excell Auto Group"), in Case No.: 22-12790-EPK, as common Defendants in all counts pled herein, and further the Plaintiff Parties each bring claims, each against the other, regarding the ownership of the vehicles in the possession of AWB, as well as the priority of security interests of each party in any vehicles that are determined to be owned by AWB.

## INTRODUCTION TO THE RELIEF REQUESTED

## THE PLAINTIFF PARTIES JOINDER IN PART I ONLY, AND, THE PLAINTIFF PARTIES RESERVATION OF RIGHTS AS TO ANY CLAIMS OTHER THAN CLAIMS AS TO THE DISPUTED VEHICLES

## PART I

The Plaintiff Parties have agreed, and hereby plead, that it is the purpose and intent of this joint pleading to streamline the claims of each of the parties in a bifurcated adversary trial. The first proceeding, referred to herein as Part I, shall comprise an adversary trial as it relates to Count I, Declaratory Relief (the "Declaratory Relief Action"). Count I seeks that this Honorable Court determine in a non-jury adversary trial the ownership of the vehicles both in the possession of Debtor AWB, and those claimed to be unlawfully taken and converted by the Debtor AWB (defined below, the "Disputed Vehicles"). As pled herein, at the conclusion of the adversary trial on the Declaratory Relief Action in Part I, Count I, the Plaintiff Parties seek that the Court determine ownership of the Disputed Vehicles in one of three categories.

1. That the Debtor owns some or all of the Disputed Vehicles. This is the position advocated by Debtor AWB.

company debits the business customer's bank account for a certain percentage of the business customer's receivables either daily or weekly until the purchase price is repaid.

129. Such merchant cash advance funding companies currently are under intense scrutiny for what legislators and regulators have deemed heavy-handed lending and unlawful collection tactics. Merchant cash advance funding companies advance money at exorbitant interest rates and often require borrowers to execute a confession of judgment or consent to other legal process as a condition to obtaining the funds, opening the door for rampant abuse of power. Funding companies have been known to forge documents, lie about how much is owed, and fabricate defaults to convince a court, typically in New York, to obtain a judgment. *See, e.g.,* the Bloomberg article titled, "I hereby confess judgment" and the Yahoo! Finance article titled, "'We're coming after you': Inside the merchant cash advance industry." A borrower never even has a chance to dispute whether it committed a default or the amount outstanding before the merchant cash advance funding company seizes all of its assets. Under the facts and circumstances of this case, the merchant cash advances were in fact a criminally usurious loan, which is unenforceable and making any security interest in the Disputed Vehicles unenforceable

THE INITIATION OF THE HI BAR FRAUD

130. Non-party, Spin Capital, LLC ("Spin") is a New York limited liability company.

131. Hi Bar is an affiliate of Spin with Josh Lubin, the Principal of Spin, negotiating for and speaking for Hi Bar for all purposes.

132. Hi Bar and Spin are both MCA's, which on information and belief, are controlled by Josh Lubin.

133. In or around September of 2021, Scott Zankl on behalf of Excell entered into communications with Wing Lake to borrow money to pay off MCA loans that Excell and the Karma Entities with Spin and two other MCA's.

134. Wing Lake advised Zankl, that it would fund a loan to pay off the two other MCA loans only if the Spin loan was satisfied.

135. In response, Zankl had extensive conversations with Josh Lubin, the Principal of Spin about the fact that he would not be able to borrow the money from Wing Lake without Spin's MCA loan being paid off.

136. Lubin advised Zankl that he would shift the debt owed to Spin to another company that he controlled named Hi Bar. At all times, all of Scott Zankl's communications with both Spin and Hi Bar were with Josh Lubin.

137. In October 2021, Zankl and Lubin agreed that Hi Bar would payoff the Spin debt and that Zankl and his companies, Excell and the Karma Entities, would then only have a debt to Hi Bar and it would appear to Wing Lake that the Spin debt was satisfied.

138. On October 27, 2022, the Zankl's on behalf of Excell and the Karma Entities, entered into the money advance transaction documents with Hi Bar. **Exhibits L through Exhibit N.**

139. Critically, the Hi Bar documents materially increased the debt owed by Zankl, Excell and the Karma Entities for no reason as there was never a default of the Spin debt. Further no money was paid by Hi Bar to Spin, and no money was paid to Excell and the Karma Entities for the increased debt. No consideration was supplied by Hi Bar for its imaginary advance to Excell and the Karma Entities.

140. In response to this paperwork, Lubin and Spin notified Wing Lake that Spin no longer had any sums owed by Excell and the Karma Entities but intentionally and fraudulently withheld the fact that Spin had merely rebranded the debt in the name of Hi Bar.

141. Based on this representation, Wing Lake and Excell and the Karma Entities entered into the Wing Lake transaction documents depicted in **Exhibits U through Exhibit Z**.

142. Under the Assignment Agreement, Spin acknowledged that Wing Lake is in the business of making secured commercial loans and agreed, inter alia: (a) not to purchase any portion of accounts, receipts or other obligations from Excell or the Karma Entities (together, the "Borrowers"), (b) not to take extend credit to or take a security interest in assets of the Borrowers, and (c) in the event Spin received payment from the Borrowers, the payment would be held in trust for the benefit to Wing Lake. See Ex. Y, p. 2, ¶ 6.

143. As is seen in the Spin transaction documents with Wing Lake, which were signed by Spin just days after the Hi Bar transaction, Spin and Hi Bar colluded and conspired to defraud Wing Lake as the Hi Bar debt, which was *de facto* the Spin debt, was hidden from Wing Lake. As such, Wing Lake was intentionally defrauded by both Spin and Hi Bar as both companies, as well

Case 22-01218-EPK Doc 1 Filed 12/02/22 Page 29 of 44



as Lubin, materially mislead Wing Lake into entering into the loan agreements in the first instance by materially misrepresenting that the Spin debt was satisfied, when it was simply relabeled.

THE HI BAR FRAUD CONTINUES

144. Shortly after the Wing Lake transaction, Scott Zankl engaged FVP in communications regarding a loan transaction.

145. To that end, through November and December 2021, Zankl had detailed conversations with FVP about a $7.5 million dollar loan facility which would be collateralized by the inventory of the Karma Entities but would specifically not include any collateral or security interests in Excell.

146. Notwithstanding the fact that Hi Bar was ostensibly permitted to file a UCC financing statement on October 27, 2021, Hi Bar did not do so.

147. The decision of Hi Bar not to file a financing statement was intentional to maintain the fraud against Wing Lake hidden as long as possible, and to commit further fraud against FVP.

148. At that same time, Zankl had conversations with Lubin regarding the FVP loan. Lubin specifically requested that Zankl let him know when the FVP loan was going be funded and told Zankl to forward all of the FVP loan documents to him for his review. It was Lubin's intent to have Zankl secure the FVP loan without FVP knowing about the Hi Bar loan so Zankl would pay a substantial part of the proceeds of the FVP loan to Hi Bar to satisfy its illegal usurious loan.

149. Just before December 15, 2021, Zankl advised Lubin that he was closing the loan with FVP. In response to this information, and in anticipation of the funding, Lubin caused a UCC Financing Statement to be filed on Excell and the Karma Entities on December 15, 2021. **Exhibit AA**. Lubin filed the UCC on that date because he was led to believe that FVP was funding the Karma's loan on or about that date.

150. When the loan did not close, Lubin accused Zankl of misleading him and pressured Zankl to email him the actual loan documents provided by FVP to confirm his representations. On December 17, 2022 Zankl emailed Lubin all of the FVP / Excell / Karma loan documents. **Exhibit BB**.

151. After Lubin received the FVP loan documents, he was fully aware of the fact that the FVP loan proceeds could not be used to repay any other lenders including Hi Bar.

152. On December 19, 2021, Zankl told Lubin that FVP became aware of the December 15, 2021 filing of the UCC Financing Statement and advised Zankl that the funding was off and that therefore Zankl could not pay Hi Bar.

153. In response, Lubin demanded that Zankl sign a "Settlement Agreement" which astronomically increased the amounts due Hi Bar **Exhibit M.** The December 19, 2022 "Settlement Agreement" falsely and fraudulently described a "default" that never occurred, and reiterated that Hi Bar had a "security interest" in the Karma Entities collateral as described in the Hi Bar UCC Financing Statement filed just four days prior on December 15, 2021. **Exhibit AA.**

154. Notwithstanding the purported confirmation that Hi Bar was entitled to maintain the just filed UCC filing, Hi Bar did the exact opposite of what the documents purported to grant, and on December 19, 2021, Hi Bar ***instead filed a termination*** of the four day old UCC Financing Statement - **Exhibit CC** - which terminated the Hi Bar financing statement as to Excell, Zankl and the Karma Entities.

155. This termination of the four day old UCC Financing Statement - **Exhibit CC** - was specifically and intentionally made as a direct, false and fraudulent representation to FVP that Hi Bar had no secured interests in the Karma Entities collateral. The termination states:

> "Effectiveness of the Financing Statement identified above is terminated with respect to the security interests of the Secured Party authorizing this Termination Statement".

156. This representation file of record in Exhibit CC was intentionally made to FVP and was for the sole purpose of notifying FVP that Hi Bar had no security interests to protect. This representation was false when made and intentionally false. FVP justifiably relied upon the misrepresentation to their detriment.

157. To double down on the fraud, Hi Bar advised Frank O'Donnell, an agent intermediary between FVP and Zankl, that the Hi Bar UCC Financing Statement of December 15, 2021 was a mistake and was "erroneously filed". **Exhibit DD.** This representation was specifically made to FVP for the sole purpose of notifying FVP that Hi Bar had no security interests to protect and was false when made and intentionally false. FVP justifiably relied upon the misrepresentation

to their detriment.

158. The sole purpose of the termination communicated to FVP was to convince FVP that Hi Bar had no protectable interest in the collateral of the Karma Entities so that FVP would rest assured that Hi Bar was not a threat to their priority of security and proceed to fund a loan to the Karma Entities with Lubin waiting in the wings to pounce with a second UCC Financing Statement which would be filed minutes before an FVP filing.

THE STING

159. The fraud worked. Upon being supplied the UCC termination notice, FVP reinstituted the loan process with Zankl and the Karma Entities.

160. The negotiations carried through to mid January 2022 with Zankl advising Lubin every step of the way on the progress of the FVP funding so Lubin would be ready to act.

161. On January 21, 2022 Zankl again emailed Lubin the FVP loan documents and promised Lubin that as soon as he got the loan from FVP, which would be Monday January 24, 2022, that Zankl would pay Lubin from the FVP proceeds. **Exhibit EE.**

162. Again, after Lubin received the FVP loan documents, he was fully aware of the fact that the FVP loan proceeds could not be used to repay any other lenders including Hi Bar.

163. On Monday January 24, 2022, Lubin again demanded that Zankl email him all of the actual loan closing agreements. In response, Zankl sent Lubin four (4) separate emails which included all the FVP loan documents. **Exhibit FF Composite**. Later that day when no closing occurred Zankl texted Lubin that he would be closing the next day January 25, 2022. **Exhibit GG.** The text again confirmed that Lubin would be receiving the FVP loan proceeds which he was fully aware he could not receive under the terms of the FVP transaction documents.

164. On January 25, 2022, Zankl advised Lubin that he would be closing he next day, January 26, 2022, with certainty.

165. In response, and to finalize the fraud, at Lubin's direction Hi Bar refiled its UCC Financing Statement on January 25, 2022 at **10:55 pm** knowing that:

a. the FVP funding was to close the next day on January 26, 2022;

b. The FVP loan could not be used to pay Hi Bar;

c. That Zankl fully intended to pay Hi Bar with the proceeds as stated in the text of January 24. 2022.

d. That but for the material misrepresentation of the December 19, 2021 UCC Termination, Exhibit CC, that there never would have been an FVP loan in the first instance.

166. At all times Josh Lubin acted for both Spin and Hi Bar in an identical fashion and all of Zankl's communications with both Spin and Hi Bar were with Josh Lubin.

167. In fact, on January 3, 2022, Josh Lubin told Scott Zankl to wire the funds due Hi Bar to Spin. **Exhibit HH.**

168. It was always Josh Lubin who personally pressured and threatened Scott Zankl and the Karma Entities with a (Hi Bar) lawsuit ("I have to file tomorrow") if payments were not made to Lubin's satisfaction. See eg, **Exhibit II** regarding pressure and threats on January 13, 2022.

169. It was Josh Lubin who personally directed Scott Zankl where to send every payment due Hi Bar after the Hi Bar documents were executed. For example, on February 7, 8 and 9, 2022, Lubin directed Zankl to wire to an attorneys account. On those dates a total of $1.3 million was wired to a Lubin / Hi Bar attorney with funds, on information and belief, that came from the FVP $7.5 million dollar loan the prior week.

170. The actions of Hi Bar comprise fraudulent conduct with the intended and expressed target of the fraud being FVP.

171. The UCC Financing Statement filed on December 19, 2021 was an "instrument" as defined in Fla. Stat. § 817.535 and was filed with the intent to defraud.

172. The UCC Financing Statement filed on January 25, 2022 at 10:55 pm was an "instrument" as defined in Fla. Stat. § 817.535 and was filed with the intent to defraud.

173. The UCC Financing Statement filed on January 25, 2022 at 10:55 pm contained a material false statement as it represented that Hi Bar had a legitimate lien in the property defined therein when Hi Bar had no legitimate enforceable interest to protect; as Hi Bar paid no consideration for the alleged interest, was a participant in a fraudulent transfer as defined in Fla. Stat. § 726.105; was a participant in an illegal and usurious shake down of Zankl and the Karma Entities, and was surreptitiously filed with the intent to defraud.

174. The FVP Plaintiffs demand that the court declare the Hi Bar UCC Financing Statement filed on January 25, 2022 at 10:55 pm null and void *ab initio* and order the instrument sealed and removed from any searchable electronic database. See § 817.535(8)(b)(1).

175. The FVP Plaintiffs demand that the Court award the FVP Plaintiffs as the victim injunctive relief, damages, civil penalties, costs and attorney fees. See § 817.535(8)(b)(3).

176. The FVP Plaintiffs demand a trial by jury on this Count and reserve the right to seek punitive damages upon proper motion pursuant to Fla. Stat. § 768.72.

WHEREFORE, the FVP Plaintiffs demand that the Hi Bar UCC Financing Statement filed on January 25, 2022 at 10:55 pm be declared null and void ab initio and award damages, attorney's fees and costs to the FVP Plaintiffs as well as such further relief as the Court deems just and proper and demand a trial by jury on this count.

**COUNT FIVE**

**COMPLAINT TO VOID LIEN BASED ON ILLEGALITY**
**FVP V HI BAR**

**JURY TRIAL DEMANDED**

177. The FVP Plaintiffs repeats and realleges the allegations contained in paragraphs 1 through 86 and 124 through 173 as if fully set forth herein.

178. MCA's have come under intense scrutiny for their unconscionable and unlawful conduct. See *Attorney General of the State of New York, v. Various MCA Companies*, Index No. 451368/ 2020 Supreme Court of the State of New York, County of New York (alleging, among other things, that Richmond, Giardina, and others have preyed upon thousands of small businesses throughout the United States by offering funding under "merchant cash advances" that "are in fact fraudulent, usurious loans with interest rates in the triple and even quadruple digits, far above the maximum rate permissible for a loan under New York law - Criminal Usury, Fraud in the Form of Unconscionability – pending); *Fleetwood v RAM Capital Funding, et al.,* Unites States District Court for the Southern District of New York, Case No. 20-cv-5120(LJL), See June 6, 2022, Opinion and Order; See also *Federal Trade Commission v. RCG Advances*, LLC, No. 20-cv-4432 (S.D.N.Y.) same.

179. Hi Bar is the subject of several lawsuits for the same illegal and inequitable conduct

schedule and no time period during which the Purchased Amount must be collected by Spin."

181. The First Agreement then goes on to state that Excell must pay $150,000.00 weekly, or, 20% of its receivables. Excell had no receivables.

182. On October 18, 2021, Spin issued to Zankl a balance notice that stated that Excell owed Spin **$2,264,312.50.** Neither Zankl nor Excell were in default, but Zankl was required to eliminate the Spin debt to comply with the Wing Lake demands for its financing.

183. Days later, Lubin agreed to "transfer" the Spin debt to Hi Bar which he described to Zankl as a "no net refi" with Hi Bar, a company he controlled, which, he represented, would simply exchange the creditors names with no change in terms. This was an intentionally false statement.

184. Lubin emailed the Hi Bar paperwork to Zankl which he viewed on his phone, and trusting Lubin's representations about what was in the paperwork, DocuSigned the documents on his phone on October 27, 2021.

185. After the Zankl was able to intelligently review the documents, he learned that Hi Bar failed account for the approximately $750,000.00 already paid to Spin and discovered that Excell and now the Karma Entities owed Hi Bar **$3,177,880.**

186. Therefore, Hi Bar increased the debt a little less than $1,000.000.00 from just a week prior with the stroke of a pen. This with no additional funds paid to Excell or Karma Entities. with weekly payments of $150,000.00. Over the next two months Zankl and Excell paid Hi Bar approximately $500,000.00 and in mid-December had a balance of **$2,677,880.00.**

187. Therefore, over the course of three and one half months, Excell became indebted in the amount of **$2,998,000** (and received **$2,000,000.00**) **repaid $1,250,000.00 and was told it owed a balance of $2,677,880.00.** Incredibly, Zankl and Excell (and now the Karma Entities which were added as obligors) were told they were in default and would be sued unless they signed a "Settlement Agreement".

188. Fearing what a lawsuit would do to his business, Scott Zankl executed a "Settlement Agreement" in mid-December 2021 which increased the balance owed to Hi Bar to **$4,016,820.** An increase of the amount owed by **$1.3 million**. So, in approximately 100 days, **Excell received $2 million, repaid $1.2 million and owed $4 million.** No, that is not a typo.

189. It gets worse. By mid-January Excell paid Hi Bar an additional **$1.3 million** making the total payment by Excell **$3,083,687.50** on the original obligation of **$2,998,000** incurred on August 31, 2021.

190. On January 28, 2022, Hi Bar sued Zankl, Excell and the Karma Entities for what it deemed it was owed under the "merchant advance", the sum of **$3,616,820,** plus attorneys' fees in the amount of **$625,000.00** or 33% of the Outstanding Balance. That case remains pending.

191. So, in four months, **Excell repaid over 100% of the incurred debt**, (which was 33% more that the money received) and **still owed $1.6 million more than the original debt.**

192. Incredibly, Hi Bar never paid a penny to Excell, or the Karma Entities at any time to receive this patently illegal windfall.

193. On information and belief, Hi Bar never paid Spin any money to "pay off" the Spin debt and that the "Balance Transfer" transaction was simply a fiction invented by Lubin and his associates to mercilessly rip off Zankl, Excell and the Karma Entities.

194. All of Scott Zankl's communications regarding the money owed to Hi Bar were with Josh Lubin personally. It was Lubin that constantly pressured Zankl for the Hi Bar payments.

195. The acts of Spin, Lubin and Hi Bar are outrageous, violate Florida Public Policy, are unconscionable and unquestionably illegal in Florida. To the extent that this Court is required to view the acts of Hi Bar through the prism of New York law, it is equally illegal as is outlined in the lawsuit filed by the Attorney General of New York cited above.

196. Spin and Hi Bar may call it an "advance" or "purchase of receivables", but it was and is, an obvious usurious loan, plain and simple. Hi Bar and Spin attempted to mask their loan agreements as receivables purchases but even the most cursory examination proves what anyone looking at this already knows. Spin and Hi Bar never bothered to analyze the Excell receivables because the fact that Excell had no receivables would have made no difference.

197. These were criminally usurious loan contracts under both New York law and Florida law created by very smart lawyers for very unethical lenders. As to the "Balance Transfer" to Hi Bar, the loan charges increased by 50.3 %. When Hi Bar and Zankl, Excell and the Karma Entities executed a "Settlement Agreement" the loan charges increased another 50%. Without a penny being paid to Excell.

beyond their ability to pay as they became due, within the meaning of Fla. Stat. § 726.105(1)(b).

223. Excell and the Karma Entities incurred obligations and transferred property while insolvent, or as a result of such obligations and transfers became insolvent, within the meaning of Fla. Stat. § 726.106(1).

224. Excell and the Karma Entities did not receive reasonably equivalent value for the Hi Bar Transaction and Hi Bar UCC Filings.

225. Wing Lake demands the avoidance of the obligations of Excell and the Karma Entities to Hi Bar, together with the voiding of any liens acquired by Hi Bar in the assets of such entities, pursuant to Fla. Stat. § 726.108(1)(a).

WHEREFORE, the Wing Lake demands the obligations of Excell and the Karma Entities o Hi Bar be avoided to the extent necessary to satisfy its claims, and that Wing Lake be awarded its costs and expenses under Federal Rule of Bankruptcy Procedure 7054 and Fed. R. Civ. P. 54 as well as such further relief as the Court deems just and proper and demands a trial by jury on this count.

Dated: November 2, 2022

For the FVP Plaintiffs


| | |
|---|---|
| Jerrell A. Breslin, Esq.<br>Baron, Breslin & Sarmiento<br>The DuPont Building<br>169 East Flagler Street, #700<br>Miami, Florida 33131<br>Phone: (305) 577-4626<br>E-mail: JB@RichardBaronLaw.com<br>EService@RichardBaronLaw.com<br><br>By: s/ Jerrell Breslin, Esq.<br>Jerrell Breslin, Esq.<br>Fla Bar No: 269573 | David Softness, Esq.<br>David R. Softness, P.A.<br>201 S. Biscayne Blvd., Ste 2740<br>Miami, Florida 33131<br>Phone: (305) 341-3111<br>E-mail:david@softnesslaw.com |
| Jonathan Noah Schwartz, Esq.<br>Florida Bar No. 1014596<br>Jonathan Schwartz Law PLLC<br>10200 NW 25th Street, Suite 111<br>Doral, FL 33172<br>Tel.: (973) 936-2176 | |

| | |
|---|---|
| E-mails:jschwartz@jonschwartzlaw.com<br>JNSEsquire@gmail.com | |

***The Plaintiff Parties Below have Authorized the Filing of this Joint Pleading by the FVP Parties.***

For the Karma Entities

Harry Winderman, Esq.
Weiss, handler & Cornwell, P.A.
2255 glades road, suite 205 A
Boca Raton, FL 33431

By: /s/ Harry Winderman

For Wing Lake

SHRAIBERG PAGE, P.A.
Attorneys for Wing Lake / Franklin
2385 NW Executive Center Drive, Suite 300
Boca Raton, Florida 33431
Email: bss@slp.law
Email: pdorsey@slp.law

By: /s/ Bradley Shraiberg
Bradley Shraiberg
Fla Bar No. 121622
Patrick Dorsey
Fla. Bar No. 0085841

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that; I electronically filed the foregoing was served via Email electronic transmission under Local Rule 7026 -1 upon those parties and attorneys who are registered with the Court to receive notifications in this matter but not filed of record and by email upon: the office of the US Trustee by serving Heidi A. Feinman, Esq. at Heidi.A.Feinman@usdoj.gov, upon the Subchapter 5 Trustee by serving Linda Leali, Esq. at lleali@lealilaw.com, upon the Debtor/Defendant by serving James B. Miller, Esq. at bkcmiami@gmail.com, upon Karma or Broward, Inc. and Karma of Palm Beach, Inc. by serving Harry Winderman, Esq. at harry4334@hotmail.com, upon Ed Brown by serving Brett Marks, Esq., at brett.marks@akerman.com, and upon Hi Bar by serving Jarret P. Hitchings, Esq., at jarret.hitchings@bclplaw.com for Hi Bar.

/ s/ Jerrell Breslin
Jerrell Breslin, Esq.