# EXHIBIT C-13

Trustee's papers, Adv. Pro. No. 26-01494 (EJO): Verified Complaint (ECF No. 1) page containing ¶ 28; Certification of Benjamin A. Stanziale, Jr. (ECF No. 3-1) page containing ¶¶ 6–7; Trustee's Brief (ECF No. 3-8) pages 8, 10 and 13; Trustee's Reply (ECF No. 19) page containing ¶ 6

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| Caption in Compliance with D.N.J. LBR 9004-1(b)<br>HELLRING LINDEMAN GOLDSTEIN<br>& SIEGAL LLP<br>Patricia A. Staiano, Esq.<br>Attorneys for Benjamin A. Stanziale, Jr.,<br>Chapter 11 Trustee<br>103 Eisenhower Parkway, Suite 403<br>Roseland, New Jersey 07068-1031<br>973.621.9020<br>pstaiano@hlgslaw.com | |
| In Re:<br><br>AVRUMI LUBIN a/k/a Josh Lubin,<br><br>Debtor. | Case No 26-17342 (EJO)<br><br>Judge: Eamonn James O'Hagan, U.S.B.J.<br><br>Chapter 11 |
| BENJAMIN A. STANZIALE, JR., CHAPTER 11 TRUSTEE FOR AVRUMI LUBIN a/k/a Josh Lubin,<br><br>Plaintiff,<br><br>vs.<br><br>AVRUMI LUBIN, SPIN CAPITAL, LLC, TETON LIFE, LLC, TETON FUNDING, LLC, TETON FUNDING GROUP, LLC, and JL SPECIAL INVESTMENTS, LLC,<br><br>Defendants. | Adv. Pro. No. 26-_________(EJO) |

VERIFIED COMPLAINT TO EXTEND CHAPTER 11 PROCEEDINGS TO SPIN CAPITAL, LLC, TETON LIFE, LLC, TETON FUNDING, LLC, <u>TETON FUNDING GROUP, LLC, AND JL SPECIAL INVESTMENTS, LLC,</u>

Benjamin A. Stanziale, Jr., as plaintiff and Chapter 11 Trustee ("Trustee") for Avrumi Lubin, a/k/a Josh Lubin ("Lubin" or "Debtor"), by his undersigned counsel, brings this

collateral belonging to Franklin, and allowed Franklin $1,800,000 in compensatory damages and treble damages of $5,400,000. This case is on appeal.

27. FVP Opportunity Fund III, LP et al. v. Hi Bar Capital LLC, et al. , Case No. CACE-22-05125, Circuit Court of the 17th Judicial Circuit, Broward County, Florida (FVP and Franklin), also involving Excell, after jury verdicts, judgments were rendered against the Debtor in favor of FVP for a total of $8,841,219.72, and against the Debtor in favor of Franklin Capital Funding and the Franklin Capital Group in the total sum of $6,000,000, again based upon claims that the Debtor had manipulated certain transactions to convert assets in which the FVP Parties and Franklin, respectively, held interests. These judgments and related orders are on appeal to the Florida 4th District Court of Appeal.

28. In the course of enforcing its judgment, FVP secured a charging order and order of foreclosure against the Debtor's interest in Subject Entities Spin and Teton Funding in contested proceeding on a finding (among other things) that Spin and Teton Funding are under the complete domination and control of the Debtor and the corporate form is used to shield assets from his creditors.

## General Allegations

29. At all relevant times, the Debtor operated and controlled the Subject Entities.

30. At all relevant times, the Debtor had custody and control of the Subject Entities' books and records, had signatory authority over all the Subject Entities' bank accounts, and de jure or de facto managed all of the Subject Entities' business activities and financial affairs.

31. It appears that the Debtor was able to freely assign and move assets between and among the Subject Entities without fair consideration.

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| Caption in Compliance with D.N.J. LBR 9004-1(b)<br>HELLRING LINDEMAN GOLDSTEIN<br>& SIEGAL LLP<br>Patricia A. Staiano, Esq.<br>Attorneys for Benjamin A. Stanziale, Jr.,<br>Chapter 11 Trustee<br>103 Eisenhower Parkway, Suite 403<br>Roseland, New Jersey 07068-1031<br>973.621.9020<br>pstaiano@hlgslaw.com | |
| In Re:<br><br>AVRUMI LUBIN a/k/a Josh Lubin,<br><br>Debtor. | Case No. 26-17342 (EJO)<br><br>Judge: Hon. Eamonn James O'Hagan, U.S.B.J.<br><br>Chapter 11 |
| BENJAMIN A. STANZIALE, JR., CHAPTER 11 TRUSTEE FOR AVRUMI LUBIN a/k/a Josh Lubin,<br><br>Plaintiff,<br><br>vs.<br><br>AVRUMI LUBIN, SPIN CAPITAL, LLC, TETON LIFE, LLC, TETON FUNDING, LLC, TETON FUNDING GROUP, LLC, and JL SPECIAL INVESTMENTS, LLC,<br><br>Defendants. | Adv. Pro. No. 26-_________(EJO) |

CERTIFICATION OF BENJAMIN A. STANZIALE, JR., CHAPTER 11 TRUSTEE FOR AVRUMI LUBIN A/K/A JOSH LUBIN IN SUPPORT OF <u>APPLICATION FOR ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINTS</u>

Benjamin A. Stanziale, Jr., of full age, certifies as follows pursuant to 28 U.S.C. §1746 based upon information received in this case to date:

1. On June 25, 2026, Avrumi Lubin, a/k/a Josh Lubin, the Debtor herein (the "Debtor") filed a Petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §101 et seq.

Teton Funding are "under the complete domination and control of the Judgment Debtor [Lubin, the Debtor in bankruptcy case] [and] the corporate form is used to shield assets from [his] creditors." Exhibit A, Charging Order, at p. 2, finding #6.

7. I intend to use my strongarm and avoidance powers to invalidate the Charging Order so that the Debtor's interest in Spin and Teton Funding will be available to all creditors of the Debtor's Estate. However, it is the lien which is void, not the findings, which were made in contested proceedings.

8. The Florida Court's findings demonstrate legitimate concern that the Debtor's affairs cannot be fully resolved without also subjecting the activities of the Subject Entities to the bankruptcy stay and including their assets in the resolution of creditor claims in this action. (Conversely, to the extent that creditors of the Subject Entities assert competing claims or interests to assets of the Subject Entities, resolution of those matters should occur in the Debtor's bankruptcy proceedings and the Debtor's bankruptcy estate, and in one forum; northing short would be chaos.)

9. Teton Life may stand in a somewhat different posture, but it should nonetheless be part of the extension of proceedings. As noted, the co-owners of Teton Life are the Debtor and Yitzchakov. Yitzchakov, among other business interests, operates another MCA business called BMF. BMF had entered into transactions with individuals and businesses, which I will refer to collectively as "Leer," secured by various collateral[1]. Spin acquired the Leer transactions and collateral from BMF. Shortly after Spin sued Leer in the New York State Supreme Court, New York County, in the action now styled Teton Life LLC as assignee of the

[1] Stephan Joseph Leer is a Chapter 7 debtor, whose case is pending in the United States Bankruptcy Court for the Middle District of Tennessee, Nashville Division under Case No. 3:26-bk-00149. Mr. Leer owned interests in certain LLCs which purchased life insurance policies and which were pledged as collateral for loans that BMF had made. Counsel has been in contact with the Trustee's counsel in the case.

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| Caption in Compliance with D.N.J. LBR 9004-1(b)<br>HELLRING LINDEMAN GOLDSTEIN<br>& SIEGAL LLP<br>Patricia A. Staiano, Esq.<br>Attorneys for Benjamin A. Stanziale, Jr.,<br>Chapter 11 Trustee<br>103 Eisenhower Parkway, Suite 403<br>Roseland, New Jersey 07068-1031<br>973.621.9020<br>pstaiano@hlgslaw.com | |
| In Re:<br><br>AVRUMI LUBIN a/k/a Josh Lubin,<br><br>Debtor. | Case No 26-17342 (EJO)<br><br>Judge: Eamonn James O'Hagan, U.S.B.J.<br><br>Chapter 11 |
| BENJAMIN A. STANZIALE, JR., CHAPTER 11 TRUSTEE FOR AVRUMI LUBIN a/k/a Josh Lubin,<br><br>Plaintiff,<br><br>vs.<br><br>AVRUMI LUBIN, SPIN CAPITAL, LLC, TETON LIFE, LLC, TETON FUNDING, LLC, TETON FUNDING GROUP, LLC, and JL SPECIAL INVESTMENTS, LLC,<br><br>Defendants. | Adv. Pro. No. 26-_________(EJO) |

# MEMORANDUM OF LAW IN SUPPORT OF CHAPTER 11 TRUSTEE'S MOTION TO EXTEND PROCEEDINGS AND FOR TEMPORARY RELIEF

Teton Life, Gavriel Yitzchakov. See Yitzchakov Affidavit in the New York State Action, Stanziale Certification Exhibit C. As such there is substantial reason to believe that the Subject Entities Spin, Teton Funding and JL are all alter egos of the Debtor.

As for Teton Life itself, the disputes between Yitzchakov and the Debtor over the management of Teton Life have impaired its effective ability to prosecute its interest in collateral, a situation further complicated by the Debtor's bankruptcy. And precisely for this reason, the Trustee through this application seeks confirmation of the Trustee's authority to exercise any management rights in Teton Life that the Debtor holds. Additionally, there are anomalous and suspect aspects of the relationship between Yitzchakov and the Debtor – on the one hand, Spin acquiring the subject collateral from Yitzchakov's BMF entities, followed by Yitzchakov and the Debtor then transferring Spin's interests to Teton Life (in which only Yitzchakov and the Debtor became members, without apparent consideration to Spin), and on the other, their periodic efforts to strip assets from Teton Life for their own benefit or in Yitzchakov's case, to promise another claimant against Spin that Yitzchakov and BMF would seek to appoint a receiver over Spin. All this suggests that the interests of the creditors of the Debtor and of Spin and of Teton Life will not be protected the Trustee having managerial control over Teton Life, as a receiver would – relief that Yitzchakov and his businesses had promised another Teton Life creditor that Yitzchakov would pursue.

## ARGUMENT

### POINT I
### THE COURT SHOULD EXTEND THE DEBTOR'S CHAPTER 11 CASE TO INCLUDE THE SUBJECT ENTITIES

This Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). One such power, recognized since Sampsell v. Imperial Paper & Color Corp., 313 U.S. 215, 218 (1941) includes the ability to

The Florida Court has already found that two of the Subject Entities – Spin and Teton Funding – were under the domination of the Debtor, and essentially vehicles to hide assets from his creditors. Stanziale Declaration, Exhibit A (the Charging Order). The Debtor opposed that conclusion but the Florida Court's determination was necessary to the Florida Court's additional ruling that the judgment creditor in that case (FVP) could not only charge the Debtor's interest in those entities, but that the judgment creditor would be granted foreclosure of the Debtor's interests. See Stanziale Certification. ¶¶ 6-7 and id., Exhibit A. Florida courts would apply collateral estoppel in those circumstances, because it was a final judgment, actually litigated, and necessary to the Florida court's determination. Martinez v. Mkt. Traders Inst., Inc., 757 F. App'x 815, 817 (11th Cir. 2018) (reflecting the elements of collateral estoppel/issue preclusion under Florida law); and this Court must apply Florida law of the rendering jurisdiction in determining its preclusive effects. Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 373 (1996). Additionally, although the Debtor has appealed both the money judgment that gave rise to the enforcement proceedings, and the Charging Order itself, "[u]nder Florida law, a judgment entered by a court of competent jurisdiction has preclusive effect notwithstanding a pending appeal." CCB, LLC v. BankTrust, 552 Fed. App'x 963, 965 (11th Cir. 2014). And given the overlapping ownership interests and control exercised by the Debtor, there can be no doubt that all the Subject Entities were in privity with the Debtor, and bound by these findings as to the Debtor, Spin and Teton Funding. Martinez v. Mkt. Traders Inst., Inc., supra, 757 F. App'x 815 at 818.

The circumstances of JL – an entity apparently formed to strip assets from Teton Life without consideration, to the detriment of Teton Life and the Debtor's co-owner's Yitzchakov's

Entities is diminished or destroyed or their assets removed by interim judgments with enforcement against the assets of the Subject Entities. The Debtor, it will be recalled, scheduled $67 in his bank account and a handful of other assets. Thus, at least at this time, the Subject Entities or their underlying assets are the assets that would need to be administered to fund a plan. And this will be true even if no plan is confirmed or confirmable, and the case converts to Chapter 7. Those assets still need to be preserved for creditors. Courts have recognized circumstances in which the entry of a Section 105 injunction restraining creditors from proceeding against non-debtors would be appropriate. See Saxby's Coffee Worldwide, LLC v. Larson (In re Saxby's Coffee Worldwide, LLC), 440 B.R. 369, 379 (2009). In particular, it is appropriate to extend the stay "when the non-debtor owns assets which will either be a source of funds for the debtor or when the preservation of the non-debtor's credit standing will play a significant role in the debtor's attempt to reorganize" [Id., citing McCartney].

B. The Trustee succeeds to the Debtor's full membership rights, including any rights to manage the Subject Entities

Under Section 541 of the Bankruptcy Code, the Trustee succeeded to all rights and interests of the Debtor in property of any kind. The membership interests of the Debtor in the Subject Entities includes not only economic rights but the right to manage the entities. The Debtor (having filed a petition) cannot contest the Trustee's rights in this regard. As for the Subject Entities, the Debtor was the sole member in Spin, Teton Funding and JL. To the extent that FVP (which secured a foreclosure right under the Charging Order in May 2026) claims to have become the member, the Trustee will seek to have the foreclosure to be invalidated as preferential. That leaves Mr. Yitzchakov, "Member B", in Teton Life. As already observed, the terms of the Teton Life Operating Agreement provide, on the one hand, that Teton Life is controlled by its members, giving him an equal say. To the extent that the Debtor had a 50%

# Hellring Lindeman Goldstein & Siegal LLP

COUNSELLORS AT LAW

BERNARD HELLRING (1916-1991)
MICHAEL EDELSON
ROBERT S. RAYMAR Δ
STEPHEN L. DREYFUSS Δ
PATRICIA A. STAIANO
SHERYL E. KOOMER
ERIC R. PERKINS
BRUCE S. ETTERMAN Δ
MATTHEW E. MOLOSHOK Δ
DAVID N. NARCISO Δ
CORINNE B. MALONEY Δ
CHRISTY L. SAALFELD Δ

Δ NJ & NY + FL

103 EISENHOWER PARKWAY
SUITE 403
ROSELAND, NEW JERSEY 07068-1031

T: +1.973.621.9020 | F: +1.973.621.7406
www.hlgslaw.com

JONATHAN L. GOLDSTEIN Δ +
SPECIAL COUNSEL

CHARLES ORANSKY Δ
ROBERT B. ROSEN Δ
JUDAH I. ELSTEIN Δ
JOHN A. ADLER Δ
OF COUNSEL

MARGARET DEE HELLRING (RET.)

October 21, 2026

By ECF

Honorable Eamonn James O'Hagan
United States Bankruptcy Court
Clarkson S. Fisher U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

Re: Avrumi Lubin a/k/a Josh Lubin
Case No. 26-17342 (EJO)
- - - - - - - - - - - - - - - - - - - - - -
Benjamin A. Stanziale, Jr., Ch. 11 Trustee for
Avrumi Lubin a/k/a Josh Lubin v. Avrumi Lubin. et. al.
Adv. Pro. No. 26-1494 (EJO)
Hearing Date: October 22, 2026

Dear Judge O'Hagan:

This firm represents Benjamin A. Stanziale, Jr., the Chapter 11 Trustee ("Trustee") for Avrumi Lubin ("Debtor" or "Lubin") and Plaintiff in the above-referenced adversary proceeding. Please accept this letter brief in lieu of a more formal memorandum of law in response to the opposition to the entry of the Order to Show Cause filed by the Debtor (ECF no. 9, ECF no. 10, and ECF no. 12) as well as the opposition filed by Gavriel Yitzchakov ("Yitzchakov") (ECF no. 14).

**A. As to the Debtor's objection, the temporary relief was appropriately granted under Rule 65(b)(1).**

1. The papers showed that there were multiple proceedings against the Subject Entities that are in advanced stages, and rulings against the Subject Entities could irreparably harm the Debtor's Estate by stripping the Subject Entities of assets, causing adverse collateral estoppel effects, and other taint. See, Whittaker, Clark & Daniels, Inc. v. Brenntag (In re Whittaker, Clark & Daniels, Inc.), Nos. 23-13575 (MBK), 23-01245 (MBK), 2024 Bankr. LEXIS 2608, at *24-25 (Bankr. D.N.J. Oct. 24, 2024), cited in the Trustee's opening brief.

LEXIS 3921 (Bankr. W.D. Wash. 2011) (rights to vote on major decisions for the LLC constitutes an executory agreement, and trustee may continue to exercise those rights); King v. Johnson (In re Johnson), 2021 WL 5496731 (Bankr. E.D. Va. Nov. 22, 2021) (because right to participate in management is part of the "property" of the debtor, ipso facto termination of membership leaving only economic interest violates Section as 541(c)(1) a "forfeiture, modification, or termination of the debtor's interest in property."); In re Dixie Management & Investment, L.P., 474 B.R. 698, 700 (Bankr. W.D. Ark. 2011) (same; bankruptcy disassociation as a full member violates the ipso facto provision and to extent this result derives from Arkansas statute, bankruptcy law supersedes). Yitzchakov seeks to distinguish only one of those cases, Allentown, but he has misread the decision. First, the bankruptcy court clearly ruled that the North Carolina statute's prohibition on assignment of interests to a trustee was preempted by bankruptcy law because the statute did not involve a sufficiently clear policy against assignability, Allentown, 361 B.R. at 455. Second, the only reason that the trustee was not granted summary judgment allowing immediate assumption of the management of the LLC in Allentown was because the entity operated a baseball team in a baseball league, whose rules required new management have sufficient baseball experience to satisfy the other owners in the league. The court noted that some record evidence showed that the league had waived the experience requirement in some instances, and as such it might not be a valid basis to resist assignment to the trustee, presenting a fact question. Id. at 455-456. However, concerns of that type have nothing at all to do with the management of Teton, which is not an operating business, does not depend on participation in a sanctioning organization, and exists only to litigate assigned claims and potentially liquidate related collateral. Trustee Stanziale has a long, distinguished track record on those types of activities – it is what bankruptcy trustees do. Finally, Yitzchakov's suggestion that the management right should be assignable because of the "confidence" he reposed in Lubin is contradicted by Yitzchakov's agreement with the Leer Parties to seek a receiver over Teton Life, precisely because he lacks confidence in Lubin's management.

**C. Grounds for extension**

6. The Debtor asserts that the Court should not apply collateral estoppel to the finding that Spin is under his domination and control made in the Florida Charging Order, for reasons that we are having a hard time deciphering. Somehow, it appears he seems to think that if the issue of veil piercing was not an issue in the jury trial that gave rise to the verdicts in favor of Franklin and FVP against Lubin individually, the fact that a judge in subsequent proceedings had to consider whether to authorize foreclosure of his interest in Spin and did so upon the finding that Spin was his alter ego should not receive collateral estoppel effect. That is not so. Similarly, Lubin's suggestion that the charging order proceedings in which he testified related was only about "records production" (ECF no. 12 at p. 23) confirms that the Florida court was actually concerned with whether the books and records of Spin were sufficient to show that it actually had a separate existence from the Debtor. Lack of adequate records is a standard issue in alter ego cases.

7. The question which both the Debtor and Yitzchakov raise is whether a similar domination and lack of separateness pervades the other Subject Entities. The short

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| Caption in Compliance with D.N.J. LBR 9004-1(b)<br>HELLRING LINDEMAN GOLDSTEIN<br>& SIEGAL LLP<br>Patricia A. Staiano, Esq.<br>Attorneys for Benjamin A. Stanziale, Jr.,<br>Chapter 11 Trustee<br>103 Eisenhower Parkway, Suite 403<br>Roseland, New Jersey 07068-1031<br>973.621.9020<br>pstaiano@hlgslaw.com | |
| In Re:<br><br>AVRUMI LUBIN a/k/a Josh Lubin,<br><br>Debtor. | Case No. 26-17342 (EJO)<br><br>Judge: Hon. Eamonn James O'Hagan, U.S.B.J.<br><br>Chapter 11 |
| BENJAMIN A. STANZIALE, JR., CHAPTER 11 TRUSTEE FOR AVRUMI LUBIN a/k/a Josh Lubin,<br><br>Plaintiff,<br><br>vs.<br><br>AVRUMI LUBIN, SPIN CAPITAL, LLC, TETON LIFE, LLC, TETON FUNDING, LLC, TETON FUNDING GROUP, LLC, and JL SPECIAL INVESTMENTS, LLC,<br><br>Defendants. | Adv. Pro. No. 26-01494 (EJO)<br><br>Hearing date: October 22, 2026 |

SUPPLEMENTAL CERTIFICATION OF BENJAMIN A. STANZIALE, JR., CHAPTER 11 TRUSTEE FOR AVRUMI LUBIN A/K/A JOSH LUBIN IN SUPPORT OF APPLICATION FOR ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINTS AND IN RESPONSE TO OPPOSITION TO THE ORDER TO SHOW CAUSE FILED BY THE DEBTOR AND GAVRIEL YITZCHAKOV

Benjamin A. Stanziale, Jr., of full age, certifies as follows pursuant to 28 U.S.C. §1746 based upon information received in this case to date:

retention of special counsel in cases that must be addressed. Of course, this will also necessitate the financial resources to properly retain counsel.

6. In ECF no. 10, it appears that the Debtor is requesting assurance that I properly retain special counsel. Why the Debtor would presume that I would act outside the rules of the court confuses me. The "independent defense counsel procedure" is simply the proper applications to retain special counsel that I would file in the ordinary course. I request a court order so that no one – no court, counsel, adversary or the Debtor himself – is uncertain as to my authority to manage the existing cases, perhaps bring new cases and retain counsel to move forward. Right now, there is chaos. My hope is to bring order to this case.

7. The Debtor wants to reap the benefits of bankruptcy protection (for him and the Subject Entities) but only on his terms. He wants all the benefits and none of the burdens. He refuses to acknowledge the effect of the appointment of the Chapter 11 Trustee. He continuously and relentlessly sends missives to me and my counsel, directing us to take positions and perform services on behalf of Spin, usually providing us with deadlines to do so and threatening to take action on his own if we do not meet his deadlines. He has also instructed that we seek to have the stay used to Spin's benefit in litigations which, ironically, is part of the relief I seek here.

8. The Debtor complains that I did not tell him I was seeking interim restraints, despite the fact that I and my counsel told the Debtor and many of the counsel involved in various litigations that we were seeking to extend these proceedings and would be filing an Order to Show Cause and Verified Complaint (including a discussion with Yitzchacov's counsel informing him of same several weeks ago).

9. The Debtor also wants more time to get counsel – something he should have been doing since the entry of the Order granting motion for withdrawal of counsel entered on September 24, 2026. It is not an acceptable excuse for delay now.

10. As to the appropriate party to prosecute and defend (and perhaps settle) actions on behalf of the Subject Entities, I note that judgments in both Michigan and Florida against Spin and the Debtor respectively were based in part on rejecting the credibility of the Debtor's positions. In addition, counsel for the debtors in the Johnson case have asserted that Spin was not properly represented by counsel (which is not true) but upon information and belief the Debtor may have side-stepped counsel and had independent communication with counsel to the Johnsons. Either way, either Spin is properly represented by counsel or if the Debtor asserts Spin is not represented by counsel, then the Debtor (a non-attorney) has been improperly acting on behalf of Spin. I hope this is not the case. The Debtor is not an attorney – he cannot represent the Subject Entities.

**B. <u>Response to Yitzchakov Opposition</u>**

11. Interestingly, in his Opposition, Yitzchakov (who did not submit a Certification) does not challenge the following:

a. he does not deny that Subject Entity Teton Life, LLC's ("Teton Life") only business is the prosecution of claims formerly held by Spin, based on certain MCA transactions and that its only asset is that litigation and the collateral associated with it held by a Receiver in the New York case <u>Teton Life, LLC as assignee of the rights of Spin Capital, LLC v. Golden Foothill Insurance Services, LLC et al.</u>, Index No. 65058212022 (the "New York State case");

b. he does not deny that Spin acquired the loans now assigned to Teton from his businesses;