# EXHIBIT C-26

Lubin's November 4, 2026 memorandum to the Trustee (body only, 16 pages; exhibits omitted); Lubin's November 6, 2026 record review and preservation request (4 pages); Ms. Staiano's November 6, 2026, 1:58 PM reply; Lubin's November 7, 2026, 5:25 PM email (first two pages of the printed chain; attachments omitted)

# MEMORANDUM

**To:** Benjamin A. Stanziale, Jr., Chapter 11 Trustee, *In re Avrumi Lubin*, No. 26-17342 (EJO) (Bankr. D.N.J.)

**Cc:** Patricia A. Staiano, Esq., and Matthew E. Moloshok, Esq.; Office of the United States Trustee (Rachel Wolf, Esq.; Kirsten K. Ardelean; Heidi A. Feinman, Esq.)

**From:** Avrumi "Josh" Lubin, in my individual capacity

**Date:** November 4, 2026

**Re:** Franklin's and FVP's claims to rights of Spin Capital, Hi Bar (under the Common Interest Agreement), Teton Life and Teton Funding: where they made them, what the courts decided, and why these competing interests require independent handling

I am not a lawyer; please have counsel check it against the documents. I write only for myself and reserve all rights, including my appeal and pending motions in Adv. No. 26-01494 (ECF Nos. 24–27 and 33). This memorandum requests relief and undertakings; it does not itself authorize action for any company or change any order or deadline. Existing orders remain in effect unless modified by the Court. Nothing here concedes that any right of Spin Capital, LLC, the New Jersey company ("Spin"; see ECF No. 34 in Adv. No. 26-01494), Teton Life, LLC, Teton Funding, LLC or JL Special Investments, LLC is property of this estate, or who may act for those companies.

**Names and sources.** "Franklin" means Franklin Capital Funding, LLC, Franklin Capital Group, LLC (later called Wing Lake), Franklin Capital Management, LLC and their affiliates. "FVP" means FVP Opportunity Fund III, LP and its affiliates. "Hi Bar" means Hi Bar Capital, LLC. "Participants" means the investors who funded Spin's transactions under participation or funding agreements. My position is that Participants own their respective contractual shares of the transactions they funded and the recoveries on them. The governing agreements and any applicable rulings must be examined separately; I do not suggest that all such rights have already been adjudicated. "Settlement" means the July 2025 Settlement Agreement among FVP, Franklin and Hi Bar (Tab T-1; also on this Court's docket at Dkt. 44-4, Ex. M, pp. 104–115). "CIA" means the Common Interest and Joint Litigation Agreement between Spin and Hi Bar, effective January 28, 2022 (Tab T-2). "T-" identifies the additional source documents listed in Appendix B. Binder T is not attached; I can provide those documents separately. Most are on public dockets. "FP Ex." is a tab in Binder FP, my 429-page exhibit binder dated September 30, 2026 (pages stamped FP-0001 to FP-0429); if you do not have it, I will send it. Appendix B lists both binders. Exhibits A to F ("Ex. A" to "Ex. F") are attached to this memo.

## 1. In short

1. The three largest claims in the claims figures used for this memorandum total **$26,342,759.08**, about **96%** of the $27,470,101.20 filed: the Excell trustee (Claim 17, $14,003,564.00), Franklin (Claim 6, $6,367,888.74) and FVP (Claim 5, $5,971,306.34). I dispute all three.
2. Each of the three is on the other side of Spin in a pending case, and they are tied to one another by written agreements (Section 2).
3. In Michigan and Florida, Franklin has claimed that Spin assigned it Spin's rights, in places in words not limited to Excell. In Broward, Franklin also alleged that I am Spin's alter ego and asked that Spin and I be held jointly liable (Ex. A; Section 2.4). FVP has obtained orders that reach value tied to Spin through Teton Funding and Teton Life. And in July 2025 Hi Bar agreed to assign to FVP

rights that overlap with rights Hi Bar had assigned to Spin under the CIA. (Section 2; Appendix A lists ten proceedings.) I have not identified a ruling binding Franklin that awards it Spin's rights unrelated to the Excell agreements. I also list the rulings that went against Spin or me (Section 4).

4. Several decisions are coming up where what helps those three creditors is the opposite of what helps Spin, its Participants, Teton Life and Teton Funding (Section 3).
5. Your counsel has described your role this way: "Trustees' constituents are creditors. Their charge is to maximize assets for distribution to creditors." (Oct. 9, 2026 email.) Where the estate and a nondebtor company assert competing rights to the same property, I am concerned that the decisions require independent handling. The size or identity of creditors' claims alone does not establish a disqualifying conflict, and the Trustee's duties do not make him counsel for those creditors. My request concerns the particular competing interests described below.
6. I ask you to support, or at least not oppose, an independent fiduciary for Spin chosen by the Court; to settle or give up nothing of Spin or the other companies covered by the October 23 Order, including Teton Life, until the Court rules; to keep Spin's recoveries separate; to agree, before the November 9 response date, that none of the companies will be defaulted, or bound by anyone's consent to your complaint, before counsel can answer for them; not to oppose my directing Teton Life's pending cases again, only through counsel and with the safeguards in request 11; and to answer in writing the question I have asked since October 7 (Section 5). On November 5 I intend to file a supplemental motion that asks the Court for the same protections.

## 2. The conflict

### 2.1 The three largest creditors, and where each stands against Spin.

| Claimant and claim | Where it stands against Spin, Teton Life or Teton Funding | Written ties to the others |
|---|---|---|
| **Excell trustee** (Nicole Testa Mehdipour) Claim 17: $14,003,564.00 (51.0%) | Plaintiff against Spin, Hi Bar and me in *Mehdipour v. Hi Bar Capital, LLC*, Adv. No. 23-01132-EPK (Bankr. S.D. Fla.). Tried in early 2026; post-trial briefing runs into 2027 (DE 500). She also sues me here (Adv. No. 26-01435) and seeks stay relief (main case Dkt. 119). | Written common-interest agreement with Franklin, effective March 7, 2023, which Spin described in court as "a written common-interest agreement concerning the prosecution of claims and the sharing of materials" (FP Ex. G-6 ¶ 2). |
| **Franklin** Claim 6: $6,367,888.74 (23.2%) | Holds a $5,400,000 judgment against Spin (Oakland County, Mich., Apr. 1, 2025; Spin's appeal is No. 379467) (FP Ex. B-7). Has claimed that Spin assigned it Spin's rights under Spin's agreements with Excell and its affiliates and, in places, "known and unknown claims, against the Debtor or This [sic] Parties" (Appendix A, row 5). Sues me here under § 523 (Adv. No. 26-01339). | The common-interest agreement with the Excell trustee. The Settlement with FVP and Hi Bar, which also refers to "other agreements between the FVP Parties and Franklin Parties" on "the division of the Bankruptcy Court Registry Deposit" (Settlement ¶ 15). |

| Claimant and claim | Where it stands against Spin, Teton Life or Teton Funding | Written ties to the others |
|---|---|---|
| **FVP**<br>Claim 5:<br>$5,971,306.34<br>(21.7%) | Holds an October 2025 judgment against me (FP Ex. F-8). On FVP's applications, the Broward court entered: an order that "FORECLOSED" my transferable interests in Spin and Teton Funding (May 15, 2026; on appeal, No. 4D2026-1512) (FP Ex. F-10); a default judgment against Teton Funding that applies "all proceeds from any litigation in which Teton Funding, LLC is a party" to FVP's judgment and sets aside transfers "from Spin Capital, LLC" to Teton Funding "to the extent necessary to satisfy the Final Judgment" (June 4, 2026) (FP Ex. F-11 ¶¶ 28–29); and orders as to my interests in Teton Life and JL Special (June 11, 2026) (T-7). A default against Spin was denied without prejudice (June 16, 2026) (FP Ex. F-12). Sues me here (Adv. No. 26-01315) and seeks stay relief (Dkt. 33). | The Settlement with Franklin and Hi Bar, under which Hi Bar agreed to assign to FVP its rights in its October 27, 2021 contract with Excell and in *Hi Bar v. Excell* (Settlement ¶ 8). A 2022 common-interest agreement with the Zankls and the Karma entities (FP Ex. F-5 at 2, 4). |
| **Together: $26,342,759.08, about 95.9% of all filed claims. Franklin and FVP alone hold about 44.9%.** | | |

**2.2 Two roles that pull in opposite directions.** Paragraph 2 of the October 23 Order says that it "CONFIRMED that the Trustee has the sole authority to act in the stead of the Debtor as to any management or litigation decisions regarding the Subject Entities, provided, however, that the Debtor shall retain the right to engage representation for himself and the Subject Entities in the current adversary proceeding" (ECF No. 21 ¶ 2). That paragraph does not cover Teton Life, which is set for hearing on November 10; the October 15, 2026 restraints continue to apply to Teton Life pending further order (ECF No. 21 at 5). I have appealed that paragraph and asked the Court to modify it (ECF Nos. 24–26), and I do not concede what it covers. But as you read it, the person who decides these questions for Spin is also the fiduciary whose "constituents are creditors," and about 96% of those claims belong to Spin's three main opponents.

Spin has stakeholders whose rights must be considered separately from their status, if any, in my bankruptcy case. They include:

- **Participants.** Spin funded most of its merchant cash advance transactions with Participants' money. Spin holds and pursues those transactions in its own name, but my position is that Participants own their contractual shares of them and of the recoveries. For example, under an August 25, 2022 participation agreement, one Participant funded part of Spin's Bridgelink purchase and owns a share of its remittances and profits. In Bridgelink, which is now being pursued for Spin in Adv. No. 26-01532, Participants own most of Spin's share.
- **Spin's own creditors.**
- **As to Teton Life, its other member.**

On October 27 your counsel asked me whether a Participant is "an owner, or a creditor of Spin? Is it an equity interest or a claim?" My answer is that Participants hold ownership rights under their agreements, not merely claims against me. If those rights are disregarded, value claimed by Participants could be diverted to this estate's creditors. That concern also arises if disputed company rights are conceded or used to settle claims against me before the competing rights are determined.

**2.3 The written ties make the conflict concrete.** In July 2025, FVP, Franklin and Hi Bar signed the Settlement (T-1). In it:

1. Lubin and Spin "are expressly excluded as Parties under this Agreement and, without limitation, shall not receive any releases pursuant thereto" (¶ 2), and "all claims of the FVP Parties and Franklin Parties against Lubin, Spin and Getter, including those claims which seek to pierce the corporate veil of Hi Bar with respect to such persons, remain unaffected and proceed to trial" (¶ 9(a)).
2. Hi Bar released its claims to the AWB registry money and agreed to "stipulate that the FVP Parties and Franklin Parties have the right to receive the Bankruptcy Court Registry Deposit" (¶ 4(b)(1)). The AWB court then released $2,107,548.61 to FVP's counsel "according to the settlement approved by the State Court Order" (FP Ex. E-4).
3. Hi Bar represented that the CIA "has been breached and terminated pursuant to the terms therein" (¶ 7; see ¶ 21). Hi Bar also acknowledged that "Lubin and Spin have both pled and alleged in various court documents in various courts, that they, or their assignees, continue to have rights under the Spin Common Interest Agreement," and agreed to defend FVP and Franklin and hold them harmless from claims "by Lubin and Spin or any assignee" relating to the CIA (¶ 7; the same paragraph limits that duty to a damages claim "arising from this Settlement Agreement or the settlement described herein").
4. Hi Bar agreed to assign to FVP "all rights, title and interests" in and arising from "the Hi Bar Revenue Purchase Agreement executed on or about October 27, 2021" and *Hi Bar Capital LLC v. Excell Auto Group, Inc.*, Index No. 502846/2022 (Sup. Ct. Kings Cnty.) (¶ 8).

Those rights appear to overlap with rights Hi Bar had already assigned to Spin. The CIA defines the "Hi Bar Claims" to include the claims Hi Bar may assert "in the NY Litigation," which is that same Kings County case (CIA Recitals A, E, F), and says: "Hi Bar hereby assigns to Spin Capital any and all Hi Bar Claims" (§ 2(a)). Even after a termination by Hi Bar, "Spin Capital shall be entitled to continue pursuing Spin Capital Claims" (§ 2(f)(ii)). The CIA also says that no "Litigation Party" (a group that names FVP and Franklin Capital Group, Recitals C and F) may "rely on any of the provisions hereof" (§ 9(a)), and it gives the New York courts "exclusive jurisdiction over any and all actions brought by the parties relating in any way to this Agreement" (§ 10(l), capitals omitted).

So if Spin, or anyone holding Spin's CIA rights, asserts them, the other side is FVP and Franklin, which together hold about 45% of the claims in this case, with Hi Bar defending them. On that question, this estate's largest creditors and Spin are on opposite sides.

**2.4 Franklin claims Spin's rights, and also claims that Spin and I are one and the same (Ex. A and Ex. B).** Franklin's Second Amended Counterclaims and Crossclaims in Broward (Filing # 209669232, Oct. 28, 2024) (Ex. A) do both at once:

1. **Spin's rights.** A section heading says "Spin Sells and Assigns to Franklin All Known and Unknown Obligations and Claims Owed by the Debtor and its Affiliates" (§ G, p. 15), and Franklin alleged that Spin "sold and assigned to Franklin all Obligations, Merchant Documents, known and unknown claims, against the Debtor or This [sic] Parties" (¶ 219, p. 48). (In Franklin's pleadings, "the Debtor" is Excell.)
2. **Alter ego.** Under the headings "Lubin is the Alter Ego of Spin" and "Lubin, Getter and Herbst are the Alter Egos of Hi Bar" (§§ R–S, p. 40), Franklin alleged that "the acts of Spin and the acts of Lubin were identical" (¶ 178) and that I "dominated and controlled Spin to such an extent that Spin's

independent existence was, in fact, non-existent" (¶ 182).

3. **Spin and me together.** Franklin sued Spin and me together for breach of Spin's contract (Count 1, p. 43) and asked the court to determine "Lubin and Spin to be alter egos" and to declare "Lubin and Spin to be jointly and severally liable for any debts owed to Franklin" (Count 17, pp. 79–80). Count 18 asks the same as to Hi Bar.

Franklin made the same allegations earlier, in its First Amended Counterclaims and Crossclaims (June 17, 2024, Filing # 200732084). There too, under a heading that says Spin "Sells and Assigns to Franklin All Known and Unknown Obligations and Claims Owed by the Debtor and its Affiliates" (§ G, p. 14), Franklin alleged that Spin "sold and assigned to Franklin all Obligations, Merchant Documents, known and unknown claims, against the Debtor or This [sic] Parties" (¶ 201, p. 44), and that I was "an alter ego of Spin" (¶ 168, p. 38). In April 2024, Franklin also sued me personally in Michigan, alleging that "Lubin exercised management and control of Spin" and "also exercised management and control of Hi Bar Capital, LLC," and claiming conversion, statutory conversion, tortious interference and fraud (Ex. B ¶¶ 3, 5, pp. 1–2; Counts I–IV). I have not confirmed that case's current disposition. FVP has pleaded the same thing: that I am "the president, controlling principal, and alter ego of Spin" (Appendix A, row 6).

So the same creditors claim to own Spin's rights and, at the same time, say that Spin, Hi Bar and I are one and the same. Those claims reach Spin and me personally, on the same facts, and they put Spin's interests and mine in tension. A lawyer for Spin would have to take positions against Franklin and FVP, which hold about 45% of the claims in my case. That has made it very hard to find counsel who can protect Spin. Your counsel's October 29, 2026 email (9:37 p.m.) said that I "created conflicts" and that this, with other things it listed, "is something the fiduciary has to try and fix." I dispute that email's characterizations of me, including its attribution of the conflicts to me. I do not treat the email as an admission that you or your counsel have a disqualifying conflict. I ask for a response to the specific competing interests identified here and for court-approved independent handling of those matters. (Franklin later dismissed a number of its counts against Spin as moot (Sept. 18, 2025). On the veil questions, see the jury's answers in Section 4 and Appendix A, row 6.)

**2.5 Express settlement and notice safeguards for nondebtor-company rights.** Your counsel told the Court on October 22: "if Mr. Stanziale seeks to settle a matter, he's going to have to notice the Court and all parties. He's going to have to get Court approval. There are guardrails in this process and Mr. Lubin is going to have every right to speak and be heard on every application and motion that the Trustee raises" (Oct. 22 Tr. 31:19–24). On October 29 she wrote: "All settlements will be on notice to parties in the case." I acknowledge those assurances, including the November 4 email stating that bankruptcy settlements are subject to notice and court approval. My narrower question is whether they expressly cover dispositions of rights asserted to belong to Spin or another nondebtor company, and direct notice to affected Participants. Please confirm that scope in writing and support express protections in an order. I am not asserting that a particular disposition is exempt from approval or that the Court cannot require additional notice (Section 5, request 2).

**2.6 The Third Circuit has addressed this kind of problem.** In *In re BH & P Inc.*, 949 F.2d 1300 (3d Cir. 1991), one trustee served a corporation and its two principals, and the corporation had disputed claims against the principals' estates. The bankruptcy court's conflict finding "rested particularly on the disputed nature of the claims … and the need for advocacy of competing interests," and that court recognized "the need for an independent fiduciary" to pursue those claims. *Id.* at 1313. The Third Circuit held that the court did not abuse its discretion in disqualifying the trustee from the principals' cases, *id.* at 1313–14. Addressing the trustee's counsel, it adopted the district court's view that the "actuality" of such

a conflict was "the possibility that the parties would favor one estate over the other in their attempt to serve all of them." *Id.* at 1315. That decision requires a fact-specific evaluation, not automatic disqualification based on creditor identity or competing claims. *Id.* at 1312–17. Unlike the entities in that case, Spin is not a debtor. I do not suggest bad faith. I rely on the case by analogy in requesting independent handling of the identified competing interests, not as itself authorizing appointment of a manager or receiver for a nondebtor LLC. The Court would need to determine a lawful mechanism and its scope.

**2.7 My own interests, stated plainly.** I am not neutral either. I have been Spin's president, and I signed the November 1, 2021 assignment that Franklin relies on. Under a January 12, 2022 funding agreement that I disclosed to your counsel on October 7, I agreed to repay part of one Participant's unrecovered contributions if that agreement ends with a shortfall (§ 8.2).

That is why my first request is for an independent person, chosen by the Court.

### 3. Decisions coming up where the interests split

| # | Decision | On the other side | Timing |
|---|---|---|---|
| 1 | Spin's appeal of Franklin's $5.4 million Michigan judgment (No. 379467) | Franklin (Claim 6) | A motion to extend Spin's time was filed October 15, 2026; status to be confirmed |
| 2 | Spin's post-trial briefing in Adv. No. 23-01132 | Excell trustee (Claim 17), Franklin's common-interest partner | Briefing runs January–March 2027 (DE 500) |
| 3 | Spin's rights under the CIA, including against FVP's ¶ 8 assignment and the AWB registry money | FVP and Franklin (Claims 5 and 6), defended by Hi Bar (Settlement ¶ 7) | No date set; time limits should be checked now |
| 4 | Teton Funding's response to the June 4, 2026 default judgment, which reaches its litigation proceeds and sets aside transfers from Spin | FVP (Claim 5) | Florida time limits for some grounds run one year from June 4, 2026; Florida counsel should confirm |
| 5 | My Florida appeals (Nos. 4D2025-3564, 4D2026-1512, 4D2026-1833) and the pending Florida motions to vacate (filed January 27, February 16 and June 23, 2026) | FVP and Franklin (Claims 5 and 6) | Stayed. This Court said whether to carve them out of the stay is "a determination for the Chapter 11 Trustee" (Aug. 6, 2026 Tr. 20:22–21:17) |
| 6 | Bridgelink (Adv. No. 26-01532) and any settlement of it | Participants hold most of Spin's share | Filed October 27, 2026 |
| 7 | Any position that Participants do not own their shares of the transactions they funded | This estate's creditors on one side; Participants on the other | Raised by your counsel on October 27 |
| 8 | Teton Life, which sues "as Assignee of the Rights of Spin Capital, LLC" (Index No. 650582/2022) | FVP (charging order); Franklin, to the extent it claims Spin's rights beyond Excell; Teton Life's other member | Hearing November 10, 2026, 1:00 p.m. |

| # | Decision | On the other side | Timing |
|---|---|---|---|
| 9 | Any settlement with FVP, Franklin or the Excell trustee that touches Spin, the CIA, Teton Life, Teton Funding or JL Special | All three | Any time |
| 10 | Your complaint's request to extend this case to, or consolidate it with, Spin and the other companies (Adv. No. 26-01494, Dkt. 1) | This estate's creditors (about 96% held by the three above) | Pending |
| 11 | Whether, and through whom, Spin, Teton Funding, Teton Funding Group and JL Special respond to your complaint (ECF No. 21 ¶ 5) | You, as plaintiff | November 9, 2026 |

## 4. Court rulings and issues that remain disputed

So that you have both sides:

- **Michigan (against Spin).** The Oakland County court granted Franklin summary disposition against Spin (Apr. 23, 2024), holding that Spin assigned "all of its right, title and interest under its agreements with Debtor," meaning Excell and the two Karma entities (FP Ex. B-5 at 5 & n.2). Its findings (Mar. 12, 2025) hold that the assignment "clearly sweeps in the August 2021 transaction" (FP Ex. B-6 at 20), and it entered a $5,400,000 judgment against Spin (FP Ex. B-7). It decided nothing about Spin's rights unrelated to Excell. Earlier, the same court refused to let Franklin plead that Hi Bar was Spin's alter ego: "The factual predicate for an alter ego theory is simply lacking" (FP Ex. B-3).

- **Excell adversary (Judge Kimball).** At trial, when Franklin's counsel was asked whether owning "the entire Spin balance sheet" was Franklin's position, he answered: "I haven't prepared for this lawsuit, but I assume it's not" (FP Ex. G-3, Feb. 2, 2026 Tr. 554:12–555:1). On February 6 the Court said, "I don't think the agreement supports that," and Franklin's counsel answered, "I tend to have my doubts, as well" (FP Ex. G-5, Tr. 1195:8–16).

  At the September 17, 2026 hearing, the Court emphasized that its view was preliminary: it "likely will find" that Hi Bar's payment validly refinanced the third Spin contract. The Court further said that the fraud it described "does not result in Wing Lake becoming the owner of the third Spin contract," adding, "That's a likely ruling" (T-6, Tr. 20:9–20). This supports my position that Franklin/Wing Lake did not acquire rights in the refinanced third contract; it is not yet a final adjudication of that issue.

  Franklin's counsel, Mr. Sandler, then asked whether the Court's comments affected the prior order concerning Franklin and confirmed that Franklin was not required to file further briefs. The Court answered, "None whatsoever," and said that if Franklin was not participating going forward, it did not see how its order could bind Franklin, "But, of course, others may argue differently elsewhere." The Court added: "I'm very familiar with the preclusion law. People make wonderful arguments now and then" (T-6, Tr. 27:6–22). Those remarks did not decide that preclusion applies. The written order states that, because the plaintiff no longer seeks relief against Franklin, the ruling "will not be binding on Franklin in any regard" (FP Ex. G-8, DE 496 ¶ 7). That is the Court's stated reason—not a finding that Franklin received nothing under the assignment.

**My position is that issue preclusion should apply to a final, necessary determination of the third-contract issue.** Franklin was a named defendant and participated through counsel in the trial of the assignment issues; its counsel is listed on all six trial days (Jan. 29, Jan. 30, Feb. 2, Feb. 3, Feb. 4 and Feb. 6, 2026, respective transcript appearance pages 2, 213, 408, 650, 881 and 1109). I ask that this argument be preserved and evaluated, including the effect of DE 496 ¶ 7 and whether clarification or other relief is needed. Franklin's participation supports examining preclusion; attendance alone does not establish it, and the Court's "likely" comments are not themselves a final judgment.

- **AWB.** The adversary in which FVP, the Karma entities and Wing Lake pleaded the assignment was dismissed without prejudice, with no ruling on what the assignment covers (DE 452; FP Ex. D-9). On August 12, 2025 Judge Kimball wrote: "This Court cannot and will not decide whether the Common Interest Agreement was terminated and, ultimately, whether Mr. Lubin holds the rights of Hi Bar relating to the Net Proceeds" (FP Ex. E-2, Dkt. 952 at 7). He added that "[e]ven under Hi Bar's view, Spin held Hi Bar's rights to the Net Proceeds at the time the Court entered the Sale Order" (*id.* at 7 n.2).
- **Broward, August 14, 2025 order (Ex. C).** FVP, Franklin and Hi Bar's joint motion asked the court to state that they had settled among themselves and to ask the Bankruptcy Court to release the registry money (Ex. D ¶ 14(b)–(c)). It argued that, "[e]ven assuming that Hi Bar breached the agreement it had with Spin," Hi Bar could still settle (*id.* ¶ 13). The motion did not mention a termination of the CIA or ask the court to find one. The written order goes further. It says that the court "finds that the Common Interest Agreement was terminated by Hi Bar on April 3, 2024" (Ex. C ¶ 8), and it determines that "neither Avrumi Lubin, nor any of this [sic] affiliated entities, have any rights to the Net Proceeds" (*id.* ¶ 11), meaning the AWB registry money. At the next hearing, the judge said of paragraph 8: "It was not meant to be a finding, but it was the background. So the only thing that I'm going to correct is on paragraph 8 instead, of 'the Court finds that' -- 'the Court notes that.' All right? It's not a finding. I didn't have to make that finding" (Sept. 3, 2025 Tr. 18:14–19) (Ex. E). The judge immediately distinguished his finding that I had no rights or standing to interfere with that settlement (id. 18:19–24). When I asked how long it would take to upload a corrected order, he answered, "I will take care of that" (*id.* 29:11–15). On September 10, 2025, he said that "the termination wasn't even as to Mr. Lubin. The termination was as to Spin" (Sept. 10, 2025 Tr. 9:1–2) (Ex. F), and: "I in no way was trying to -- trying to resolve a separate claim that Mr. Lubin may have against Hi Bar or Spin or whatnot elsewhere. It was strictly for purposes of determining who has standing, who has the right to enter into a settlement for the proceeds in the Bankruptcy Court" (*id.* 13:21–14:1). He then denied a further motion for clarification, saying, "you have a record" (*id.* 14:12–14). To my knowledge, no corrected order was ever entered. I recognize that the written order remains entered and that clarification was denied on September 10. I am asking counsel to assess the written order together with the complete hearing record, not to disregard it.
- **Broward verdict and judgments.** In the veil-piercing/active-participation sections of both verdict forms (FVP's and Franklin's), the jury answered Yes on whether I dominated and controlled Spin and Hi Bar (Questions 1–2) and on harm (Question 4), and No on improper purpose (Question 3) and active participation (Question 5). The instruction within those sections states: "If you answered 'NO' to any of Questions 1-4 and 'NO' to Question 5, then Avrumi Josh Lubin is not liable" (FP Exs. F-6, F-7; also filed in Adv. No. 26-01494 at ECF Nos. 12-6, 12-7). Elsewhere, the jury found against me on separate fraud, interference and conspiracy counts. Judgments were entered on FVP Counts I, II and IV and Franklin Counts 7, 9 and 10 (FP Exs. F-8, F-9), and I have appealed. I do not

contend that the "No" answers automatically eliminate those judgments. I ask that counsel evaluate any inconsistency in light of the complete instructions, verdict-return transcript, objections and posttrial rulings, including whether any challenge was preserved.

- **Broward, May 15, 2026 order.** Entered on FVP's application about seven months after the verdict, its finding 6 says the companies "are operated under the complete domination and control of the Judgment Debtor; the corporate form is used to shield assets from creditors" (FP Ex. F-10 at 2). It is on appeal (No. 4D2026-1512). Your October 21 letter asked the Court to give it collateral-estoppel effect (ECF No. 19 ¶ 6), and the Court referred to it on October 22 (Tr. 63:20–25). I ask that any preliminary assessment of that order and the verdict not be treated as a final adjudication of the disputed issues in this adversary proceeding, without the appropriate opportunity to litigate them (Section 5, request 10).
- **New York.** Franklin's claims against Hi Bar and Spin in Kings County, including its alter-ego claims against Spin, were dismissed, with costs to Hi Bar and Spin (FP Exs. A-2 to A-4).

I have not identified a ruling binding Franklin that awards it Spin's rights unrelated to Excell. I rely on CIA § 10(l) in requesting preservation of the argument for a New York forum, while recognizing that jurisdiction, enforceability, and the effect of existing orders require legal analysis. These disputes should be addressed on notice, with independent advocacy for Spin on the matters where interests diverge.

## 5. What I ask

1. **An independent fiduciary for Spin, chosen by the Court.** I am asking the Court to appoint a disinterested person to act for Spin in place of you under paragraph 2 of the October 23 Order. I ask that the Court consider proposed candidates, require full disclosure of connections, and determine independence, authority, and an appropriate funding source. I am not representing that a qualified candidate or funding commitment has already been secured. My proposal is not to charge this estate without approval. If the Court does not appoint one for all of Spin, I ask for one to act for Spin on these "Conflict Matters": (a) any claim by Franklin, FVP, the Excell trustee or Hi Bar, or anyone claiming through any of them, to own, control or hold an interest superior to Spin's in a right or asset of Spin, including Spin's rights under the CIA; (b) any question about the Participants' ownership of their shares of Spin's transactions and recoveries; (c) any use of Spin's rights or recoveries to settle, reduce or pay a claim against me or this estate; and (d) Spin's cases in which the Excell trustee, Franklin or FVP is on the other side, including Spin's Michigan appeal and its post-trial briefing in Adv. No. 23-01132. Your counsel told the Court that you "would retain special counsel in each case to prosecute actions that Mr. Stanziale believes have merit" (Oct. 22 Tr. 31:16–17). Special counsel would help, but on these questions the conflict is in the decisions themselves, not only in who argues them. I ask you to support this request, or at least not oppose it. If the Court does not appoint one, I ask in the alternative that I be allowed, only through counsel and under conditions (no settlements, segregated recoveries, copies and monthly reports to you, and your right to object with the Court deciding), to defend Spin's rights against the ownership claims and to protect deadlines.
2. **No settlements until the Court rules.** Until the Court rules on my motion, please do not settle, compromise, release, concede, abandon, assign or sell any claim, judgment, right or asset of any of the companies the October 23 Order calls the "Subject Entities," including Teton Life under its separately continued restraints; do not agree or stipulate, for any of them, as to who owns any such right; and do not consent to or support any order or agreement, in any court, that would settle,

release or dismiss with prejudice a claim of any of them. This requested standstill would not prohibit otherwise-authorized preservation measures, approved premium or legal-expense payments, or prosecution and defense permitted by the governing orders. It does not itself authorize any act restricted by an existing stay or injunction.

3. **Spin kept separate.** Please hold any recovery on a right or asset of Spin in a segregated account in Spin's name, and do not use it to pay, reduce or settle a claim against me or this estate. Please also agree that your request to consolidate Spin with this estate will not be decided until the Participants and Spin's known creditors have notice and a chance to be heard. If you do not already have them, I will give you the Participants' names and addresses for that notice; they should not be filed publicly.

4. **The August 14, 2025 order and the CIA.** Please assess the scope and continuing effect of the August 14, 2025 Broward order in light of the complete hearing record before conceding that it conclusively resolves all CIA rights. Preserve available arguments concerning termination, retained rights, and the New York forum provision in CIA § 10(l), without disregarding an entered order.

5. **Notice before rights are lost.** If you decide not to pursue, or to let a deadline pass in, any of the following, please tell me in writing promptly, and well before the deadline, so that the Court can decide who should act: Spin's Michigan appeal; my Florida appeals and the pending Florida motions to vacate; Spin's post-trial briefing in Adv. No. 23-01132; Teton Life's New York case; Bridgelink (Adv. No. 26-01532); and any response for Teton Funding to the June 4, 2026 default judgment.

6. **A written answer.** Please tell me in writing whether Franklin, FVP, the Excell trustee, Hi Bar, or anyone acting for any of them, has told you or your professionals that it owns, controls or holds a superior interest in any right of Spin, Teton Life, Teton Funding or JL Special, or in Hi Bar's rights under the CIA; and if so, who, when and what. I have asked this in writing since October 7 (see ECF No. 27).

7. **Settlement talks.** Please tell me whether any settlement discussions with FVP, Franklin or the Excell trustee include any right or asset of Spin, Teton Life, Teton Funding or JL Special.

8. **Who receives these communications.** Your counsel's October 29, 2026 email of 9:37 p.m. in the Bridgelink participation thread added counsel for FVP (Mr. Breslin and Mr. Karten) as recipients; her 6:43 p.m. and 9:03 p.m. emails in the same thread that evening did not include them. Please explain the recipients' role and identify what can be disclosed without waiving privilege or violating an order. Please protect privileged litigation strategy from adverse parties and provide appropriate nonprivileged updates to me and affected Participants. I do not ask that privileged material be broadly circulated.

9. **The November 9 response date.** Paragraph 5 of the October 23 Order requires responsive pleadings by November 9. To my knowledge, no attorney has appeared in Adv. No. 26-01494 for Spin, Teton Funding, Teton Funding Group or JL Special, and you are the plaintiff. I ask you to reconsider my October 25 request and agree, before November 9, that no default will be requested against any defendant, that no one acting for Spin, Teton Funding, Teton Funding Group or JL Special will consent or stipulate to the relief your complaint seeks, and that the November 9 response deadline in paragraph 5 is extended to January 8, 2027 (or, at the least, to the December 17 pretrial hearing). If all necessary consents are obtained, the appropriate parties can submit a proposed consent order for the Court's approval. I seek this scheduling protection individually and do not purport to appear for any LLC. Neither this request nor silence in response extends a deadline.

10. **Scope of preliminary findings.** Please support clarification of which findings supporting the October 23 preliminary relief are provisional and which issues remain for final adjudication. I preserve my objections concerning alter ego, corporate separateness, and the effect of the Florida verdict and orders; this request does not itself eliminate any finding or preclusive effect (Section 4).

11. **Teton Life.** The Court's October 23 Order notes that I own "a 50% interest in Teton Life, LLC with contractual rights to manage the company subject to consultation with the co-owner" (ECF No. 21 at 2 n.1). Your counsel told the Court that I "currently ha[ve] management interest for certain litigation in New York State" (Oct. 22 Tr. 9:20–23). The order records that the restraints continue as to Teton Life "as agreed to on the record by counsel to the Trustee and counsel to Teton Life, LLC" (ECF No. 21 at 5, ¶ 3). I did not agree to that, and Teton Life's other member appears here through his own counsel (ECF No. 14). All rights are preserved (ECF No. 21 at 5, ¶ 4). I dispute that the estate or the Trustee holds Teton Life's management rights. Without waiving that position, I ask that you not oppose an order restoring my direction of Teton Life's pending cases, including its New York case (Index No. 650582/2022), only through licensed counsel and under defined safeguards: no binding settlement, release, material assignment, or other disposition without the applicable court approval and notice; protected, segregated custody of recoveries; copies of filings and monthly reports; and prompt court review of objections rather than an automatic veto over each authorized litigation step. Existing Receiver custody should remain undisturbed unless a competent court orders otherwise. Approved premiums, reinstatement, preservation costs, and legal expenses should be permitted through an identified authorization and funding mechanism. If all necessary consents are obtained, a proposed consent order can be submitted for approval; otherwise I ask the Court to decide the request. Non-opposition alone is not consent or an entered order. I am asking the Court for this in a response for the November 10 hearing. This request does not ask anyone to decide who holds the membership interest in Teton Life or the effect of Section 2.04(c) of its operating agreement, and I reserve all rights.

12. **FVP's Florida orders.** Orders in FVP's favor were entered on May 15, 2026 (the order as to my interests in Spin and Teton Funding, FP Ex. F-10) and June 11, 2026 (a charging order as to Teton Life, Filing # 250144891, and an order as to JL Special, Filing # 250144887) (T-7). Both dates are within 90 days before my June 25, 2026 petition. I ask you to investigate whether a transfer created, perfected, or enforced through those orders is avoidable under 11 U.S.C. § 547(b), subject to the transfer-timing rules, all statutory elements, and defenses, and whether any avoided transfer is preserved under § 551. The order dates alone do not establish an avoidable preference. I ask you to evaluate any estate avoidance claim; I am not asserting authority to bring it for the estate.

13. **Immediate preservation of the additional policies.** I am separately attaching Teton Life counsel's filed August 31, 2026 letter, NYSCEF 1476. Pages 2–3 identify at least 24 additional policies that may constitute collateral; page 4 explains the risk of lapse, surrender, assignment, or beneficiary changes while the Receiver's authority remains unclear. That letter is counsel's request, not a determination of ownership or present policy status. I acknowledge your October 29 report that the Receiver said the policies were not at risk and that written confirmation would be obtained. Please provide that confirmation and clarify whether it covers all 24 additional policies, rather than only the originally enumerated policies. Please obtain current carrier information on in-force status, grace periods, lapses, reinstatement deadlines, premiums due, and the person and authorized funds responsible for preservation. If an immediate deadline exists, please identify the interim measure and who will implement it. Please confirm promptly whether you will support or not oppose Teton's licensed New York counsel seeking appropriate stay modification and clarification or expansion of

the Receiver's authority, consistently with the Tennessee order and the governing New York and New Jersey orders. If not, please state the specific objection and an alternative preservation plan and timetable. I rely on NYSCEF 1476 for preservation; this request is not for reimbursement of advances or a distribution to me, does not establish that all listed policies are currently at risk, and does not treat the reported July 31 account balance as currently available unencumbered cash.

I am sending this now because rights of Spin and Teton Life are being decided this month: the response date in paragraph 5 is November 9, and the Teton Life hearing is November 10. On November 5 I intend to file a supplemental motion in Adv. No. 26-01494 that asks the Court for requests 1 to 3, 9 and 10, and for a written statement like the one in request 6. I also intend to file a motion to extend the November 9 date, and a response about Teton Life for the November 10 hearing (request 11). If all necessary consents are obtained, I will seek an appropriate consent order. Otherwise I will seek a ruling; I will not treat silence as consent or wait for a reply before protecting my filing deadlines. I am glad to meet with you and your counsel at any time.

Avrumi "Josh" Lubin
(732) 608-4905 | josh@tetonfunding.com

### Appendix A. Where Franklin and FVP made these claims, case by case

| Case | What Franklin or FVP claimed | What happened | Source |
|---|---|---|---|
| 1. N.Y. Sup. Ct., Kings Cnty., *Franklin Capital Funding v. Direct Equity, AJ Equity, Hi Bar & Spin*, No. 518279/2022 (not about Excell) | Franklin: Hi Bar and Spin "share common ownership, officers, and office space"; "Spin Equity is the alter ego of Hi Bar" (Am. Compl. ¶¶ 16, 18; the complaint calls Spin "Spin Equity"). | Dismissed as to Hi Bar (Dec. 1, 2022) and Spin (Feb. 16, 2023); amended complaint "dismissed in its entirety," costs to Hi Bar and Spin (Feb. 23, 2023). | FP Exs. A-1 to A-4 |
| 2. Oakland Cnty. Cir. Ct. (Mich.), *Franklin Capital Group v. Spin & Hi Bar*, No. 22-193300-CB; Mich. Ct. App. No. 379467 | Franklin: Spin assigned "any claims, rights or actions [Spin] may have (whether known or unknown ...) against any third party ..." (Compl. ¶ 30, as quoted in the findings at 8); Hi Bar "is merely a shell for Spin and/or its common investors and management" (¶ 40). | Hi Bar dismissed for lack of jurisdiction (Mar. 2, 2023); alter-ego amendment denied (Apr. 4, 2023); summary disposition against Spin (Apr. 23, 2024); findings (Mar. 12, 2025); $5,400,000 judgment against Spin (Apr. 1, 2025). Spin's appeal pending; status to be confirmed. | FP Exs. B-1 to B-7 |
| 3. Oakland Cnty. Cir. Ct. (Mich.), *Franklin Capital Funding v. Lubin*, No. 2024-206790-CZ (filed as No. 2024-206790-CB) | Franklin: "Lubin exercised management and control of Spin" and "also exercised management and control of Hi Bar Capital, LLC" (Compl. ¶¶ 3, 5); conversion, statutory conversion, tortious interference and fraud (Counts I–IV). | Order to show cause for non-service (June 22, 2024). Current disposition not confirmed. | Ex. B; FP Exs. C-1, C-2 |

| Case | What Franklin or FVP claimed | What happened | Source |
|---|---|---|---|
| 4. Bankr. S.D. Fla., *FVP Opportunity Fund III v. Auto Wholesale of Boca*, Adv. No. 22-01218-EPK | FVP, Karma and Wing Lake, jointly: "Spin assigned to Wing Lake all of its right, title, and interest under its agreements with Excell and its affiliates, 'including any claims, rights or actions [Spin] may have (whether known or unknown to [Spin] as of the date hereof) against any third party …'" (DE 120 ¶ 48). The same words were repeated by FVP and Karma (DE 145 ¶¶ 46–47) and by Franklin, which added: "Despite assigning to Franklin all of the rights under its agreements with Excell and its affiliates …" (DE 206 ¶¶ 35, 46; see ¶ 34). | Abated (DE 425); dismissed (DE 452, Apr. 10, 2024); on Franklin's motion, clarified as without prejudice (DE 457, Apr. 26, 2024). No ruling on what the assignment covers. | T-5 at 6–15, 24–30; FP Ex. D-9 |
| 5. Bankr. S.D. Fla., *In re Auto Wholesale of Boca*, No. 22-15627-EPK | Franklin: "Franklin is the assignee of the Excell debt and related claims," and "[t]he security interest of Franklin in Excell is again senior to that of FVP" (Dkt. 333). Franklin later filed its Broward counterclaims here as Exhibit A to a stay motion (Dkt. 842); they ask for a declaration that all three Spin contracts "and all other obligations … or Claims against the Debtor or Third Parties arising from the Spin Contracts were assigned to Franklin" (Count 2, prayer (c)) and allege an assignment of "all Obligations, Merchant Documents, known and unknown claims, against the Debtor or This [sic] Parties" (¶ 201). In July 2025, FVP, Franklin and Hi Bar jointly moved to send the registry money to FVP's counsel (Dkt. 931). | Joint motion denied; the Court "cannot and will not decide whether the Common Interest Agreement was terminated" (Dkt. 952 at 7, Aug. 12, 2025). After the Broward August 14 order, $2,107,548.61 was released to FVP's counsel (Dkt. 965, Aug. 27, 2025). | T-5 at 19–22, 39–46; FP Exs. E-1 to E-4 |

| **Case** | **What Franklin or FVP claimed** | **What happened** | **Source** |
|---|---|---|---|
| 6. Fla. 17th Cir. Ct. (Broward), *FVP Opportunity Fund III v. Hi Bar Capital* (consolidated), No. CACE-22-005125; Fla. 4th DCA Nos. 4D2025-3564, 4D2026-1512, 4D2026-1833 | In its Second Amended Counterclaims and Crossclaims (Oct. 28, 2024, Filing # 209669232) (Ex. A), Franklin admitted the assignment document did not disclose "the Third Spin Contract, dated August 31, 2021" (¶ 78), but claimed that contract "was sold and assigned to Franklin" (¶ 79), and asked for a declaration that all three Spin contracts "and all other obligations owed by the Debtor or Claims against the Debtor or Third Parties arising from the Spin Contracts were assigned to Franklin" (Count 2, prayer (c)). It also pleaded that "Lubin is the Alter Ego of Spin" and asked the court to pierce Spin's veil and hold Spin and me jointly and severally liable (§ R; Counts 1 and 17; Count 18 as to Hi Bar). Its First Amended version (June 17, 2024, Filing # 200732084) made the same allegations. FVP: I am "the president, controlling principal, and alter ego of Spin," and "Spin and Hi Bar were interchangeable" (4th Am. Compl. ¶¶ 74, 110, Filing # 207710056, Sept. 25, 2024). After judgment, FVP sought the orders against Spin, Teton Funding, Teton Life and JL Special listed in Section 2.1. | Franklin later called its Spin claims moot because "Franklin has already obtained a judgment against Spin in Michigan state court on April 1, 2025" (Aug. 25, 2025 motion ¶ 3); agreed orders dismissed them as to Spin (Sept. 18, 2025). Verdict and judgments against me (Oct. 2025). August 14, 2025 order and the judge's later statements (Section 4). Post-judgment orders of May 15, June 4, June 11 and June 16, 2026 (Section 2.1). | Ex. A; FP Exs. F-1 to F-17; T-3, T-4, T-7 |
| 7. Bankr. S.D. Fla., *Mehdipour v. Hi Bar Capital*, Adv. No. 23-01132-EPK | The Excell trustee's Count 1 sought a ruling on the effectiveness of the Wing Lake assignment; Franklin litigated the assignment at trial (February 2026). The Excell trustee and Franklin had a written common-interest agreement (DE 410 ¶ 2). | June 11, 2025 oral ruling on the assignment's scope (DE 317 at 7); trial statements of February 2 and 6, 2026 (Section 4); Count 1 dropped; the ruling "will not be binding on Franklin in any regard" (DE 496 ¶ 7); September 17, 2026 preliminary third-contract view and preclusion exchange (Section 4); briefing into 2027 (DE 500). | FP Exs. G-1 to G-8; T-6 |
| 8. This Court, *In re Lubin*, No. 26-17342; Adv. Nos. 26-01315 (FVP), 26-01339 (Franklin), 26-01435 (Excell trustee) | Claims 5, 6 and 17; § 523 complaints; stay-relief motions (Dkts. 33 and 119). I have not found a filing here in which Franklin or FVP says it owns Spin's rights (see request 6). | FVP's request to carve the Florida appeals out of the stay: "I think that's a determination for the Chapter 11 Trustee" (Aug. 6, 2026 Tr. 20:22–21:17); not granted again on September 17, 2026 (Tr. 36:11–37:6). | T-8 |

| Case | What Franklin or FVP claimed | What happened | Source |
|---|---|---|---|
| 9. N.Y. Sup. Ct., Kings Cnty., *Hi Bar Capital LLC v. Excell Auto Group, Inc.*, Index No. 502846/2022 | Under the Settlement, Hi Bar agreed to assign its rights in this case to FVP, "including, without limitation, the rights under a CPLR 3215(i) Stipulation of Settlement entered in that case" (¶ 8). Under the CIA, Hi Bar assigned its claims in this case to Spin in 2022 (Recitals A, F; § 2(a)). | Whether FVP has appeared or acted in this case has not been confirmed. | T-1, T-2 |
| 10. N.Y. Sup. Ct., N.Y. Cnty., *Teton Life LLC, as assignee of Spin Capital, LLC v. Golden Foothill Insurance Services, LLC*, Index No. 650582/2022 | No Franklin filing found. FVP submitted a proposed order to show cause there (NYSCEF 1487). FVP holds a charging order on my interest in Teton Life (T-7). | The court declined to sign FVP's proposed order on September 23, 2026 (NYSCEF 1505). The case is pending; the Teton Life hearing here is November 10. | T-7 |

## Appendix B. The two binders

### Additional sources identified as Binder T (not attached).

| Tab | Document |
|---|---|
| T-1 | Settlement Agreement among FVP, Franklin and Hi Bar (July 2025), as filed in this Court at Dkt. 44-4, Ex. M, pp. 104–115 |
| T-2 | Common Interest and Joint Litigation Agreement, Spin and Hi Bar (effective January 28, 2022) |
| T-3 | Broward Order on Joint Motion to Endorse Settlement (Aug. 14, 2025, Filing # 229455396) (attached as Ex. C) |
| T-4 | Broward hearing transcripts, September 3 and September 10, 2025 (attached in full as Exs. E and F) |
| T-5 | Excerpts of filings in the AWB cases (Oct. 10, 2026 set, 52 pages, Tabs 1–8) |
| T-6 | Excell adversary: September 17, 2026 hearing transcript (pp. 20 and 27; full transcript available separately) and DE 500 (post-trial briefing schedule). Section 4 also cites the appearance pages from the six trial transcripts, available separately. |
| T-7 | Broward orders of June 11, 2026: charging order as to Teton Life (Filing # 250144891) and order as to JL Special (Filing # 250144887) |
| T-8 | This Court: hearing transcript of August 6, 2026 (excerpt) |

**Attached.** Ex. A: Second Amended Counterclaims and Crossclaims of Franklin Capital Funding, LLC and Franklin Capital Group, LLC, *FVP Opportunity Fund III, LP v. Hi Bar Capital, LLC*, No. CACE-22-005125 (Fla. 17th Cir. Ct.), Filing # 209669232 (Oct. 28, 2024) (the pleading, pp. 1–83; its exhibits are omitted; page cites are to the pleading). Ex. B: Complaint, *Franklin Capital Funding, LLC v. Lubin*, No. 2024-206790-CB (Oakland Cnty. Cir. Ct., Mich.) (Apr. 15, 2024) (pp. 1–29; its exhibits are omitted). Ex. C: Order on Joint Motion to Endorse Settlement, *FVP Opportunity Fund III, LP v. Hi Bar Capital, LLC*,

No. CACE-22-005125 (Fla. 17th Cir. Ct.), Filing # 229455396 (Aug. 14, 2025) (7 pages). Ex. D: The FVP Parties, Franklin Parties, and Hi Bar Parties Joint Motion to Endorse Settlement, Consensual Resolution and Issue Order to Bankruptcy Court (superseding motion), Filing # 229282707 (Aug. 12, 2025) (the motion, 6 pages; its exhibit is omitted). Ex. E: Transcript of hearing, Sept. 3, 2025 (31 pages). Ex. F: Transcript of hearing, Sept. 10, 2025 (15 pages).

**Binder FP (Sept. 30, 2026).** Tabs cited in this memo, with their pages: A-1 to A-4 (FP-0004–0022); B-1 to B-7 (FP-0023–0083); C-1 and C-2 (FP-0084–0093); D-9 (FP-0173–0175); E-1 to E-4 (FP-0176–0202); F-1 to F-17 (FP-0203–0363); G-1 to G-8 (FP-0364–0429).

# Record review and preservation request

November 6, 2026 I Avrumi (Josh) Lubin, individually
To: Benjamin Stanziale, Patricia Staiano and Matthew Moloshok
Re: In re Lubin, No. 26-17342-EJO; related disputed claims and asset protection

## Purpose and requested response

I request a nonprivileged written assessment of the attached records and an interim protection plan by **5:00 p.m. Eastern today, November 6, 2026.** This is my requested response time, not a court-imposed deadline. If an issue cannot be resolved today, identify the responsible person, remaining work, date for a substantive answer and protection in place meanwhile.

This supplements my November 4 memorandum. It asks for investigation and preservation, not a finding of misconduct, unilateral disregard of an existing order, or adjudication of disputed ownership. I reserve those disputes and my objections. I do not request privileged legal advice.

## 1. Investigation must be paired with interim protection

Judge O'Hagan connected the Trustee's fiduciary duty to "serious diligence" on October 22, 2026 (Tr. 24:13-16), and stated that the Trustee must decide which entities and actions have value to the estate and how to protect those assets (63:6-12). The same passages give the Trustee latitude, reject substitution of my business judgment, and explain that Trustee's counsel are not my personal attorneys. I recognize all of that context. Ex. 04, binder PDF pp. 11-15.

Sections 1106(a)(3)-(4) provide for investigation, except as the Court orders otherwise, and reporting as soon as practicable. Section 1106(a)(1) incorporates section 704(a)(5), concerning examination of claims and objections when a purpose would be served, and section 704(a)(7), concerning estate-administration information requested by a party in interest unless the Court orders otherwise. These provisions do not mean the Trustee must adopt every proposed litigation position or owes an adjudicated direct duty to each separate company.

Official statutory text: 11 U.S.C. 1106; 11 U.S.C. 704. Verified November 6, 2026.

## 2. Prior notice is documented, not assumed

September 22: the May 15 order and May 13/June 16 transcripts were sent to Ben, copying three UST contacts; Patricia and Matt were not recipients. October 7: I identified the August 2025 orders and August/September hearing excerpts already filed at NJ Dkt. 44 to Patricia, Matt and Ben. October 18: I sent the May/June hearing records and requested counsel action on the May 15 order. These messages establish what I sent or identified, not whether each recipient read it or agreed. Exs. 01-03.

# August 2025 orders: the issue requiring review

### 3. The assignment question and the later distribution

Kimball's August 12, 2025 order, AWB Dkt. 952, p. 8, says: "If this is true, then Mr. Lubin is the correct party to join with FVP and Franklin in the Joint Motion, not Hi Bar." The condition matters. Pages 7 and 9 expressly decline to decide termination of the common-interest agreement or ultimate ownership for lack of jurisdiction; page 6 corrects the earlier view excluding my ability to seek relief. It is not a judgment that I owned the proceeds. Ex. 08, binder PDF pp. 83-91.

On August 27, Kimball relied on the intervening Broward order, declined to look behind it, and treated it as enforceable notwithstanding reconsideration (Tr. 9:9-20; 10:2-23). Dkt. 965 then directed distribution of $2,107,548.61 plus any accrued interest and overruled objections (pp. 2-3). Any recovery or challenge analysis must address that adverse sequence, not stop at Dkt. 952. Exs. 11-12.

### 4. Paragraph 8: a specific tension, not a wholesale reversal

The August 14 Haimes order states in paragraph 8 that the agreement was terminated on April 3, 2024; paragraph 11 rejects rights of Lubin and affiliated entities in the Net Proceeds; paragraph 14 states that the relative-rights dispute has been resolved. The order also incorporates the August 13 hearing reasons. Ex. 10, binder PDF pp. 233-239.

On September 3, Haimes said about paragraph 8: "It was not meant to be a finding, but it was the background" (Tr. 18:14-15). He discussed changing "finds" to "notes," said that finding was unnecessary, and confirmed that explanation (18:11-21; 19:1-4). Yet he preserved the operative result and paragraph 11 (19:21-20:3; 21:13-25). Ex. 13, binder PDF pp. 259-289.

On September 10, he explained that he was not resolving separate claims elsewhere and that the ruling addressed standing to enter the settlement concerning bankruptcy proceeds (Tr. 13:20-14:10). He nevertheless **denied clarification** (14:12-14); the October 23, 2025 written order denied the motion as well. No amended order was identified in the reviewed source set. Exs. 14-15.

I contend this is a material scope issue requiring a reasoned assessment: which findings are being relied upon, for what purpose, and whether separate claims or a viable challenge remain. The September language cannot honestly be presented as vacating the August order.

# Complete context and preservation priorities

### 5. The August 13 record includes adverse rulings

The full hearing states that separate claims against Hi Bar are not being decided (17:19-25; 30:22-31:9). But it also grants settlement endorsement based on the agreement and termination letter (41:2-16), expressly rules I lack an interest for the stated reasons (43:3-7), and distinguishes a possible suit against Hi Bar from a right to the proceeds (135:19-23). The complete 139-page transcript is attached. Ex. 09, binder PDF pp. 93-231.

Accordingly, the question is not whether the oral record contained *any* adverse proceeds ruling. It did. The questions are the breadth and effect of the written findings, the claims expressly left open, and what procedures and deadlines govern any still-available challenge. I request counsel's assessment of preservation, preclusion, timeliness, relief needed in each court, and likely value to the estate; this memo does not decide those legal issues.

### 6. May 2026 order: distinguish the two proceedings

Finding 6 and section E of the May 15 order contain adverse control/shielding and foreclosure findings. On May 13 the Court ultimately granted foreclosure as to the two sole-member LLCs (Tr. 21:1-6). June 16 began with confusion about the order and its date; the later discussion distinguishes foreclosure of my membership interest from supplementary alter-ego proceedings (printed Tr. 10:2-11:22). Karten retracted his conditional correction statement (10:17-23). Haimes directed a pleading to challenge the other order (12:11-13). Exs. 05-07.

This record does not establish that Haimes vacated May 15 or admitted its entirety was erroneous. It does justify asking what review reconciled those records before reliance on finding 6. O'Hagan expressly cited that finding through the Trustee's certification on October 22 (Tr. 63:20-25). Ex. 04.

### 7. Policy protection cannot be left at a general assurance

NYSCEF 1476, filed by Teton's counsel on August 31, lists at least 24 additional policies that may be collateral and describes exposure to lapse, surrender, assignment or beneficiary change while authority remains uncertain (pp. 2-4). Those are counsel's assertions and requests, not an order expanding the receivership. The letter's account balances are historical, not proof of current available funds. Ex. 16, binder PDF pp. 311-315.

Patricia's October 29 reply reported that she and the Trustee spoke with the Receiver, that he advised policies were not at risk, and that she would engage with him to confirm in writing. The excerpt includes the surrounding refusal to engage pending identification of recipients; it is not carrier verification. I ask whether the assurance covers all 24 additional policies, not just the originally enumerated policies. Ex. 17, binder PDF pp. 317-317.

# Requested written action plan

Please answer each item by 5:00 p.m. Eastern today. If a final decision is not possible, provide an interim answer with the responsible person, remaining work, next response date and protective measures.

### 1. Florida review and claims

Identify the documents reviewed before reliance on the May 15 order; reconcile paragraph 8 and the operative provisions of the August 14 order with the complete hearing record and later rulings. Identify potentially valuable surviving claims, any available challenges to existing orders, applicable deadlines and the proposed next step or nonprivileged reason for declining it. Explain what has been concluded from the reported consultation with Stanley Casey; the fact of a consultation alone does not answer these questions.

### 2. Preservation and licensed counsel

Provide the written Receiver confirmation discussed October 29 and identify whether it covers each additional policy listed in NYSCEF 1476. For any unresolved policy, identify current carrier/owner information, premium, grace or reinstatement deadlines, and the person responsible. State the Trustee's position on licensed Teton counsel seeking appropriate stay modification and clarification or expansion of the Receiver's powers; if opposed, identify the lawful alternative protecting the policies and any required court approval.

### 3. Representation, deadlines and resources

Identify the protective steps for current litigation and response deadlines, including the November 9 responsive-pleading date as affected by any intervening order. If counsel or funding is unavailable, identify the proposed lawful solution and interim protection. This request does not assert that any pending extension is granted or that I may represent an entity.

### 4. Disputed claims and independent review

Identify the present investigation of Franklin, FVP and Excell's asserted claims or rights, including whether record-based objections or affirmative recovery warrant action. Where a specific issue concerns the Trustee's or counsel's own conduct, state whether an independent review is proposed and how an actual conflict, if identified, will be addressed. I do not ask recipients to concede misconduct or assert that every disagreement establishes a conflict.

### Record and scope limits

This is a focused correspondence packet, not a complete appellate record, current docket certification or new motion. Historic analyses were used to locate primary records, not as evidence. No merits ruling, deadline extension, standing determination, right to act for a company, or current policy status should be inferred from the act of sending it. I will comply with operative orders while reserving objections. If a cited matter has already been addressed in writing or by order, please identify the response or docket entry.

Avrumi (Josh) Lubin
732-608-4905
josh@tetonfunding.com

Printed from the mailbox of josh@tetonfunding.com (Microsoft 365). Opening message only; quoted history omitted. Times are Eastern.

---

**From:** Patricia A. Staiano <PStaiano@hlgslaw.com>
**Sent:** Friday, November 6, 2026 1:58 PM
**To:** Josh Lubin <josh@tetonfunding.com>
**Cc:** [the recipients of Lubin's 12:10 PM email, including Ben@stanzialelaw.com; MMoloshok@hlgslaw.com; Rachel.Wolf@usdoj.gov; Kirsten.K.Ardelean@usdoj.gov; Heidi.A.Feinman@usdoj.gov; and counsel for FVP, Franklin, the Excell trustee and others]
**Subject:** RE: Motion to enforce the automatic stay — to be filed after noon on November 4 unless resolved — LT-315041-26/NY

Since you have determined to copy the world demanding information, we assume you care nothing about privilege issues. The Trustee and I will report the status of our investigation to date in open court on Tuesday.

---

| | |
|---|---|
| **Subject:** | Re: In re Lubin, No. 26-17342 — Memorandum and interim protection of Spin and Teton Life |
| **Date:** | Saturday, November 7, 2026 at 5:25:27 PM Eastern Standard Time |
| **From:** | Josh Lubin <josh@tetonfunding.com> |
| **To:** | ben <ben@stanzialelaw.com>, Patricia A. Staiano <pstaiano@hlgslaw.com>, Matthew E. Moloshok <mmoloshok@hlgslaw.com> |
| **CC:** | Rachel.Wolf@usdoj.gov <Rachel.Wolf@usdoj.gov>, Kirsten.K.Ardelean@usdoj.gov <Kirsten.K.Ardelean@usdoj.gov>, Heidi.A.Feinman@usdoj.gov <Heidi.A.Feinman@usdoj.gov> |
| **Attachments:** | 01_Franklin_Spin_Assignment_SIGNED_6pp.pdf, 02_Ex_C-2_Spin_TD_Statement_October_2021_5pp.pdf, 03_Ex_C-3_Spin_TD_Statement_November_2021_5pp.pdf, 04_Kimball_2025-06-11_Transcript_Dkt317_FULL_34pp.pdf, 05_Kimball_2026-02-02_Trial_Transcript_FULL_273pp.pdf |

Ben, Patricia and Matt,

Attached are the Franklin–Spin assignment, Spin's October and November 2021 bank statements, and Judge Kimball's June 11, 2025 and February 2, 2026 transcripts.

These materials require substantive review of two distinct issues: whether the required purchase-price payment occurred and what rights the assignment covered.

Paragraph 2 makes the specified transfer "Effective upon receipt by Assignor of the Purchase Price," requiring a wire to the designated account by November 3, 2021. Paragraph 7 likewise conditions distribution of the Evidence of Assignment on receipt of that payment.

My position remains that the required payment was never received. The attached statements identify neither a separate $1 credit nor an incoming wire labeled Franklin.

Mr. Baum's testimony must be considered in full. Although he initially testified that, to his knowledge, the wire was sent or initiated, Mr. Leto subsequently questioned the basis for that assertion. Baum explained that he assumed his attorneys followed the closing statement and acknowledged: "I can't tell you definitively." When Leto directed him to his earlier deposition answer, Baum read:

"I am not certain whether or not the actual dollar, which would have cost more to send, was actually sent."

See February 2 transcript, pp. 519, 538 and 620–622. Please obtain the actual bank confirmation identifying the remitter, payment date, amount and receiving account, together with evidence of timely receipt. This concerns satisfaction of an express payment condition—not whether nominal consideration can generally be sufficient.

Separately, Judge Kimball stated that the assignment and Evidence of Assignment alone

did not establish whether the third Spin contract was included: "Parol evidence is required." The evidence then presented was insufficient to permit a ruling for either party. June 11 transcript, p. 7:9–20. He reiterated the relevance of that evidence at trial. February 2 transcript, p. 544:6–12.

Before November 1, 2021, I had no direct telephone or email communications with Mr. Baum or any Franklin employee. If a shared intention to include the third contract is asserted, please identify the contemporaneous communications, documents or conduct supporting it, including any communications through representatives.

Please address payment and scope separately. If reliance is placed on waiver, another contractual provision or a prior ruling, identify the specific basis and issue actually decided. I recognize that contrary Michigan findings must be addressed through appropriate procedures and reserve all available challenges.

I do not concede alter-ego identity, a blanket transfer of personal or company rights, or the disputed ownership interpretation of paragraph 2 of the October 15/23 orders. I will comply with operative orders while pursuing appropriate relief.

I write individually and do not purport to waive any entity's or investor's rights. No ratification, assignment, release or waiver is intended. All available rights, claims, defenses and objections are reserved.

Josh Lubin

---

**From:** Josh Lubin <josh@tetonfunding.com>
**Date:** Friday, November 6, 2026 at 11:48 AM
**To:** ben <ben@stanzialelaw.com>, "Patricia A. Staiano" <pstaiano@hlgslaw.com>, "Matthew E. Moloshok" <mmoloshok@hlgslaw.com>
**Cc:** "Rachel.Wolf@usdoj.gov" <Rachel.Wolf@usdoj.gov>, "Kirsten.K.Ardelean@usdoj.gov" <Kirsten.K.Ardelean@usdoj.gov>, "Heidi.A.Feinman@usdoj.gov" <Heidi.A.Feinman@usdoj.gov>
**Subject:** Re: In re Lubin, No. 26-17342 — Memorandum and interim protection of Spin and Teton Life

Ben, Patricia and Matt,

I am following up on my November 4 memorandum. Please provide a substantive written response to the requests below by 5:00 p.m. Eastern today, November 6. These concern estate administration and preservation, not a demand that you act as my personal attorneys.

Judge O'Hagan connected the Trustee's fiduciary duty to "serious diligence" and directed attention to which entities and actions are valuable to the estate and how to protect those assets. October 22 Tr. 24:13-16; 63:6-12. I recognize the discretion and time he afforded the Trustee. My question is what protection is in place during that investigation.