# EXHIBIT C-31

The New York settlement papers: the November 25, 2025 agreement in principle signed for Teton Life, LLC; the court's same-day order; the unsigned December 14, 2025 draft settlement agreement; Lubin's June 3, 2026 affirmation; Cap Factor's July 10, 2026 letter; Teton Life's counsel's May 29, 2026 letter; Cap Factor's June 16, 2026 letter; Lubin's May 19, 2026 notice of non-consent — *Teton Life, LLC v. Golden Foothill Insurance Services, LLC,* Index No. 650582/2022 (Sup. Ct. N.Y. County)

| Document (as downloaded from the New York court's electronic docket) | Pages of this exhibit |
|---|---|
| NYSCEF Doc. No. 1370 — one-page paper dated November 25, 2025 ("The parties have reached an agreement in principle. The following terms will govern the final agreement which will be drafted by plaintiff's counsel."), signed "Avrumi (Josh) Lubin for TETON LIFE LLC" and "John Giardino for CAP FACTOR LLC"; filed May 1, 2026 as Exhibit 1 to the intervenor-defendants' cross-motion (with its exhibit cover sheet) | 2–3 |
| NYSCEF Doc. No. 929 — Settlement Conference Order of Justice Bannon, November 25, 2025 ("the parties have reached and signed an agreement in principle and have requested a short adjournment to finalize the terms of the settlement") | 4 |
| NYSCEF Doc. No. 1447 — "Amini LLC Draft: December 14, 2025 — Confidential Settlement Agreement and Release," unsigned by every party (signature blocks blank); filed July 10, 2026 by counsel for Cap Factor, LLC as Exhibit 2 to NYSCEF Doc. No. 1445 (with its exhibit cover sheet) | 5–20 |
| NYSCEF Doc. No. 1425 — Affirmation of Avrumi (Josh) Lubin dated June 3, 2026, filed by Teton Life's counsel (Schlam Stone & Dolan LLP) with Teton Life's motion for leave to oppose the cross-motions (Mot. Seq. No. 50) | 21–28 |
| NYSCEF Doc. No. 1445 — Letter of John Giardino, Esq. (Pryor Cashman LLP, counsel for Cap Factor, LLC) to the Part 61 law clerk, July 10, 2026, enclosing the November 25, 2025 paper, "the definitive Settlement Agreement drafted ... by attorney Jeffrey Chubak of Amini, counsel for Teton Life," and a proposed order | 29–30 |
| NYSCEF Doc. No. 1415 — Letter of Joshua Wurtzel, Esq. (Schlam Stone & Dolan LLP, counsel for Teton Life, LLC) to Justice Bannon, May 29, 2026, submitting proposed orders and stating that the cross-motions to enforce the term sheet "should be denied" because it "represented only an 'agreement in principle'" and "is not independently enforceable" | 31–32 |
| NYSCEF Doc. No. 1427 — Letter of John Giardino, Esq. (Pryor Cashman LLP, counsel for Cap Factor, LLC) to Justice Bannon, June 16, 2026 ("Teton Life submitted no opposition whatsoever to the cross-motions") | 33–34 |
| NYSCEF Doc. No. 1404 — Affirmation and Notice of Non-Consent, Lack of Actual Authority, and Intent to Retain Substitute Counsel for Teton Life LLC, filed by Avrumi (Josh) Lubin, May 19, 2026 (without its exhibits, which were filed separately) | 35–37 |

Each document is reproduced complete and unchanged, with its NYSCEF filing headers. Nothing is altered. Page 1 of this

# EXHIBIT 1

New York, November 25th 2025

The parties have reached an agreement in principle. The following terms will govern the final agreement which will be drafted by plaintiff's counsel.

1. Cap Factor will receive 3.5 million from receiver account and the plaintiff will receive the balance.
2. As to the policies, the parties agreed that the receiver will remain in place for the purposes of insuring premium payments are made under those policies defined as those specified in security agreement less the policy on William and Rae Leer.
3. Teton Life agrees to make the payments of those premiums as they become due.
4. Future Death Benefit will be spilt 65 Tetonlife – 35 % Cap Factor net of premium payments and receiver fees.
5. Cap Factor will facilitate the delivery of medical records associated with those policies to the best of its abilities, including signing forms needed to facilitate health/medical disclosures.
6. The claim against Hancock to be pursued by the receiver will be split 70% to Tetonlife and 30% to Cap Factor.
7. Full mutual releases as between the parties to the litigation, including release of RICO claims asserted against BMF Advance, Spin Capitol, and affiliates, including Gavriel Yitzchakov and Avrumi (Josh) Lubin.

Avrumi (Josh) Lubin for TETON LIFE LLC

______________________________

John Giardino for CAP FACTOR LLC

______________________________

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

**PRESENT:** **HON. NANCY M. BANNON** **PART** 61M

***Justice***

---------------------------------------------------------------------------------X

TETON LIFE LLC AS ASSIGNEE OF THE RIGHTS OF SPIN CAPITAL, LLC,

Plaintiff,

- v -

GOLDEN FOOTHILL INSURANCE SERVICES, LLC, et al

Defendant.

---------------------------------------------------------------------------------X

**INDEX NO.** 650582/2022

**SETTLEMENT CONFERENCE ORDER**

At a settlement conference held on November 25, 2025, the parties have reached and signed an agreement in principle and have requested a short adjournment to finalize the terms of the settlement.

Accordingly, it is

ORDERED that the parties shall appear for a status conference, on December 15, 2025, at 2:30 p.m., to be held on Microsoft Teams, unless they execute and upload a Stipulation of Discontinuance on or before December 12, 2025, and it is further

ORDERED that that the Clerk shall mark the file accordingly.

NANCY M. BANNON, J.S.C.
**HON. NANCY M. BANNON**

**DATE: 11/25/2025**

**Check One:** ☐ **Case Disposed** ☒ **Non-Final Disposition**

**Check if Appropriate:** ☐ **Other (Specify** ______________________________ **)**

# OTHER ORDER – NON-MOTION

# EXHIBIT 2

**Amini LLC Draft: December 14, 2025**
**Confidential Settlement Communication**

# CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE ("Agreement") is entered into by and among:

- Teton Life LLC ("Teton") as assignee of the rights of Spin Capital LLC ("Spin");
- Golden Foothill Insurance Services, LLC ("Golden Foothill"), Life Factor II LLC ("LFII"), Life Shares II LLC ("LSII"), El Dorado Hills Insurance Solutions, Inc. ("El Dorado"), Lone Wolf Insurance Services, Inc. ("Lone Wolf"), ELDO Investments, LLC, The Genesis LS Fund, LLC ("Genesis LS"), KTL Holdings, Inc. ("KTL"), DRVN Holdings LLC ("DRVN"), Life Shares 1019 LLC ("LS1019"), Stefan Leer ("Mr. Leer") and Tatanisha Leer (together, the "Leer Parties");
- CapFactor LLC ("CapFactor");
- Fred Stevens as receiver ("Receiver") of the Zurich, John Hancock and Brighthouse Policies (defined below);
- Zurich American Life Insurance Company ("Zurich").

Each of Teton, Spin, the Leer Parties, CapFactor, the Receiver and Zurich are referred to individually as a "Party" and collectively as the "Parties" in this Agreement.

## RECITALS

WHEREAS, CapFactor has represented to Teton that CapFactor and/or its affiliates have made a series of loans to the Leer Parties as follows: (a) loans to El Dorado in the amounts of $425,000 and $1,000,000; (b) loans to Lone Wolf in the amounts of $725,000, $1,200,000, $9,184,000, and $225,000; and (c) a loan to KTL in the amount of $1,750,000;

WHEREAS, CapFactor and the Leer Parties entered into a Forbearance Agreement dated September, 2021 (NYSCEF #564), as amended on November 10, 2021 (NYSCEF #658), and further amended on November 22, 2021 (NYSCEF #668), pursuant to which the Leer Parties acknowledged, agreed, and confirmed that as of September 13, 2021 the outstanding indebtedness of the Leer Parties was $19,788,129;

WHEREAS, in March 2021, BMF Advance, LLC ("BMF") and Hi Bar Capital ("Hi Bar") provided funding to certain Leer Parties memorialized by certain purchase agreements (NYSCEF #86, #87, #88, #89, #90, together the "Purchase Agreements");

WHEREAS, Spin made a loan to Golden Foothill, LFII and LSII memorialized by a $2.7 million promissory note (the "Spin Loan") (NYSCEF #110), and secured by a security agreement (NYSCEF #111) and payment guaranties by certain Leer Parties (NYSCEF #112, #113, #114), each dated June 16, 2021;

WHEREAS, the Spin Loan included (NYSCEF #91, #134) $1,307,403 in new money paid to the borrowers, $582,000 paid to BMF and $580,597 paid to Hi Bar to satisfy obligations under

their Purchase Agreements with the Leer Parties, $30,000 to pay legal fees and $200,000 in closing fees and other costs;

WHEREAS, the security agreement granted Spin a security interest in all life insurance policies owned by the Leer Parties party thereto including:

(a) The following policies issued by Zurich of which LSII was the owner/beneficiary (together, the "Zurich Policies"):

| Named Insured | Policy No. | Death Benefit |
|---|---|---|
| Gresham, Ronald | 177947 | $2,500,000 |
| Kellar, Edward | 170604 | $5,000,000 |
| Perry, Jack & Leonora | 167060 | $1,000,000 |
| Sisam, Dorothy | 172953 | $5,000,000 |
| Sisam, Edwin & Dorothy | 172963 | $6,000,000 |

; and

(b) Two policies issued on the life of John Utsick of which LFII was owner/beneficiary, specifically a $2 million policy issued by John Hancock Life Insurance Company ("John Hancock"), Policy No. 59592683 (the "John Hancock Policy") and a policy issued by Brighthouse Financial Life Insurance Company ("Brighthouse"), Policy No. 7447253 (the "Brighthouse Policy")

WHEREAS, the Leer Parties executed collateral assignments on the Zurich Policies in favor of Spin and CapFactor, and attempted to transfer ownership of the Zurich Policies to DRVN and then onto CapFactor, and designate them as beneficiary of 100% of the proceeds of said policies;

WHEREAS, by letter dated December 6, 2021 (NYSCEF #126, "Zurich Letter"), Zurich refused to process any of Spin's or CapFactor's collateral assignments, and also refused to process requests to transfer ownership or beneficiary status of any of the Zurich Policies from LSII, and as a result, as of the date of execution hereof, LSII remains the record owner and beneficiary of the Zurich Policies;

WHEREAS, LFII transferred the John Hancock Policy and 100% of its interest in the Brighthouse Policy to LS1019;

WHEREAS, Spin commenced an action to enforce its promissory note in New York County Supreme Court, Index 650582/2022 ("Spin Loan Enforcement Action") against Golden Foothill, LFII, LSII and the guarantors, and prosecute voidable transaction and related declaratory judgment claims in respect of the Zurich, John Hancock and Brighthouse Policies against CapFactor, LS1019 and the respective insurers;

WHEREAS, Fred Stevens was appointed Receiver of the Zurich, John Hancock and Brighthouse Policies by order entered January 6, 2023 (NYSCEF #245, "Receiver Order");

WHEREAS, following Mr. Utsick's death, Brighthouse commenced an interpleader action concerning the Brighthouse Policy in the United States District Court for the Southern District of New York, Case 1:23-cv-08570, and following entry of an order authorizing interpleader disbursement (ECF #124) transferred proceeds of said policy to the Receiver;

WHEREAS, Brighthouse Policy proceeds are being held in accounts titled in the name of the Receiver at Wilmington Trust and Flagstar Bank (together, the "Receiver Bank Accounts"), and as of the date of execution hereof the balance of the Receiver Bank Accounts exceeds $9.3 million;

WHEREAS, on or about July 25, 2023, Stefan Leer on behalf of LS1019 made a claim on the John Hancock Policy (NYSCEF #324), without the knowledge of the Receiver, which John Hancock honored by wiring approximately $2 million to LS1019;

WHEREAS, Receiver Order ¶14 required John Hancock to remit death benefits payable in respect of the John Hancock Policy to the Receiver;

WHEREAS, Stefan Leer was held in civil contempt (NYSCEF #467) and criminal contempt (NYSCEF #509) for refusing to turnover the death benefit of the John Hancock Policy to the Receiver, and a money judgment was entered in favor of the Receiver and against Leer in the amount of $2,230,197.11 plus interest of $435.15/day from and after November 19, 2024, for refusing to turnover same (NYSCEF #764);

WHEREAS, by order entered August 25, 2025, Teton as assignee of Spin's rights, was substituted for Spin as plaintiff (NYSCEF #909) in the Spin Loan Enforcement Action;

WHEREAS, certain of the Leer Parties commenced an action in the United States District Court for the Southern District of New York, Case 24-cv-08515 ("RICO Action"), asserting RICO claims against inter alia Spin, Avrumi Lubin aka Josh Lubin ("Lubin"), BMF and Gavriel Yitzchakov aka Gabe Isaacov ("Isaacov"), in relation to the Purchase Agreements that were satisfied from Spin Loan proceeds;

WHEREAS, on November 26, 2025, Teton, the Leer Parties and CapFactor participated in a settlement conference wherein a settlement in principal was reached;

WHEREAS, the Parties have reached this Agreement to avoid further litigation and resolve claims asserted in the Spin Loan Enforcement Action and the RICO Action.

NOW, THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION, the receipt and sufficiency of which is hereby acknowledge, and intending to be legally bound hereby, and subject to the occurrence of the Effective Date (defined below), the Parties hereby agree as follows:

## AGREEMENT

1. Conditions Precedent to Effectiveness. It shall be a condition precedent to the effectiveness of this Agreement that CapFactor and the Leer Parties have delivered to Teton (a) all documents in their possession, custody or control concerning each of the named insureds under

each of the Zurich Policies, including all documents identified in Schedule 1(a), or a certification under CPLR 2106 that the documents specified in Schedule 1(a) are not in their possession, custody or control; and (b) an executed assignment of HIPAA release in favor of Teton, for each of the named insureds under the Zurich Policies, that is acceptable to Teton in form and substance. Within two (2) business days following delivery and assignment of said documents to Teton and execution hereof, Teton shall submit this Agreement to be so ordered by the Court. To avoid doubt, only Teton's counsel in the Spin Loan Enforcement Action may submit this Agreement to be so ordered by the Court. The date on which this Agreement is so ordered shall be the "Effective Date" of this Agreement.

2. Settlement Payment. The Receiver shall pay $3.5 million to CapFactor from funds on deposit in the Receiver Bank Accounts. The Receiver shall pay 100% of the remaining balance of the Receiver Bank Accounts, less allowed but unpaid fees and expenses of the Receiver and his firm (if any) to Teton. Said payments to CapFactor and Teton shall be made within two (2) business days following the Effective Date and receipt of wire transfer instructions from CapFactor and Teton, via electronic funds transfer in accordance with the wire transfer instructions provided by them or their attorneys.

3. Receiver Order. Pursuant to CPLR 6401, the Receiver Order shall remain in effect and the powers granted the Receiver thereunder shall be extended, except as modified hereby, notwithstanding the discontinuance of the Spin Loan Enforcement Action pursuant to ¶9, and Fred Stevens shall accordingly remain Receiver of the Zurich Policies and of the John Hancock Policy. Notwithstanding the foregoing, the Receiver Order shall be modified as follows: (i) Paragraph 20(i) is modified to provide for hourly compensation to the Receiver and his staff at the firm's normal hourly rates; and (ii) Paragraph 20(iii) and 20(iv) are modified to remove the need for the Receiver to file formal fee applications with the Court and to have the Court approve the Receiver's fees prior to payment (note that the requirement that the Receiver timely circulate fees to the parties and the parties' right to object to such fees remains in full effect). Further, Paragraph 21 of the Receiver Order and the Court's order, dated February 6, 2025, requiring the Receiver to post a bond, are amended to eliminate the requirement of the Receiver to continue to carry any bond.

4. Transfer of Zurich Policies. Within two (2) business days following the Effective Date, the Parties shall execute and deliver to Zurich the documents, previously reviewed and approved by Zurich, necessary to designate Teton as the irrevocable beneficiary of 100% of the proceeds of the Zurich Policies and to transfer ownership of said policies to Teton, free and clear of any collateral assignments or other competing claims concerning the Zurich Policies of which Zurich is aware. More specifically, CapFactor shall execute, and deliver to Zurich, Releases of Collateral Assignment, in the form attached as Exhibits 1-2, as to the collateral assignments in favor of CapFactor referenced in the Zurich Letter including on the above-referenced policies on the lives of Ronald Gresham and Jack & Leonora Perry; and LSII shall execute and deliver to Zurich Requests for Service, in the form attached as Exhibit 3-7, designating Teton as the irrevocable beneficiary of 100% of the proceeds of each of the Zurich Policies and transferring ownership of said policies to Teton. The attached exhibits shall be accepted by Zurich to effectuate the above-described transfer of ownership, release of collateral assignments and change of beneficiary status. Teton shall not submit any Requests for Service to Zurich, to modify ownership or beneficiary status of the Zurich Policies, without CapFactor's prior written consent.

5. Zurich Policy Death Benefits. Of the death benefits paid to Teton on account of the Zurich Policies, with interest, Teton shall be entitled to retain sixty-five percent (65%) of the Net Death Benefits, and shall pay to CapFactor the thirty-five percent (35%) balance of the Net Death Benefits. The "Net Death Benefit" of a particular Zurich Policy means the amount of death benefits paid to Teton on account of said policy, with interest, less post-Effective Date premiums funded in respect of said policy by Teton, pursuant to ¶7.

6. John Hancock Claims. Following the Effective Date, the Receiver shall continue to have the right and power to prosecute claims and causes of actions against John Hancock, pursuant to the Receiver Order, to remedy any violation of same. The Receiver shall have full power and authority to employ counsel, on such terms as may be agreed to by the Receiver and Teton, to prosecute said claims and causes of action, without the need for Court approval of its employment or compensation under CPLR 6401 or 22 NYCRR Part 36. Proceeds of said claims and causes of action shall be paid, first, to Teton in an amount equal to John Hancock Litigation Attorneys' Fees (defined below) funded by it pursuant to ¶7, and second, seventy percent (70%) of the remaining proceeds shall be paid to Teton and thirty percent (30%) of the remaining proceeds shall be paid to CapFactor. The Receiver shall have full power and authority to compromise, settle, dismiss or discontinue any such claims or causes of action, in his sole and absolute discretion, in consultation with Teton and CapFactor.

7. Teton Responsibility for Funding Zurich Premiums and John Hancock Litigation Attorneys' Fees. Zurich shall transmit to each of the Receiver, Teton and CapFactor all invoices for premium payments due in respect of the Zurich Policies, as well as all other notices concerning any of the Zurich Policies, as consideration for the allocation of death benefits and claims provided in ¶¶5-6 of this Agreement. Teton shall be responsible for funding all premium payments that come due after the Effective Date, by paying said amounts to the Receiver at least two (2) business days prior to the due date for paying same set forth in the invoice(s). In the event Teton fails to fund any premium payment due for any Zurich Policy and CapFactor elects to fund such premium payment, CapFactor shall give Teton and the Receiver fourteen (14) days' notice of CapFactor's intention to make such payment, and if (a) such fourteen (14) days elapses without Teton having made such payment and (b) CapFactor makes such payment in its stead, the allocation of death benefits payable solely in respect of the policy on which CapFactor makes premium payment shall be CapFactor 65% and Teton 35%. Teton shall also be responsible for funding all reasonable, documented attorneys' fees incurred to counsel employed pursuant to ¶6 ("John Hancock Litigation Attorneys' Fees"), by paying said amounts, to the extent not disputed within five (5) business days following receipt of invoices for same, to the Receiver at least two (2) business days prior to the due date for paying same set forth in the invoice(s),

8. Representations and Warranties. The Leer Parties represent and warrant, and Zurich hereby confirms, that as of the date of execution hereof, no claim for death benefits has been made on any of the Zurich Policies. Further, the Leer Parties represent and warrant that no other party, related or unrelated to the Leer Parties has any claim, interest or rights to any of the Zurich Policies or any proceeds payable thereunder.

9. Discontinuance of Spin Loan Enforcement Action. Within two (2) business days following the Effective Date, the Parties shall take whatever actions are necessary to discontinue the Spin Loan Enforcement Action as against all Parties excluding LS1019 and Mr. Leer, with

prejudice and without costs to any Party, pursuant to CPLR 3217. Within two (2) business days following full and final resolution, whether by litigation or settlement, of the Receiver's claims and causes of action against John Hancock ("John Hancock Resolution Date"), (a) the Parties shall take whatever actions are necessary to discontinue the Spin Loan Enforcement Action as against LS1019 and Mr. Leer, with prejudice and without costs to any party, with the John Hancock Resolution Date being indicated in any stipulation of discontinuance filed with the Court; and (b) the Receiver shall file a satisfaction-piece indicating full satisfaction of his judgment against Mr. Leer. Pursuant to CPLR 2201, the Spin Loan Enforcement Action shall be stayed as against Mr. Leer and LS1019 pending the John Hancock Resolution Date.

10. <u>Discontinuance of RICO Action</u>. Within two (2) business days following the Effective Date of this Agreement, the Leer Parties shall dismiss the RICO Action as against Spin, BMF, Isaacov, Lubin and Yoel Getter aka Joel Geta pursuant to Fed. R. Civ. P. 41(a), with prejudice. To avoid doubt, the Leer Parties shall have no obligation to dismiss the RICO Action as against Hi Bar Capital, LLC or Yisroel Herbst.

11. <u>Mutual Releases</u>. Effective upon the Effective Date,

(a) Teton and Spin, on behalf of themselves, and any of their predecessors, successors, assigns, affiliates, parent companies, subsidiaries, and their past and present managers, directors, officers, employees, agents and/or representatives, hereby release and forever discharge each of the Leer Parties, CapFactor and Zurich, and each of their predecessors, successors, assigns, affiliates, parent companies, subsidiaries, and their past and present members, managers, directors, officers, employees, agents and/or representatives, from any and all claims, actions, losses, damages, charges, complaints, liens, obligations, promises, agreements or causes of action of any nature, and for all liabilities and obligations of every kind or character, whether contractual or tort-based, known or unknown, fixed or contingent, arising out of or otherwise relating to the Spin Loan or that are or could have been asserted in the Spin Loan Enforcement Action; provided, however, that notwithstanding the foregoing, the foregoing release shall not become effective as to LS1019 or Mr. Leer until the John Hancock Resolution Date whereupon the foregoing release shall become effective as to them;

(b) CapFactor, on behalf of itself, and any of its predecessors, successors, assigns, affiliates, parent companies, subsidiaries, and its past and present managers, directors, officers, employees, agents and/or representatives, hereby release and forever discharge each of the Leer Parties, Teton, Spin and Zurich, and each of their predecessors, successors, assigns, affiliates, parent companies, subsidiaries, and their past and present members, managers, directors, officers, employees, agents and/or representatives, from any and all claims, actions, losses, damages, charges, complaints, liens, obligations, promises, agreements or causes of action of any nature, and for all liabilities and obligations of every kind or character, whether contractual or tort-based, known or unknown, fixed or contingent, arising out of or otherwise relating to the Spin Loan or that are or could have been asserted in the Spin Loan Enforcement Action;

(c) The Leer Parties, on behalf of themselves, and any of their predecessors, successors, assigns, affiliates, parent companies, subsidiaries, and their past and present managers,

directors, officers, employees, agents and/or representatives, hereby release and forever discharge each of CapFactor, Teton, Spin, CapFactor and Zurich, and each of their predecessors, successors, assigns, affiliates (including in the case of Teton, BMF), parent companies, subsidiaries, and their past and present members, managers (including in the case of Teton, Lubin, Isaacov and his brothers, Joseph, Simon and Benjamin), directors, officers, employees, agents and/or representatives, and Yoel Getter aka Joel Geta, from any and all claims, actions, losses, damages, charges, complaints, liens, obligations, promises, agreements or causes of action of any nature, and for all liabilities and obligations of every kind or character, whether contractual or tort-based (including RICO claims), known or unknown, fixed or contingent, arising out of or otherwise relating to the Purchase Agreements or the Spin Loan or that are or could have been asserted in the Spin Loan Enforcement Action or the RICO Action. To avoid doubt, nothing herein shall be construed or shall constitute a release of the Leer Parties' RICO claims against Hi Bar Capital, LLC or Yisroel Herbst.

Notwithstanding the foregoing, this release shall not be construed as and shall not constitute a release of any Party's rights to enforce the terms of this Agreement; and for the avoidance of doubt, this release shall not release Zurich from its payment obligations under the Zurich Policies.

12. Covenant Not to Sue. To the fullest extent permitted by law, the Parties agree that subsequent to the above releases becoming effective, no Party will pursue any other Party, nor cause or knowingly permit the prosecution, in any state or federal court, or before any local, state, or federal administrative agency, or in arbitration, or in any other tribunal, of any charge, claim, or action of any kind, nature, and character whatsoever, known or unknown, which it may now have, has ever had, or may in the future have against any party released hereby, which is based in whole or in part on any matter released by this Agreement.

13. No Admission of Liability. The Parties acknowledge that the above Settlement Payments were agreed upon as a compromise and final settlement of disputed claims and that payment of same is not, and may not be construed as, an admission of liability by any Party and is not to be construed as an admission of any wrongful, tortious, or unlawful activity. Each Party specifically disclaims and denies (a) any liability to any other Party and (b) engaging in any wrongful, tortious or unlawful activity.

14. Representations and Warranties. The Parties represent and warrant that (a) no other person or entity has, or has had any interest in the claims, demands, obligations, or causes of action referred to in this Agreement except as otherwise set forth herein; (b) the Parties have the sole right and exclusive authority to execute this Agreement; and (c) the Parties have not sold, assigned, transferred, conveyed, or otherwise disposed of any of the claims, demands, obligations, communications leading up to and through the execution of this Agreement is or may be deemed to be or may be used as an admission of, or any evidence of, any wrongdoing or liability and/or acknowledgment of rights of any kind of a Party under any applicable law.

15. Mutual Cooperation. Each Party agrees to promptly and expeditiously carry out and expedite its responsibilities under the terms of this Agreement and to execute any and all documents which may be necessary from time to time in the future to implement the terms of this Agreement. To avoid doubt, CapFactor and the Leer Parties shall execute such forms as Teton

may reasonably request, to obtain any other medical records or experiential data concerning each such named insured under the Zurich Policies.

16. Governing Law; Jurisdiction. This Agreement and any dispute arising out of or related to this Agreement shall be governed and interpreted in accordance with the laws of the State of New York without regard to conflict of laws principles that would require the application of the law of another jurisdiction. Exclusive jurisdiction is vested in the state and federal courts located within the State of New York, in the County of New York, and the Parties hereto expressly consent and submit to the personal jurisdiction of such courts in connection with this Agreement and any dispute arising out of or related to the Agreement.

17. Costs. Each Party shall bear its own costs and legal fees in connection with the negotiation and preparation of, and performance under, this Agreement and any activities related to the implementation of this Agreement.

18. Assignment. No Party shall assign this Agreement or any part thereof or any interest herein (whether by operation of law or otherwise) without prior written consent of all other Parties. No assignment will be valid unless the permitted assignee(s) assumes all obligations of its assignor under this Agreement. No assignment will relieve any assigning Party of responsibility for the performance of its obligations hereunder.

19. Amendments. No amendment, modification, or supplementation of any provision of this Agreement shall be valid or effective unless made in writing and approved in writing by all the Parties or an authorized agent thereof.

20. Severability. Should any paragraph, clause, or provision of this Agreement be construed to be against public policy or determined by a court of competent jurisdiction to be void, invalid, or unenforceable, such construction and decision shall affect only those paragraphs, clauses, or provisions so construed or interpreted, and shall in no event effect the remaining paragraphs, clauses, or provisions of this Agreement which shall remain in force.

21. Entire Agreement. This Agreement contains the entire agreement and understanding between the Parties concerning the subject matter of this Agreement. This Agreement supersedes and replaces prior negotiations concerning the subject matter of this Agreement. Each Party acknowledges that no other Party or any of their legal counsel has made any promise, representation, or warranty, express or implied, not contained in this Agreement, and further acknowledges that no Party has executed this Agreement in reliance upon any promise, representation, or warranty not set forth herein.

22. Interpretation. Should any provision of this Agreement be declared or be determined by any court to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby, and said illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement. The headings within this Agreement are purely for convenience and are not to be used as an aid in interpretation. Moreover, this Agreement shall not be construed against either Party as the author or drafter of the Agreement.

23. Execution in Counterparts. This Agreement may be entered into in any number of counterparts and by each of the Parties on separate counterparts. Each counterpart, upon signing

and execution, shall constitute an original, but all counterparts shall together constitute one and the same instrument. Counterparts may, upon signing and execution, be delivered via email (in PDF format) or other transmission method, and any counterpart so delivered shall be deemed to have been validly delivered and be valid and effective for all purposes. The Parties agree that e-signatures shall have the same validity as wet signatures in terms of the signature of this Agreement.

24. Notice. All notices or other communications hereunder shall be deemed to have been duly given and made if in writing and if served by personal delivery upon a Party, if delivered by a reputable overnight express courier service (charges prepaid), or if sent by email to the person at the address set forth below, or such other address as may be designated in writing hereafter, in the same manner, by such person as follows:

| | |
|---|---|
| If to Teton, or Spin: | Teton Life LLC as Assignee of the Rights of Spin Capital, LLC<br>c/o Redstone Advance<br>1688 Meridian Avenue<br>Suite 440<br>Miami Beach, FL 33139<br>Attn: Gabe Isaacov<br>gabe@redstoneadvance.com<br>and<br>Teton Life LLC as Assignee of the Rights of Spin Capital, LLC<br>1460 Arboretum Parkway<br>Lakewood, NJ 08701<br>Attn: Josh Lubin<br>josh@spincapital.com<br><br>With a copy to:<br><br>Amini LLC<br>131 West 35th Street<br>12th Floor<br>New York, NY 10001<br>Attn: Jeffrey Chubak<br>jchubak@aminillc.com |

| | |
|---|---|
| If to any of the Leer Parties: | Stefan Leer<br>[Address]<br>[Email]<br><br>With a copy to:<br><br>Heskin & Proper PLLC<br>641 Lexington Avenue<br>14th Floor<br>New York, NY 10022<br>Attn: Shane R. Heskin<br>shane@heskinproper.com |
| If to CapFactor: | CapFactor LLC<br>c/o Horizon Trust Company<br>6301 Indian School Road NE<br>Suite 810<br>Albuquerque, NM 87110<br>Attn: Steve little, Manager<br>slittle@horizontrust.com<br><br>With a copy to:<br><br>Pryor Cashman LLP<br>Seven Times Square<br>40th Floor<br>New York, NY 10036<br>Attn: John J. Giardino<br>jgiardino@pryorcashman.com |
| If to the Receiver: | Fred Stevens<br>Klestadt Winters Jureller Southard & Stevens LLP<br>200 West 41st Street<br>17th Floor<br>New York, NY 10036<br>fstevens@klestadt.com |

| | |
|---|---|
| If to the Zurich: | Zurich American Life Insurance Company<br>[Name]<br>[Address]<br>[Email]<br><br>With a copy to:<br><br>Carlton Fields<br>2 Miami Central 700 NW 1st Avenue<br>Suite 1200<br>Miami, FL 33136<br>Attn: Irma T. Solares<br>isolares@carltonfields.com<br>and<br>Carlton Fields<br>405 Lexington Avenue<br>36th Floor<br>New York, NY 10174<br>Attn: Sibel N. Cagatay<br>scagatay@carltonfields.com |

25. Authority to Execute Agreement. By signing below, each Party warrants and represents that the person signing this Agreement on its behalf has authority to bind that Party and that the Party's execution of this Agreement is not in violation of any bylaw, covenants and/or other restrictions placed upon them by their respective entities.

*[Remainder of this Page Intentionally Left Blank]*

IN WITNESS WHEREOF, each of the Parties hereto has caused this Agreement to be executed as of the date(s) set forth below.

| | |
|---|---|
| Teton Life LLC<br><br>By:____________________________<br>Gabe Isaacov<br>Manager<br><br>Date: December ____, 2025<br><br>Spin Capital LLC<br><br>By:____________________________<br>Avrumi Lubin aka Joshua Lubin<br>Manager<br><br>Date: December ____, 2025<br><br>CapFactor LLC<br><br>By:____________________________<br>[Name]<br>[Title]<br><br>Date: December ____, 2025<br><br>Fred Stevens as Receiver<br><br>______________________________<br>Signature<br><br>Date: December ____, 2025<br><br>Zurich American Life Insurance Company<br><br>______________________________<br>Signature<br><br>Date: December ____, 2025 | Golden Foothill Insurance Services, LLC<br>Life Factor II LLC<br>Life Shares II LLC<br>El Dorado Hills Insurance Solutions, Inc.<br>Lone Wolf Insurance Services, Inc.<br>ELDO Investments, LLC<br>The Genesis LS Fund, LLC<br>KTL Holdings, Inc.,<br>DRVN Holdings LLC<br>Life Shares 1019 LLC<br><br>By:____________________________<br>Stefan Leer<br>Authorized Signatory<br><br>Date: December ____, 2025<br><br>Stefan Leer<br><br>______________________________<br>Signature<br><br>Date: December ____, 2025<br><br>Tatanisha Leer<br><br>______________________________<br>Signature<br><br>Date: December ____, 2025 |

So ordered this ____ day of December, 2025.

_______________________________
Hon. Nancy Bannon, J.S.C.

**SCHEDULE 1(a)**

| Documents |
|---|
| Policy contract, Policy Schedule or Lost Policy Certificate |
| Life or Viatical Settlement Contract, including all Exhibits |
| Insured W9 Form |
| Insured's Identification, in the form of a Driver License or Passport |
| Proof of Insured's Social Security Number |
| Insured's Contact Information, including Acknowledgement from Designated Contacts |
| Authorization for Disclosure of Health Information |
| At least 1 Life Expectancy Report |
| Insured's Medical Records |
| Life or Viatical Settlement Application |
| Seller Disclosure Notice |
| Authorization to Release Policy Information |
| Escrow Agreement between Seller, Settlement Company & Escrow Agent |
| Spousal Consent, if Insured is a natural person in a community property state |
| Verification of Insured's Competency, or if not competent, a copy of the Power of Attorney under which the Insured's attorney-in-fact acted |
| Insured's Power of Attorney |
| Insured's Cooperation Agreement |
| Authorization to Provide Death Certificate |
| Release of Beneficiary Rights |
| All documents relating to previous ownership/beneficiary transactions, including Purchase & Sale Agreement, Carrier Change Forms & Confirmation |

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK: PART 61**

| | |
|---|---|
| TETON LIFE LLC, as assignee of the rights of Spin Capital, LLC,<br><br>*Plaintiff,*<br><br>-against-<br><br>GOLDEN FOOTHILL INSURANCE SERVICES, LLC, et al.,<br><br>*Defendants.* | Index No. 650582/2022<br><br>Hon. Nancy M. Bannon |
| GOLDEN FOOTHILL INSURANCE SERVICES, LLC, et al.,<br><br>*Third-Party Plaintiffs,*<br><br>-against-<br><br>SPIN CAPITAL, LLC, et al.,<br><br>*Third-Party Defendants.* | **AFFIRMATION OF**<br>**AVRUMI (JOSH) LUBIN**<br><br>**Mot. Seq. No. 50** |

**AVRUMI (JOSH) LUBIN** affirms as follows:

1. I am a member of plaintiff Teton Life LLC. I submit this affirmation in support of plaintiff's motion for leave to submit papers in opposition to the cross motions (Mot. Seq. No. 45) of intervenor-defendants Stephen Marik Brockman, Aaron Davison, Neilesh Desai, Jennifer Pursley, Michael Schwartz, Sheila Schwartz, the Charissa & Toney Trust, the Charissa Toney Living Trust, Matthew Troy, and American River AG, Inc. (collectively, "**Intervenor Defendants**") and defendant Cap Factor, LLC, to enforce the purported settlement agreement claimed to have been entered into in court on November 25, 2025 (Dkt. No. 1370) (the "**Term Sheet**"). Unless otherwise specified, the matters below are based on my personal knowledge.

2. On November 25, 2025, with the assistance of this Court's law clerk, the parties participated in a settlement conference. I personally attended this settlement conference on behalf of plaintiff.

3. During this settlement conference, the parties reached an agreement in principle to settle this action, and the Term Sheet was drafted.

4. Specifically, the Term Sheet stated that the parties had reached an "agreement in principle," and set forth terms that would "govern the final agreement," which was to be "drafted by plaintiff's counsel." Dkt. No. 1370.

5. The Term Sheet further described how, among other things, plaintiff and Cap Factor would allocate funds currently in the receivership estate, as well as how future death-benefit payments and proceeds of a contemplated suit against "Hancock" would be allocated. *Id.* ¶¶ 1, 4, 6.

6. Critically, the Term Sheet also stated that there would be "[f]ull mutual releases as between parties to the litigation, including release of RICO claims asserted against BMF Advance, Spin Capitol [sic], and affiliates, including Gavriel Yitzchakov and Avrumi (Josh) Lubin." *Id.* ¶ 7.

7. I executed the Term Sheet for plaintiff, and Cap Factor's counsel executed the Term Sheet for Cap Factor. *Id.* No other party executed the Term Sheet. *See id.*

8. It was never my intent, on behalf of plaintiff, that the Term Sheet would be binding or enforceable on its own.

9. It was my understanding that none of the other parties that participated in the settlement conference had intended the Term Sheet to be binding or enforceable on its own. Instead, it was always contemplated that the Term Sheet was merely an "agreement in principle,"

and that an additional "final agreement" would be prepared and executed before anyone was bound by anything. *See* Dkt. No. 1370.

10. This understanding was confirmed by this Court's settlement conference order, dated November 25, 2025, in which this Court stated that, at the settlement conference, the parties "reached and signed an *agreement in principle*," but requested a short adjournment to "*finalize the terms* of the settlement." Dkt. No. 929 (emphasis added).

11. As this Court knows, negotiations concerning preparation and execution of a final settlement agreement broke down. And on January 14, 2026, defendant Stefan Leer filed for Chapter 7 bankruptcy in the Middle District of Tennessee, with this Court staying this action the following day. Dkt. Nos. 970, 997.

12. On January 21, 2026, Fred Stevens, Esq., of Klestadt Winters Jureller Southard & Stevens, LLP, in his capacity as receiver (the "**Receiver**"), moved, by order to show cause, for, among other things, (i) authority to continue to function as Receiver and to retain bankruptcy counsel to represent him in Leer's bankruptcy case, and (ii) an order severing Leer as a defendant to this case so that it can proceed against all nondebtor parties (Dkt. Nos. 1016–19, 1246–49, 1341, 1363–1365) (the "**Receiver's Motion**").

13. On May 1, 2026, Intervenor Defendants and Cap Factor moved to, among other things, enforce the Term Sheet. Dkt. No. 1368–1384, 1403 (the "**Cross Motions**").

14. But because defendants never signed the Term Sheet; because the Term Sheet contemplates a final settlement agreement, which was never consummated; and because Leer, who is a critical party to any settlement, has filed for bankruptcy and thus cannot be compelled to comply with the Term Sheet in any event, on behalf of plaintiff, I no longer believe that the "settlement in principle" reached in the Term Sheet is acceptable.

15. Thus, on May 3, 2026, I wrote to plaintiff's counsel at Amini LLC directing them to oppose the Cross Motions on behalf of plaintiff.

16. In support of my authority to direct Amini, I stated that the "governing Teton documents provide that I control decisions" related to this suit, and that I had previously provided those documents.

17. Specifically, under plaintiff's amended and restated operating agreement (the "**Operating Agreement**"), plaintiff could act only upon the affirmative vote of a majority of its membership interests, or in some cases, upon the unanimous consent of its members. Dkt. No. 1397 § 2.08(a), (b). Because plaintiff's two members—Gavriel Yitzchakov and myself—each hold 50% of plaintiff's membership interests, any action by plaintiff requires our unanimous consent. *See id.* Schedule I.

18. But section 2.08(d) of the Operating Agreement provides a carveout for "all decisions related to" this suit.

19. Specifically, under section 2.08(d), "all decisions related to" this suit are considered made in the ordinary course of business and "shall not require the approval of Member B"— defined as Mr. Yitzchakov—subject only to a requirement that both members "confer in good faith with regard to any settlement opportunity" in this suit. *See id.* at 1.

20. Thus, subject only to this good-faith conference requirement, I had, and have, sole authority to direct "all decisions" related to this suit, including whether to oppose the Cross Motions.

21. In my May 3 email, and relying on my sole authority under the Operating Agreement, I told Amini that I have "not authorized anyone to consent to settlement enforcement over my objection." And I further instructed Amini to inform this Court of plaintiff's position

that it opposed enforcement of the Term Sheet—stating, "[t]his is a formal demand for Teton Life LLC's counsel of record to state Teton's position."

22. I then closed by telling plaintiff's attorneys at Amini that if they disagreed with my authority over settlement and litigation decisions for this suit, "please identify the specific governing document and provision you rely on."

23. Several hours later, I emailed Amini again, this time attaching the Operating Agreement and drawing counsel's attention to section 2.08(d).

24. I then further reiterated that I did "not consent to enforcement of the alleged November 25, 2025 settlement," and that "[n]o one is authorized to consent to settlement enforcement over my objection."

25. I also reiterated my instruction to Amini that it "promptly state Teton's position."

26. A copy of this email exchange, dated May 3, 2026, is attached as **Exhibit A**.

27. But none of plaintiff's attorneys at Amini responded to my May 3 emails.

28. Instead, on May 5, 2026, Amini moved, by order to show cause, to be relieved as counsel, stating that plaintiff had failed to pay $29,006 in amounts allegedly due to Amini, and further stating that plaintiff's two members—Mr. Yitzchakov and myself—also "dispute each other's settlement authority," making Amini's continued representation "untenable." Dkt. No. 1394 ¶¶ 4–5.

29. Critically, however, Amini did not seek a stay (or even adjournment) of the briefing on the Cross Motions during the pendency of its motion to be relieved. *See* Dkt. No. 1393. And so Amini remained plaintiff's counsel through and including the briefing and oral argument on the Cross Motions.

30. Despite my instruction to do so, Amini did not file, on behalf of plaintiff, any papers in opposition to the Cross Motions.

31. I affirm this 3rd day of June, 2026, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

**AVRUMI (JOSH) LUBIN**

**<u>WORD-COUNT CERTIFICATION</u>**

**In accordance with 22 N.Y.C.R.R. § 202.8-b**

I certify that this document was prepared on a computer using Microsoft Word 2016 in 12-point, Times New Roman font; that the word count of this document, as calculated in accordance with 22 N.Y.C.R.R. § 202.8-b by the computer-processing system used to prepared this document, is 1,317; and that this document thus complies with the word-count limit in 22 N.Y.C.R.R. § 202.8-b.

/s/ Joshua Wurtzel
Joshua Wurtzel

## ARTIFICIAL-INTELLIGENCE CERTIFICATION

**In accordance with Rule 8 of the Part 61 Rules**

I certify that no generative artificial intelligence program was used in the drafting of this document.

/s/ Joshua Wurtzel
Joshua Wurtzel

PRYOR CASHMAN LLP
New York | Los Angeles | Miami
7 Times Square, New York, NY 10036-6569 Tel: 212-421-4100 Fax: 212-326-0806
pryorcashman.com

**John Giardino**

Direct Tel: 212-326-0829
Direct Fax: 212-326-0806
jgiardino@pryorcashman.com

July 10, 2026

**VIA ELECTRONIC MAIL AND NYSCEF**

Patrick Morley, Esq.
Principal Law Clerk to the Hon. Nancy M. Bannon, J.S.C.
New York County Supreme Court
Commercial Division, Part 61
60 Centre Street, Courtroom 232
New York, NY 10007
Email: pmorley@nycourts.gov; SFC-Part61-Clerk@nycourts.gov

**Re: *Teton Life, as Assignee of the Rights of Spin Capital, LLC v. Golden Foothill Insurance Services, LLC et al.*, Index No. 650582/2022**

Dear Mr. Morley:

Following up our conference on July 9th, enclosed please find:

1) the Settlement Term Sheet executed in Part 61 on November 25, 2025,
2) the definitive Settlement Agreement drafted in accordance with the Settlement Term Sheet by attorney Jeffrey Chubak of Amini, counsel for Teton Life, and
3) the Order submitted to Judge Bannon by the defrauded investors granting the cross-motions to enforce the terms of that settlement.[1]

Examination of these documents reveals their consistency as to both (i) the intentions of the parties to settle all claims in this action, and (ii) the specific terms on which settlement was reached. The proposed Order is absolutely consistent with the parties' intentions, resolves all pending causes of action, and releases any and all claims against the parties other than as to the defendant Stephan Leer (see below).

To respond to the representations made by Mr. Heskin during our conference about an "improper release of Yoel Getter," Paragraph 15 of the Order clearly provides only the discontinuation of the federal case against the defendants including Mr. Getter as a party to that

[1] The transcript of oral argument before Judge Bannon on May 19, 2026 can be found at NYCSEF Doc. No. 1440.

PRYOR CASHMAN LLP



action. There is no provision in the order for a general release of Mr. Getter or anyone other than the parties to this lawsuit.

To answer to the question you raised about the significance of the individual bankruptcy filings of Stephan Leer and Avrumi Lubin:

1) As stated by counsel for Teton Life itself, Mr. Lubin "is not a party to this action." "Mr. Lubin's personal bankruptcy has no bearing on this case." (See communication of attorney Joshua Wurtzel, counsel for Teton Life dated June 26, 2026 at NYSCEF Doc. No. 1435.)

2) Mr. Leer asserted no claims whatsoever in this action. Furthermore, as Mr. Levine reported to the court, Mr. Leer, under oath, has asserted no claims against any party in this action in his Chapter 7 proceedings. It is inconceivable that the severance of this action as to Mr. Leer, the dismissal of all claims herein with prejudice, and the ordered release of all parties could render the settlement among the parties ineffective or deficient.

The cross-movants, all investors in the defendant Leer ventures, will receive far less from this settlement than they invested. To the contrary, Teton Life will immediately receive more than $6,000,000 on a loan with a principal balance of $2,300,000. The investors accepted the disproportionate result on November 25, 2025 because it represented an end to this long and costly litigation.

In the interest of justice, we renew our requests that the Court enforce the settlement.

Respectfully yours,

John Giardino

cc: All counsel of record via Email and NYSCEF

Joshua Wurtzel
Partner

schlamstone.com
jwurtzel@schlamstone.com

Schlam Stone & Dolan LLP
26 Broadway, New York, NY 10004
Main: 212 344-5400 Mobile: 516 528-9944
Direct: 212 612-1226 Fax: 212 612-1226

May 29, 2026

**BY NYSCEF AND EMAIL**

The Honorable Nancy M. Bannon
Supreme Court of the State of New York
60 Centre Street, Room 232
New York, New York 10007

Re: *Teton Life LLC v. Golden Foothill Ins. Servs., LLC*, Index No. 650582/2022 (Mot. Seq. Nos. 45 and 46)

Dear Justice Bannon:

This firm was recently retained to represent plaintiff Teton Life LLC in this action.

In accordance with this Court's orders, dated May 19, 2026 (Dkt. Nos. 1410–12), and instructions during the May 19, 2026 oral argument, we write to submit plaintiff's proposed orders resolving Mot. Seq. Nos. 45 and 46, including the cross motions filed by the Intervenor Defendants and defendant Cap Factor, LLC.

***Concerning the Receiver's motion***, other than some differences in the recitals, our proposed order is substantively the same as the Receiver's proposed order, which we understand the Receiver submitted to this Court on May 19, 2026. Plaintiff's counsel at Amini LLC, which has a pending motion to be relieved (Mot. Seq. No. 49), previously informed the Court that it approved that portion of the Receiver's motion concerning the matter of severance. We agree and take no issue with the Receiver's proposed order as it relates to the relief sought by the Receiver.

***Concerning the cross motions to enforce the term sheet***, these cross motions should be denied for two reasons.

***First***, given that Mr. Leer is currently a bankruptcy debtor, and given that this Court is considering severing Mr. Leer from this action so this action may continue against all non-debtor parties, the settlement in principle reflected in the term sheet can no longer be fully effectuated. Specifically, paragraph 7 of the term sheet contemplated "[f]ull mutual releases as between the parties to the litigation." But if Mr. Leer is severed from this action, and thus not bound by any orders enforcing the term sheet, then plaintiff will not receive the full benefit of the bargain contemplated by the term sheet.

***Second***, the term sheet states that it represented only an "agreement in principle," and contemplated the execution of a "final agreement"—which, as this Court is well aware, never

occurred. Putting aside why no "final agreement" was ever executed, in the absence of a statement in the term sheet that it was intended to be binding on its own—and especially given its statement that it was only an "agreement in principle"—the term sheet is not independently enforceable.

While it may still be possible for this action to be resolved consentually with the parties expected to remain in this action, given Mr. Leer's bankruptcy filing and the events that have taken place since the term sheet was negotiated, the terms set forth in the term sheet are no longer acceptable.

As a result, we request that the cross motions to enforce the term sheet be denied and that this Court instead rule on plaintiff's pending motion for summary judgment.

Respectfully submitted,

/s/ Joshua Wurtzel
Joshua Wurtzel

cc: All counsel of record (by NYSCEF and email)

PRYOR CASHMAN LLP
New York | Los Angeles | Miami
7 Times Square, New York, NY 10036-6569 Tel: 212-421-4100 Fax: 212-326-0806 pryorcashman.com

**John Giardino**

Direct Tel: 212-326-0829
Direct Fax: 212-326-0806
jgiardino@pryorcashman.com

June 16, 2026

**VIA ELECTRONIC MAIL AND NYSCEF**

Hon. Nancy M. Bannon, J.S.C.
New York County Supreme Court
Commercial Division, Part 61
60 Centre Street, Courtroom 232
New York, NY 10007
Email: SFC-Part61-Clerk@nycourts.gov

**Re: *Teton Life, as Assignee of the Rights of Spin Capital, LLC v. Golden Foothill Insurance Services, LLC et al.,* Index No. 650582/2022**

Dear Justice Bannon:

We represent the Defendant CapFactor LLC. On May 1, 2026, CapFactor and the Intervenor-Defendants, represented by attorney Peter M. Levine, submitted a proposed order settling the cross-motions brought to enforce the settlement in this action. Notably, the Leer Defendants did not object to any provision within our proposed order.

We are in receipt of a proposed order submitted by the Plaintiff Teton Life LLC through a new law firm, Schlam Stone & Dolan LLP. That order provides for denial of the cross-motions. In response thereto, we raise the following:

1) Teton Life, by its principal Avrumi (Josh) Lubin, is a signatory to the settlement term sheet;

2) Teton Life submitted no opposition whatsoever to the cross-motions;

3) The record on the cross-motions was fully submitted to the Court upon oral argument on May 29, 2026;

4) Teton Life was represented by counsel, Jeffrey Chubak of Amini LLC, at the oral argument and Mr. Chubak did not oppose enforcement of the settlement, presumably given his client's execution of the settlement term sheet;