Avrumi Josh Lubin dominate and control Spin Capital such that Spin Capital's separate identity was not sufficiently maintained?") and Question 2 ("... such that Spin Capital lacked an existence independent from Lubin?"), and "no" to Question 3 ("Was the corporate form of Spin Capital formed or used for a fraudulent or improper purpose?"); it answered "yes" to Question 4 (harm) and "no" to Question 5 (active participation in a tort). It gave the same answers to the same questions about Hi Bar. Under the form's own instructions, the "no" to Question 3 meant the veil was not pierced. (Lubin Cert. Ex. C-8.)

68. In or about August 2025, before that trial, FVP and Franklin settled with Hi Bar and its principals. The settlement agreement provides that FVP and Franklin "shall prosecute all operative claims in the State Court Litigation against Hi Bar, as a necessary party of interest, in order to afford complete relief so as to pierce the corporate veil of Hi Bar to seek judgments against Lubin, Spin and Getter" (¶ 9(a)); that they would, if required, file a document "indicating that Hi Bar is remaining in the case as a necessary party of interest" and would "not seek to collect from Hi Bar" any judgment (¶ 9(b)); and that "Hi Bar need not appear to defend any of the remaining claims" (¶ 9(f)). (Settlement Agreement, as lodged with the Fourth District Court of Appeal on June 20, 2026 as Exhibit F in No. 4D2025-3564.) Hi Bar did not defend at trial. FVP moved to keep the settlement from the jury (Filing # 232295671, Sept. 25, 2025), and the jury was not told of it.

69. Avrohom Yeshaya (Shaya) Baum is the CEO of Wing Lake Capital, "a d/b/a for all the Franklin entities" (Feb. 2, 2026 Trial Tr. 501:22–502:4), and testified that he knows Eli Tabak (Tr. 562:17–19). On information and belief, Yisroel Herbst, Hi Bar's principal, is a cousin of Eli Tabak, an investor in the Franklin entities. In or about 2024, Mordechai Herbst, Yisroel Herbst's son, told Lubin that Mr. Tabak is his father's cousin and that Mr. Tabak had invested $10 million in Franklin in connection with Franklin obtaining a line of credit. (Lubin Cert. ¶ 8.) At about the same time, Mordechai Herbst told Lubin that he needed to protect his own interests and that Franklin had exposure, without saying what it was. Lubin had met with both Herbsts about this matter a number of times in 2022 and 2023. At a time Lubin cannot now fix precisely, Mordechai Herbst also admitted to Lubin, in substance, that he and his father had been colluding with Franklin in some way; he did not say what they had done, and Lubin has found no document that proves it. The Herbsts then stopped communicating with Lubin. (Basis: Lubin Cert. ¶ 8; Ex. C-21.)

69A. On information and belief, Franklin, through Mr. Baum, knew of the Third Spin Contract before it funded the Excell loan, and coordinated with Mr. Zankl and Mr. Allayev to obtain Spin's signature on an assignment reciting a balance Franklin knew was not the whole balance. The basis for this belief is the record set out above: Franklin's own October 21, 2021 draft closing statement and October 22, 2021 draft assignment carrying a Spin figure of $587,289

that Mr. Baum cannot explain and never asked about (¶¶ 57A, 57E); the $1,550,000 reserve in the same draft (¶ 57A); Mr. Zankl's testimony that Franklin's broker, Mr. Allayev, instructed him not to send Franklin the Third Spin Contract (¶ 57F); Mr. Zankl's testimony that he received and signed the Hi Bar agreement while on a golf course with Wing Lake personnel (¶ 57F); Spin's October 18, 2021 payoff letter, which was in Excell's hands (¶ 57A); and Mr. Baum's reliance on nothing but "circumstantial evidence" for his own accusation against Spin and Hi Bar (¶ 57E). (Basis: Part H.)

69B. On information and belief, Franklin and Hi Bar coordinated their positions against Lubin and Spin. The basis for this belief is: the family relationship between Hi Bar's principal and a Franklin investor (¶ 69), which Mr. Baum did not disclose when Franklin sued Hi Bar in New York, Michigan and Florida and alleged that Hi Bar was Spin's and Lubin's alter ego (¶¶ 61, 64–66); Mr. Baum's testimony that he knows Mr. Tabak (Feb. 2, 2026 Trial Tr. 562:17–19); the July 2025 settlement under which Hi Bar stayed in the Broward case "to pierce the corporate veil of Hi Bar to seek judgments against Lubin, Spin" and "need not appear to defend" (¶ 68); Hi Bar's failure to appear through its own counsel to defend at trial (¶¶ 67–68); and Mordechai Herbst's telephone call to Lubin, in or about 2022, reporting that Mr. Baum had just called him about the Hi Bar obligation, which Mr. Baum testified he did not recall (Lubin Cert. ¶ 8; Feb. 2, 2026 Trial Tr. 562:13–15); Mordechai Herbst's statement to Lubin, in or about 2024, that he needed to protect his own interests and that Franklin had exposure, after which both Herbsts stopped communicating with him (¶ 69); and Mordechai Herbst's admission to Lubin, in substance, that he and his father had been colluding with Franklin in some way (¶ 69; Lubin Cert. ¶ 8). Lubin did not know of the Herbst–Tabak relationship when the Michigan and New York rulings were made or when Franklin's Broward alter-ego claims were filed; he learned of it from Mordechai Herbst as described in ¶ 69. (Basis: Lubin Cert. ¶ 8; Part H.)

69C. On information and belief, Franklin's alter-ego allegations against Spin, Hi Bar and Lubin — denied as futile in Michigan (¶ 66), dismissed in New York (¶ 57D), rejected by the Broward jury on improper purpose (¶ 67), and now presented to this Court by the Trustee as an established finding (Part I) — were asserted by a party that knew of the family relationship between its own investor and Hi Bar's principal and did not disclose it. Lubin pleads this as a matter to be tested in discovery (Mr. Baum, Mr. Tabak, the Herbsts, Franklin's underwriting file, the Franklin–Hi Bar settlement communications, and Franklin's communications with Mr. Allayev), not as an established fact. (Basis: Part H.)

70. FVP and Franklin have each asserted, in the Broward case and in this Court, claims against Lubin personally arising from the same Spin and Hi Bar transactions, while also asserting that Franklin owns Spin's rights under the Assignment. On information and belief, FVP and Franklin have used the Assignment and the alter-ego allegations to assert control over Spin's

claims and to deter counsel from representing Spin and Lubin, including by challenging the authority of counsel who appeared for the Subject Entities (¶ 42). (Basis: Parts F, G and H.)

***Part I — The May 15, 2026 Broward order, and how the Trustee used it***

71. On May 15, 2026, the Broward court entered an "Order Imposing Charging Orders, Requiring Turnover of Financial Information, Enjoining Transfers, Authorizing Foreclosure of Transferable Interests, and Establishing Procedures for Private or Judicial Sale" (Filing # 248282220) (the "May 15 Order"). The order recites that the court reviewed "the Motion, the Declaration of Alan I. Karten, Esq., the court file." Mr. Karten is FVP's counsel. Copies were furnished to Mr. Karten and Mr. Breslin. (Lubin Cert. Ex. C-9.)

72. Finding 4 of the May 15 Order states that Spin and Teton Funding "are single-member limited liability companies wholly owned and controlled by Avrumi Lubin." Finding 6 states: "The Subject LLCs are operated under the complete domination and control of the Judgment Debtor; the corporate form is used to shield assets from creditors; and foreclosure of the transferable interests is therefore appropriate pursuant to section 605.0503(4), Florida Statutes." Lubin has appealed the May 15 Order (Fla. 4th DCA No. 4D2026-1512). On June 23, 2026, a motion for reconsideration, vacatur and stay of the May 15 Order was filed on his behalf (Filing # 251032035). It has not been decided or set for hearing.

73. At the June 9, 2026 hearing, Lubin told the Broward court that "Mr. Karten submitted an order that's not -- it doesn't align with the record." (June 9, 2026 Tr. 15:9–11.) (Lubin Cert. Ex. C-10.)

74. At the June 16, 2026 hearing, Spin's counsel told the Broward court: "the only thing that we did win at trial, Judge, was that Spin Capital … wasn't an alter ego of Mr. Lubin. The jury found no to that question. And this order does seem to find that Spin is an alter ego" (June 16, 2026 Tr. 8:7–13). Mr. Karten said: "If it says, Your Honor, if the charging order is -- has an error in it, then it -- I agree that it needs to be corrected because charging order can't -- well, I take that back" (Tr. 10:17–20). The court said: "Well, what it says is that that Mr. Lubin does own interests in Spin Capital LLC, and that he's a -- those are single-member LLCs, so he's the sole owner. So, they're not proceeding as an alter ego" (Tr. 10:24–11:3), and: "So, Mr. Casey, instead of saying that it's an alter ego, he -- they're saying now, even if it's a separate company, he owns an interest in that company, and they -- so, they want to foreclose on Mr. Lubin's interest in that company to satisfy the judgment" (Tr. 11:15–20). (Lubin Cert. Ex. C-10.)

75. On September 22, 2026, at 5:20 PM, Lubin emailed the Trustee, copying three attorneys of the Office of the United States Trustee, with the subject "MAY15_ORDER_AND_JUNE16_RECORD." He attached the May 15 Order, the June 16,

2026 transcript and the May 13, 2026 transcript, and quoted the June 16 passages set out above. (Lubin Cert. Ex. C-11.)

76. On video calls on or about September 24 and September 28, 2026 with the Trustee, Ms. Staiano and Mr. Moloshok, Lubin explained that finding 6 did not match what the Florida judge had ruled, that the jury had not pierced the veil, and that the finding was preventing him from retaining counsel. Ms. Staiano responded that lawyers submitting orders with errors is normal and happens all the time, that Lubin should not be concerned, and that the errors just have to be fixed. Neither the Trustee nor Ms. Staiano disputed that the finding did not match the record. On more than one of those calls the Trustee's side discussed working to have the Florida orders corrected, asked Lubin whether a family member or someone else could pay for that work, and said that no money from Spin, Teton Life or Lubin's other businesses could be used for it. On the October 13, 2026 call, two days before the Complaint was filed, the planned complaint was discussed again without any mention of finding 6 or of alter ego (¶ 15A). (Lubin Cert. ¶ 15; Ex. C-30.)

77. On October 15, 2026, the Trustee filed the Verified Complaint, which alleges that FVP obtained the charging order and foreclosure "on a finding (among other things) that Spin and Teton Funding are under the complete domination and control of the Debtor and the corporate form is used to shield assets from his creditors" (ECF No. 1 ¶ 28). The Trustee's certification, made under penalty of perjury, states that the Broward court issued the charging order "based on a finding that Spin and Teton Funding are 'under the complete domination and control of the Judgment Debtor … [and] the corporate form is used to shield assets from [his] creditors.' Exhibit A, Charging Order, at p. 2, finding #6" (ECF No. 3-1 ¶ 6). The Trustee's brief argues: "The Florida Court has already found that two of the Subject Entities – Spin and Teton Funding – were under the domination of the Debtor, and essentially vehicles to hide assets from his creditors," that "the Florida Court's determination was necessary to the Florida Court's additional ruling" on foreclosure, that it has "preclusive effect notwithstanding a pending" appeal, and that "there is substantial reason to believe that the Subject Entities Spin, Teton Funding and JL are all alter egos of the Debtor" (ECF No. 3-8). (Lubin Cert. Ex. C-13.)

78. None of the Trustee's papers (ECF Nos. 1, 3-1, 3-8, 18 and 19) discloses the June 16, 2026 transcript, the Florida judge's statement that the creditors were "not proceeding as an alter ego," the jury's answer to Question 3, the pending June 23 motion, or Lubin's September 22 email. The brief says only that "The Debtor opposed that conclusion."

79. On October 18, 2026, Lubin wrote to the Trustee and the Trustee's Counsel, copying the Office of the United States Trustee: "The Trustee's application relies on finding 6 of the Broward court's May 15, 2026 order. In my view, finding 6 does not match the record." He attached the May 13, June 9 and June 16, 2026 transcripts, both verdict forms and the June 23

motion, and asked the Trustee to authorize counsel to have the Broward court hear the June 23 motion. Ms. Staiano replied: "Not sure why everything is an emergency now when you could have taken all these actions before the entry of the OSC on Thursday evening. Nonetheless, the trustee does not take instruction from you." (Lubin Cert. Ex. C-12.)

80. On October 21, 2026, the Trustee's reply brief argued that "a judge in subsequent proceedings had to consider whether to authorize foreclosure of his interest in Spin and did so upon the finding that Spin was his alter ego" (ECF No. 19 ¶ 6).

81. At the October 22, 2026 hearing, Ms. Staiano argued: "A Florida court found that two of the subject entities, Spin and Teton Funding, were under the domination of the debtor in essentially vehicles to hide assets from its creditors. ... This was a final judgment actually litigated and necessary to the Florida court's determination" (Tr. 27:8–18). Lubin told the Court: "the judge did not rule that" (Tr. 34:20) and "that May 15th order, I uploaded the transcripts. The judge did not rule that I have full domination and control over these companies" (Tr. 40:3–5). In its findings, the Court stated "that the Court in Florida has already found that Spin Capital and Teton Funding were under the complete dominion and control of the debtor who used the corporate forum to shield assets from creditors. And for that, I'm citing the Stanziale Certification at ECF Docket Number 3-1, Paragraph 6, citing the charging order attached as Exhibit A" (Tr. 63:19–25). The Court entered ECF No. 21 on October 23, 2026. (Lubin Cert. Ex. C-14.)

82. On October 23, 24 and 26, 2026, Lubin asked the Trustee in writing to have the Broward court address the May 15 Order, noting that "The Trustee relied on it in this adversary proceeding (Dkt. 3-8; Dkt. 19, para. 6)." On October 26, 2026, Ms. Staiano wrote that the Trustee would "contact Stanley Casey tomorrow to preliminarily discuss" and would "investigate and advise you as to his position." On October 27, 2026, Ms. Staiano wrote to the Broward judge's judicial assistant: "This firm represents Benjamin A. Stanziale, Jr., Chapter 11 Trustee for Avrumi Lubin. For your and the Court's information, we attach a copy of the Order Granting Preliminary Injunction and Providing for Further Proceedings entered by the Bankruptcy Court in new Jersey." She did not ask the Broward court to address finding 6. (Lubin Cert. Ex. C-12.)

83. When the Trustee and Ms. Staiano filed ECF Nos. 3-1, 3-8 and 19 and argued on October 22, 2026, the Trustee had received Lubin's September 22, 2026 email and attachments (¶ 75), and both had heard his explanation on the September 24 and 28 video calls (¶ 76). Their papers and argument did not disclose the June 16, 2026 transcript, the jury's answer to Question 3, Lubin's September 22 email, or the pending motion to correct the order (¶ 78). Upon information and belief, they knew that finding 6 did not match the Florida court's

rulings. (Basis: Part I; this allegation is likely to have further evidentiary support after a reasonable opportunity for discovery.)

84. On information and belief, the Trustee has taken no step to have the Broward court correct or address finding 6, has not supported Lubin's June 23 motion, and has instead sent the Broward court the order he obtained in reliance on finding 6. (Basis: Part I.)

85. On November 7, 2026, Lubin reviewed each of the Trustee's filings and confirmed the omissions described in ¶ 78. (Lubin Cert. ¶ 20.)

***Part J — Harm to Lubin***

86. Lubin's estate holds his membership interests in the Subject Entities. Their value depends on the Subject Entities' claims and collateral being protected.

87. Lubin believes his estate will have value left for him after disputed claims are resolved. He therefore has a direct stake in how estate-related assets are protected.

88. The conduct described above has harmed, and threatens to harm, two different things, and Lubin keeps them separate. (a) The value of the estate's membership interests in the Subject Entities: that harm is to the estate, and the relief Lubin seeks for it (Count II) is payable to the estate. (b) Lubin himself: the conduct has cost him time and money, has delayed his ability to obtain counsel, has exposed him to accusations of contempt and concealment on a record the Trustee knew was contested, and has deprived him of management of the Subject Entities. Lubin contends that the claims in (b) are his own. To the extent the Court determines that any claim in (b) is property of the estate under 11 U.S.C. § 541(a) or § 1115(a), Lubin asserts it as a party in interest and asks that any recovery on it be paid to the estate. If any such claim is determined to be property of the estate, Lubin does not purport to prosecute it without authorization; in the accompanying motion he asks that the Court direct the Trustee to state whether he will pursue it and, if the Trustee will not, authorize Lubin to prosecute it on the estate's behalf. The amounts will be proven at trial.

**COUNT I — DECLARATORY JUDGMENT (AGAINST THE TRUSTEE, IN HIS CAPACITY AS TRUSTEE)**

89. Lubin repeats paragraphs 1–88.

90. The Trustee's Complaint puts at issue what property belongs to Lubin's estate and whether the Subject Entities are Lubin's alter egos. An actual controversy exists. See 28 U.S.C. § 2201(a); Fed. R. Bankr. P. 7001.

91. Lubin asks the Court to declare that:

(a) the property of each Subject Entity, including its claims, belongs to that entity and is not property of Lubin's estate, unless and until the Court grants extension or consolidation on a proper record;

(b) Lubin's estate holds his membership interests in the Subject Entities, and, as to Teton Life, the interest the Court described in ECF No. 21 at 2 n.1;

(c) persons holding participation interests in particular Spin transactions hold contractual interests in those transactions, and those interests are not property of Lubin's estate; and

(d) finding 6 of the May 15 Order does not establish, for purposes of this adversary proceeding, that any Subject Entity is Lubin's alter ego or that the corporate form of any Subject Entity was used for an improper purpose.

**COUNT II — BREACH OF FIDUCIARY DUTY (AGAINST THE TRUSTEE, IN HIS CAPACITY AS TRUSTEE)**

92. Lubin repeats paragraphs 1–88.

93. A bankruptcy trustee is the representative of the estate (11 U.S.C. § 323), owes fiduciary duties of care and loyalty in administering it, must be accountable for all property received and furnish information concerning the estate's administration that a party in interest requests (11 U.S.C. §§ 1106(a)(1), 704(a)(2), (7)), and may be surcharged for breaching those duties. See *Mosser v. Darrow*, 341 U.S. 267, 271–72 (1951); *In re Hussain*, No. 10-2103 (GEB), 2010 WL 5071362, at *5 (D.N.J. Dec. 7, 2010) (trustee may be surcharged for a negligent breach of fiduciary duty). A trustee is also an officer of the court and owes it candor.

94. The Trustee breached those duties by, among other things:

(a) authorizing Spin to remain aligned with Century Bank and the other petitioning creditors, through counsel who also represents Century Bank, in a filing that relies on Spin to meet the creditor count and argues for pro rata treatment, and, on information and belief, without independent advice or a written conflict waiver (Part B; ¶ 27);

(b) on information and belief, leaving Spin's Texas ranch claim without a recorded lis pendens, service or a protective plan, while lots continued to be sold (Part C; ¶ 31);

(c) opposing Lubin's request to the New York court to preserve the policies while, on information and belief, having no preservation plan or written carrier status (Part D; ¶ 36);

(d) on information and belief, failing to obtain the vehicle records that bear on the amount of FVP's and Franklin's claims (Part E; ¶ 41);

(e) bringing FVP's counsel into the Trustee's communications with Lubin, and repeating FVP's counsel's position on Lubin's standing about 17 minutes after FVP's counsel stated it (Part F);

(f) on information and belief, acting in a way that kept Lubin from obtaining counsel (Part G);

(g) presenting finding 6 of the May 15 Order to this Court as a finding "actually litigated" and entitled to preclusive effect, in a certification under penalty of perjury and in two briefs, while knowing, from Lubin's September 22, 2026 email and from his own conversations with Lubin, that the finding did not match the Florida court's rulings and was the subject of a pending motion to correct, and without disclosing the June 16, 2026 transcript, the jury's answer to Question 3 or Lubin's email (Part I; ¶¶ 75–83);

(h) refusing to take any step to have the Broward court address finding 6 after Lubin asked in writing on October 18, 23, 24 and 26, 2026, answering that "the trustee does not take instruction from you," and sending the Broward court the order obtained in reliance on finding 6 instead (Part I; ¶¶ 79, 82, 84); and

(i) conditioning correction of the Broward orders on Lubin obtaining money from family members or others, while asserting sole authority over the Subject Entities whose interests those orders affect (Part I; ¶ 76).

95. These acts and omissions were not the execution of a court order; several were taken to obtain one. They were, at least, grossly negligent, and the acts in ¶ 94(g)–(i) were knowing. To the extent quasi-judicial immunity protects a trustee's acts within the scope of authority conferred by a court order (see *In re J & S Properties, LLC,* 872 F.3d 138 (3d Cir. 2017)), it does not displace the trustee's accountability to the estate and to parties in interest for breach of fiduciary duty, which is the basis of this Count and for which surcharge is the remedy (¶ 93). Lubin does not plead a categorical exception for conduct before an order is entered; he pleads the specific breaches identified in ¶ 94.

96. The breaches harmed the estate and the value of Lubin's interests as stated in Part J. Lubin asks, as a party in interest under 11 U.S.C. § 1109(b), that the Trustee be surcharged — that is, that the Trustee be directed to pay the estate, from his own funds and not from the estate, the loss caused by the breaches, in an amount to be determined — and seeks the findings, accounting and directions stated in the prayer for relief. Lubin does not seek money damages payable to himself personally in this count, and reserves any objection to compensation under 11 U.S.C. §§ 328(c) and 330.

## COUNT III — AIDING AND ABETTING BREACH OF FIDUCIARY DUTY, AND CIVIL CONSPIRACY (AGAINST MS. STAIANO, MR. MOLOSHOK, FVP AND

**FRANKLIN)**

97. Lubin repeats paragraphs 1–96.

98. A person who knows that another's conduct is a breach of fiduciary duty, and gives substantial assistance or encouragement to it, is liable for aiding and abetting the breach. *Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 174 (3d Cir. 2002).

99. In New Jersey, a civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 177 (2005) (citation omitted).

100. **Ms. Staiano.** Ms. Staiano signed the Trustee's briefs (ECF Nos. 3-8 and 19) and made the October 22, 2026 argument described in Part I (¶¶ 77, 80–81). She had heard Lubin explain, on the September 24 and 28, 2026 calls, why finding 6 did not match the Florida court's rulings, and had told him that the finding "just needs to be corrected" (¶ 76). She added FVP's counsel to the Trustee's communications with Lubin (¶¶ 44–45), repeated FVP's counsel's position on Lubin's standing (¶¶ 47–47A), told Lubin that "the trustee does not take instruction from you" (¶ 79), and sent the Broward court this Court's order instead of asking the Broward court to address finding 6 (¶ 82). On information and belief, she knew of the breaches in Count II and substantially assisted them. (Basis: Parts F, G and I.)

100A. **Mr. Moloshok.** Mr. Moloshok took part in nearly every video call between Lubin and the Trustee's side in September and early October 2026, including the September 24 and 28, 2026 calls on which Lubin explained why finding 6 did not match the Florida court's rulings, and he sent the follow-up emails for those calls (¶¶ 15A, 76; Lubin Cert. ¶ 15). On those calls he told Lubin that the Trustee would file a complaint to put Spin into its own bankruptcy, that FVP, Franklin and others would be put on notice, and that any party that believed it owned some of Spin's rights would have to object or would waive the right to claim those rights later; he did not say that the complaint would rest on finding 6 or allege that the Subject Entities are Lubin's alter egos (¶ 15A). He was on the October 13, 2026 Teams conference, two days before the Complaint was filed, and he received Lubin's October 15, 2026, 12:51 AM email asking him to correct Lubin's understanding of what he had said and to provide the proposed complaint and order; neither was done before the Complaint was filed (¶ 15A; Ex. C-30). He signed the November 3, 2026 letter asking the New York court not to consider Lubin's order to show cause, which asserted that Lubin had "directly violated" this Court's orders and had no "concrete personal interest" at stake (¶ 34; Ex. C-28). He is, with Ms. Staiano, counsel to the Trustee (Main Case ECF No. 132), and he was copied on each email described in Part F. Lubin

has not found a document showing that Mr. Moloshok personally added FVP's counsel to any thread or made the other statements attributed to Ms. Staiano above. On information and belief, Mr. Moloshok knew of the matters stated in ¶¶ 76 and 78 when the Trustee's papers were filed, took part in preparing them, and substantially assisted the breaches in Count II(c), (g) and (h). (Basis: Parts A, D, F and I; Lubin Cert. ¶ 15.)

101. **FVP.** FVP, through its counsel, applied for and submitted the proposed May 15 Order, including finding 6, which went beyond the Florida court's ruling as that court later described it (¶¶ 71–74; Application of "Judgment Creditors FVP Opportunity Fund III, L.P., et al.," Filing # 247506694, May 5, 2026). On June 16, 2026, FVP's counsel said that if the order had an error, "it needs to be corrected," and then said, "well, I take that back" (June 16, 2026 Tr. 10:17–20), and FVP has opposed correction. FVP's counsel supplied the standing argument that the Trustee's Counsel adopted (¶¶ 46–47A). FVP had earlier challenged the authority of Teton Life's counsel and sought that counsel's disqualification (¶ 42). On information and belief, FVP knew that the Trustee's conduct in Count II(c), (e) and (g)–(h) breached his duties and substantially assisted it. FVP benefits if finding 6 is treated as preclusive here, if the Subject Entities' claims go unprotected, and if the vehicle credits against its claims are never tested (Parts E, F and I); Lubin pleads that benefit as a reason to infer knowledge, not as the assistance itself. (Basis: Parts E, F and I.)

101A. **Franklin.** Lubin names Franklin on this count on information and belief, and states the basis and its limits. Franklin asserts, in other courts, that the 2021 assignment gave it "all Obligations, Merchant Documents, known and unknown claims" of Spin against Excell and its parties (¶ 43); it obtained the Florida judgment against Lubin and filed Claim No. 6 and Adv. Pro. No. 26-01339 on the strength of the Florida judgments (¶ 8); and it filed the 2022 Joint Adversary Complaint together with FVP (Ex. C-4). Franklin benefits in the same ways as FVP (¶ 101) and, in addition, if the Trustee accepts Franklin's reading of the 2021 assignment without testing it (Part H). Lubin has not found a document showing a communication between Franklin or its counsel and the Trustee or the Trustee's Counsel about the Subject Entities after the Trustee's appointment, and he does not allege that Franklin applied for the May 15 Order. On information and belief, based on Franklin's joint litigation with FVP since 2022, its asserted ownership of Spin's claims, and the Trustee's failure to test that assertion, Franklin knew of and substantially assisted the breaches in Count II(d) and (g)–(h). (Basis: Parts E, F, H and I.)

102. Upon information and belief, the Trustee, the Trustee's Counsel and FVP, and Franklin to the extent stated in ¶ 101A, agreed to act in concert, and acted in concert, with this objective: to obtain and keep sole control of the Subject Entities and their claims in this Court on the strength of finding 6 of the May 15 Order, and to prevent or delay the correction of finding 6,

so that the Subject Entities' claims would go unprotected and FVP's and Franklin's claims against Lubin and their asserted rights over the Subject Entities' assets would not be tested. The unlawful act is the Trustee's breach of fiduciary duty pleaded in Count II. The overt acts include those in ¶¶ 44–48, 77, 80–82. Lubin did not witness any agreement; he infers it from the sequence of events in Parts F and I, including that the Trustee's Counsel adopted FVP's counsel's standing argument within about 17 minutes (¶ 47A), that the Trustee's papers presented finding 6 without disclosing what Lubin had told the Trustee's Counsel about it (¶ 78), and that the Trustee's Counsel refused every request to have the finding addressed (¶ 79). (Basis: Parts B through J. Allegations of agreement are made on information and belief and are identified as contentions likely to have evidentiary support after a reasonable opportunity for discovery, Fed. R. Bankr. P. 9011(b)(3).)

103. These acts harmed Lubin as stated in Part J.

**COUNT IV — PROTECTIVE RELIEF FOR SPIN'S TEXAS RANCH CLAIM (AGAINST THE TRUSTEE, IN HIS CAPACITY AS TRUSTEE)**

104. Lubin repeats paragraphs 1–88.

105. Spin's Texas claims are time-sensitive. The Ranch Action complaint itself asks the Court to confirm that a lis pendens may be recorded (¶ 29). Lots have continued to be sold (¶ 30).

106. The Court's equitable powers "must and can only be exercised within the confines of" the Bankruptcy Code. *Law v. Siegel*, 571 U.S. 415, 421 (2014) (quoting *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988)). The relief asked here is a reporting and preservation step within the Trustee's existing role, not a new right.

107. Lubin asks the Court to direct the Trustee, within 14 days, to (a) record a notice of lis pendens for the Ranch Action in Parker County, Texas and file proof of recording, or file a short statement explaining why he has not; and (b) file a short status report on service of process in the Ranch Action and on any step taken or planned before August 15, 2027 to protect Spin's Texas claims if the Ranch Action is dismissed.

**RESERVATION**

108. Lubin is still reviewing the emails and records day by day. This paragraph does not itself preserve any compulsory counterclaim; it gives notice. Lubin may seek leave to amend these counterclaims to add claims and parties as the facts develop, including claims involving John C. Leininger, Hellring Lindeman Goldstein & Siegal LLP, Hi Bar and its principals, and counsel for FVP and Franklin. Any claim against the Chapter 7 trustee of Excell Auto Group or her counsel would first require permission from the court that appointed her.

**PRAYER FOR RELIEF**

Lubin asks the Court to:

A. enter the declarations requested in Count I;

B. on Count II: (i) find that the Trustee's presentation of finding 6 of the May 15 Order omitted the matters stated in ¶ 78; (ii) surcharge the Trustee and direct him to reimburse the estate for the loss caused by the breaches found, in an amount to be determined; (iii) direct the Trustee to file, within 21 days, an accounting of the Subject Entities' assets, claims and litigation positions under his control and the steps taken to preserve each; and (iv) direct the Trustee to give Lubin and the Court not less than 21 days' notice, and to obtain Court approval on notice under Fed. R. Bankr. P. 9019, before settling, releasing or abandoning any claim of a Subject Entity, or any claim against FVP, Franklin or their counsel;

C. enter judgment against Ms. Staiano, Mr. Moloshok, FVP and Franklin, jointly and severally, on Count III, for damages in an amount to be proven at trial, payable to Lubin for the injuries described in ¶ 88(b) or, to the extent the Court determines that any such claim is property of the estate under 11 U.S.C. § 541(a) or § 1115(a), payable to the estate;

D. grant the protective relief requested in Count IV;

E. award costs; and

F. grant such other relief as is just.

**Jury demand.** Lubin demands a trial by jury on all issues so triable.

**Wherefore**, Lubin asks the Court to deny the relief requested in the Complaint, to grant the relief requested in Counts I through IV, to grant leave under *Barton* to the extent required, and to grant such other relief as is just.

Dated: New York, New York, November 9, 2026

Avrumi Lubin
Defendant and Counterclaim-Plaintiff, pro se, individually
605 West 42nd Street
New York, New York 10036
(718) 570-3796
josh@tetonfunding.com