**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Caption in Compliance with D.N.J. LBR 9004-1(b)<br>Avrumi Lubin, Defendant, pro se, individually<br>Mailing address: 1460 Arboretum Parkway<br>Lakewood, New Jersey 08701<br>Telephone: 732-608-4905<br>Email: josh@tetonfunding.com | Case No.: 26-17342-EJO<br>Chapter 11<br>Adv. Pro. No.: 26-01494-EJO<br>Hon. Eamonn J. O'Hagan<br>Hearing: December 10, 2026, 10:00 a.m. |
| In re: AVRUMI LUBIN a/k/a Josh Lubin, Debtor.<br>BENJAMIN A. STANZIALE, JR., as Chapter 11 Trustee, Plaintiff,<br>v.<br>AVRUMI LUBIN, SPIN CAPITAL, LLC, TETON LIFE, LLC, TETON FUNDING, LLC, TETON FUNDING GROUP, LLC, JL SPECIAL INVESTMENTS, LLC, Defendants. | |

## MEMORANDUM OF LAW

## PRIMARY REQUEST AND THE EXISTING ORDER

Avrumi Lubin, individually, asks the Court first to alter ECF No. 48 to restore his role in Teton Life, LLC as it stood before October 15, 2026 under the operating agreement, subject to Mr. Yitzchakov's rights under that agreement and to the protections stated in Proposed Order A. If the Court will restore his role only on conditions, he asks for Proposed Order A-1; if not, next for a Court-defined limited role under an approved written plan, followed by the independent-defense, funding and protective relief in Proposed Order B, including separate suspension of the affirmative sole-authority clause. He keeps three things separate: his personal rights; Teton Life's rights; and estate property, including his 50% membership interest, which the estate continues to hold.

The Court entered ECF No. 48 on November 12 after hearings on October 22 and November 10. It found the Trustee reasonably likely to have succeeded to Movant's right under the operating agreement to direct the New York litigation, subject to good-faith settlement conferral with Gavriel Yitzchakov, and found a reasonable likelihood that the right was estate property. ECF No. 48 at 3-4, Finding D. Finding E states that irreparable harm "may result" if litigation progresses "without the Trustee's participation and/or yield[s] unfavorable outcomes." Id. at 4. Finding H states that 11 U.S.C. § 362(a)(3) applies directly to Teton Life's prosecution of the New York litigation. Id. Paragraph 2 prohibits Movant from acting in Teton Life's name or collecting its judgments and confirms the Trustee's "sole authority to act in the stead of the Debtor as to any management or litigation decisions regarding Teton Life," while preserving Movant's right, consistent with the operating agreement, to engage representation for himself and Teton Life in this adversary proceeding. Paragraph 3 prohibits asset transfers; paragraph 4 requires turnover; paragraph 5 sets November 25 for responses; paragraphs 6 and 7 set December 17 at 2:00 p.m. Id. at 4-5. This motion extends none of those dates.

The filed Teton Life agreement provides for member management subject to its terms and Delaware law (§ 3.01); reserves specified decisions for all members (§ 2.08(b)); and expressly makes decisions concerning the defined New York Lawsuit ordinary-course decisions not requiring Member B approval, while preserving good-faith settlement conferral (§ 2.08(d)). ECF No. 3-5, PDF pages 9-11. Section 5.01(c) requires payment of reasonable and necessary expenses, including legal fees, of the defined New York Lawsuit and a Lawsuit Reserve of at least $200,000. Id., PDF page 12. The agreement also contains a bankruptcy-triggered membership provision (§ 2.04(c)). Id., PDF page 7. Movant does not ask the Court to enforce that provision, to treat it as defeating § 541(c)(1), or to hold that any governance right was lost or passed to the other member.

## GROUNDS FOR ALTERATION AND AMENDED FINDINGS

### I. The motion is timely, and the standard.

Rules 9023 and 7052 allow 14 days to seek alteration or amendment, or amended findings. Movant submits this motion on November 17, 2026, within 14 days of the November 12 entry; timeliness and any appellate effect depend on actual filing. *Favia v. Indiana Univ. of Pa.*, 7 F.3d 332, 337-38 (3d Cir. 1993), distinguishes timely reconsideration of an injunction from a later modification request that requires changed circumstances. Movant invokes the clear-error and manifest-injustice grounds. *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Disagreement alone is not enough, and the Court may reject the request if its findings and the law justify the broader restraint.

### II. Full restoration of Movant's role in Teton Life is warranted.

**A. Paragraph 2 reaches beyond Finding D and the operating agreement.** Finding D concerns one right: the right to direct the New York litigation, subject to good-faith conferral with Mr. Yitzchakov. Paragraph 2 confers "sole authority . . . as to any management or litigation decisions regarding Teton Life." Under the agreement, management is member management (§ 3.01) and specified decisions belong to all members (§ 2.08(b)). Neither the agreement nor Finding D places every management and litigation decision of a two-member company in the hands of one person. An injunction should be no broader than necessary to protect the interest found. *Meyer v. CUNA Mut. Ins. Soc'y*, 648 F.3d 154, 169-70 (3d Cir. 2011). A preliminary injunction preserves the parties' positions until trial and should not award the merits. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Restoring Movant's pre-October 15 role under the agreement, with Mr. Yitzchakov's rights intact, preserves those positions.

**B. The restraints began without notice and were continued.** Movant maintains that the October 15 restraints were entered without adequate advance notice of their immediate entry (ECF No. 5; ECF No. 12-2 ¶¶ 2-3) and were continued "pending further order" (ECF No. 21 at 5, ¶ 3) until ECF No. 48 converted them. "The burden to prove clear entitlement to injunctive

relief always stays with the party requesting that relief." *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 321 (3d Cir. 2020). The status quo is "the last, peaceable, noncontested status of the parties," *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (quoting *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990)), which Movant contends includes the agreement's pre-restraint allocation of management. The Trustee's assertion that statutory succession had already changed that allocation, and the sufficiency of the subsequent hearings, must be addressed separately.

**C. Disputed facts and the harm findings.** Where a preliminary injunction depends on resolution of material disputed facts, an evidentiary hearing may be required. *Elliott v. Kiesewetter*, 98 F.3d 47, 53 (3d Cir. 1996); *Arrowpoint Cap. Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d 313, 324 (3d Cir. 2015). Movant requests a focused hearing on any material contested factual premise, not a hearing on every pure legal question.

At the October 22 hearing Movant requested "the ability to ask the Trustee a few minutes, a few questions under oath"; the Court responded that the revised certification "addressed each and every point that you made." Oct. 22 Tr. 42:20-25. The Court later described the proposed points as not relevant to the temporary-injunction question. Id. 43:15-21. Movant renews his request as to material disputed factual premises supporting ECF No. 48, rather than treating the earlier request as resolving every later hearing issue. *United Tel. Workers, AFL-CIO v. W. Union Corp.*, 771 F.2d 699, 706-07 (3d Cir. 1985), applies Rule 65's hearing requirement where affidavits present factual disputes and the adverse party requests a hearing.

Finding E uses "may result" concerning litigation outcomes, but Finding F separately finds likely harm from control, use or disposition of assets. ECF No. 48 at 4. Both findings and the oral record must be considered. Movant asks whether the actual evidence supports the breadth of the restraint and why full restoration with specified guardrails would be inadequate. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Acierno v. New Castle Cnty.*, 40 F.3d 645, 655 (3d Cir. 1994).

**D. Finding D and the separate stay question.** Finding D is a preliminary likelihood finding of succession to the New York litigation-control right. Movant requests alteration to the extent inconsistent with the interim authority the Court expressly restores, and specific findings identifying the legal basis and scope of that authority. He does not ask to nullify Finding H by implication. Section 362(a)(3) and any separately imposed stay must be addressed independently; identifying who may instruct company counsel does not itself authorize prosecution or collection in New York. Company counsel must obtain any separately required stay relief on proper notice.

**E. The plaintiff controls the defendant's defense.** Paragraph 2 gives the Trustee, who is suing Teton Life, sole authority over Teton Life's litigation decisions in this adversary proceeding. Teton Life may appear only through licensed counsel, *Rowland v. California*

*Men's Colony*, 506 U.S. 194, 201-02 (1993), and no lawyer has been retained to appear for it here. Lubin Cert. ¶ 3. Restoration, or the independent-counsel alternative in Proposed Order B, addresses that problem.

**F. The contrary considerations.** Movant states the obstacles plainly. Finding D found a likelihood that the Trustee succeeded to Movant's right to direct the New York litigation; § 541(a)(1) and (c)(1) bring Movant's interest into the estate; and courts addressing single-member companies have allowed a trustee to exercise the debtor's governance rights. *In re Modanlo*, 412 B.R. 715, 731 (Bankr. D. Md. 2006). Teton Life has two members, and the operating agreement and Delaware law affect how any right may be exercised; those questions require a legal determination, not an assumption in either direction. Restoration is affirmative relief, and the Court may require more proof. If the Court finds a statutory or contractual obstacle to restoration, Movant asks for specific findings and consideration of the alternatives below.

**G. The Court's recognition, written assent and counsel-selection amendment.**

The Court has already recognized the contractual starting point. ECF No. 21, at 2 n.1, states: "The Debtor owns a 50% interest in Teton Life, LLC with contractual rights to manage the company subject to consultation with the co-owner." The November 12 order expressly provides that the Debtor, "consistent with the Teton Life operating agreement, shall retain the right to engage representation for himself and the Teton Life in the current adversary proceeding." ECF No. 48, at 5, ¶ 2. Thus, Movant does not seek a new grant of a counsel-engagement right already retained. He asks that it be given practical effect, including a lawful means for Teton Life's counsel to receive instructions and present its independent defense. The Court should reconcile that retained right with the same paragraph's broader sole-authority clause.

The distinction is precise: recognition of Movant's contractual rights and preservation of defense-counsel engagement support the request, but do not erase Finding D's preliminary succession determination. Movant challenges that determination and the resulting restraint; he does not represent that footnote 1 already vacated it. The following contemporaneous writings support the claimed contractual allocation; their procedural admissibility and legal effect must be decided separately.

Composite Exhibit TL-1 supplies contemporaneous evidence of the allocation of New York litigation authority. At 1:33 p.m. on August 13, 2025, Movant's transaction counsel, Wollmuth Maher & Deutsch LLP ("WMD"), circulated a proposed edit to § 2.08 to Gavriel Yitzchakov (also known as Gabe Isaacov) and attorney Gabriel Mendelberg, who participated on his side of the transaction. Mr. Mendelberg replied, "This is fine with me. Gabe I.?" At 5:10 p.m., Amanda Benincasa of WMD asked Mr. Yitzchakov whether he was "signed off on the new language that I circulated at 1:33"; he answered "Yes." TL-1, Part A. The original attached

DOCX redline deletes the provision requiring all-member approval to engage a law firm for the Lawsuit and deletes the counsel-retention exception from § 2.08(d). Part B. The executed agreement contains neither restriction and states that all decisions concerning the defined Lawsuit shall not require Member B's approval. Part C; also ECF No. 3-5, PDF page 10.

These records support Movant's claimed pre-restraint authority to select and instruct counsel for the defined Lawsuit without a Member B approval requirement. They do not abolish other provisions of the agreement or its good-faith settlement-conferral obligation. This motion does not seek an adjudication that Mr. Yitzchakov committed misconduct, that he waived every membership right, or that a later settlement is invalid. The written assent also does not itself decide whether the Trustee succeeded to Movant's contractual rights under bankruptcy law; Finding D expressly presents that adverse issue. Movant requests a ruling on that issue and on the full-restoration request, rather than treating historical authority as an automatic exemption from ECF No. 48.

Movant relies first on the filed operating agreement (ECF No. 3-5) and arguments already presented in ECF No. 14. The August 2025 emails and draft predate the injunction and are not offered as newly discovered evidence. He requests leave, to the extent procedurally permissible, to submit Composite Exhibit TL-1 to clarify the provision at issue, with a fair opportunity to respond. An offer of proof does not itself satisfy reconsideration standards or require admission. If the Court excludes the materials, Movant requests the ground and tenders their substance under Fed. R. Evid. 103(a)(2) for review of that ruling. Alternatively, he requests consideration at the continued-injunction hearing or on prospective modification only as applicable standards, jurisdiction and notice permit. This request extends no deadline.

Mr. Yitzchakov's brief, which ECF No. 48 lists among the considered papers, states that he "has not consented to the Trustee's participation in Teton Life's management." ECF No. 14 at 12. In summarizing the Trustee's position, it describes § 2.08(d) as the provision "which gives 'Josh Lubin' control over the New York State Action and related collateral." Id. at 13. That page also argues that if Movant is "unable or unwilling to perform that role," the decision belongs to Teton Life's members (identifying Mr. Yitzchakov). These are litigation positions, not binding determinations. Movant does not concede that condition or consequence; he asks the Court to determine the agreement's meaning and the effect of bankruptcy law.

**H. "All related matters" includes the disputed control of the New York rights.**

Section 2.08(d) defines the "Lawsuit" to include the identified New York action "and all related matters." TL-1, Part C; ECF No. 3-5, PDF page 10. Movant asks the Court to give that additional language effect, not confine the agreed authority to papers filed under one New York index number. As applied to Teton Life, this adversary directly concerns who controls those litigation rights and whether their value may be brought into Movant's estate. Movant therefore contends that retaining and instructing Teton Life's licensed counsel to defend those rights here is a related matter within the agreed allocation. His certification identifies the Company's assets as the rights and related recoveries arising from that litigation, rather than an unrelated operating business. Cert. ¶ 13. The argument does not require a finding that every claim against every defendant in this adversary is related.

Paragraph 2 of ECF No. 48 already preserves, consistently with the operating agreement, Movant's engagement of representation for himself and Teton Life in this adversary. The requested ruling would address the scope of Teton Life's related-matter authority, including instruction of its counsel, not permit Movant to appear pro se for it. The Court should decide separately (1) the contractual scope of "all related matters," and (2) whether, and to what extent, the Trustee succeeded to the particular right under § 541. A broad contractual scope does not itself answer succession and could also affect the scope asserted by the Trustee. The fact that the litigation is the Company's only identified substantive asset supplies context; it is not an independent exception to § 541 or an existing stay. If the Court rejects this construction or any requested restoration, Movant requests an express ruling and its contractual and statutory reasons.

**I. Estate property, dissociation and exercise of authority are distinct questions.**

Section 541(a)(1) defines the estate by reference to the debtor's interests; section 541(c)(1) limits the effect of transfer restrictions and bankruptcy-triggered forfeitures on inclusion. They do not eliminate the need to identify the particular right and who may exercise it. Protection against forfeiture does not itself restore authority to Movant. The Trustee represents the estate under § 323, and Movant is not a debtor in possession while a qualified trustee serves. 11 U.S.C. § 1101(1). Movant therefore requests a separate determination whether his claimed contractual authority remained exercisable by him or can lawfully be restored while the Trustee remains appointed, without conceding the disputed scope of Trustee control over this nondebtor company.

If the agreement is executory, that classification alone does not establish enforceable bankruptcy dissociation. Sections 365(c)(1) and (e)(2)(A) require analysis of applicable law and consent. *In re Allentown Ambassadors, Inc.*, 361 B.R. 422, 444-45, 454-57 (Bankr. E.D. Pa. 2007), found an agreement executory but the record insufficient to establish enforceability of its bankruptcy-termination provision. That case involved a different agreement and North

Carolina law; it does not automatically give either Movant or the other member control here. Movant does not seek enforcement of § 2.04(c), or assume no material continuing obligations without examining the complete agreement and related transaction documents. He requests a reasoned statutory and contractual ruling, not an assumption that estate inclusion either gives him control or resolves every governance issue in the Trustee's favor.

### III. Alternative relief (Proposed Orders A-1 and B).

**Restoration with guardrails.** Proposed Order A-1 grants the same restoration subject to good-faith conferral, the existing asset and turnover protections, 21 days' notice and Court approval of material dispositions, nonprivileged reporting, no insider payments and no stay relief.

**Court-defined limited role.** If the Court denies both full-restoration requests, Movant next asks for a specific limited role for Teton Life under a written, entity-specific plan approved after notice. The Court must find a lawful basis, define the permitted matters and acts, counsel, budget, reporting and corresponding injunction modifications, and preserve other members' existing rights. No role begins before the Court enters that approval, and the Trustee has no unilateral veto or revocation power. This is not a request to disregard statutory succession, obtain an estate agency by implication, or permit pro se representation of a company.

**Independent defense and funding.** If restoration is denied, Proposed Order B requests a lawful, Court-defined mechanism for independently instructing Teton Life's licensed defense counsel against the Plaintiff-Trustee, and a company-specific funding procedure. It does not offer Trustee-controlled agency. Section 5.01(c) supports examining an actual Lawsuit Reserve and a lawful budget; it does not prove money is available or authorize every expense. The August 31 New York letter reports Spin advances but states that Teton Life claims repayment as assignee. NYSCEF No. 1476 at 3 n.4; ECF No. 43-26, PDF page 4. Ownership, restrictions and required approvals must be resolved, with no pooling, personal expenses or compensation. No representative, lawyer or funding is automatically appointed by proposing that procedure.

**Preservation report.** Teton Life's August 31 counsel letter identifies at least 24 additional policies that may be collateral but were not enumerated in the receivership order, and requests expanded or confirmed receiver authority. NYSCEF No. 1476 at 2-4; ECF No. 43-26, PDF pages 3-5. On October 29 Ms. Staiano reported a receiver assurance that the policies were not at risk and said she would obtain written confirmation. ECF No. 43-26, PDF page 7. Movant's filed certification reports that the receiver's November 2 attachment lists five Zurich policies, none among the additional 24. Main Case No. 26-17342, ECF No. 156, ¶ 9. Movant acknowledges the protective steps described in Main ECF No. 156, ¶ 15, and does not claim the Trustee has done nothing. His recollection of the November 10 hearing is set out in his certification and was recorded in Main ECF No. 156, ¶¶ 12 and 16; it is a recollection, not a

transcript quotation. He requests a nonprivileged policy-by-policy report within five business days after entry, with a designated contact, responsible counsel, target dates and the nonprivileged basis for any decision not to seek a requested protective step. Sections 1106(a)(1) and 704(a)(7) support an information process subject to the Court and applicable protection. This does not presume a lapse or misconduct, and it neither withdraws nor postpones Main ECF No. 157.

**Independent safeguards.** Even if restoration is denied: require whoever directs the New York litigation to confer in good faith with Mr. Yitzchakov, as Finding D and § 2.08(d) require; require 21 days' notice and affirmative Court approval before any settlement, release, compromise, assignment, abandonment, dismissal with prejudice or non-ordinary disposition (no objection is not approval); and clarify that the order is preliminary and not a final governance or ownership adjudication. Rule 9019(a) generally provides for a trustee's settlement motion, notice and approval; the requested company-specific safeguards are additional injunction terms, not an assertion that Rule 9019 governs every non-debtor company act.

**Separate suspension of the affirmative clause.** Independently of whether the Court restores authority or approves a limited role, Movant requests suspension of the affirmative sole-authority clause in ECF No. 48, paragraph 2. He asks for a separate ruling on whether that interim declaration of exclusivity is justified. Suspension alone would not restore or transfer authority, extinguish any Trustee power independently held under governing law, or lift the remaining personal restraint. The existing restraints continue except as an entered order expressly changes them. *Camenisch*, 451 U.S. at 395, establishes the nonfinal character of preliminary findings, not automatic entitlement to this relief.

## IV. Findings and preservation.

In granting or refusing an interlocutory injunction, the court "must similarly state the findings and conclusions that support its action." Fed. R. Civ. P. 52(a)(2) (applied by Fed. R. Bankr. P. 7052). Movant asks for a separate ruling on each request and for amended or additional findings on items (i) through (vii) in the notice of motion. If the Court considers the control or asset-movement facts disputed and material, Movant requests a focused evidentiary hearing, at which he would testify, and would ask to examine the Trustee, about the companies' management before and after October 15, the absence of advance notice, efforts to retain counsel for Teton Life, the status of the additional policies, and the facts underlying the asset-movement concern. Movant does not concede the Trustee's claimed authority, ownership or control, or any alter-ego allegation, and preserves all claims, defenses, objections and appeal rights, including review of ECF No. 48. Any tolling depends on a timely qualifying motion under Rule 8002(b); this motion does not waive a protective notice of appeal or independently extend an appeal deadline.

## CONCLUSION

Movant requests full restoration of his role in Teton Life on the terms of Proposed Order A; alternatively, the same restoration with the guardrails in Proposed Order A-1; and alternatively, the relief in Proposed Order B, with amended or additional findings on each request. Until relief is entered, the existing order and deadlines remain binding.

Preparation disclosure: I used generative artificial-intelligence assistance. I have reviewed this paper before signing it and remain responsible for its factual and legal content.

Dated: November 17, 2026

Avrumi Lubin, individually, pro se
Mailing address: 1460 Arboretum Parkway, Lakewood, New Jersey 08701
732-608-4905 | josh@tetonfunding.com