**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Caption in Compliance with D.N.J. LBR 9004-1(b)<br>Avrumi Lubin, Defendant, pro se, individually<br>Mailing address: 1460 Arboretum Parkway<br>Lakewood, New Jersey 08701<br>Telephone: 732-608-4905<br>Email: josh@tetonfunding.com | Case No.: 26-17342-EJO<br>Chapter 11<br>Adv. Pro. No.: 26-01494-EJO<br>Hon. Eamonn J. O'Hagan<br>Hearing: December 10, 2026, 10:00 a.m. |
| In re: AVRUMI LUBIN a/k/a Josh Lubin, Debtor.<br>BENJAMIN A. STANZIALE, JR., as Chapter 11 Trustee, Plaintiff,<br>v.<br>AVRUMI LUBIN, SPIN CAPITAL, LLC, TETON LIFE, LLC, TETON FUNDING, LLC, TETON FUNDING GROUP, LLC, JL SPECIAL INVESTMENTS, LLC, Defendants. | |

# MEMORANDUM OF LAW

## RELIEF REQUESTED

Avrumi Lubin asks the Court first to restore, pending appeal, the management and litigation authority he held before October 15, 2026 over Spin Capital, LLC, Teton Funding, LLC, Teton Funding Group, LLC and JL Special Investments, LLC (the "four companies"), including authority to retain and instruct their counsel. Proposed Order A does this by suspending the "CONFIRMED" clause and the related restraint in paragraph 2 of ECF No. 21, leaving paragraphs 1 and 4 in force and modifying paragraph 3 only to permit ordinary-course operation and payment of each company's own counsel from its own legally available funds. If the Court will restore authority only on conditions, Proposed Order A-1 grants the same restoration with guardrails: no asset transfers outside the ordinary course, lawful records access with disputed privilege reserved for the Court, Court approval of irreversible decisions, nonprivileged reporting, no insider payments and no stay relief. If both restoration requests are denied, Movant next requests a Court-defined limited role under an approved written plan, followed by a defense-funding procedure or independent defense counsel and independent safeguards, including separate suspension of the affirmative sole-authority clause (Proposed Order B). He also asks for findings on each request.

The motion is made individually to change restraints on Movant. It is not an appearance for any company. It keeps three things separate: Movant's personal rights (including freedom from a personal restraint); each company's rights (to its own claims, funds and defense); and estate property (Movant's membership interests, which the estate continues to hold). It does not seek to remove the Trustee, undo his appointment, terminate the trusteeship under § 1105, restore Movant as debtor in possession, decide ownership, or grant stay relief. No compensation is requested.

## RECORD AND PROCEDURAL POSTURE

1. **Restraints without notice.** On October 15 the Trustee filed a verified complaint seeking to extend this case to the five subject entities and applied for an order to show cause with temporary restraints, including exclusive management and litigation authority for the Trustee. ECF Nos. 1, 3. The Court entered the order the same day "for good and probable cause shown," effective "pending further order of this Court." ECF No. 5 at 3-4. Its paragraph 2 contains the same restraint and "CONFIRMED" clause later continued in ECF No. 21. ECF No. 5 does not describe an injury or state why it is irreparable, does not state why it was issued without notice, and sets no expiration date. Id. Movant knew a complaint and order to show cause were coming but had no advance notice that restraints would be entered before he could respond; he first saw the application and the entered order at 6:48 p.m. that day. ECF No. 12-2 ¶¶ 2-3. Earlier emails show that counsel said the Trustee would seek authority to act for Spin; they do not show notice of the immediate restraints or consent to them. ECF No. 43-25, PDF pages 7-8.

2. **The October 22 hearing.** The Court described the hearing as deciding "which of these restraints are going to continue for a little bit longer pending a determination of the adversary proceeding." Oct. 22 Tr. 38:11-13. It denied Movant's two adjournment requests and his request to dissolve the restraints. ECF No. 21 at 3 n.2. When Movant asked for "the ability to ask the Trustee a few minutes, a few questions under oath," the Court responded that the Trustee's revised certification "addressed each and every point that you made." Tr. 42:20-25. The Court later described the proposed points as not relevant to the temporary-injunction question. Tr. 43:15-21. The four companies had no counsel; the Court said Movant's ability to retain counsel for them "has been supplanted by the Chapter 11 Trustee." Tr. 56:8-10.

3. **The stated bases.** The Court found that the Trustee had assumed the debtor's affairs and that Movant's equity is estate property (Tr. 62:20-63:1), said that a Chapter 11 trustee's appointment is a "statutory result" that "displaces you from management" (Tr. 35:9-12), and said the order clarifies "who has the decision-making authority" (Tr. 37:6-10). It found a reasonable likelihood of success "in extending the automatic stay" and that irreparable harm "may result" if litigation progresses "without the Trustee's participation and/or yield[s] unfavorable outcomes." Tr. 63:13-19; ECF No. 21 at 4 (Findings C, D). It then found "that the Court in Florida has already found that Spin Capital and Teton Funding were under the complete dominion and control of the debtor who used the corporate forum to shield assets from creditors," citing the charging order attached to the Trustee's certification, and immediately found irreparable harm likely "if the debtor is permitted to control and use those entities and to move and/or dispose of assets." Tr. 63:20-64:4. Movant objected at once: "Your Honor, the Court never ruled that." Tr. 64:5. The written order incorporates the findings "set forth on the record." ECF No. 21 at 3. The Court said the relief was preliminary, not final. Tr. 60:25-61:2.

4. **The Florida record.** The May 15, 2026 charging order, entered on the judgment creditors' application, recites at finding 6 that the two companies "are operated under the complete domination and control of the Judgment Debtor; the corporate form is used to shield assets from creditors; and foreclosure of the transferable interests is therefore appropriate pursuant to section 605.0503(4), Florida Statutes." ECF No. 3-2, PDF page 3. Finding 5 separately states that a charging order alone will not satisfy the judgment within a reasonable time. Id. Three facts that were not presented on October 22 bear on finding 6:

(a) *The jury answered the improper-purpose question "NO."* The FVP verdict form asked, "Was the corporate form of Spin Capital formed or used for a fraudulent or improper purpose?" The jury marked "NO," while answering "YES" that Movant dominated and controlled Spin Capital. Cert. Ex. 2. The form instructs that if any of Questions 1-4 is answered "NO" and Question 5 is "NO," "Avrumi Josh Lubin is not liable." Id. The verdict does not address Teton Funding.

(b) *The Florida court described the order's basis as ownership, not alter ego.* On June 16, 2026 the Florida court stated: "those are single-member LLCs, so he's the sole owner. So, they're not proceeding as an alter ego," and "instead of saying that it's an alter ego, . . . they're saying now, even if it's a separate company, he owns an interest in that company, and . . . they want to foreclose on Mr. Lubin's interest in that company to satisfy the judgment." Cert. Ex. 1, Tr. 11:1-3, 11:15-20. The same passage notes that in separate proceedings supplementary the creditors were "going under a different avenue." Id. 11:3-6.

(c) *The order is on appeal, and the Trustee seeks to avoid its lien.* The charging order is on appeal (Fla. 4th DCA No. 4D2026-1512). The Trustee has stated that he intends to use his avoidance powers to invalidate the charging-order lien while relying on its findings. ECF No. 3-1 ¶¶ 6-7.

5. **Operative restraints.** Paragraph 2 of ECF No. 21 enjoins Movant from acting in the four companies' names or collecting their judgments and confirms the Trustee's "sole authority to act in the stead of the Debtor as to any management or litigation decisions," with a proviso preserving Movant's right "to engage representation for himself and the Subject Entities in the current adversary proceeding." Paragraph 1 stays litigation and judgment enforcement against the companies; paragraph 3 bars asset transfers; paragraph 4 requires turnover of records. A further hearing is set for December 17. ECF No. 21 at 5-6.

6. **Appeal and pending motions.** The October 29 notice of appeal is ECF No. 24; the district-court case is No. 3:26-cv-14172-GC. ECF No. 25 under Rules 9023 and 7052 remains pending for December 3, and Rule 8002(b)(2) governs the notice's effectiveness if that motion was timely and qualifies under Rule 8002(b). Fed. R. Bankr. P. 8002(b)(2). On November 16 the District Court administratively terminated the appeal subject to reopening upon timely

payment of the fee or a revised fee application; it did not decide the merits. Movant intends to cure by December 16. The October 22 oral stay request was denied. Tr. 66:3-6; ECF No. 21 at 6, ¶ 8. This is the written Rule 8007 request.

7. **Why this motion asks for more than ECF No. 25.** ECF No. 25 disclaimed restoring authority, and ECF No. 52 sought narrower clarification. Since then no counsel has appeared for the four companies (Cert. ¶ 6); the Florida record in Exhibits 1 and 2, which was not before the Court on October 22, bears directly on a stated basis for the restraint; and Rule 8007(a)(1)(C) expressly provides for an order "suspending, modifying, restoring, or granting an injunction while an appeal is pending." Movant does not ask the Court to treat this motion as a late Rule 9023 motion or as extending any deadline. ECF No. 25 concerned a different procedural vehicle; the Court has not ruled on it or adopted its narrower position, and this motion states the restoration request expressly and in full so that the Court can rule on it.

## ARGUMENT

### I. The standard.

A party ordinarily must move first in the bankruptcy court for a stay of an order, or for an order "suspending, modifying, restoring, or granting an injunction while an appeal is pending." Fed. R. Bankr. P. 8007(a)(1)(A), (C). The motion may be made before or after the notice of appeal is filed. Fed. R. Bankr. P. 8007(a)(2). The Court considers likelihood of success, irreparable harm, harm to others and the public interest; the first two factors are the most critical. *In re Revel AC, Inc.*, 802 F.3d 558, 568-71 (3d Cir. 2015). Movant asks for an individualized ruling on each request.

**II. Full restoration pending appeal is warranted.**

**A. The appeal presents substantial questions.**

**1. The restraints began without notice, and the October 23 Order continued them.** Restraints without notice are permitted only on specific sworn facts showing immediate and irreparable injury before the adverse party can be heard, and a certification of efforts to give notice; every such order must describe the injury, state why it was issued without notice, and expire within 14 days unless extended. Fed. R. Civ. P. 65(b)(1)-(2) (applied by Fed. R. Bankr. P. 7065). Those restrictions reflect that our jurisprudence "runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974). ECF No. 5 states only "good and probable cause" and runs "pending further order." The October 22 hearing then asked which of "these restraints are going to continue." Tr. 38:11-13. The status quo an injunction preserves is "the last, peaceable, noncontested status of the parties," *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (quoting *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990)), which Movant contends was his pre-restraint management, not an arrangement created by temporary restraints. The Trustee's contention that statutory succession had already changed lawful authority must be decided separately. "The burden to prove clear entitlement to injunctive relief always stays with the party requesting that relief," and a court "turned due process on its head when it required the party against whom it ordered injunctive relief to prove why such relief should not be continued." *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 321 (3d Cir. 2020). To the extent the clause affirmatively transferred control rather than recognizing governance rights already held by the estate, Movant argues that mandatory preliminary-relief principles required a particularly heavy showing. That characterization must be resolved with the Trustee's statutory-succession argument; the alleged defect in the temporary order alone does not invalidate the later injunction after notice and hearing. *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994).

**2. Disputed facts were decided without an evidentiary hearing.** "A district court cannot issue a preliminary injunction that depends upon the resolution of disputed issues of fact unless the court first holds an evidentiary hearing." *Elliott v. Kiesewetter*, 98 F.3d 47, 53 (3d Cir. 1996). Where the motion turns on a disputed factual issue, an evidentiary hearing is ordinarily required, and a court may not resolve credibility on competing affidavits without one. *Arrowpoint Cap. Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d 313, 324 (3d Cir. 2015). Movant disputed control and the risk of asset movement; he asks the Court to identify which factual dispute, rather than pure legal interpretation, was material to the injunction. Movant asked to examine the Trustee; the Court relied on the Trustee's revised certification instead. Tr. 42:20-25.

**3. The Florida finding requires a precise scope determination.** The May 15 charging order actually contains the domination/control and asset-shielding finding quoted by this Court. ECF No. 3-2, PDF page 3, finding 6. Movant does not deny its existence. The FVP jury answered the improper-purpose question about Spin "NO," while answering control questions "YES" (Cert. Ex. 2); its verdict does not address Teton Funding. The June 16 court distinguished foreclosure of an ownership interest from alter-ego relief (Cert. Ex. 1, Tr. 11:1-3, 11:15-20), but did not vacate finding 6. Movant asks whether finding 6 decided the same issue for the same entities and period, whether it was necessary to the foreclosure relief supported separately by finding 5, and what preclusive or evidentiary effect it has here. Under 28 U.S.C. § 1738, Florida law governs preclusion; Florida's mutuality requirement and any applicable privity must be examined. *Stogniew v. McQueen*, 656 So. 2d 917, 919 (Fla. 1995). The Trustee's absence as a named Florida party does not alone defeat successor privity. Nor does a pending appeal erase the order's effect. *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1121 (Fla. 1984), addresses improper conduct for veil piercing; it does not by itself vacate this charging order. These exhibits existed before October 22, and are not described as newly discovered or later events. Movant asks that they be considered to address the use of finding 6 in the oral ruling and his contemporaneous objection at Tr. 64:5, with an opportunity for the Trustee to respond.

**4. The harm findings must be considered together.** Finding D uses "may result" for litigation outcomes; Finding E and the oral ruling separately find likely harm from control, use or disposition of assets. ECF No. 21 at 4; Tr. 63:20-64:4. Movant does not claim there is no likelihood finding. He asks whether the supporting evidence establishes likely irreparable harm sufficient for this particular breadth of control, and why narrower protections would be inadequate. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Acierno v. New Castle Cnty.*, 40 F.3d 645, 655 (3d Cir. 1994); *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). A possible unfavorable monetary outcome alone is not enough; the Court's separate asset-disposition rationale must also be addressed.

**5. The "sole authority" clause rests on a stay-extension finding and decides the merits early.** The only likelihood-of-success finding concerns extending the automatic stay under *McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 510 (3d Cir. 1997). ECF No. 21 at 4 (Finding C). That doctrine supports staying litigation against a non-debtor in unusual circumstances; it does not supply a basis for transferring the non-debtor's management. Control of separate companies is what the complaint seeks to obtain by extending the case to them, a remedy the Third Circuit describes as one of last resort. *In re Owens Corning*, 419 F.3d 195, 211 (3d Cir. 2005). A preliminary injunction preserves the parties' positions until trial; it should not award the merits. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Section 105(a) does not permit a bankruptcy court to override the Code's specific provisions. *Law v. Siegel*, 571 U.S. 415, 421 (2014). If the Trustee's authority comes from the estate's ownership of Movant's membership interests (Tr. 62:20-63:1), its scope depends on each company's

governing documents and state law and is exercised through them. See N.J.S.A. 42:2C-37; 6 Del. C. § 18-402. How any member rights are exercised depends on each company's documents: where a debtor holds a separate manager office, "[u]nless and until the Trustee, acting as sole member," removes and replaces him, the debtor "individually retains that role." *Grochocinski v. Campbell (In re Campbell)*, 475 B.R. 622, 631 (Bankr. N.D. Ill. 2012). *Campbell* concerned an Illinois manager-managed company and expressly distinguished member-managed rights. 475 B.R. at 631 & n.6. Spin's March 1, 2019 agreement instead places management in its members and identifies Movant as sole member; it does not establish a separate manager office. Cert. Ex. 3, §§ 5-6. Movant therefore does not contend that *Campbell* alone resolves Spin's authority question. Paragraph 2 instead confers "sole authority . . . as to any management or litigation decisions" by injunction. An injunction should be no broader than necessary. *Meyer v. CUNA Mut. Ins. Soc'y*, 648 F.3d 154, 169-70 (3d Cir. 2011).

**6. The plaintiff controls the defendants' defense.** Paragraph 2 gives the Trustee, the plaintiff, sole authority over the four companies' litigation decisions in this very adversary proceeding. The Court said the companies' defense decisions "will be made by the Chapter 11 Trustee." Tr. 37:20-22. A company may appear only through licensed counsel, *Rowland v. California Men's Colony*, 506 U.S. 194, 201-02 (1993), and the proviso allowing Movant to "engage representation" has not produced counsel and Movant requests a funded, workable defense procedure. Cert. ¶ 6. The current record does not establish that every prospective lawyer declined solely because of the funding restriction. Movant asks the Court to address this structural problem directly, whether by restoration or by the independent-counsel alternative in Proposed Order B.

**B. Irreparable harm to Movant.**

Paragraph 2 restrains Movant personally and removes him from time-sensitive decisions for companies he directed before October 15, including Spin Capital's Michigan appeal, whose brief is due December 10, 2026. Cert. ¶ 7. Loss of that role pending appeal cannot be restored later by money. Movant acknowledges that a company deadline does not automatically establish irreparable injury to him personally, that the record does not establish a particular imminent release, a completed CapFactor payment or a date-certain policy lapse, and that the Court may require more proof. If so, Movant asks the Court to identify what is needed.

**C. Harm to others and the public interest.**

Proposed Order A leaves paragraphs 1 and 4 of ECF No. 21 in force. Proposed Order A-1 adds the protections that answer the Court's stated concerns: no transfer or disposition of assets outside the ordinary course; lawful records access with disputed privilege reserved for the Court; advance notice and Court approval of any settlement, release, assignment, abandonment, dismissal with prejudice, new lien or governance change; nonprivileged reporting; and no payment to Movant or any insider. The estate keeps Movant's membership interests and all rights that come with them under law. The record also shows protective work by the Trustee, including a ranch-recovery complaint filed for Spin on October 27 (Adv. No. 26-01532, ECF No. 1); Movant does not claim the Trustee has done nothing.

**D. The contrary considerations.**

Movant states the obstacles plainly. Restoration is affirmative relief, and Movant bears the burden on this motion. Section 541(a)(1) and (c)(1) bring Movant's membership interests into the estate notwithstanding bankruptcy-triggered restrictions, and courts have held that a trustee holding a debtor's entire interest in a single-member LLC may exercise its governance rights. *In re Albright*, 291 B.R. 538, 540 (Bankr. D. Colo. 2003); *In re Modanlo*, 412 B.R. 715, 731 (Bankr. D. Md. 2006). The Court has said that a trustee's appointment "displaces" the debtor from management. Tr. 35:9-12. The jury did answer "YES" on domination and control. Cert. Ex. 2. ECF No. 25 disclaimed restoration. And restoration by this Court does not lift paragraph 1 of ECF No. 21 or any automatic stay: if restored, company counsel would seek any needed modification, for example to proceed with Spin Capital's Michigan appeal, by separate motion on notice. If the Court concludes that the estate's interests carry the right to control a company, Movant asks the Court to identify, company by company, the legal source and scope of that right and whether it must be exercised through the company's governing documents, so that the ruling can be reviewed.

**E. Entity-specific authority and the Trustee's statutory role.**

Spin's two-page March 1, 2019 operating agreement is attached as Exhibit 3. It is an earlier document, not newly discovered evidence. Movant requests consideration with a fair opportunity to respond, or leave to submit it if required. Movant reports no operating agreement for the three other covered companies; that does not dispense with applicable defaults or proof of other governance arrangements. Teton Life's separate agreement and ECF No. 48 are addressed in the companion motion, not as a basis to impute identical rights to these four companies.

The Trustee remains the estate's representative under 11 U.S.C. § 323, and Movant is not a debtor in possession while a qualified trustee serves. 11 U.S.C. § 1101(1). Preventing bankruptcy-triggered termination of a right, or placing it in the estate, does not by itself establish Movant's authority to exercise it. Movant requests a company-specific determination

of the legal basis on which his own authority remained exercisable or may lawfully be restored while the Trustee serves. Rule 8007 supplies the procedural vehicle, not a substantive enlargement of governance rights. Safeguards protect the estate but do not substitute for that legal determination.

### III. Alternative relief (Proposed Orders A-1 and B).

If the Court will restore authority only on conditions, Movant requests Proposed Order A-1, granting the same lawful management and litigation authority with safeguards enforced by the Court, not a Trustee veto or revocable agency.

**Court-defined limited role.** If the Court denies both full-restoration requests, Movant next asks for a specific limited role for each covered company under a written, entity-specific plan approved after notice. The Court must find a lawful basis, define the permitted matters and acts, counsel, budget, reporting and corresponding injunction modifications, and preserve other members' existing rights. No role begins before the Court enters that approval, and the Trustee has no unilateral veto or revocation power. This is not a request to disregard statutory succession, obtain an estate agency by implication, or permit pro se representation of a company.

**Independent defense, funding and safeguards.** Proposed Order B further provides an independent-defense and company-specific funding procedure, without conceding the disputed succession issue. The Court should identify the lawful person or mechanism for instructing entity defense counsel independently of the adverse Plaintiff-Trustee; calling counsel independent is not itself an appointment or funding authorization. Each company's own legally available funds may be proposed after notice identifying ownership, restrictions and a budget, with no pooling, cross-entity subsidy or personal expenses. Separately, Movant requests notice and Court approval before irreversible dispositions and a consolidated nonprivileged report on each company's deadlines, counsel, funding and necessary approvals within five business days. These further requests do not withdraw either restoration request.

**Separate suspension of the affirmative clause.** Independently of whether the Court restores authority or approves a limited role, Movant requests suspension of the affirmative sole-authority clause in ECF No. 21, paragraph 2. He asks for a separate ruling on whether that interim declaration of exclusivity is justified. Suspension alone would not restore or transfer authority, extinguish any Trustee power independently held under governing law, or lift the remaining personal restraint. The existing restraints continue except as an entered order expressly changes them. *Camenisch*, 451 U.S. at 395, establishes the nonfinal character of preliminary findings, not automatic entitlement to this relief.

### IV. Findings, hearing and preservation.

In granting or refusing an interlocutory injunction, the court "must similarly state the findings and conclusions that support its action." Fed. R. Civ. P. 52(a)(2) (applied by Fed. R. Bankr. P. 7052). Movant asks for a separate ruling on each request in the notice of motion and for findings on items (i) through (v) listed there. If the Court considers the control, asset-movement or Florida-record facts disputed and material, Movant requests a focused evidentiary hearing. In that hearing Movant would testify, and would ask to examine the Trustee, about: the absence of advance notice of the October 15 restraints; the companies' management and assets before and after October 15; the Florida record in Exhibits 1 and 2; efforts to retain company counsel and why lawyers declined; and the facts on which the Trustee bases the asset-movement concern.

Movant does not concede the Trustee's claimed authority, ownership or control, or any alter-ego allegation, and preserves all claims, defenses, objections and appeal rights. He asks the Court to treat each ground in this memorandum as raised for review. If any relief is denied, he asks for reasons sufficient for a later application to the District Court under Fed. R. Bankr. P. 8007(b)(2)(B). He asks the Court to waive a monetary bond if permissible, or to set appropriate security, and acknowledges that the safeguards do not automatically satisfy a bond requirement.

## CONCLUSION

Movant requests full restoration pending appeal on the terms of Proposed Order A; alternatively, full restoration with the guardrails in Proposed Order A-1; and alternatively, the relief in Proposed Order B, with findings on each request. Existing stays, turnover requirements and deadlines remain effective unless expressly modified.

Preparation disclosure: I used generative artificial-intelligence assistance. I have reviewed this paper before signing it and remain responsible for its factual and legal content.

Dated: November 17, 2026

Avrumi Lubin, individually, pro se
Mailing address: 1460 Arboretum Parkway, Lakewood, New Jersey 08701
732-608-4905 | josh@tetonfunding.com