HLGS Hellring Lindeman Goldstein & Siegal LLP

COUNSELLORS AT LAW

BERNARD HELLRING (1916-1991)
MICHAEL EDELSON
ROBERT S. RAYMAR Δ
STEPHEN L. DREYFUSS Δ
PATRICIA A. STAIANO
SHERYL E. KOOMER
ERIC R. PERKINS
BRUCE S. ETTERMAN Δ
MATTHEW E. MOLOSHOK Δ
DAVID N. NARCISO Δ
CORINNE B. MALONEY Δ
CHRISTY L. SAALFELD Δ

Δ NJ & NY + FL

103 EISENHOWER PARKWAY
SUITE 403
ROSELAND, NEW JERSEY 07068-1031

T: +1.973.621.9020 | F: +1.973.621.7406
www.hlgslaw.com

JONATHAN L. GOLDSTEIN Δ +
SPECIAL COUNSEL

CHARLES ORANSKY Δ
ROBERT B. ROSEN Δ
JUDAH I. ELSTEIN Δ
JOHN A. ADLER Δ
OF COUNSEL

MARGARET DEE HELLRING (RET.)

November 24, 2026

By ECF

Honorable Eamonn James O'Hagan
United States Bankruptcy Court
Clarkson S. Fisher U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

Re: Avrumi Lubin a/k/a Josh Lubin
Case No. 26-17342 (EJO)
- - - - - - - - - - - - - - - - - - - - - -
Benjamin A. Stanziale, Jr., Ch. 11 Trustee for
Avrumi Lubin a/k/a Josh Lubin v. Avrumi Lubin. et. al.
Adv. Pro. No. 26-01494 (EJO)
Response to ECF 25 and 41
Hearing Date: December 3, 2026

Dear Judge O'Hagan:

This firm represents Benjamin A. Stanziale, Jr., the Chapter 11 Trustee ("Trustee") for Avrumi Lubin ("Debtor"), and plaintiff in the above-referenced adversary proceeding. Please accept this letter memorandum in lieu of a more formal brief in opposition to Debtor's motion, filed on October 29, 2026 in the adversary proceeding, to alter or amend this Court's October 23, 2026 Order ("October 23 Order") (ECF 25) and his "Supplemental Motion", filed a week later, seeking an entirely supplemental order (ECF 41).

In his original motion, Debtor seeks to add four additional statements/directives to the existing Order. Then Debtor's supplement seeks to add 7 or 8 more paragraphs. This is all just another example of Debtor's vexatious, flood the zone litigation tactics in which he seeks to unnecessarily litigate frivolous or easily resolved matters. Rather than addressing the matters raised in Debtor's motions at the further hearings on the interim October 23 Order already scheduled for November 10, 2026 and December 17, 2026, the Debtor seeks to multiply litigation by scheduling an additional hearing on December 3, three weeks after the November 10 follow-up hearing on Teton Life, LLC and just two weeks before the final hearing as to the October 23 Order. We do not intend to waste the Court's time or the estate's limited resources

engaging in a legal discussion about whether such motions are even legally viable at this juncture. Instead, we will simply address Debtor's requests, which are largely baseless on their face and on their substance. The Trustee will address first each of the four substantive paragraphs that the Debtor seeks to add in his proposed form of Order on the original motion in the order that they are set forth in that form of Order, along with addressing related proposals from his "supplemental motion", and then address thereafter in order by paragraph number the relevant further paragraphs from the Order on Debtor's "supplemental motion".

**Paragraph 2: "Notice and approval before disposition of a Subject Entity claim or asset"**

The Debtor seeks notice and an opportunity to be heard for various asserted parties in interest before the Trustee settles, resolves or abandons any claim, cause of action or asset of the five Subject Entities. This request is a waste of Trustee and judicial resources because the Trustee is obligated to seek Court approval of any compromise or settlement of a controversy by the filing of a motion for such approval. See, Fed.R.Bankr.P. 9019(a); Martin v. Myers (In re Martin), 91 F.3d 389 (3d Cir. 1996); In re Nationwide Sports Distrb., 227 B.R. 455, 459 (E.D.Pa. 1998). The Debtor, all secured creditors, the U.S. Trustee, and all parties in interest who have filed a Notice of Appearance (and who have thus requested that they be served with all such filings) are notified of such a motion. Thus, any party who seeks notice of motions to approve a compromise or settlement, by the simple expedient of filing an appearance, can ensure receipt of such motions. Further, pursuant to NJ LBR 9019-3(a), the Trustee must also file a Notice of Proposed Compromise or Settlement of Controversy form prescribed by the Court, which the Clerk Serves on all identified creditors.[1] Similarly, if the Trustee seeks to abandon any asset of the estate, he may only do so after notice and a hearing, and parties in interest then have a right to object. See, 11 U.S.C. §554(a); Fed.R.Bankr.P. 6007(a); NJ LBR 6007-1(a). The Trustee must file the prescribed notice form and the Clerk will then send out notice to the parties in interest. NJ LBR 6007-1(a). Should the Debtor want one or more "participants" in transactions of the subject entities to be notified of any settlement or abandonment with respects to claims or actions of those entities, the Debtor may insure that result, in the ordinary course, by amending Debtor's schedules to add the participant(s) to Debtor's list of unsecured creditors, rather than placing the burden on the Trustee to determine who should be noticed in this regard. (The participant may also insure notice by filing a Notice of Appearance.) The Debtor has already agreed to add to his schedules at least one such "participant" creditor. See October 7 email attached. It is not for Debtor, particularly at this early stage of the proceedings since the Trustee's appointment on September 18, 2026, to seek to subvert and augment the normal procedures prescribed by the Bankruptcy Rules and law to address settlements and abandonments.

In his **proposed supplemental Order (paragraph 2),** the Debtor appears to take his baseless efforts to change the Rules one step further by asserting that there simply should be no settlement or compromise at all. There is no basis to interfere with the Trustee's ability to act already granted by the Court, when, as already made clear above, any such settlement or compromise is

[1] Counsel to the Trustee already affirmed that the Trustee would do so at the November 10, 2026 hearing on the record.

subject to notice and the opportunity of the Debtor to object. This Court did not grant authority to the Trustee just to tie his hands. Furthermore, the Trustee takes no such actions lightly, and does so upon investigations, which include document review and communicating with third parties involved with the subject issues. This takes time.

**Paragraph 3: "Counsel for the Subject Entities, including Teton Life, LLC"**

Debtor's requests regarding counsel for Teton Life, LLC in this adversary proceeding were addressed and resolved at the November 10, 2026 further hearing on Teton Life, LLC, which is where they should have been raised without the need for this separate motion. The Court should not consider these matters further at this point. Suffice it to say, the Trustee and counsel have contacted and consulted with counsel to the Subject Entities, and the Debtor, as the Debtor well knows.

**Paragraph 4: "Written responses to preservation requests"**

Debtor's request to set up a formal, Court-ordered procedure for responding to Debtor demands has no basis in the Rules or the law, and is, at best, premature as it was filed on October 29, 2026, a mere 41 days after the Trustee was first appointed in this case. The Debtor does not seem to comprehend that the Trustee does not work for the Debtor. The Trustee has no obligation to respond to the Debtor on a specific, artificial timeline demanded by the Debtor. It is not for the Debtor to direct the Trustee as to how to proceed and what actions to take. See Exhibits F and G-2 to Debtor Certification cited by Debtor. The Court took the extraordinary step of appointing a Chapter 11 Trustee because the Court determined that the Debtor should not be in charge of such matters. Instead, the Trustee's obligations are as dictated by law, subject to the ultimate supervision of the U.S. Trustee's Office and this Court. 41 days into the Trustee's investigation of this vast and complex estate clogged with numerous litigations, it is, at best, premature to suggest that this Debtor is entitled to special procedures and deadlines to be imposed on the Trustee to address the Debtor's concerns. This is not to say that it would not be in the Debtor's own interest in securing a response to make his communications with the Trustee clearer, more organized, less frenetic and less threatening, and to limit such communications to issues that are truly of particular importance. Thus, if the Debtor at all times follows his own protocol suggested here in making requests to the Trustee, he may well secure what he would view as a better response. Lastly, the Debtor's communications do not simply set forth questions or provide factual information to the Trustee: the Debtor seeks to demand that the Trustee take his direction as to how to proceed legally and what to file in multiple courts. The Debtor's "directions" and "demands" are often unnecessary or legally wrong. To identify issues in a clear, concise manner and provide factual information is a far cry from seeking to manage the Trustee and his counsel and direct litigation.

**Paragraph 5: "Interim nature; no determination of ownership or third-party rights"**

The Debtor is again engaging in unnecessary and vexatious litigation by filing a motion for an amendment to the October 23 Order to state the interim nature of that Order when (a) it is clear

on its face and (b) the content of that Order will be addressed in any case, only two weeks after the return date of the current motion, at the further hearing on December 17, 2026. The October 23 Order states explicitly that its relief as to the so-called Subject Entities is in effect "pending further order of this court" (p. 5) and that a "further hearing on the continuation of the preliminary injunctive relief granted herein will be conducted on December 17, 2026, at 2:00 p.m." (p. 6, para. 6). Thus, the injunctive aspects of the Order are clearly interim in nature. No further Order is required on that score to complicate the clear directives of the October 23 Order. Had the Court viewed the Order as lacking clarity, it would not have entered it. Moreover, the additional language that the Debtor wants to engraft onto the Order of not determining ownership interests or rights of third parties seeks to unnecessarily complicate a straightforward injunction order that cannot be reasonably interpreted to address these other matters. There are many matters the October 23 Order does not address—there is no need to enumerate them.

Similarly, the Court should reject **paragraphs 8 and 9 of Debtor's proposed Supplemental Order** as seeking to dictate in even more detail what the Order does **not** mean and what it does **not** cover. The Order makes clear that it is not final and it states what it covers, The Court should reject the overly detailed surplusage sought by the Debtor as another example of his vexatious litigation strategy.

**Supplemental Order Paragraph 3: "Independent Fiduciary"**

Here the Debtor seeks to appoint a "disinterested person" to act for Subject Entity Spin Capital even before the Court has issued its final decision on the Trustee's Order to Show Cause application, arguing that the Trustee is not an independent fiduciary, which, after all and unlike the Debtor himself, is the nature of a Chapter 11 Trustee. Debtor relies on a Third Circuit case, In re BH & P Inc., 949 F.2d 1300 (3d Cir. 2012), wherein the Court found that the Trustee could not, under the circumstances of that case, act for an entity and its two principals, all in related Chapter 7s, where the Trustee on behalf of the entity had filed a claim against the bankruptcy estate of each principal. No such action has taken place here. The Trustee has filed no "claim" against Spin (or the Debtor) to create the appearance of conflict. Spin, as a wholly owned entity of the Debtor, is a part of his estate. The Debtor did not suggest that a conflict existed between his interests and those of Spin when he was debtor-in-possession and controlled Spin. It is, at a minimum, premature to suggest that a conflict now arises between the Debtor's estate and Spin even before the Trustee has taken any definitive action pursuant to the Court's October 23 Order, entered only about 2 weeks before Debtor's supplemental motion was filed. If the Court does not appoint an "independent fiduciary" for Spin, the Debtor instead suggests that the Trustee's hands should be substantially tied with respect to his actions. This Court did not give the Trustee control only to limit, at the outset, the Trustee's use of his powers for the benefit of the Estate. If the Court viewed the Debtor's judgment to be superior in this regard, this Court would not have appointed the Trustee in the first place.

**Supplemental Paragraph 4 and 5: "Spin kept separate" and "Notice to Participants"**

Again, before the Court has even issued a final order on the Trustee's Order to Show Cause as to extension, and before the Trustee has taken any final actions with respect to Spin, the Debtor seeks to tie the Trustee's hands with respect to Spin. There is no basis to segregate hypothetical

recoveries by the Trustee. The Trustee's Form 2 provides a full accounting of funds held by the Trustee and the sources of those funds. As stated above, the Trustee can only act upon any compromise of a controversy on notice and approval by this Court. The Debtor, who presumably was removed from control of the Subject Entities because of his questionable management of them, should not be permitted to micromanage the actions of the Chapter 11 Trustee, who already is an independent fiduciary appointed by the Court.

As to so-called "participants" in the Subject Entities being provided with notice of any proposed actions and of this proceeding, in light of Debtor's statements, the Trustee presumes that the Debtor has already provided such notice.[2]

While we are on the issue of "participants" and their role in this case in relation to Spin, and perhaps certain of the other subject entities, we should start to think about their role. Spin entered into merchant cash advance agreements as funder to numerous borrowers. However, Spin also entered into agreements with "participants"; raising money from third-party investors to fund such advances – often referred to as MCA participations, syndications or investment funds. The rights and responsibilities of Spin and the participants are set forth in each agreement and there are multiple participants in multiple deals, but not all the same participants in each deal. These participants are general unsecured creditors of Spin, who did not file bankruptcy and, hence, did not file a petition, schedules and statement of financial affairs. If or when Spin and the Subject Entities are adjudicated debtors, the Trustee will, based on his review of the Debtor and Subject Entities books and records, prepare and file schedules.[3]

**Supplemental Paragraph 6: "Written Statement"**

As noted in response to the Debtor's companion motion for premature discovery, which will be addressed separately, Debtor is not entitled to special discovery rights at this time. That was not the subject of the original application by the Trustee. While the Trustee is over time required to provide certain information about the case to a party in interest upon request, that is not a basis for the Court to order at the infancy of these proceedings that the Trustee must provide certain information within a specified time limit or to advise concerning his strategy going forward. Debtor's multiplicative and vexatious efforts to litigate every action or inaction by the Trustee even before the Trustee has been able to get his feet on the ground in this case is counterproductive and contrary to the import of the Court's decision when it took the unusual step of appointing a Chapter 11 Trustee. The Trustee is so flooded with requests and demands by the Debtor that it actually impedes the time for investigation. Moreover, the Debtor often copies upwards of 50 parties on his demands for information by the Trustee. This has had a chilling effect for parties and counsel to be forthcoming with information in certain circumstances, especially since the Debtor has threatened various counsel with malpractice actions (or demanded that the Trustee do so) or with criminal referrals. The Debtor has no self-

---

[2] We attach as Exhibit A an email from the Debtor characterizing one such participant as holding a "contingent unliquidated and disputed" claim.

[3] For the Court's information, the Trustee served a subpoena upon the Debtor asking for specific, segregated and organized production of documents regarding each and every deal, participation agreement and participant, as well as all documents evidencing Spin's compliance with securities laws, if applicable, with respect to the participation agreements.

awareness that his threats adversely affect candid, thoughtful and fact-gathering communications and negotiations. Parenthetically it has had a chilling effect on prior counsel with knowledge of ongoing matters or cases across the country, to wish to continue to represent the Subject Entities. The Court thus determined that an independent third party, and not the Debtor, should manage Debtor's affairs, which includes his businesses.

**Supplemental Paragraph 7 –"Responses of four Subject Entities".**

The October 23 Order established a schedule for a response to the Trustee's Order to Show Cause application to be filed, if any, to allow for the full merits of the Trustee's application to be heard and decided on December 17, 2026 and permitted the Debtor to retain counsel on behalf of the Subject Entities in this adversary proceeding. Since the Debtor is the sole principal of the four entities in question here (the Subject Entities other than Teton Life), it is exalting form over substance to suggest that the Debtor's responsive papers will not include a position, in essence, on behalf of the Subject Entities, but even if this were not the case, this Court provided that the Debtor could retain counsel for these entities in this action. No further delay is warranted. The Trustee does not intend to undercut a decision by the Court by seeking to have a default entered against the Subject Entities or directing them to consent to the extension prior to the December 17 return date, but thereafter, after discussion of these matters before the Court, the Trustee will act in the best interests of the combined estate and pursuant to the Court's further direction.

**Conclusion**

For the foregoing reasons, the Trustee respectfully requests that the Court deny at this time the relief requested by the Debtor in his motion and supplemental motion.

Respectfully submitted,

/s/ Patricia A. Staiano

Patricia A. Staiano

PAS:bml

cc: Benjamin A. Stanziale, Jr., Trustee (by email)
All Parties on the Attached Certification of Service